IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

SECURITIES AND EXCHANGE §
COMMISSION, §
　§
　　　　　Plaintiff, §
　§ Civil Action No. 3:16-CV-1735-D
VS. §
　§
CHRISTOPHER A. FAULKNER, et al., §
　§
　　　　　Defendants. §

MEMORANDUM OPINION
AND ORDER

Plaintiff U.S. Securities and Exchange Commission ("SEC") moves for a preliminary injunction to enjoin defendants Christopher Faulkner ("Faulkner"), Breitling Energy Corporation ("BECC"), and Breitling Oil & Gas Corporation ("BOG") from allegedly violating specific antifraud provisions of federal securities laws. The SEC also moves for an asset freeze, appointment of receiver and other ancillary relief. In opposition, Faulkner presents limited objections concerning the scope of the requested relief. Concluding that the SEC has met its burden of establishing the needed scope of the requested relief, but that Faulkner has demonstrated immediate and ongoing harm due to a lack of defense funds, the court by contemporaneous order largely—but not entirely—grants the relief the SEC seeks.[1]

---

[1]Pursuant to Fed. R. Civ. P. 52(a), the court sets out its findings of fact and conclusions of law in this memorandum opinion and order. The SEC's motion is before the court under the procedure permitted by Rule 43(c) and is being decided on the papers, without an evidentiary hearing. *See, e.g., John Crane Prod. Solutions, Inc., v. R2R and D, LLC*, 861 F.Supp.2d 792, 793 n.2 (N.D. Tex. 2012) (Fitzwater, C.J.) (following similar procedure when addressing motion for preliminary injunction).

I

In this securities fraud civil enforcement action, the SEC alleges that, since 2011, Faulkner and his codefendants have orchestrated a massive scheme that has defrauded investors in Faulkner's oil-and-gas companies of approximately $80 million. Although the intricacies of the alleged scheme are beyond the scope of this memorandum opinion order, its basics can be briefly summarized as follows. According to the SEC, Faulkner—while misrepresenting his education and experience—sold "working investments" in various oil and gas prospects through his companies.[2] Faulkner oversold the available units for each project and inflated the estimated costs to be incurred. Despite representing to investors that their funds would be segregated, Faulkner and his companies commingled and misappropriated significant portions of this money through tens of millions of dollars in cash disbursements and reimbursements of Faulkner's personal expenditures.[3] Throughout the scheme, Faulkner signed, and BECC filed, inaccurate and misleading financial reports with the SEC. Investors in Faulkner's companies ultimately received only a small fraction of their investment principal. The SEC alleges that, in conducting this scheme, Faulkner and other defendants have violated § 17(a) of the Securities Act of 1933 ("1933 Act") and § 10(b) of

---

[2]The SEC alleges that Faulkner used different companies at different times in his scheme. These companies included BOG, BECC (a publicly traded company), Crude Energy, LLC, and Patriot Energy, LLC.

[3]According to the SEC, Faulkner has personally received at least $23.8 million in investor funds. The SEC alleges that Faulkner personally obtained approximately $10 million from BOG investors alone. Faulkner does not contest any of the SEC's figures.

the Securities Exchange Act of 1934 ("1934 Act"), and SEC Rule 10b-5, promulgated thereunder.

The SEC now alleges that, after it filed this lawsuit, Faulkner, BOG, and BECC have continued to defraud investors. It maintains that records seized though a subpoena indicate that, since June 2016, over $110,000 in production revenue checks from oil and gas operators payable to BOG has been deposited into four accounts that Faulkner controls or beneficially owns. None of these funds has been used to pay BOG investors; instead, the funds have been misappropriated to pay Faulkner's personal expenditures.

In light of foregoing and ongoing conduct, the SEC filed a motion for a preliminary injunction, *ex parte* temporary restraining order, asset freeze, the appointment of a receiver to conserve the assets of Faulkner, BECC, and BOG, and other ancillary relief (including sworn accounting, document preservation, and expedited discovery). On August 14, 2017 the court issued an order appointing a temporary receiver, and it also granted a temporary restraining order and asset freeze order, without prejudice to granting the remaining relief that the SEC requested. The court then established a procedure for considering the instant motion.

Only Faulkner has filed an opposition response. He does not contest the majority of the SEC's requested relief. Instead, he contends that the court should narrow the scope of any orders to only address the oil and gas assets of BOG and BECC, and that the court should permit Faulkner and other insureds to access the directors and officers insurance policy ("D&O Policy") issued to BECC. The SEC's motion is now ripe for decision.

II

"The court need not address the merits of the SEC's preliminary injunction application insofar as it seeks relief that defendants do not oppose." *SEC v. AmeriFirst Funding, Inc.*, 2007 WL 2192632, at *1 (N.D. Tex. July 31, 2007) (Fitzwater, J.). Similarly, the court need not address the merits of the SEC's motion to the extent it relates to requests for relief that defendants do not fairly address, such as the SEC's request for relief in the form of expedited discovery and a sworn accounting. *Id.* Therefore, the court focuses its analysis on Faulkner's two objections to the scope of the SEC's requested relief.

III

A

The availability of a preliminary injunction in an SEC civil enforcement action is derived from explicit statutory authorization. Under § 20(b) of the 1933 Act, 15 U.S.C. § 77t(b), and § 21(d) of the 1934 Act, 15 U.S.C. § 77u(d), the SEC can obtain injunctive relief upon "a proper showing" that there is a "reasonable likelihood that the defendant[s][are] engaged or about to engage in practices that violate the federal securities laws." *SEC v. First Fin. Grp. of Tex.*, 645 F.2d 429, 434 (5th Cir. Unit A May 1981) (citations omitted)*; SEC v. Zale Corp.*, 650 F.2d 718, 720 (5th Cir. Unit A July 1981) ("[T]he Commission is entitled to prevail [on its permanent injunction application] when the inferences flowing from the defendant's prior illegal conduct, viewed in light of present circumstances, betoken a 'reasonable likelihood' of future transgressions."); *SEC v. Blatt*, 583 F.2d 1325, 1334 (5th Cir. 1978) ("The critical question in issuing the injunction and also the ultimate test on

review is whether defendant's past conduct indicates that there is a reasonable likelihood of further violations in the future."); *cf. SEC v. Cavanagh*, 1 F.Supp.2d 337, 360 (S.D.N.Y. 1998) ( "'[A] more substantial showing of likelihood of success, both as to violation and risk of recurrence [is required] whenever the relief sought is more than preservation of the status quo.'" (quoting *SEC v. Unifund SAL*, 910 F.2d 1028, 1039 (2d Cir. 1990)), *aff'd*, 155 F.3d 129 (2d Cir. 1998) (Reavley, J.); *SEC v. Tyler*, 2002 WL 32538418, at *2 (N.D. Tex. Feb.21, 2002) (Solis, J.).

The showing is usually made with proof of past substantive violations that indicate a reasonable likelihood of future substantive violations. *First Fin. Grp. of Tex.*, 645 F.2d at 434 (citations omitted); *Tyler*, 2002 WL 32538418, at *2 (citations omitted). Additionally, "[w]hen scienter is an element of the substantive violation sought to be enjoined, it must be proven before an injunction may issue." *Tyler*, 2002 WL 32538418, at *2 (citing *Aaron v. SEC*, 446 U.S. 680, 699-700 (1980)). "[I]n SEC civil enforcement actions for preliminary injunctive relief under the antifraud provisions of the federal securities laws . . . the proper standard of proof is the preponderance of the evidence." *First Fin. Grp. of Tex.*, 645 F.2d at 434.

B

The court has broad equitable power in securities fraud cases to fashion appropriate ancillary remedies necessary to grant full relief. *SEC v. Posner*, 16 F.3d 520, 521-22 (2d Cir. 1994). Moreover, the appointment of a receiver is a "'well-established equitable remedy available to the SEC in its civil enforcement proceedings for injunctive relief.'" *AmeriFirst*

*Funding*, 2007 WL 2192632, at *3 (quoting *First Fin. Grp. of Tex.*, 645 F.2d at 438.)

> The district court's exercise of its equity power in this respect is particularly necessary in instances in which the corporate defendant, through its management, has allegedly defrauded members of the investing public; in such cases, it is likely that, in the absence of the appointment of a receiver to maintain the status quo, the corporate assets will be subject to diversion and waste to the detriment of those who were induced to invest in the corporate scheme and for whose benefit, in some measure, the SEC injunctive action was brought.

*First Fin. Grp. of Tex.*, 645 F.2d at 438. (discussing applicability of receivership where automatic stay in bankruptcy was in effect) (footnote omitted). In *First Financial Group of Texas* the Fifth Circuit noted that, in reviewing a district court's decision to enter a preliminary injunction in favor of the SEC,

> [t]he prima facie showing of fraud and mismanagement, absent insolvency, is enough to call into play the equitable powers of the court. It is hardly conceivable that the trial court should have permitted those who were enjoined from fraudulent misconduct to continue in control of (the corporate defendant's) affairs for the benefit of those shown to have been defrauded. In such cases the appointment of a trustee-receiver becomes a necessary implementation of injunctive relief.

*Id.* (quoting *SEC v. Keller Corp.*, 323 F.2d 397, 403 (7th Cir. 1963)). Receivers may also be appointed over individual—not only corporate—defendants if their fraudulent conduct makes such an appointment appropriate. *See, e.g., Janvey v. Alguire*, 647 F.3d 585, 598 (5th Cir. 2011); *SEC v. Stanford Int'l Bank, Ltd.*, 2009 WL 8707814, at *1 (N.D. Tex. Oct. 9, 2009) (Godbey, J.).

Beyond appointing a receiver, "[t]he court is also empowered to freeze defendants'

assets to preserve the status quo and prevent dissipation of ill-gotten gains so that they remain available to fund subsequent disgorgement orders and civil penalties." *AmeriFirst Funding*, 2007 WL 2192632, at *3; *see also SEC v. Brooks*, 1999 WL 493052, at *2 (N.D. Tex. July 12, 1999) (Fitzwater, J.) (citing *SEC v. Schiffer*, 1998 WL 307375, at *7 (S.D.N.Y. June 11, 1998)).

IV

Based on the SEC's briefing and the largely uncontested evidence, the court finds from a preponderance of the evidence that the SEC has made "a proper showing" that there is at least a "reasonable likelihood that the defendant[s][are] engaged or about to engage in practices that violate the federal securities laws." The court finds that there is a reasonable likelihood that defendants, acting with scienter, obtained money and property through false and misleading statements and omissions of material fact and engaged in a scheme to defraud investors, in violation of the securities laws, including § 17(a) of the 1933 Act, § 10(b) of the 1934 Act, and SEC Rule 10b-5 promulgated thereunder. The court has therefore entered an order granting the requested preliminary injunction.

V

Regarding the remainder of the requested equitable relief, the court first considers Faulkner's request that the court limit the scope of the relief to only address the oil and gas assets of BOG and BECC. Faulkner contends that the requested appointment of a receiver is overbroad in relation to the SEC's purported aim to protect investor money from being misappropriated. He maintains that because all assets of BOG and BECC will be under the

receiver's control, BOG's and BECC's investors will be sufficiently secure, and a receivership that covers Faulkner's assets generally and extends to companies not party to this action is excessive and unnecessary. The court disagrees.

While a receivership over BOG and BECC would prevent the payments the SEC alleges have occurred since this lawsuit was filed, such a more limited receivership would not protect the investor proceeds that Faulkner has already allegedly misappropriated. Indeed, the SEC has demonstrated through its extensive filings that Faulkner has already obtained at least $23.8 million of investor proceeds through fraudulent cash disbursements and reimbursements. Faulkner has offered no evidence to rebut these figures. Moreover, the fact that Faulkner continued to misappropriate investor assets even after the SEC filed this lawsuit gives the court little confidence that Faulkner's asset management would improve without supervision. Thus the court is left to conclude that a receivership that only reaches BOG and BECC's oil and gas assets will leave ill-gotten investor proceeds unsecured.

The court finds that the SEC has met its burden of demonstrating by a preponderance of the evidence that the court should order an asset freeze and appoint a temporary receiver covering Faulkner's assets. This encompasses entities controlled by Faulkner to which the unrebutted evidence indicates he may have redistributed either BOG's or BECC's investors' assets—including the Breitling Royalties Corporation. Granting such relief will ensure that these assets will be available to satisfy any judgment that either the SEC or a defrauded investor may obtain. "The court is [] empowered to freeze defendants' assets to preserve the status quo and prevent dissipation of ill-gotten gains so that they remain available to pay

subsequent disgorgement orders and civil penalties." *AmeriFirst Funding*, 2007 WL 2192632, at *3; *Brooks*, 1999 WL 493052, at *2. The court concludes this power is both necessary and appropriate to enable the temporary receiver to accurately assess and secure assets likely needed for future disgorgement.

To ensure that the relief granted does not extend past what is reasonably necessary for the receiver to determine the extent of Faulkner's, BOG's, and BECC's assets and their ability to preserve ill-gotten gains for future disgorgement, the court directs that the temporary receiver file a status report with the court no later than the first business day of each quarter, the first report being due January 2, 2018, informing the court his identification of available assets and whether these assets can satisfy the SEC's estimation of funds subject to disgorgement.

VI

The court next determines whether to permit Faulkner and the other insureds to access the D&O Policy and its proceeds. Faulkner specifically requests the court "to exclude the D&O Policy from the receivership estate or to authorize the disbursement of its proceeds to fund a legal defense." D. Br. 15. To address Faulkner's objection, the court must address two separate questions: whether the D&O policy is part of the receivership estate, and whether the court should advance defense costs.

A

Because relatively few cases arise examining the ownership of insurance proceeds in the receivership context, "it is appropriate to consider the treatment of the issue under

bankruptcy law, where the courts must frequently decide whether persons insured under a D&O policy are entitled to the proceeds when the named insured is a debtor in bankruptcy proceedings." *SEC v. Narayan*, 2017 WL 447205, at *4 (N.D. Tex. Feb. 2, 2017) (Lynn, C.J.) (internal quotation marks and citation omitted). In receivership actions, "there is clear Fifth Circuit precedent on a closely related issue—the treatment of liability proceeds in the context of bankruptcy." *Exec. Risk Indem., Inc. v. Integral Equity, L.P.*, 2004 WL 438936, at *13 (N.D. Tex. Mar. 10, 2004) (Fish, C.J.).

Whether a D&O policy is part of a receivership estate depends on the entities and individuals covered by the policy and the language of the policy itself. *See, e.g., In re La. World Exposition, Inc.*, 832 F.2d 1391, 1401 (5th Cir. 1987) (holding that when debtor corporation owns D&O policy that exclusively covers its directors and officers, the proceeds are not part of debtor's bankruptcy estate). The relevant question is not who owns the policy but who owns its proceeds. *In re Edgeworth*, 993 F.2d 51, 55-56 (5th Cir. 1993) ("In other words, when the debtor has no legally cognizable claim to the insurance proceeds, those proceeds are not property of the estate."). The Fifth Circuit has addressed—albeit in dicta—the options for a court when considering a D&O policy when:

> (1) the policy-owning debtor is but one of two or more coinsureds or additional named insureds, (2) the rights of the other coinsured(s) or additional named insured(s) are not merely derivative of the rights of one primary named insured, and (3) the aggregate potential liability substantially exceeds the aggregate limits of available insurance coverage.

*In re Vitek, Inc.*, 51 F.3d 530, 535 (5th Cir. 1995) (emphasis omitted). Deeming such

circumstances "mid-continuum" cases, the *Vitek* panel suggests two possible paths forward. First, the court can wholly include the proceeds of a policy in the estate of the debtor that owns the policy—"even though there are other coinsureds or additional named insureds who have some 'interest' in the proceeds." *Id.* Or, second, the proceeds can be divided among all coinsureds, on either a per capita basis or in proportion to the potential or actual liability faced by each insured party. *Id.*

That a D&O policy is deemed to be part of a receivership estate, however, does not preclude the advancement of defense costs. "'It is a recognized principle of law that the district court has broad powers and wide discretion to determine the appropriate relief in an equity receivership.'" *SEC v. Safety Fin. Serv., Inc.*, 674 F.2d 368, 372-73 (5th Cir. 1982) (quoting *SEC v. Lincoln Thrift Ass'n*, 577 F.2d 600, 606 (9th Cir. 1978)). Accordingly, several courts have concluded that the advancement of defense costs is appropriate, despite the fact that they may be drawn from a D&O policy within a receivership estate. *See, e.g.*, *Stanford Int'l Bank*, 2009 WL 8707814, at *3-4 (declining to determine whether D&O policy proceeds were part of receivership estate, but holding that even if they were, court would permit advancement of defense costs); *Narayan*, 2017 WL 447205, at *6 (noting that even in cases where D&O policy proceeds are within bankruptcy estate, "courts have nonetheless granted relief when the harm weighs more heavily against the directors or officers than the debtor") (citations omitted). In these cases, the courts balance the potential harm facing the defendants moving for defense costs with the harm to the receivership estate if said funds are released. In particular, they consider whether the harms are clear and immediate rather than

hypothetical or speculative. *See Stanford Int'l Bank*, 2009 WL 8707814, at *3-4; *Narayan*, 2017 WL 447205, at *6; *see also In re Allied Digital Techs. Corp.*, 306 B.R. 505, 514 (Bankr. D. Del. 2004); *In re CyberMedica, Inc.*, 280 B.R. 12, 18 (Bankr. D. Mass. 2002).

B

In this case, the D&O Policy explicitly insures both BECC and its directors and officers. In relevant part, the D&O Policy provides that "[t]he Insurer shall pay on behalf of the Insured Persons Loss resulting from a Claim first made against the Insured Persons during the Policy Period . . . for a Wrongful Act." D. App. 38 Similarly, the Insurer promises to "pay on behalf of the Company Loss resulting solely from and Securities Claim first made against the Company . . . for a Company Wrongful Act." *Id.* It specifically defines the "Insured" as both the "Company"—listed as the BECC elsewhere in the D&O Policy—and "Insured Persons"—further defined as including "any, past, present or future director or officer, or member of the Board of Managers, of the Company." D. App. 4, 39. The definition of "Loss" includes both "damages, judgments, settlement, pre-judgment and post-judgment interest" and "Defense Expenses in excess of the Retention that the insured is legally obligated to pay." D. App. 23, 40.

From this language, the court determines that the D&O Policy is at least in part within the receivership estate. Its provisions clarify that the D&O Policy is one of the "midcontinuum" cases contemplated in *Vitek*: both those covered by the receivership (Faulkner and BECC) and those that are not (other yet unknown directors and officers) are entitled to its proceeds to cover respective "Losses." Because the scope of the receivership

covers the assets of both Faulkner and BECC, however, the D&O Policy proceeds that would be used to pay "damages, judgments, settlement, pre-judgment and post-judgment interest" and "Defense Expenses" related to Faulkner's and BECC's conduct are within the receivership estate. Therefore, they are subject to the receivership and the court's asset freeze order.

As the cited foregoing cases demonstrate, the fact that these funds are within the receivership estate does not preclude the court from granting an advancement of defense costs. In all of these cases, however, the respective courts received full briefing on this particular issue from the receiver, the SEC, and, often, additional defendants. *See Stanford Int'l Bank*, 2009 WL 8707814, at *3-4; *Narayan*, 2017 WL 447205, at *6. Here, the temporary receiver has not had the opportunity to assess the risk that an indefinite advancement of defense costs would pose to the receivership assets and defrauded investors. Without this information, the court cannot effectively balance the harms implicated by this decision. Therefore, the court declines to indefinitely provide Faulkner and other insureds access to defense funds.

Faulkner has demonstrated, however, that he and other defendants face real and immediate harm. Without access to the D&O Policy proceeds, Faulkner may be unable to mount a defense in the present case. D. App. 2. Faced with this harm, the court will order that the temporary receiver allow defendants access to the D&O Policy proceeds for the period required for the court to decide this question on full briefing, or, if sooner, the date the court by order denies such access. To avoid entry of such an order on October 16, 2017,

- 13 -

Faulkner must by that date file a motion for the advancement of defense costs. Briefing on the motion will follow the court's local civil rules unless the court, on request of a party or parties, sets a different schedule. In the meantime, the temporary receiver will be able to make an assessment of any likely harms to the estate should the court allow further access to D&O Policy Proceeds. This will allow the court to better engage in the required balancing of harms analysis.

* * *

For the reasons stated, the court by separate order entered today is granting in large part the SEC's motion for preliminary injunction, asset freeze, appointment of receiver, and other ancillary relief.

**SO ORDERED**.

September 25, 2017.

_____
SIDNEY A. FITZWATER
UNITED STATES DISTRICT JUDGE