IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **SECURITIES AND EXCHANGE COMMISSION**, <br> Plaintiff, <br> <br> v. <br> <br> **CHRISTOPHER A. FAULKNER, BREITLING ENERGY CORPORATION, JEREMY S. WAGERS, JUDSON F. ("RICK") HOOVER, PARKER R. HALLAM, JOSEPH SIMO, DUSTIN MICHAEL MILLER RODRIGUEZ, BETH C. HANDKINS, GILBERT STEEDLEY, BREITLING OIL & GAS CORPORATION, CRUDE ENERGY, LLC, PATRIOT ENERGY, INC.**, <br> Defendants, <br> <br> and <br> <br> **TAMRA M. FREEDMAN and JETMIR AHMEDI**, <br> Relief Defendants. | § § § § § § § § § § § § § § § § § § § § § § § § § | Case No.: 3:16-cv-01735-D |

**QUARTERLY STATUS REPORT OF RECEIVER FOR THE
CALENDAR QUARTER ENDING DECEMBER 31, 2017**

Upon the Motion of the Securities and Exchange Commission (the "Commission"), this Court entered its Order Appointing Receiver (Dkt. 142) ("September 25 OAR") in the above-styled action on September 25, 2017, finding the appointment of a receiver "necessary and appropriate for the purposes of marshaling and preserving all assets—in any form or of any kind whatsoever—owned, controlled, managed, or possessed by defendants Christopher A. Faulkner [("Faulkner")], Breitling Oil & Gas Corporation ("BOG"), and Breitling Energy Corporation

("BECC") (collectively, the "Receivership Defendants"), directly or indirectly ("Receivership Assets")." September 25 OAR at 1. Thomas L. Taylor III was "appointed to serve without bond as temporary receiver (the "Receiver") for the estates of the Receivership Defendants and the Receivership Assets." *Id*. ¶2.[1]

In the September 25 OAR the Court required that within the first day of each calendar quarter, beginning January 2, 2018, the Receiver shall file a status report and accounting. *Id*. ¶54. This Status Report is submitted pursuant to that requirement. A schedule of the Receivership's receipts and disbursements as required by the September 25 OAR are attached hereto as Exhibit A. The Receiver addresses below his plan for administration of the Receivership Estate going forward. The Receiver anticipates that he will be in a position to submit a Liquidation Plan, including a claims procedure and procedure for distribution to claimants, by July 1, 2018. At this early stage of the Receivership, it appears that some number of putative claimants received conveyances of specific oil and gas interests (with record title) while other putative claimants invested in interests which were pooled. This circumstance may require distribution to multiple classes of investors. At this preliminary stage, the Receiver is unable to determine whether this distinction can be made, which decision will depend upon whether invested funds used for such acquisitions were pooled/comingled -- notwithstanding the apparent conveyance of specific individual investments.

Prior to the entry of the September 25 OAR, the Court had entered an Order Appointing Temporary Receiver on August 14, 2017 (Dkt. 108) (the "August 14 OATR"). As required by

---

[1] In its Memorandum and Opinion and Order (Dkt. 141) this Court expressly held that "Faulkner's assets [vis-à-vis the asset freeze and the Receiver's control] … encompass[] entities controlled by Faulkner to which the unrebutted evidence indicates he may have redistributed either BOG's or BECC's investors' assets—including the Breitling Royalties Corporation." *Id*. at 8.

the August 14 OATR, the Receiver submitted a status report regarding activities under that Order (the "Temporary Receivership") on August 29, 2017 (Dkt. 122) ("August 29 Status Report"). That status report is incorporated herein by reference.

### Efforts to Identify, Locate and Freeze Assets

At the inception of the Temporary Receivership, the Commission's Staff provided the Receiver with information which had been developed during their investigation regarding working interests and royalty interests known to have been held by the Receivership Defendants. During the pendency of the August 14 OATR, most of the identified oil and gas operators associated with these interests were served with that Order. To the fullest extent possible, the Temporary Receiver initiated communication with these oil and gas operators directing that all revenue and other assets (including assets held in suspense) be remitted to the Receivership Estate going forward. The operators with whom the Receiver has been able to establish contact have cooperated in identifying and documenting oil and gas assets to be administered by the Receivership Estate going forward; they have also cooperated in agreeing to transfer associated revenue going forward.[2]

As demonstrated by the Commission's Staff, revenue from oil and gas assets which are now in Receivership had been diverted by the Defendants since the commencement of the present action by the Commission. The Receiver has endeavored to reconcile those identified assets with those which are now known to be under the control of the Receivership Estate. Going forward, the Receiver will continue to administer the existing oil and gas assets and the revenue

---

[2] In the course of marshaling the oil and gas assets covered by the August 14 OATR, the Receiver received information from Chesapeake Energy Corp. ("Chesapeake") that on August 15, 2017 -- the day after being served with the August 14 OATR and TRO – Defendant Faulkner had attempted to change the address for checks from Chesapeake payable to Breitling Royalties Corporation ("BRC"). In doing so, Faulkner held himself out as controlling that entity.

associated with those assets while establishing a plan for their liquidation. The Receiver has not been supplied by the Defendants with a complete -- or even coherent -- schedule of oil and gas assets within the Receivership Estate. However, the Receiver and his staff have assembled -- based upon documents and incoming correspondence available to date -- a schedule of oil and gas assets which are presently known to be subject to the September 25 OAR. The schedule, attached hereto as Exhibit B sets forth the assets identified to date, along with additional data compiled.

### Efforts to Obtain Necessary Information from the Receivership Defendants

As set forth in detail in the August 29 Status Report, the Receiver encountered significant difficulty in securing the cooperation of Defendants in providing information and records regarding the Receivership Defendants and Receivership Assets. Accordingly, the Receiver filed with this Court a Motion for Order to Show Cause re Contempt on September 5, 2017 (Dkt. 123) detailing efforts to obtain information necessary to the administration of the Receivership Estate. On September 6, this Court granted the Receiver's Motion (Dkt. 125). On October 22, 2017, the Receiver filed a Motion to Amend the Order to Show Cause with respect to Faulkner and his mother, non-party Carole A. Faulkner ("Carole Faulkner"), and their efforts to conceal and withdraw proceeds which had been paid to Faulkner's nominee entity, U.S. Property Investments, Inc. ("USPI") from the sale of RackAlley, LLC ("RackAlley"), an enterprise in which Faulkner had owned a significant interest (see *infra* at 4-5). The Receivership Defendants and non-parties Carole Faulkner and BRC were ordered to appear before this Court to show

cause why they should not be held in contempt. *See* Dkt. 180. The matter was heard before this Court on December 14, 2017 and is presently on submission.[3]

**Investigation Regarding Additional Assets Under the Ownership,
Control or Possession of the Defendants**

Since the entry of the September 25 OAR, the Receiver has initiated and will continue to investigate all potential assets of the Receivership Estate.

A.  Proceeds from the Sale of RackAlley

The entity RackAlley (or its assets) was sold to HiVelocity Hosting ("HiVelocity") prior to the entry of the September 25 OAR. Faulkner was entitled to a significant share (at least $283,000) of those sales proceeds (and certain future payments), which funds came within the scope of the Receivership Assets upon entry of the September 25 OAR. The Receiver received information that Mohamed Arab ("Arab") -- a co-owner of RackAlley -- came into possession, custody or control of proceeds from the sale, including $210,000 to which Faulkner was entitled.[4] Arab transmitted Faulkner's proceeds to him in the form of RackAlley checks payable to U.S. Property Investments, Inc. ("USPI"), a Wyoming shell entity owned and controlled by Faulkner. It appears that USPI is an artifice to defraud the Receivership Estate and to violate the Order Appointing Receiver. The RackAlley checks -- payable to USPI -- were transmitted by Arab to Faulkner's home address at 2415 Eastern Ct., Venice, CA 90291. In furtherance of the fraud on the Receivership Estate, on October 4, 2017, Faulkner purported to remove his name from USPI's Wyoming registration and to change record ownership of USPI to Shannon

---

[3] The Receiver filed a Second Motion to Amend Order to Show Cause re: Contempt on November 20, 2017 (Dkt. 203) with respect to Carole Faulkner and USPI, which filed a lawsuit against the Receiver in California state court. *See infra* at 6.

[4] HiVelocity paid 75% of the sale proceeds to RackAlley upon closing. The remaining 25% of proceeds are to be paid from an escrow account after nine months.

Bresnahan -- an apparently estranged girlfriend -- who had no knowledge of or connection to USPI. Defendant Faulkner's mother, Carole Faulkner, opened an account at Bank of the West in the name of USPI to receive the RackAlley proceeds. She subsequently deposited (or attempted to deposit) those checks into the Bank of the West account.

The Receiver repeatedly made demand to Defendant Faulkner -- through his counsel -- and to Arab that the $210,000 in RackAlley Proceeds to which Faulkner was entitled be remitted to the Receivership Estate. In response to the Receiver's demand, $150,000 of the funds were remitted to the Receivership Estate from RackAlley's account at Bank of America on or about November 15, 2017. In support of efforts to obtain possession of the funds to which Faulkner is entitled, the Receiver filed the Motion to Amend the Court's Order to Show Cause re: Contempt on October 22, 2017 (Dkt. 166). In that Motion, the Receiver detailed the efforts of Faulkner and Carole Faulkner to conceal and withdraw the $210,000 in RackAlley sales proceeds through USPI and the USPI Bank of the West account in violation of the September 25 OAR. The motion came on for hearing before this Court on December 14, 2017 and is presently pending on submission.

On or about November 14, 2017 Carole Faulkner and USPI caused a lawsuit to be filed against the Receiver styled *Carole Ann Faulkner and U.S. Property Investments, Inc. v. Thomas L. Taylor III*, Case No. SC-128374, in the Superior Court of the State of California in and for the County of Los Angeles (the "California Lawsuit"). Carole Faulkner and USPI failed to obtain leave of this Court before doing so, in violation of the Order Appointing Receiver. Dkt. 142 ¶¶32-34. On November 30, 2017 the Receiver filed a Second Motion to Amend Order to Show Cause re: Contempt (Dkt. 203) with respect to the California Lawsuit filed in violation of the

Order Appointing Receiver. The motion came on for hearing before this Court on December 14, 2017 and is pending on submission before this Court.

The Receiver was personally served with the unlawful California Lawsuit on November 27, 2017. On November 28, 2017, the Receiver, through his counsel, removed the California Lawsuit to the United States District Court for the Central District of California (Cause No. 17-cv-08609-SJO-PLA). On December 5, 2017 the Receiver filed a motion to transfer the California Lawsuit to the U.S. District Court for the Northern District of Texas where exclusive jurisdiction lies with respect to the Receivership Estate. On December 12, 2017 the Receiver filed a Motion to Dismiss the California Lawsuit pursuant to FED. R. CIV. P. 12(b)(1). Carole Faulkner and USPI cannot establish subject matter jurisdiction with respect to their suit because under the circumstances of the case, and pursuant to the *Barton* Doctrine, "before suit is brought against a receiver leave of the court by which he was appointed must be obtained." *Barton v. Barbour*, 104 U.S. 126, 128 (1881). A court "lacks subject matter jurisdiction over a suit brought against a receiver if the plaintiff does not first obtain leave of Court to sue." *Standifer v. SEC*, 542 F. Supp. 2d 1312, 1315 (N.D. Ga. 2008). The Receiver's Motion to Transfer and Motion to Dismiss are currently set for hearing before the U.S. District Court for the Central District of California on January 22, 2018.

    B. <u>Transfers of Putative Receivership Assets to Other Business Entities With Which Defendant Faulkner and the Receivership Entities are Associated</u>

Preliminary review of records of the entity Receivership Defendants and evidence developed by the Commission's Staff indicate that funds were transferred from Receivership Defendants to other entities under the control of Mr. Faulkner. These transfers were the subject of expert testimony before the Court at the December 14, 2017 hearing on the Order to Show Cause re Contempt. The Receiver will continue efforts to trace these transfers of Receivership

Assets. The Receiver's efforts in this regard will be directed, without limitation, to entities identified by the Staff of the Commission in its Motion for Preliminary Injunction (Dkt. 102) including Defendants Crude Energy, LLC ("Crude") and Patriot Energy, Inc. ("Patriot") and non-party BRC[5]. If it appears to be procedurally advantageous to the Receivership Estate, the Receiver will consider an application to this Court for an expansion of the Receivership to these entities and others where such an expansion is supported by the evidence.[6]

    C.  Sale of Faulkner Residence and Related Proceeds

Prior to the commencement of the Receivership, Faulkner and his former wife -- through Inwood Partners, a nominee entity of the Faulkners -- disposed of a personal residence in Dallas, Texas of substantial value. The Receiver is investigating a series of transactions related to the proceeds from the sale of the residence in an attempt to recover liquid assets for the Receivership Estate. Defendant Faulkner's mother, Carole Faulkner, was extensively involved in the sale of the residence and in the disposition of the proceeds.

Thus far, the Receiver has determined that the sale proceeds, slightly less than $1 million, were deposited into an Inwood Partners account at Frost Bank. At Carole Faulkner's instruction, the funds were disbursed in the form of sixteen Cashier's checks. Ten of these Cashier's checks have not yet been negotiated and are property of the Receivership Estate. One of these checks was made payable to Citibank in the amount of $7,000; five checks (each in the amount of

---

[5] *See* Memorandum Opinion and Order (Dkt. 141) at 8 ("The court finds that the SEC has met its burden of demonstrating by a preponderance of the evidence that the court should order an asset freeze and appoint a temporary receiver covering Faulkner's assets. This encompasses entities controlled by Faulkner to which the unrebutted evidence indicates he may have redistributed either BOG's or BECC's investors' assets—including the Breitling Royalties Corporation.").

[6] At the December 14, 2017 hearing on the Receiver's Motion for Order to Show Cause re Contempt, expert testimony was presented concerning the commingling of assets between and among the Breitling entities and Crude and Patriot.

$20,000) were made payable to Carole Faulkner; four checks (in the amounts of $700,000, $10,000, $10,000, and $50,000) were made payable to "C. A. Faulkner." In response to previous attempts by the United States Attorney's Offices to enforce criminal seizure orders, Carole Faulkner has represented to agents of the Federal Bureau of Investigation that the Cashier's checks which have not been cashed were transmitted by FedEx to Christopher Faulkner but purportedly have been "lost." It is the Receiver's understanding that Carole Faulkner has refused to execute affidavits necessary in order to enable Frost Bank to reissue the Cashier's checks to the Receivership Estate. The Receiver will make every effort to recover the proceeds represented by the Cashier's checks which have not yet been negotiated. In addition to pursuing collection from the Faulkners themselves, the Receiver is exploring procedures before this Court to cause Frost Bank to remit to the Receivership Estate the unclaimed funds represented by the purportedly lost checks.

### D. Directors & Officers Insurance Policy

Receivership Defendant BECC is insured by XL Specialty Insurance Company ("XL Specialty") through a Directors & Officers insurance policy ("D&O Policy"). BECC is a named insured along with certain officers and directors. It is the Receiver's position that the D&O Policy should be included as an asset of the Receivership Estate. In its Memorandum Opinion and Order (Dkt. 141) the Court addressed Faulkner's request to the Court to "permit Faulkner and other insureds to access the directors and officers insurance policy issued to BECC." Dkt. 141 at 3, 9-14. The Court "determine[d] that the D&O Policy is at least in part within the receivership estate," *id*. at 12, and directed the Receiver to "permit XL Specialty Insurance Company to process the Receivership Defendants' claims under Directors and Officers Insurance Policy Number ELU137222-14, until a further order of the court." Dkt. 142 ¶17. The Court

ordered Faulkner to "file a motion for the advancement of defense costs" briefing the issue by October 16, 2017, with responses and replies to be filed pursuant to the Court's Local Rules. Dkt. 141 at 12-13. On October 9, 2017 Defendant Judson Hoover ("Hoover") filed a Motion for the Advancement of Defense Costs and brief and appendix in support ("Hoover Motion") (Dkts. 150-152). Faulkner filed his motion on October 15, 2017. Dkt. 156.[7] The Receiver filed his Responses to these Motions on November 6, 2017. *See* Dkt. 164 (Order Extending Deadlines with respect to the Receiver's response to the Hoover Motion). In addition to addressing the question whether the D&O Policy is a Receivership asset, the Receiver sought to initiate settlement discussions with the D&O Carrier regarding policy amounts which had not already been expended.

The foregoing motions regarding D&O coverage are presently under submission. To date, the Receiver understands that XL Specialty has advanced $810,779 of the $1,000,000 policy limit. Counsel for the D&O carrier has advised the Receiver that the remaining $189,221 will be exhausted with the next round of defense payments which are to be made in January 2018.

### Potential Claims of the Receivership Estate

The Receiver anticipates significant activity in the assertion of "clawback" claims pursuant to the Texas Uniform Fraudulent Transfer Act and related equitable principles.

---

[7] On October 24, 2017 a Notice of Filing was transmitted by the Court's CM/ECF case management system regarding a Motion for the Advancement of Defense Costs filed by Carole Faulkner, purportedly on behalf of BECC (Dkts. 176, 177). The Receiver filed a Motion to Strike that motion from the record, and for sanctions (Dkt. 181), because Carole Faulkner had neither the authority nor the authorization to act on behalf of BECC. *See* Dkt. 142 ¶5; Dkt. 165. She withdrew the motion.

A. <u>Brokers/Sales Representatives</u>

The Receiver is coordinating efforts with the Staff of the Commission regarding claims against individuals who were active in (and compensated from) the offer and sale of oil and gas interests by the Defendants. Payments were made by Defendants to numerous individuals and their nominee entities aggregating millions of dollars. The Commission has initiated Administrative Proceedings against at least five of the brokers who received the largest amounts in payments. The Receiver is hopeful that the Commission will establish a Fair Fund to receive disgorgements achieved in these Administrative Proceedings for the benefit of claimants in the Receivership.

The Receiver will shortly make demand upon and/or initiate clawback litigation against other brokers and sales representatives who received payments. In this regard, the Receiver understands that approximately sixteen individuals (mostly through nominee entities) received payments in excess of $100,000. In preparation for these efforts, the Receiver is reviewing extensive accounting data assembled by Veritas Advisory Group, Inc. and by the Commission's Staff.

B. <u>Principals and Related Parties</u>

The Receiver is investigating potential clawbacks against the principals of the Receivership entities as well as others including Defendant Faulkner's former spouse, other business associates and family members.

C. <u>Criminal Seizures</u>

Prior to the institution of the Receivership, the Unites States Attorney's Office had initiated criminal seizure proceedings against Christopher Faulkner and related entities. Substantial assets were recovered by the Unites States Attorney's Office in connection with these

proceedings. The Receiver has initiated discussions with the United States Attorney's Office regarding the possible inclusion of these assets within the Receivership Estate to facilitate their distribution to defrauded investors.

Dated: January 3, 2018                         Respectfully submitted,

                                                By:  /s/  Thomas L. Taylor III

Thomas L. Taylor III
Texas State Bar: 19733700
*taylor@tltaylorlaw.com*

The Taylor Law Offices, P.C.
245 West 18th Street
Houston, Texas 77008
Tel: 713.626.5300
Fax: 713.402.6154

RECEIVER

## CERTIFICATE OF SERVICE

     I certify that on January 3, 2018, I served the foregoing document on all counsel of record and through the CM/ECF electronic filing system notice, or by other means as listed below consistent with the Federal Rules of Civil Procedure.

                                                  /s/  Thomas L. Taylor III
                                                   Thomas L. Taylor III