**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **SECURITIES AND EXCHANGE** | § | |
| **COMMISSION,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| | § | |
| | § | |
| **CHRISTOPHER A. FAULKNER,** | § | **Case No. 3:16-cv-01735-D** |
| **BREITLING ENERGY CORPORATION,** | § | |
| **JEREMY S. WAGERS,** | § | |
| **JUDSON F. ("RICK") HOOVER,** | § | |
| **PARKER R. HALLAM,** | § | |
| **JOSEPH SIMO,** | § | |
| **DUSTIN MICHAEL MILLER** | § | |
| **RODRIQUEZ, BETH C. HANDKINS,** | § | |
| **GILBERT STEEDLEY,** | § | |
| **BREITLING OIL & GAS CORPORATION,** | § | |
| **CRUDE ENERGY, LLC,** | § | |
| **PATRIOT ENERGY, INC.** | § | |
| | § | |
| **Defendants,** | § | |
| | § | |
| **And** | § | |
| | § | |
| **TAMRA M. FREEDMAN, JETMIR** | § | |
| **AHMEDI,** | § | |
| | § | |
| | § | |
| **Relief Defendants.** | § | |

**RECEIVER'S REPLY IN SUPPORT OF HIS APPLICATION FOR ATTORNEY'S FEES**

## I.     Introduction

On February 13, 2018, this Court issued an Order that, among other things: (1) held Carole Faulkner ("Carole") and U.S. Property Investments, Inc. ("USPI") (collectively, the "Contemnors") in contempt, and (2) directed the Receiver to file an application to recover his reasonable and necessary attorney's fees and costs related to Contemnors' conduct.

("Contempt Order," Dkt. 247.) On Mach 13, 2018 the Receiver filed its Application (Dkt. 258), and on March 15, 2018, the Receiver filed a Supplement clarifying the amounts attributable to each Contemnor. (Dkt. 259.) On April 5, 2018, Contemnors filed a Response in Opposition to the Receiver's Application ("Contemnors' Response," Dkt. 264), which relies upon false statements of fact and frivolous arguments. As demonstrated below, the Court should disregard Contemnors' Response and order payment of reasonable attorney's fees and costs as requested in Receiver's Application.

II.     **Carole's Representation to the Court that She "Agreed" to Dismiss the California Litigation is 100% False.**

On Page 3 of Contemnors' Response, Carole provides an objectively false narrative of facts relating to her filing of the California lawsuit against the Receiver and communications with Brian Corrigan, Receiver's California counsel.[1] On November 14, 2017, Carole filed the Contemnors' lawsuit against the Receiver in California Superior Court. (Corrigan Aff., Ex. A, at ¶ 3.) On November 28, 2017, Corrigan removed the lawsuit to federal court in California; on December 5, 2017, Corrigan filed a motion to transfer venue from California to this Court. (Corrigan Aff., Ex. A, at ¶¶ 4-5.) In Contemnors' Response, Carole states: "On December 8, 2017, Ms. Faulkner had the one and only conversation with the receiver's attorney Brian Corrigan in which she clearly stated that she agreed to his request to dismiss the California action regarding the receiver." (Contemnors' Resp. at p. 3.) This is false.

Rather, Corrigan's partner Stanley Morris contacted Carole to initiate a meet and confer on their Motion to Transfer Venue and their contemplated Motion to Dismiss (which was filed on December 12, 2017). (Corrigan Aff., Ex. A, at ¶ 6.) Corrigan's affidavit confirms

---

[1] Attached hereto as Exhibit A and incorporated herein by reference is a true and correct copy of the Affidavit of Brian Corrigan.

that he and Morris together spoke to Carole by telephone on December 8, 2017. (Corrigan

Aff., Ex. A, at ¶ 6.) But Corrigan states under oath that "at that time, Carole did not propose,

much less agree, that she would dismiss the case. Instead, she indicated that she would oppose

both motions. She explained that she felt that the Receiver's actions fell outside of his duties

of the Receiver and that, as a result, the Receiver was unprotected by this Court's injunction

barring her California Action. We explained the Receiver's position that she was wrong, had

no meritorious argument, and that the actions taken by her were unequivocally in contempt of

this Court's Order. As I certified in the Motion to Dismiss, we were unable to reach any

agreement with respect to the proposed motions. " (Corrigan Aff., Ex. A, at ¶ 6.)

On December 11, 2017, Carole confirmed to Corrigan that she received copies of the

Court orders regarding scheduling he provided to her. (Corrigan Aff., Ex. A, at ¶ 7.) In that

December 11 email, Carole does not mention any purported "understanding" on her part that

on December 8 she agreed to dismiss the lawsuit. (Corrigan Aff., Ex. A, at ¶ 7 and Ex. A-5.)

Indeed, on December 20 and 21, 2017, Corrigan and Carole exchanged more emails, relating

to hearing dates on the Motion to Change Venue and the Motion to Dismiss. (Corrigan Aff.,

Ex. A, at ¶ 9.) Nowhere in those emails does Carole mention that she had somehow already

"agreed" to dismiss the lawsuit, which would have rendered those hearings moot. (Corrigan

Aff., Ex. A, at ¶ 9 and Ex. A-7.)

On December 11, 2017, on behalf of herself and USPI, Carole filed her Response in

Opposition to the Receiver's Second Motion for an Order to Show Cause. ("Contemnors'

Second Response to Motion for Contempt," Dkt. 223.) Three days after she supposedly

"agreed" with Corrigan to dismiss the California lawsuit, she told this Court the opposite.

Echoing her statements to Messrs. Corrigan and Morris from their December 8 conference, in

Contemnors' Second Response to Motion for Contempt, Carole stated that the pending California lawsuit was completely proper, and that she and USPI "took appropriate actions to protect their property and assets, which did not involve any parties under the OATR based on information provide[d] to them." (Contemnors' Second Resp. to Mot. For Contempt, Dkt. 223, at 7.) She further argued that Contemnors "had a right to protect their assets against an overzealous, over reaching party that was interfering in their personal relationships in California." (Contemnors' Second Resp. to Mot. For Contempt, Dkt. 223, at 6.) Nowhere in that filing or otherwise did Carole suggest that she had already "agreed" to dismiss the California lawsuit. Her impassioned arguments in Contemnors' Second Response make no sense when set against her new story that, by that time, she had already agreed to drop the lawsuit.

On December 26, 2017, twelve days after this Court's hearing on the Motions for Contempt, Carole emailed Corrigan, claiming that she somehow "understood" that the parties would not move forward on the California litigation "until the Dallas court had ruled on the contempt action." (Corrigan Aff., Ex. A, at ¶ 10.) Carole suggested in that December 26 email—for the first time—that she would have "no issue" with Corrigan seeking a dismissal *without prejudice*, which would preserve her right to "re-file the state action if necessary." (Corrigan Aff., Ex. A, at ¶ 10 and Ex. A-8.) Again, in Contemnors' Response, Carole misrepresents her communications with Corrigan, where it is clear that no agreement to dismiss was ever reached. (*Compare* Contemnors' Resp. at 3 (stating that her December 26, 2017 email reiterated an "agreement to dismiss the case reached … three weeks earlier …") with Corrigan Aff., Ex. A, at ¶ 10 ("[C]ontrary to Carole's unsupported claim of an agreement

to dismiss the case, there absolutely was never an agreement to dismiss the case, or even a statement of terms that would have been acceptable to both Carole and the Receiver.").)

Carole's argument that she "agreed" with Corrigan to dismiss the California lawsuit is further belied by the fact that she did not need Corrigan's agreement to unilaterally dismiss it. Before November 28, 2017, Carole could have unilaterally dismissed the state-court action. CAL. CODE CIV. PROC. § 581(c) ("A plaintiff may dismiss his or her complaint, or any cause of action asserted in it, in its entirety, or as to any defendant or defendants, with or without prejudice prior to the actual commencement of trial."). Once in federal court, Carole could have dismissed the action under Rule 41. Court Order. *See* FED. R. CIV. PROC. 41(a)(1)(A)(i).

Carole's assertion that she relied on Corrigan to file an agreed order of dismissal because she was not admitted to the U.S. District Court for the Central District of California is frivolous. (*See* Contemnors' Response at p. 3.) As shown above, there is no evidence that Carole expressed to Corrigan, this Court, or the Receiver that she wanted the California case dismissed—either before or after Corrigan filed a Motion to Dismiss certifying that the parties conferred and could not reach agreement. (Corrigan Aff., Ex. A, at A-6, p.4.)  Because Carole took no action to voluntarily dismiss the California lawsuit, the California federal Court dismissed it ***involuntarily*** on February 13, 2018, by granting the Receiver's motion to dismiss for lack of subject matter jurisdiction. (Corrigan Aff., Ex. A, at ¶¶ 11; 14 and Ex. A-9.)

In light of the unequivocal evidence to the contrary, Carole's new claim of some "agreement" to dismiss the California litigation cannot be taken as an innocent mistake or a good-faith misreading of ambiguous communications. The notion that she agreed to dismiss the California lawsuit at any time in 2017 is pure baloney, aimed at excusing Carole from the consequences of her contempt.

III.    **Carole's Argument that Chris Faulkner is to Blame for the California Litigation Is Contrary to the Court's Order.**

Carole further argues that, because the Contempt Order found that Chris and Carole Faulkner jointly controlled USPI, the Receiver's Application is "punitive in nature" by "seek[ing] to hold only Ms. Faulkner and U.S. Property Investments liable for the total amount of the attorney fees and costs associated with the California litigation." (Contemnors' Resp., Dkt. 264, at 2.) The Receiver's apportionment of attorney's fees follows directly from the instructions of this Court, requiring "… that Carole pay, jointly and severally with USPI, the Receiver's reasonable and necessary attorney's fees and costs incurred by the lawsuit she filed in California state court." (Contempt Order, Dkt. 247, at VII(D).) If Carole wants her son share the burden for attorney's fees for the California litigation, she may seek reimbursement from him in a separate proceeding. The Court's Order is clear, and an opposition to the reasonableness of the amount of attorney's fees is an improper method to re-litigate which parties should be held in contempt for which conduct.

IV.    **Conclusion**

For the foregoing reasons, the Receiver respectfully requests that the Court grant its Application for Attorney's Fees.

Dated:   April 9, 2018                      Respectfully submitted,

                                            **DYKEMA COX SMITH**

                                            */s/ Jason M. Ross*
                                            Edwin J. Tomko
                                            State Bar No. 20117800
                                            etomko@dykema.com
                                            Jason M. Ross
                                            State Bar No. 24027819
                                            jross@dykema.com
                                            **DYKEMA COX SMITH**
                                            Comerica Bank Tower

1717 Main Street, Suite 4200
Dallas, Texas  75201
Telephone: (214) 462-6447
Facsimile: (214) 462-6401

**COUNSEL FOR TEMPORARY RECEIVER
THOMAS L. TAYLOR, III**

## <u>CERTIFICATE OF SERVICE</u>

I certify that on April 9, 2018, I filed the foregoing document through the Court's CM/ECF system, which delivered electronic notice to all counsel of record, and served all Respondents who had not appeared.

*/s/ Jason M. Ross*
Jason M. Ross