# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | CIVIL ACTION NO. 3:16-cv-01735-D |
| Plaintiff, | |
| vs. | |
| CHRISTOPHER A. FAULKNER, et al., | |
| Defendants. | |

## AFFIDAVIT OF BRIAN T. CORRIGAN

I, Brian T. Corrigan, am over twenty-one years of age and am competent to make this affidavit. I have never been convicted of a felony or misdemeanor involving moral turpitude. I have been a member in good standing with the California Bar Association for more than 27 years.

Having been placed under oath and sworn to tell the truth, I hereby do solemnly swear that the following facts are of my own personal knowledge and are true and correct.

1.      I was the attorney at Corrigan & Morris LLP primarily handling the representation of Receiver Thomas L. Taylor III ("Receiver") in defense of the action filed against him by Carole Faulkner ("Carole") and U. S. Property Investments (collectively, the "Contemnors") in the California State Court. A true and correct copy of that Complaint, filed November 14, 2017, is attached hereto at **Exhibit 1**. That Complaint commenced an action referred to herein as the "California Action."

2.      This Affidavit is filed in response to the Contemnors' "RESPONSE OF NON-PARTIES CAROLE FAULKNER AND U.S. PROPERTY INVESTMENTS TO RECEIVER'S SUPPLEMENT TO THE RECEIVER'S APPLICATION FOR ATTORNEY'S FEES AND COSTS AND BRIEF IN SUPPORT THEREOF" (the "Contemnors' Response").  Specifically, the Contemnors' Response falsely claims that Carole, on behalf of the Contemnors, reached an agreement by telephone with me, as counsel for the Receiver, to dismiss the Contemnors' California Action on December 8, 2017, and that she reiterated that agreement via email on December 26, 2017.  In short, both statements are false and misleading. No agreement to dismiss the case without prejudice, or otherwise, was ever reached between Carole and me.

3.      Contemnors' Complaint in the California Action was filed by Carole on November 14, 2017 in the California Superior Court.

4.      On November 28, 2017, my firm filed on behalf of the Receiver a Notice of Removal of that state court action to the United States District Court for the Central District of California. A true and correct copy of that Removal Notice is attached at **Exhibit 2**.

5.      My firm, on behalf of the Receiver, promptly moved the Court to change venue of the California action to this Court, by motion filed December 5, 2017.  A true and correct copy of the venue motion is attached hereto at **Exhibit 3**.

6.      My firm, on behalf of the Receiver, also moved to dismiss the California Action on December 12, 2017.  Before filing the motion to dismiss, pursuant to U.S. District Court, Central District of California Local Rule 7-3, attorneys from my firm, including myself, attempted to meet and confer with Carole regarding the motion to dismiss and the motion to change venue. We did so on December 8, 2017.  First, my partner, Stanley C. Morris, sent an email to Carole seeking to discuss the motions with her.  A true and correct copy of that email is attached hereto at **Exhibit**

**4**.  Later the same day, Mr. Morris and I reached Carole by telephone and engaged in substantive meet and confer conversations regarding both motions.  At that time, Carole did not propose, much less agree, that she would dismiss the case.  Instead, she indicated that she would oppose both motions. She explained that she felt that the Receiver's actions fell outside of his duties of the Receiver and that, as a result, the Receiver was unprotected by this Court's injunction barring her California Action. We explained the Receiver's position that she was wrong, had no meritorious argument, and that the actions taken by her were unequivocally in contempt of this Court's Order. As I certified in the Motion to Dismiss, we were unable to reach any agreement with respect to the proposed motions.

7.     On December 11, 2017, Carole confirmed receipt of Orders of the California Federal Court regarding scheduling.  Notably, in her email confirming such Orders, she did not mention her purported understanding that the parties had agreed to dismiss the action.  A true and correct copy of that email is attached hereto at **Exhibit 5**.

8.     On or around December 12, 2017, I caused to be filed the Receiver's motion to dismiss. A true and correct copy of the motion to dismiss is attached hereto at **Exhibit 6.**

9.     On December 20 and 21, 2017, Ms. Faulkner and I exchanged emails discussing the hearing dates on the motions to dismiss and motion to change venue.  A true and correct copy of that email chain is attached hereto at **Exhibit 7**. Notably, in connection with discussing these hearing dates, Carole made no mention of her purported misunderstanding that the parties had reached a dismissal agreement, much less the terms of such dismissal agreement.  Indeed, there was no dismissal agreement.

10.    On December 26, 2017, Carole did make her only offer to dismiss her case without prejudice, promising to re-file it if she prevailed before this Court. A true and correct copy of that

email is attached hereto at **Exhibit 8**.  In that email, she admitted that she "misunderstood our last conversation."  The Receiver, having already spent substantial sums removing the frivolous state court action to the federal district court, and having already researched, prepared and filed extensive motions to dismiss that case and to change venue, would not agree to Carole's self-serving proposal that would allow her to file another identical frivolous action in the same improper venues in California again at some later date. Dismissal without prejudice simply made no economic sense and was in conflict with the Receiver's then-pending request before this Court that Carole and USPI be held in contempt for filing the California Action. In any event, contrary to Carole's unsupported claim of an agreement to dismiss the case, there absolutely was never an agreement to dismiss the case, or even a statement of terms that would have been acceptable to both Carole and the Receiver.

11.     Carole easily could have dismissed the case without prejudice voluntarily without the Receiver's consent at any time before the District Court dismissed the case *involuntarily*.  Carole could have dismissed the California Action by a simple one-page, unilateral filing with the Clerk's office, which could have been done with or without the Receiver's consent.

12.     Accordingly, Carole's purported misunderstanding of our December 8, 2017 conversation makes no sense.  She did not make such a proposal, and logically would not have done so because my agreement to dismissal was unnecessary.  Moreover, the Receiver would not, and did not, agree to a dismissal in a form that would have allowed the Contemnors to re-file the same bad-faith claims in the same improper courts to consider the matter, as proposed at **Exhibit 8**. After spending substantial sums of money bringing the motions to dismiss and change venue, the Receiver understandably would not be agreeable to starting the process all over again.  The

Receiver would not have saved significant money doing so and, more likely, would have expended substantially greater sums defending a second action on the same issues.

13. Substantially all of the fees requested in Receiver's Application for Attorney's Fees were incurred before December 26, 2017, when Carole first offered to dismiss and then, on certain conditions, re-file her frivolous case in the wrong venue (which offer was not accepted).

14. The case was dismissed for lack of jurisdiction on February 13, 2018. A true and correct copy of the dismissal order is attached hereto at **Exhibit 9.**

Dated: April 9, 2018

Brian T. Corrigan

SWORN AND SUBSCRIBED to before me, the undersigned notary public, on this 9th day of April 2018.

[stamp]

Notary

ALBERT LOPEZ
Notary Public – California
Los Angeles County
Commission # 2217141
My Comm. Expires Oct 7, 2021

# EXHIBIT 1

Carole A. Faulkner
Attorney for Plaintiffs
CAB #229559
10866 Washington Blvd Ste 448
Culver City, CA 90232
Telephone: 817-879-1377
Facsimile: 469-675-6404

CONFORMED COPY
ORIGINAL FILED
Superior Court of California
County of Los Angeles

NOV 14 2017

Sherri R. Carter, Executive Officer/Clerk
By: Marcos Mariscal Deputy

## IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA
## IN AND FOR THE COUNTY OF LOS ANGELES

CAROLE ANN FAULKNER
and U.S. PROPERTY INVESTMENTS, INC.
    Plaintiffs,

Vs.
THOMAS L. TAYLOR III
Defendant

CASE NO. **SC128374**

**COMPLAINT FOR DAMAGES
AND INJUNCTION**

**INTENTIONAL
INTERFERENCE WITH
CONTRACT, INTENTIONAL
INTERFERENCE WITH
PROSPECTIVE ECONOMIC
ADVANTAGE, NEGLIGENT
INTERFERENCE WITH
BUSINESS RELATIONSHIPS,
INTENTIONAL INFLICTION
OF EMOTIONAL DISTRESS,
INVASION OF PRIVACY, AND
DEFAMATION**

    Plaintiffs Carole Ann Faulkner and U.S. Property Investments, Inc. come now before this

Court and alleges:

### PARTIES

1.    Plaintiff, Carole Ann Faulkner is an individual.  Plaintiff, Faulkner resides and

does business in California. Plaintiff's residence and businesses are in Los Angeles County, California 90291. Plaintiff is a licensed attorney in California and practices in Los Angeles County, California.

2.      Plaintiff, U.S. Property Investments, Inc. is a Wyoming corporation licensed to do business in California.

3.      Defendant, Thomas L. Taylor III ("Taylor") is an attorney in Texas, with offices at 245 West 18th Street Houston, TX 77008. Defendant and his agents have come into Los Angeles County, California through the telephone, wires and mail systems to violate the rights of the Plaintiffs as set forth herein. Through such actions and conduct defendant knowingly subjected himself to the jurisdiction of the California judiciary.

## JURISDICTION AND VENUE

4.      Venue and Jurisdiction is proper in the Western Division of Los Angeles County, California. The causes of action all arose within the Western Division of Los Angeles, specifically under zip codes of 90004 and 90212.

## APPLICABLE FACTS

5.      Beginning in October 2017, defendant and his agents maliciously and intentionally interfered with various contracts which the plaintiffs were parties and were currently, and would have in the future received benefits from the business relationships and the contracts. The defendant intentionally interfered with prospective economic advantage of the Plaintiffs, or in the alternative, defendant negligent interfered with the business relationships of the Plaintiffs, which all arose in Los Angeles County, California.

6.      Plaintiffs Carole Faulkner and U.S. Property Investments opened a checking

account at the financial institution of Bank of the West. The checking account was in the name of U.S. Property Investments, Inc. as the owner of the account. The only authorized signer on this checking account was Carole Ann Faulkner. Ms. Faulkner is the sole shareholder of U.S. Property Investments and the owner personally of a portion of the funds contained within that Bank of the West account. Ms. Faulkner conducted all business with Bank of the West at their location at 9401 Wilshire Blvd, Beverly Hills, CA 90212. Ms. Faulkner had a relationship and an agreement with Bank of the West to allow her to deposit monies into the account and withdraw as needed to conduct her business without interruption of her business dealings.    This relationship with Bank of the West was imperative to the success of the corporation.

7.    Defendant and his agents maliciously and intentionally interfered with the contractual rights, relationship, and the prospective economic advantage the Plaintiffs had with Bank of the West. Defendant had knowledge of the relationships between Plaintiff and the third parties. Defendant and his agents deliberately provided fabricated, deceitful, fictitious, and inflaming information relating to the plaintiffs to the Bank of the West. Defendant and his agents came into Los Angeles utilizing the telephone, mail, and facsimile and other methods of communicating of these deceitful and damaging statements to intentionally interfere with the business relationship the plaintiffs benefited from with Bank of the West. Such publication of these deceitful, fabricated, and malicious communications has damaged the relationship and further has damaged the reputation of plaintiff, Carole Faulkner.  The plaintiffs were parties to the contract with Bank of the West, the plaintiffs were currently and would have in the future received benefits from this contract and relationship. The defendant intentionally interfered with the contractual rights, relationship, and the prospective economic advantage of the Plaintiffs. Such acts were with malice, viciousness, willfulness, callousness, contemptibility and

wantonness for the interest of the Plaintiff. If the Court does not intervene and if Defendant is not restrained from interfering with the contractual rights, relationship, and the prospective economic advantage of the Plaintiffs. Plaintiffs will suffer immediate and irreparable harm whereby there is no adequate remedy at law.

8.      The defendant and his agents knowingly and intentionally intruded into the private affairs of the plaintiff, Carole Faulkner when they knowingly intruded into her relationship with the Bank of the West. The defendant knowing targeted Ms. Faulkner to obtain information and the funds contained within the accounts which were owned by the plaintiffs. There was no evidence to indicate that there were any additional owners or parties involved in this relationship but Ms. Faulkner and the other plaintiff. In his intrusion into the affairs of the plaintiff the defendant obtained personally identifiable information belonging to the plaintiff, Carole Faulkner. Such personally identifiable information is now in the possession of the defendant. Defendant intentionally sought such information when he intruded into her private affairs.

9.      The defendant knew or should have known that such malicious conduct would cause emotional distress to the plaintiff, Carole Faulkner. The malicious and intentional actions of the defendant did cause extreme emotional distress to the plaintiff, Carole Faulkner. The defendants intentional acts were unreasonable or with reckless disregard as to the plaintiff. Plaintiff, Carole Faulkner suffered extreme distress as a result of the defendant's actions and continues to suffer distress as to the defendant's continuing actions.

10.      The Plaintiffs had a business relationship with Rack Alley corporation located at 11301 W. Olympic Blvd, Ste 597, Los Angeles, CA 90064.   Rack Alley and plaintiff, U.S. Property Investments, executed a contract in Los Angeles, California during September 2017 relating to services provided to the corporation by U.S. Property Investments.  The plaintiff, U.S.

Property Investments performed their obligations under this agreement. The relationship with Rack Alley and their officers were imperative to the success of U.S. Property Investments and Carole Faulkner. Defendant and his agents maliciously and intentionally interfered with the contractual rights, relationship, and the prospective economic advantage the plaintiffs had with Rack Alley. Defendant and his agents deliberately provided fabricated, deceitful, fictitious, and inflaming information relating to the plaintiffs to Rack Alley. Plaintiff will show that Defendant's motive was solely to injure and deprive Plaintiff of the benefits of its business and to undermine Plaintiff's business opportunities. Such acts were with malice, viciousness, willfulness, callousness, contemptibility and wantonness. As a result of the foregoing false, malicious, and vicious acts taken by community, in addition to financial injury.

11.     Defendant and his agents maliciously and intentionally interfered with the contractual rights, relationship, and the prospective economic advantage the Plaintiffs had with Rack Alley. Defendant and his agents deliberately provided fabricated, deceitful, fictitious, and inflaming information relating to the plaintiffs to Rack Alley. Defendant and his agents came into Los Angeles utilizing the telephone, mail, and facsimile and other methods of communicating of these deceitful and damaging statements to intentionally interfere with the contractual rights, relationship, and the prospective economic advantage the plaintiffs benefited from with Rack Alley. Such publication of these deceitful, fabricated, and malicious communications has damaged the relationship and further has damaged the reputation of plaintiff, Carole Faulkner. The plaintiffs were parties to the contract with Rack Alley, the plaintiffs were currently and would have in the future received benefits from this contract and relationship. The defendant intentionally interfered with the contractual rights, relationship, and the prospective economic advantage of the Plaintiffs. Such acts were with malice, viciousness, willfulness, callousness,

contemptibility and wantonness for the interest of the Plaintiff. If the Court does not intervene and if Defendant is not restrained from obtaining or interfering with the contractual rights, relationship, and the prospective economic advantage of the Plaintiffs. Plaintiffs will suffer immediate and irreparable harm whereby there is no adequate remedy at law.

12.     Defendant and his agents came into Los Angeles utilizing the telephone, mail, and facsimile and other methods of communicating of these deceitful and damaging statements to intentionally interfere with the business relationship the plaintiffs benefited from with Rack Alley. Such publication of these deceitful, fabricated, and malicious communications has damaged the relationship and further has damaged the reputation of plaintiffs.  The plaintiffs were parties to the contract with Rack Alley, the plaintiffs were currently and would have in the future received benefits from this contract and relationship. The defendant intentionally interfered with the contractual rights, relationship, and the prospective economic advantage of the Plaintiffs. Plaintiffs will show that Defendant had knowledge of the relations between Plaintiffs and third parties. Moreover, Plaintiffs will show that Defendant in tampering with the Plaintiffs relationship caused Plaintiffs business relations to suffer and become impaired. Defendant maliciously, intentionally, and tortuously intervened with the existing business relationships between the Plaintiffs and their vendors, associates and third parties.

## FIRST CAUSE OF ACTION
### Intentional Interference with Contract,
### Intentional Interference with Prospective Economic Advantage with Bank of the West

13.     Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 12 of this Complaint and each and every part thereof with the same force and effect as though set out at length herein.

14.     Defendant knew of Plaintiffs existing contracts and business relationships with Bank of the West.

15.     Despite knowing of these contracts and existing business relationships, defendant, Taylor intentionally interfered with those contracts and business relationships by deliberately providing fabricated, deceitful, fictitious, and inflaming information relating to the plaintiffs to Bank of the West, thereby causing permanent harm to the contracts and relationships that were put in place by Plaintiffs. In the alternative, if such actions were not intentional Taylor was negligent in such interference in the business relationship. Plaintiffs will show that Defendant had knowledge of the relations between Plaintiffs and third parties. Moreover, Plaintiff will show that Defendant in tampering with the Plaintiffs relationship with false information caused Plaintiffs business relations to suffer and become impaired. Defendant maliciously, intentionally, and tortuously intervened with the existing business relationships between the Plaintiffs and their vendors, associates and third parties.

16.     As a direct result of defendant's actions and omissions, Plaintiffs were damaged in an amount according to proof due to the loss of usage and control of monies under the contract with Bank of the West. In addition to further amounts due to defendant's damage to and interference with Plaintiffs' contractual rights, relationship, and the prospective economic advantage the plaintiffs had with the Bank of the West. As a direct and foreseeable consequence of defendant's interference, Plaintiffs have been permanently damaged in an amount according to proof.

17.     Defendant's actions were undertaken with fraud, malice or oppression, or with a conscious disregard of the rights of Plaintiffs, and, therefore, Plaintiffs are entitled to an award of exemplary and punitive damages against defendant, Taylor in an amount according to proof.

COMPLAINT FOR DAMAGES AND INJUNCTION                                PAGE 7

Such acts were with malice, viciousness, willfulness, callousness, contemptibility and wantonness for the interest of the Plaintiffs. If the Court does not intervene and if Defendant his agents, servants, and employees are not restrained and enjoined from, directly or indirectly, contacting, interfering in any business relationship or potential business opportunity of the Plaintiffs, Plaintiffs will suffer immediate and irreparable harm whereby there is no adequate remedy at law.

**WHEREFORE**, Plaintiffs prays for judgment against defendant, Taylor as more fully set forth below.

1.    General damages in a sum according to proof;

2.    Special damages including consequential damages in a sum according to proof;

3.    Punitive damages in an amount according to proof;

4.    For interest provided by law including, but not limited to, Civil Code §3291;

5.    For attorney's fees in an amount to be shown according to proof;

6.    Injunction preventing defendant's future behavior as outlined above against the Plaintiffs.

7.    Costs of suit and for each other and further relief as the Court deems just and proper.

## SECOND CAUSE OF ACTION
### Intentional Interference with Contract,
### Intentional Interference with Prospective Economic Advantage with Rack Alley

18.    Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 12 of this Complaint and each and every part thereof with the same force and effect as though set out at length herein.

19.    Defendant, Taylor knew of Plaintiffs' ongoing business relationships with Rack

Alley.  Despite knowing of these contracts and existing business relationships, defendant, Taylor intentionally interfered with those contracts and business relationships by deliberately providing fabricated, deceitful, fictitious, and inflaming information relating to the plaintiffs to Rack Alley, thereby causing permanent harm to the contracts and relationships that were put in place by Plaintiffs.  In the alternative, if such actions were not intentional Taylor was negligent in such interference in the business relationship.

20.     Through the defendant's interference Rack Alley causing the breach of their contract with Plaintiffs. Defendant, Taylor intentionally interfered with Plaintiffs' prospective economic advantage from ongoing relationships with Rack Alley.  As a direct result of defendant's actions and omissions, Plaintiffs has been damaged in an amount according to proof.

21.     Defendant's actions were undertaken with fraud, malice or oppression, or with a conscious disregard of the rights of Plaintiffs, and, therefore, Plaintiffs are entitled to an award of exemplary and punitive damages against defendant, Taylor in an amount according to proof. Such acts were with malice, viciousness, willfulness, callousness, contemptibility and wantonness for the interest of the Plaintiffs. If the Court does not intervene and if Defendant his agents, servants, and employees are not restrained and enjoined from, directly or indirectly, contacting, interfering in any business relationship or potential business opportunity of the Plaintiffs, Plaintiffs will suffer immediate and irreparable harm whereby there is no adequate remedy at law.

**WHEREFORE**, Plaintiffs prays for judgment against defendant, Taylor as more fully set forth below.

1.     General damages in a sum according to proof;

2.     Special damages including consequential damages in a sum according to proof;

COMPLAINT FOR DAMAGES AND INJUNCTION                    PAGE 9

3.    Punitive damages in a sum according to proof;

4.    For interest provided by law including, but not limited to, Civil Code §3291;

5.    For attorney's fees in an amount to be shown according to proof;

6.    Injunction preventing future behavior by the defendant as outlined above against the Plaintiffs.

7.    Costs of suit and for each other and further relief as the Court deems just and proper.

### THIRD CAUSE OF ACTION

**Negligent Interference with Business Relationships with Rack Alley**

22.    Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 12 of this Complaint and each and every part thereof with the same force and effect as though set out at length herein.

23.    Rack Alley was fulfilling their obligations of payment to the plaintiff until the defendant directly interfered with the relationship. By Rack Alley's failing to properly perform their obligations under the agreement as a direct result of defendants actions and therefore by causing Rack Alley's breaching of the contract with Plaintiffs, defendant, Taylor negligently interfered with Plaintiffs' existing business relationships with Rack Alley.

24.    As a direct result of defendant's negligent interference into the business relationship with Rack Alley, Plaintiffs have been damaged in an amount according to proof. Such acts were with malice, viciousness, willfulness, callousness, contemptibility and wantonness for the interest of the Plaintiffs. If the Court does not intervene and if Defendant his agents, servants, and employees are not restrained and enjoined from, directly or indirectly, contacting, interfering in any business relationship or potential business opportunity of the

Plaintiffs, Plaintiffs will suffer immediate and irreparable harm whereby there is no adequate remedy at law.

WHEREFORE, Plaintiffs prays for judgment against defendant, Taylor as more fully set forth below.

1.      General damages in a sum according to proof excess of $200,000.00;

2.      Special damages including consequential damages in a sum according to proof;

3.      Punitive damages in a sum according to proof;

4.      For interest provided by law including, but not limited to, Civil Code §3291;

5.      For attorney's fees in an amount to be shown according to proof;

6.      Injunction preventing future behavior by the defendant as outlined above against the Plaintiffs.

7.      Costs of suit and for each other and further relief as the Court deems just and proper.

## FOURTH CAUSE OF ACTION

### Negligent Interference with Business Relationships with Bank of the West

25.      Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 12 of this Complaint and each and every part thereof with the same force and effect as though set out at length herein.

26.      Rack Alley was fulfilling their obligations to the plaintiffs until the defendant directly interfered with the relationship. By Bank of the West failing to properly perform their obligations under the account agreement as a result of defendant's actions and by causing Bank of the West to breach the account contract with Plaintiffs, defendant, Taylor negligently interfered with Plaintiffs' existing business relationships with Bank of the West.

27.    As a direct result of defendant's negligent interference into the business relationship with Bank of the West, Plaintiffs have been damaged in an amount according to proof. Such acts were with malice, viciousness, willfulness, callousness, contemptibility and wantonness for the interest of the Plaintiffs. If the Court does not intervene and if Defendant his agents, servants, and employees are not restrained and enjoined from, directly or indirectly, contacting, interfering in any business relationship or potential business opportunity of the Plaintiffs, Plaintiffs will suffer immediate and irreparable harm whereby there is no adequate remedy at law.

**WHEREFORE**, Plaintiffs prays for judgment against defendant, Taylor as follows:

**1.**    General damages in a sum according to proof;

2.    Special damages including consequential damages in a sum according to proof;

3.    Punitive damages in an amount according to proof;

4.    For interest provided by law including, but not limited to, Civil Code §3291;

5.    For attorney's fees in an amount to be shown according to proof;

6.    Injunction preventing future behavior by the defendant as outlined above against the Plaintiffs.

7.    Costs of suit and for each other and further relief as the Court deems just and proper.

## FIFTH CAUSE OF ACTION
### Defamation

28.    Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 12 of this Complaint and each and every part thereof with the same force and effect as though set out at length herein.

29.    Plaintiff alleges, upon information and belief, Defendant, made false and

defamatory statements regarding Plaintiffs. The statements were made to Bank of the West and Rack Alley.

30.    On and during numerous occasions during October defendant made false and defamatory statements relating to the plaintiff, Carole Faulkner. These false and defamatory statements were made with the intent to defame and harm Ms. Faulkner and her reputation.

31.    Plaintiff, Carole Faulkner is informed and believes and thereon alleges, that upon those false and defamatory statements made by the defendant, Bank of the West and Rack Alley took certain unreasonable actions against the plaintiff, Carole Faulkner. Such actions has damaged said plaintiff. Such acts were with malice, viciousness, willfulness, callousness, contemptibility and wantonness for the interest of the Plaintiff, Faulkner. If the Court does not intervene and if Defendant his agents, servants, and employees are not restrained and enjoined from, directly or indirectly, publishing false information or the release of any personally identifiable information of the Plaintiff, Plaintiff will suffer immediate and irreparable harm whereby there is no adequate remedy at law.

Wherefore, Plaintiff, Carole Faulkner prays for judgment against the Defendant, as follows:

1.    General damages in a sum according to proof;

2.    Special damages including consequential damages in a sum according to proof;

3.    Punitive damages in an amount according to proof;

4.    For interest provided by law including, but not limited to, Civil Code §3291;

5.    For attorney's fees in an amount to be shown according to proof;

6.    Injunction preventing future behavior by the defendant as outlined above against the Plaintiff, Faulkner.

7.    Costs of suit and for each other and further relief as the Court deems just and proper.

## SIXTH CAUSE OF ACTION

### Intentional Infliction of Emotional Distress

32.    Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 12 and each and every part thereof with the same force and effect as though set out at length herein.

33    Plaintiffs is informed and believes that the actions of Defendant, Taylor in knowingly making false allegations without investigation, as a pre-text for Defendant's attempted theft of Plaintiffs financial accounts were intentional, extreme, outrageous and done with the intent to cause emotional distress or with reckless disregard of the probability of causing Plaintiff, Carole Faulkner's  emotional distress.

34.    The conduct of the defendant, Taylor includes, but is not limited to, the following: Defendant knowingly and wrongfully failed to investigate the "ownership" in any manner. Instead, Defendant published that Carole Faulkner was involved in government actions and government litigation relating to fraud, securities violations and numerous other activities occurring in Dallas, Texas which she is not a party, was never a party, nor involved in any of these actions or allegations. Defendant is abundantly aware of the specific parties of the litigation in Dallas including the persons and businesses involved in that litigation, which does not include either of the plaintiffs in that action. The knowledge that this conduct and false information provided by the defendant would result in damage to the plaintiff, Carole Faulkner and through association to U.S. Property Investments was obvious. Such interference caused extreme damage to the plaintiffs in the denial of usage of funds owned by the Plaintiffs, desperately needed to continue their business and other benefits to the Plaintiffs, as well as consequential economic damages.  Defendant, Taylor continued his outrageous conduct after defaming Plaintiff, Carole

Faulkner's good name by continuing to contact Bank of the West and demanding control of the financial account and monies owned and controlled exclusively by Carole Faulkner.

35.     As a direct and proximate result of the Defendant's conduct, Plaintiff, Carole Faulkner has been subjected to severe emotional distress and will continue to suffer severe and permanent humiliation, mental pain and anguish, and will continue to live in a constant state of emotional tension and distress.

36.     As a direct and proximate result of the Defendant's conduct, Plaintiff has suffered and continues to suffer substantial losses in income, earnings, and benefits and has been damaged in her capacity to grow her business, earn a salary from such business, and has lost and will continue to lose benefits, and such damage to Plaintiff in an amount to be shown according to proof.

37.     The conduct of Defendant in causing Plaintiff's relationships to be terminated without good, just or legitimate cause subjected Plaintiffs to cruel and unjust hardship in conscious disregard to Plaintiff's rights. As it was anticipated by Defendant that Plaintiffs would be unable to find comparable funds in the foreseeable future, Plaintiffs is informed and believes and thereon alleges, that the interference and publication of false and damaging information by Defendant, was done with an intent to cause injury to Plaintiff. As a consequence of the aforesaid oppressive, malicious and despicable conduct, Plaintiff is entitled to an award of punitive damages in a sum to be shown according to proof. In addition, it is Plaintiff, Faulkner's belief that such acts were with malice, viciousness, willfulness, callousness, contemptibility and wantonness for the interest of the Plaintiff, Faulkner. If the Court does not intervene and if Defendant his agents, servants, and employees are not restrained and enjoined from, directly or indirectly, publishing false information or the release of any personally identifiable information

of the Plaintiff, Plaintiff will suffer immediate and irreparable harm whereby there is no adequate remedy at law.

Wherefore, Plaintiff, Carole Faulkner  prays for judgment against the Defendant, as follows:

1.    General damages in a sum according to proof;

2.    Special damages including consequential damages in a sum according to proof;

3.    Punitive damages in an amount according to proof;

4.    For interest provided by law including, but not limited to, Civil Code §3291;

5.    For attorney's fees in an amount to be shown according to proof;

6.    Injunction preventing future behavior by the defendant as outlined above against the Plaintiff.

7.    Costs of suit and for each other and further relief as the Court deems just and proper.

### SEVENTH CAUSE OF ACTION

#### Invasion of Privacy

38.    Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 12 and each and every part thereof with the same force and effect as though set out at length herein.

39.    Plaintiffs is informed and believes that the actions of Defendant, Taylor in knowingly demanding personal identifiable information through making false allegations    to Bank of the West were intentional, extreme, outrageous and done with the intent to cause harm or with reckless disregard of the probability of causing Plaintiff, Carole Faulkner's  harm through the access and potential distribution of her personal identifiable information in the possession of defendant and his agents.   Such acts were with malice, viciousness, willfulness, callousness, contemptibility and wantonness for the interest of the Plaintiff.

40.     The conduct of the defendant, Taylor includes, but is not limited to, the following: Defendant knowingly and wrongfully failed to investigate the "ownership" in any manner, defendant Taylor invaded the privacy of Plaintiff, Faulkner.    Instead, Defendant demanded all documents a financial institution would have in their possession for Carole Faulkner or Carole Ann Faulkner with her Texas address, California address, her telephone number and personal email account. The defendant was able to obtain her social security number, date of birth and other personally identifiable information.  The knowledge that this conduct and the publication of false information provided by the defendant to the Bank  of the West would result in damage to the plaintiff, Carole Faulkner was obvious. Such obtaining of her personally identifiable information caused extreme damage to the plaintiff as well as consequential economic damages. Defendant, Taylor continued his outrageous conduct after obtaining of her personally identifiable information by continuing to contact Bank of the West and demanding control of additional financial information owned and controlled exclusively by Carole Faulkner. Such acts were with malice, viciousness, willfulness, callousness, contemptibility and wantonness for the interest of the Plaintiff. If the Court does not intervene and if Defendant is not restrained from obtaining or publishing the personal information of the Plaintiff. Plaintiff will suffer immediate and irreparable harm whereby there is no adequate remedy at law.

41.     As a direct and proximate result of the Defendant's conduct, Plaintiff, Carole Faulkner has been subjected to severe potential danger with the release of her personally identifiable information and will continue to suffer severe and permanent emotional tension and distress from this potential danger which cannot be compensated adequately from only monetary damages.

42.     As a direct and proximate result of the Defendant's conduct, Plaintiff will

continue to lose benefits, security and privacy, and such other damages to Plaintiff in an amount to be shown according to proof. Plaintiff will suffer immediate and irreparable harm whereby there is no adequate remedy at law and an injunction should be granted.

43.     The conduct of Defendant in obtaining of her personally identifiable information without good, just or legitimate cause subjected Plaintiffs to cruel and unjust hardship in conscious disregard to Plaintiff's rights.  As it was anticipated by Defendant that obtaining of her personally identifiable information and potential publication of this information by Defendant, was done with an intent to cause injury to Plaintiff. As a consequence of the aforesaid oppressive, malicious and despicable conduct, Plaintiff is entitled to an award of punitive damages in a sum to be shown according to proof.

Wherefore, Plaintiff, Carole Faulkner prays for judgment against the Defendant, as follows:

1.     General damages in a sum according to proof;

2.     Special damages including consequential damages in a sum according to proof;

3.     Punitive damages in an amount according to proof;

4.     For interest provided by law including, but not limited to, Civil Code §3291;

5.     For attorney's fees in an amount to be shown according to proof;

6.     Injunction preventing future behavior by the defendant as outlined above against the Plaintiff.

7.     Costs of suit and for each other and further relief as the Court deems just and proper.


## EIGHTH  CAUSE OF ACTION

### Injunctive Relief Temporary and Permanent

44.     Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 12

and each and every part thereof with the same force and effect as though set out at length herein.

45.      Such acts set forth above committed by the defendant were with malice, viciousness, willfulness, callousness, contemptibility and wantonness for the interest of the Plaintiffs.

46.      If the Court does not intervene and an injunction be Ordered on in this cause, enjoining and restraining defendant, his agents, servants, and employees from, directly or indirectly, from further interfering any business relationship or potential business opportunity, with the current and future contractual rights, relationship, and the prospective economic advantage of the Plaintiffs.

47.      If the Court does not intervene and an injunction be Ordered on in this cause, enjoining and  restraining defendant, his agents, servants, and employees from, directly or indirectly from publishing any personal or identifiable information relating or referring to Plaintiff Faulkner in any manner Plaintiff, Carole Faulkner will suffer immediate and irreparable harm whereby there is no adequate remedy at law.

Wherefore, Plaintiffs, Carole Faulkner and U.S. Property Investments, Inc. prays for judgment against the Defendant, as follows:

1.      Injunction preventing future behavior as outlined above against the Plaintiffs.

2.      Attorney's fees in an amount to be shown according to proof;

3.      Costs of suit and for each other and further relief as the Court deems just and proper

DATED: November 3, 2017

_____

Attorney for Plaintiffs

# EXHIBIT 2

**CORRIGAN & MORRIS, LLP**
Brian T. Corrigan  (Cal Bar No. 143188)
bcorrigan@cormorllp.com
Stanley C. Morris  (Cal. Bar No. 183620)
scm@cormorllp.com
12300 Wilshire Boulevard, Suite 210
Los Angeles, California 90025
Telephone: (310) 394-2800
Facsimile: (310) 394-2825

*Attorneys for Defendant*
    THOMAS L TAYLOR III

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CAROLE ANN FAULKNER and U.S. PROPERTY INVESTMENTS, INC., | Case No.: _____ |
| | (Los Angeles Superior Court Case No.: SC128374) |
| Plaintiffs, | |
| v. | **NOTICE OF REMOVAL OF CIVIL ACTION UNDER 28 U.S.C. §§ 1442 AND 1441** |
| THOMAS L. TAYLOR III, | |
| Defendant. | |

**CORRIGAN & MORRIS LLP**
**12300 Wilshire Boulevard, Suite 210**
**Los Angeles, CA 90025**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

CORRIGAN & MORRIS LLP
12300 Wilshire Boulevard, Suite 210
Los Angeles, CA 90025

**TO THE CLERK OF THE ABOVE-ENTITLED COURT, PLAINTIFF, AND PLAINTIFF'S COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that Defendant Thomas L. Taylor III ("Receiver"), Court-appointed receiver for Christopher A. Faulkner ("Faulkner"), Breitling Oil & Gas Company ("BOG"), and Breitling Energy Company ("BECC") (collectively the "Receivership Defendants") in the action styled *Securities and Exchange Commission v. Christopher A. Faulkner, Breitling Energy Corporation, Jeremy S. Wagers, Judson F. ("Rick") Hoover, Parker R. Hallam, Joseph Simo, Dustin Michael Miller Rodriguez, Beth C. Handkins, Gilbert Steedley, Breitling Oil & Gas Corporation, Crude Energy, LLC, Patriot Energy, Inc., Defendants, and Tamra M. Freedman and Jetmir Ahmedi, Relief Defendants,* Case No.: 3:16-cv-01735-D (N.D. Tex. 2016) (the "Enforcement Action") files this notice of removal under 28 U.S.C. §1442 and, alternatively, §1441, and hereby removes the state court litigation captioned *Carole Ann Faulkner and U.S. Property Investments, Inc. v. Thomas L. Taylor III*, Case No. SC-128374, In the Superior Court of the State of California in and for the County of Los Angeles (the "State Court Action"), to the United States District Court for the Central District of California. The initial pleading in the State Court Action is attached hereto as Exhibit A (the "State Court Complaint"). To date, no proceedings have been held in that case. Upon removal, Receiver will be filing a motion to transfer venue to the United States District Court for the Northern District of Texas, where the Enforcement Action in which the Receiver was appointed is pending.

## I. INTRODUCTION

The U.S. Securities and Exchange Commission ("SEC") commenced the Enforcement Action on June 24, 2016. Dkt. 1 therein. The SEC alleges that Faulkner, through entities he controlled and with the aid of others, fraudulently

raised over $80 million from public investors, and misappropriated at least $30 million of those funds over a five-year time period. Dkt. 22 therein, First Amended Complaint, at 2. On August 14, 2017 the Court entered, on an ex parte basis, an Order Appointing Temporary Receiver, appointing Mr. Taylor as Temporary Receiver over "all oil-and-gas related assets – in any form or of any kind whatsoever – owned, controlled, possessed, or managed, directly or indirectly, by" the Receivership Defendants. Exhibit B, Order Appointing Temporary Receiver, at 1-2. On September 25, 2017 the Court entered an Order expanding the scope of the Receivership to include "all assets—in any form or of any kind whatsoever—owned, controlled, managed, or possessed by …, directly or indirectly," the Receivership Defendants. Exhibit C, Order Appointing Receiver, at 1. Through the Order Appointing Receiver the Court in the Enforcement Action stayed, inter alia, "[a]ll civil legal proceedings of any nature … involving: (a) the Receiver, in his capacity as Receiver; [and] (b) any Receivership Assets, wherever located…." Exh. C ¶32. "The parties to any and all [such proceedings] are enjoined from commencing or continuing any such legal proceeding, or from taking any action, in connection with any such proceeding, including, but not limited to, the issuance or employment of process." *Id*. ¶33. All such proceedings "are stayed in their entirety, and all courts having any jurisdiction thereof are enjoined from taking or permitting any action until further order of this court." *Id*. ¶34.

The facts underlying the allegations in Carole and USPI's State Court Complaint are detailed in a Motion filed by the Receiver seeking an Order to Show Cause re: Contempt, Exhibit D, currently pending before the Enforcement Action Court, and set for evidentiary hearing on December 14, 2017. Exhibit E, Order Resetting Hearing. In summary, days prior to -- and in anticipation of -- the September 25th expansion of the scope of the Receivership to include all of Faulkner's assets, he and his mother Carole engaged in a brazen plan and scheme

CORRIGAN & MORRIS LLP
12300 Wilshire Boulevard, Suite 210
Los Angeles, CA 90025

to impede the Receiver from carrying out his duties and obligations under the orders of his appointment. In this regard, Faulkner caused his share of the proceeds from the sale of the technology company RackAlley, LLC ("RackAlley") (approximately $280,000, of which $210,000 was to be paid upon closing the transaction) to be paid to USPI, an entity controlled by he and Carole. Upon the entry of the second Receivership order, the Receiver demanded -- pursuant to several provisions of that Order -- that Faulkner and Carole turn over these "Receivership Assets", and demanded RackAlley and Bank of the West freeze and turn over any of these assets under their possession, custody or control. The Receiver also issued subpoenas to RackAlley and Bank of the West for records related to the RackAlley sale transaction and payments to USPI.

Faulkner and Carole refused to comply with the Receiver's demands, and thereafter attempted to deposit and then withdraw these funds from a USPI bank account at Bank of the West. In an effort to conceal their fraud, Faulkner and Carole caused to be filed an Amended 2017 Annual Report for USPI removing "C A Faulkner" as President, Secretary and Director and substituting into these positions (and that of Vice President) Shannon Bresnahan, a woman who shared a residence with Faulkner at that time.  In response to the Receiver's demands, RackAlley placed a hold on checks representing $150,000 of the funds due to Faulkner at closing. Faulkner and Carole were unable to deposit these funds into the USPI account at Bank of the West. These funds were subsequently transferred into a Receivership account. Bank of the West also has placed a hold on a $60,000 cashier's check purchased by Carole with RackAlley sale proceeds, issued to USPI. Carole has refused to turn over this check to the Receiver. The Receiver's Motion for Order to Show Cause re: Contempt requests that the Court, *inter alia*, "order the United States Marshals Service to arrest [Faulkner and Carole] and hold them in custody until they purge themselves of their contempt by paying the Receiver" the RackAlley sales proceeds under their control.

CORRIGAN & MORRIS LLP
12300 Wilshire Boulevard, Suite 210
Los Angeles, CA 90025

On November 27, 2017, the Receiver was served with the State Court Complaint at his office in Houston, Texas. Although he was named in his individual capacity -- and his appointment as Receiver for Faulkner, BOG and BECC was intentionally omitted by Plaintiffs from the text of the pleading -- the causes of action therein, and the allegations made, solely arise from the Receiver's efforts, in his capacity as Receiver, to obtain possession and control of the "Receivership Assets" consisting of the sales proceeds of RackAlley belonging to Faulkner and misappropriated by Faulkner and Carole through USPI.

## II. BASIS FOR REMOVAL

### A. Removal Pursuant to Section 1442(a)

The statutory basis for removal of the State Court Action is grounded in 28 U.S.C. §1442. Federal officers or agencies sued or prosecuted, which provides:

> (a) A civil action … that is commenced in a State court and that is against or directed to any of the following may be removed by them to the district court of the United States for the district and division embracing the place wherein it is pending:
>
> …
>
> (3) Any officer of the courts of the United States, for or relating to any act under color of office or in the performance of his duties.

In the present circumstances, both requirements for removal are met. "[A] receiver is an officer of the courts of the United States...." *Medical Development Intern. v. California Dept. of Corrections and Rehabilitation*, 585 F.3d 1211, 1216 (9th Cir. 2009) (*quoting Ely Valley Mines, Inc. v. Hartford Accident & Indem. Co.*, 644 F.2d 1310, 1312 (9th Cir. 1981)). The Receiver was appointed by the United States District Court in the Enforcement Action by Orders entered on August 14 and September 25, 2017. Exhs. B, C.

CORRIGAN & MORRIS LLP
12300 Wilshire Boulevard, Suite 210
Los Angeles, CA 90025

Moreover, the State Court Action is brought against the Receiver for alleged conduct by the Receiver in his capacity as receiver. "The requirement of 'any act under color of such office' has been construed as requiring a causal connection between the charged conduct and the official authority." *Medical Development Intern.* at 1216 (*quoting Ely Valley Mines* at 1313). "That connection is established where the challenged conduct involves actions 'entrusted' to the receiver 'in his capacity as receiver.'" *Id. (citing Gay v. Ruff,* 292 U.S. 25, 33, 39, 54 S.Ct. 608, 78 L.Ed. 1099 (1934)).

In this regard, the allegations in the State Court Complaint are solely related to the Receiver's efforts to obtain possession and control of "Receivership Assets" -- sales proceeds from RackAlley belonging to Faulkner. Carole and Faulkner, through USPI, which they control, have obstructed the Receiver's efforts to obtain these assets through fraudulent transfers and other actions in contempt of the Order Appointing Receiver. Accordingly, the causes of action and allegations made in the State Court Action "relat[e] to … [alleged] act[s] [of the Receiver] under color of office or in the performance of his duties" as Receiver for Faulkner. The State Court Action may be removed pursuant to 28 USC §1442.

### B. Removal Pursuant to Sections 1441

Alternatively, the State Court Action may be removed pursuant to 28 USC §1441. Section 1441 provides that (emphasis added):

> (a) … any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending.

CORRIGAN & MORRIS LLP
12300 Wilshire Boulevard, Suite 210
Los Angeles, CA 90025

28 USC §1332(a) provides that "[t]he district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between (1) citizens of different States." (emphasis added).

In the present circumstances, both requirements for removal are met. "If removal of a civil action is sought on the basis of the jurisdiction conferred by section 1332(a), the sum demanded in good faith in the initial pleading shall be deemed to be the amount in controversy…." 28 USC §1446(c)(2). The State Court Complaint seeks damages in excess of $75,000. See, e.g., Exh. A ¶24(1) ("Plaintiffs prays [sic] for judgment against defendant, Taylor … [for] [g]eneral damages in a sum according to proof excess [sic] of $200,000.00").

Additionally, there is complete diversity between the parties. Plaintiff Carole "resides and does business in California. Plaintiffs residence [sic] and businesses are in Los Angeles County, California 90291." Exh. A ¶1.  Plaintiff USPI "is a Wyoming corporation licensed to do business in California." Id. ¶2. Defendant Receiver was appointed by the Court in the Northern District of Texas. Exhs. B, C. The administration of the Receivership Estate is conducted from the Receiver's offices in Houston, Texas. See also, Exh. A ¶3 (the Receiver "is an attorney in Texas, with offices at 245 West 18th Street Houston, TX 77008."). The State Court Action may also be removed pursuant to 28 USC §1441.

### III. VENUE

Venue for this removal is proper in this district under 28 U.S.C. §1441(a) because the State Court Action has been pending in this district. However, Receiver will be filing a motion to transfer venue to the United States District Court for the Northern District of Texas, where the Enforcement Action in which the Receiver was appointed is pending.

## IV. ADDITIONAL MATTERS

Pursuant to 28 U.S.C. §1446(a), the Receiver has attached a copy of all process, pleadings, and orders served upon him in the State Court Action. See Exh. A.

Receiver will promptly file a copy of this notice of removal with the clerk of the State Court where the State Court Action was pending and give written notice to State Court Plaintiffs pursuant to 28 USC §1446(d).

Dated:  November 28, 2017                    CORRIGAN & MORRIS LLP


                                            By:   /S/ BRIAN T. CORRIGAN
                                                  Brian T. Corrigan
                                                  *Attorneys for Defendant*
                                                  THOMAS L. TAYLOR III

CORRIGAN & MORRIS LLP
12300 Wilshire Boulevard, Suite 210
Los Angeles, CA 90025

**CORRIGAN & MORRIS, LLP**
Brian T. Corrigan  (Cal Bar No. 143188)
bcorrigan@cormorllp.com
Stanley C. Morris  (Cal. Bar No. 183620)
scm@cormorllp.com
12300 Wilshire Boulevard, Suite 210
Los Angeles, California 90025
Telephone: (310) 394-2800
Facsimile: (310) 394-2825

*Attorneys for Defendant*
        THOMAS L TAYLOR III

### UNITED STATES DISTRICT COURT

### CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CAROLE ANN FAULKNER and U.S. PROPERTY INVESTMENTS, INC., <br><br>          Plaintiffs, <br><br>    v. <br><br> THOMAS L. TAYLOR III, <br><br>          Defendant. | Case No.: _____ <br><br> (Los Angeles Superior Court Case No.: SC128374) <br><br> **EXHIBIT A TO** <br><br> **NOTICE OF REMOVAL OF CIVIL ACTION UNDER 28 U.S.C. §§ 1442 AND 1441** |

CORRIGAN & MORRIS LLP
12300 Wilshire Boulevard, Suite 210
Los Angeles, CA 90025

NOTICE OF REMOVAL

Carole A. Faulkner
Attorney for Plaintiffs
CAB #229559
10866 Washington Blvd Ste 448
Culver City, CA 90232
Telephone: 817-879-1377
Facsimile: 469-675-6404

CONFORMED COPY
ORIGINAL FILED
Superior Court of California
County of Los Angeles

NOV 14 2017

Sherri R. Carter, Executive Officer/Clerk

By: Marcos Mariscal Deputy

## IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA
## IN AND FOR THE COUNTY OF LOS ANGELES

CAROLE ANN FAULKNER
and U.S. PROPERTY INVESTMENTS, INC.
    Plaintiffs,

CASE NO.   SC128374

**COMPLAINT FOR DAMAGES
AND INJUNCTION**

Vs.
THOMAS L. TAYLOR III
Defendant

**INTENTIONAL
INTERFERENCE WITH
CONTRACT, INTENTIONAL
INTERFERENCE WITH
PROSPECTIVE ECONOMIC
ADVANTAGE, NEGLIGENT
INTERFERENCE WITH
BUSINESS RELATIONSHIPS,
INTENTIONAL INFLICTION
OF EMOTIONAL DISTRESS,
INVASION OF PRIVACY, AND
DEFAMATION**

Plaintiffs Carole Ann Faulkner and U.S. Property Investments, Inc. come now before this

Court and alleges:

### PARTIES

1.     Plaintiff, Carole Ann Faulkner is an individual.  Plaintiff, Faulkner resides and

COMPLAINT FOR DAMAGES AND INJUNCTION                    PAGE 1

**Exhibit A, p. 000009**

does business in California.  Plaintiff's residence and businesses are in Los Angeles County, California 90291. Plaintiff is a licensed attorney in California and practices in Los Angeles County, California.

2.      Plaintiff, U.S. Property Investments, Inc. is a Wyoming corporation licensed to do business in California.

3.      Defendant, Thomas L. Taylor III ("Taylor") is an attorney in Texas, with offices at 245 West 18th Street Houston, TX 77008.  Defendant and his agents have come into Los Angeles County, California through the telephone, wires and mail systems to violate the rights of the Plaintiffs as set forth herein.  Through such actions and conduct defendant knowingly subjected himself to the jurisdiction of the California judiciary.

## JURISDICTION AND VENUE

4.      Venue and Jurisdiction is proper in the Western Division of Los Angeles County, California. The causes of action all arose within the Western Division of Los Angeles, specifically under zip codes of 90004 and 90212.

## APPLICABLE FACTS

5.      Beginning in October 2017, defendant and his agents maliciously and intentionally interfered with various contracts which the plaintiffs were parties and were currently, and would have in the future received benefits from the business relationships and the contracts. The defendant intentionally interfered with prospective economic advantage of the Plaintiffs, or in the alternative, defendant negligent interfered with the business relationships of the Plaintiffs, which all arose in Los Angeles County, California.

6.      Plaintiffs Carole Faulkner and U.S. Property Investments opened a checking

**Exhibit A, p. 000010**

account at the financial institution of Bank of the West. The checking account was in the name of U.S. Property Investments, Inc. as the owner of the account. The only authorized signer on this checking account was Carole Ann Faulkner. Ms. Faulkner is the sole shareholder of U.S. Property Investments and the owner personally of a portion of the funds contained within that Bank of the West account. Ms. Faulkner conducted all business with Bank of the West at their location at 9401 Wilshire Blvd, Beverly Hills, CA 90212. Ms. Faulkner had a relationship and an agreement with Bank of the West to allow her to deposit monies into the account and withdraw as needed to conduct her business without interruption of her business dealings.  This relationship with Bank of the West was imperative to the success of the corporation.

7.     Defendant and his agents maliciously and intentionally interfered with the contractual rights, relationship, and the prospective economic advantage the Plaintiffs had with Bank of the West. Defendant had knowledge of the relationships between Plaintiff and the third parties. Defendant and his agents deliberately provided fabricated, deceitful, fictitious, and inflaming information relating to the plaintiffs to the Bank of the West. Defendant and his agents came into Los Angeles utilizing the telephone, mail, and facsimile and other methods of communicating of these deceitful and damaging statements to intentionally interfere with the business relationship the plaintiffs benefited from with Bank of the West. Such publication of these deceitful, fabricated, and malicious communications has damaged the relationship and further has damaged the reputation of plaintiff, Carole Faulkner.  The plaintiffs were parties to the contract with Bank of the West, the plaintiffs were currently and would have in the future received benefits from this contract and relationship. The defendant intentionally interfered with the contractual rights, relationship, and the prospective economic advantage of the Plaintiffs. Such acts were with malice, viciousness, willfulness, callousness, contemptibility and

**Exhibit A, p. 000011**

wantonness for the interest of the Plaintiff. If the Court does not intervene and if Defendant is not restrained from interfering with the contractual rights, relationship, and the prospective economic advantage of the Plaintiffs. Plaintiffs will suffer immediate and irreparable harm whereby there is no adequate remedy at law.

8.      The defendant and his agents knowingly and intentionally intruded into the private affairs of the plaintiff, Carole Faulkner when they knowingly intruded into her relationship with the Bank of the West. The defendant knowing targeted Ms. Faulkner to obtain information and the funds contained within the accounts which were owned by the plaintiffs. There was no evidence to indicate that there were any additional owners or parties involved in this relationship but Ms. Faulkner and the other plaintiff. In his intrusion into the affairs of the plaintiff the defendant obtained personally identifiable information belonging to the plaintiff, Carole Faulkner. Such personally identifiable information is now in the possession of the defendant. Defendant intentionally sought such information when he intruded into her private affairs.

9.      The defendant knew or should have known that such malicious conduct would cause emotional distress to the plaintiff, Carole Faulkner. The malicious and intentional actions of the defendant did cause extreme emotional distress to the plaintiff, Carole Faulkner. The defendants intentional acts were unreasonable or with reckless disregard as to the plaintiff. Plaintiff, Carole Faulkner suffered extreme distress as a result of the defendant's actions and continues to suffer distress as to the defendant's continuing actions.

10.     The Plaintiffs had a business relationship with Rack Alley corporation located at 11301 W. Olympic Blvd, Ste 597, Los Angeles, CA 90064.  Rack Alley and plaintiff, U.S. Property Investments, executed a contract in Los Angeles, California during September 2017 relating to services provided to the corporation by U.S. Property Investments. The plaintiff, U.S.

**Exhibit A, p. 000012**

Property Investments performed their obligations under this agreement. The relationship with Rack Alley and their officers were imperative to the success of U.S. Property Investments and Carole Faulkner. Defendant and his agents maliciously and intentionally interfered with the contractual rights, relationship, and the prospective economic advantage the plaintiffs had with Rack Alley. Defendant and his agents deliberately provided fabricated, deceitful, fictitious, and inflaming information relating to the plaintiffs to Rack Alley. Plaintiff will show that Defendant's motive was solely to injure and deprive Plaintiff of the benefits of its business and to undermine Plaintiff's business opportunities. Such acts were with malice, viciousness, willfulness, callousness, contemptibility and wantonness. As a result of the foregoing false, malicious, and vicious acts taken by community, in addition to financial injury.

11.    Defendant and his agents maliciously and intentionally interfered with the contractual rights, relationship, and the prospective economic advantage the Plaintiffs had with Rack Alley. Defendant and his agents deliberately provided fabricated, deceitful, fictitious, and inflaming information relating to the plaintiffs to Rack Alley. Defendant and his agents came into Los Angeles utilizing the telephone, mail, and facsimile and other methods of communicating of these deceitful and damaging statements to intentionally interfere with the contractual rights, relationship, and the prospective economic advantage the plaintiffs benefited from with Rack Alley. Such publication of these deceitful, fabricated, and malicious communications has damaged the relationship and further has damaged the reputation of plaintiff, Carole Faulkner. The plaintiffs were parties to the contract with Rack Alley, the plaintiffs were currently and would have in the future received benefits from this contract and relationship. The defendant intentionally interfered with the contractual rights, relationship, and the prospective economic advantage of the Plaintiffs. Such acts were with malice, viciousness, willfulness, callousness,

**Exhibit A, p. 000013**

contemptibility and wantonness for the interest of the Plaintiff. If the Court does not intervene and if Defendant is not restrained from obtaining or interfering with the contractual rights, relationship, and the prospective economic advantage of the Plaintiffs. Plaintiffs will suffer immediate and irreparable harm whereby there is no adequate remedy at law.

12.     Defendant and his agents came into Los Angeles utilizing the telephone, mail, and facsimile and other methods of communicating of these deceitful and damaging statements to intentionally interfere with the business relationship the plaintiffs benefited from with Rack Alley. Such publication of these deceitful, fabricated, and malicious communications has damaged the relationship and further has damaged the reputation of plaintiffs.  The plaintiffs were parties to the contract with Rack Alley, the plaintiffs were currently and would have in the future received benefits from this contract and relationship. The defendant intentionally interfered with the contractual rights, relationship, and the prospective economic advantage of the Plaintiffs. Plaintiffs will show that Defendant had knowledge of the relations between Plaintiffs and third parties. Moreover, Plaintiffs will show that Defendant in tampering with the Plaintiffs relationship caused Plaintiffs business relations to suffer and become impaired. Defendant maliciously, intentionally, and tortuously intervened with the existing business relationships between the Plaintiffs and their vendors, associates and third parties.

## FIRST CAUSE OF ACTION

### Intentional Interference with Contract,

### Intentional Interference with Prospective Economic Advantage with Bank of the West

13.     Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 12 of this Complaint and each and every part thereof with the same force and effect as though set out at length herein.

**Exhibit A, p. 000014**

14.     Defendant knew of Plaintiffs existing contracts and business relationships with Bank of the West.

15.     Despite knowing of these contracts and existing business relationships, defendant, Taylor intentionally interfered with those contracts and business relationships by deliberately providing fabricated, deceitful, fictitious, and inflaming information relating to the plaintiffs to Bank of the West, thereby causing permanent harm to the contracts and relationships that were put in place by Plaintiffs.  In the alternative, if such actions were not intentional Taylor was negligent in such interference in the business relationship. Plaintiffs will show that Defendant had knowledge of the relations between Plaintiffs and third parties. Moreover, Plaintiff will show that Defendant in tampering with the Plaintiffs relationship with false information caused Plaintiffs business relations to suffer and become impaired. Defendant maliciously, intentionally, and tortuously intervened with the existing business relationships between the Plaintiffs and their vendors, associates and third parties.

16.     As a direct result of defendant's actions and omissions, Plaintiffs were damaged in an amount according to proof due to the loss of usage and control of monies under the contract with Bank of the West. In addition to further amounts due to defendant's damage to and interference with Plaintiffs' contractual rights, relationship, and the prospective economic advantage the plaintiffs had with the Bank of the West.  As a direct and foreseeable consequence of defendant's interference, Plaintiffs have been permanently damaged in an amount according to proof.

17.     Defendant's actions were undertaken with fraud, malice or oppression, or with a conscious disregard of the rights of Plaintiffs, and, therefore, Plaintiffs are entitled to an award of exemplary and punitive damages against defendant, Taylor in an amount according to proof.

Exhibit A, p. 000015

Such acts were with malice, viciousness, willfulness, callousness, contemptibility and wantonness for the interest of the Plaintiffs. If the Court does not intervene and if Defendant his agents, servants, and employees are not restrained and enjoined from, directly or indirectly, contacting, interfering in any business relationship or potential business opportunity of the Plaintiffs, Plaintiffs will suffer immediate and irreparable harm whereby there is no adequate remedy at law.

**WHEREFORE**, Plaintiffs prays for judgment against defendant, Taylor as more fully set forth below.

1.    General damages in a sum according to proof;

2.    Special damages including consequential damages in a sum according to proof;

3.    Punitive damages in an amount according to proof;

4.    For interest provided by law including, but not limited to, Civil Code §3291;

5.    For attorney's fees in an amount to be shown according to proof;

6.    Injunction preventing defendant's future behavior as outlined above against the Plaintiffs.

7.    Costs of suit and for each other and further relief as the Court deems just and proper.

### SECOND CAUSE OF ACTION
#### Intentional Interference with Contract,
#### Intentional Interference with Prospective Economic Advantage with Rack Alley

18.    Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 12 of this Complaint and each and every part thereof with the same force and effect as though set out at length herein.

19.    Defendant, Taylor knew of Plaintiffs' ongoing business relationships with Rack

**Exhibit A, p. 000016**

Alley. Despite knowing of these contracts and existing business relationships, defendant, Taylor intentionally interfered with those contracts and business relationships by deliberately providing fabricated, deceitful, fictitious, and inflaming information relating to the plaintiffs to Rack Alley, thereby causing permanent harm to the contracts and relationships that were put in place by Plaintiffs. In the alternative, if such actions were not intentional Taylor was negligent in such interference in the business relationship.

20.     Through the defendant's interference Rack Alley causing the breach of their contract with Plaintiffs. Defendant, Taylor intentionally interfered with Plaintiffs' prospective economic advantage from ongoing relationships with Rack Alley. As a direct result of defendant's actions and omissions, Plaintiffs has been damaged in an amount according to proof.

21.     Defendant's actions were undertaken with fraud, malice or oppression, or with a conscious disregard of the rights of Plaintiffs, and, therefore, Plaintiffs are entitled to an award of exemplary and punitive damages against defendant, Taylor in an amount according to proof. Such acts were with malice, viciousness, willfulness, callousness, contemptibility and wantonness for the interest of the Plaintiffs. If the Court does not intervene and if Defendant his agents, servants, and employees are not restrained and enjoined from, directly or indirectly, contacting, interfering in any business relationship or potential business opportunity of the Plaintiffs, Plaintiffs will suffer immediate and irreparable harm whereby there is no adequate remedy at law.

**WHEREFORE**, Plaintiffs prays for judgment against defendant, Taylor as more fully set forth below.

1.     General damages in a sum according to proof;

2.     Special damages including consequential damages in a sum according to proof;

COMPLAINT FOR DAMAGES AND INJUNCTION                    PAGE 9

**Exhibit A, p. 000017**

3.      Punitive damages in a sum according to proof;

4.      For interest provided by law including, but not limited to, Civil Code §3291;

5.      For attorney's fees in an amount to be shown according to proof;

6.      Injunction preventing future behavior by the defendant as outlined above against the
Plaintiffs.

7.      Costs of suit and for each other and further relief as the Court deems just and proper.

### THIRD CAUSE OF ACTION

**Negligent Interference with Business Relationships with Rack Alley**

22.     Plaintiff incorporates by reference the allegations contained in paragraphs 1
through 12 of this Complaint and each and every part thereof with the same force and effect as
though set out at length herein.

23.     Rack Alley was fulfilling their obligations of payment to the plaintiff until the
defendant directly interfered with the relationship. By Rack Alley's failing to properly perform
their obligations under the agreement as a direct result of defendants actions and therefore by
causing Rack Alley's breaching of the contract with Plaintiffs, defendant, Taylor negligently
interfered with Plaintiffs' existing business relationships with Rack Alley.

24.     As a direct result of defendant's negligent interference into the business
relationship with Rack Alley, Plaintiffs have been damaged in an amount according to proof.
Such acts were with malice, viciousness, willfulness, callousness, contemptibility and
wantonness for the interest of the Plaintiffs. If the Court does not intervene and if Defendant his
agents, servants, and employees are not restrained and enjoined from, directly or indirectly,
contacting, interfering in any business relationship or potential business opportunity of the

COMPLAINT FOR DAMAGES AND INJUNCTION                          PAGE  10

**Exhibit A, p. 000018**

Plaintiffs, Plaintiffs will suffer immediate and irreparable harm whereby there is no adequate remedy at law.

WHEREFORE, Plaintiffs prays for judgment against defendant, Taylor as more fully set forth below.

1.   General damages in a sum according to proof excess of $200,000.00;

2.   Special damages including consequential damages in a sum according to proof;

3.   Punitive damages in a sum according to proof;

4.   For interest provided by law including, but not limited to, Civil Code §3291;

5.   For attorney's fees in an amount to be shown according to proof;

6.   Injunction preventing future behavior by the defendant as outlined above against the Plaintiffs.

7.   Costs of suit and for each other and further relief as the Court deems just and proper.


### FOURTH CAUSE OF ACTION

**Negligent Interference with Business Relationships with Bank of the West**

25.   Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 12 of this Complaint and each and every part thereof with the same force and effect as though set out at length herein.

26.   Rack Alley was fulfilling their obligations to the plaintiffs until the defendant directly interfered with the relationship. By Bank of the West failing to properly perform their obligations under the account agreement as a result of defendant's actions and by causing Bank of the West to breach the account contract with Plaintiffs, defendant, Taylor negligently interfered with Plaintiffs' existing business relationships with Bank of the West.

**Exhibit A, p. 000019**

27.    As a direct result of defendant's negligent interference into the business relationship with Bank of the West, Plaintiffs have been damaged in an amount according to proof. Such acts were with malice, viciousness, willfulness, callousness, contemptibility and wantonness for the interest of the Plaintiffs. If the Court does not intervene and if Defendant his agents, servants, and employees are not restrained and enjoined from, directly or indirectly, contacting, interfering in any business relationship or potential business opportunity of the Plaintiffs, Plaintiffs will suffer immediate and irreparable harm whereby there is no adequate remedy at law.

**WHEREFORE**, Plaintiffs prays for judgment against defendant, Taylor as follows:

**1.**    General damages in a sum according to proof;

2.    Special damages including consequential damages in a sum according to proof;

3.    Punitive damages in an amount according to proof;

4.    For interest provided by law including, but not limited to, Civil Code §3291;

5.    For attorney's fees in an amount to be shown according to proof;

6.    Injunction preventing future behavior by the defendant as outlined above against the Plaintiffs.

7.    Costs of suit and for each other and further relief as the Court deems just and proper.

### FIFTH CAUSE OF ACTION
#### Defamation

28.    Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 12 of this Complaint and each and every part thereof with the same force and effect as though set out at length herein.

29.    Plaintiff alleges, upon information and belief, Defendant, made false and

**Exhibit A, p. 000020**

defamatory statements regarding Plaintiffs. The statements were made to Bank of the West and Rack Alley.

30. On and during numerous occasions during October defendant made false and defamatory statements relating to the plaintiff, Carole Faulkner. These false and defamatory statements were made with the intent to defame and harm Ms. Faulkner and her reputation.

31. Plaintiff, Carole Faulkner is informed and believes and thereon alleges, that upon those false and defamatory statements made by the defendant, Bank of the West and Rack Alley took certain unreasonable actions against the plaintiff, Carole Faulkner. Such actions has damaged said plaintiff. Such acts were with malice, viciousness, willfulness, callousness, contemptibility and wantonness for the interest of the Plaintiff, Faulkner. If the Court does not intervene and if Defendant his agents, servants, and employees are not restrained and enjoined from, directly or indirectly, publishing false information or the release of any personally identifiable information of the Plaintiff, Plaintiff will suffer immediate and irreparable harm whereby there is no adequate remedy at law.

Wherefore, Plaintiff, Carole Faulkner prays for judgment against the Defendant, as follows:

1. General damages in a sum according to proof;

2. Special damages including consequential damages in a sum according to proof;

3. Punitive damages in an amount according to proof;

4. For interest provided by law including, but not limited to, Civil Code §3291;

5. For attorney's fees in an amount to be shown according to proof;

6. Injunction preventing future behavior by the defendant as outlined above against the Plaintiff, Faulkner.

7. Costs of suit and for each other and further relief as the Court deems just and proper.

Exhibit A, p. 000021

### SIXTH CAUSE OF ACTION

#### Intentional Infliction of Emotional Distress

32.     Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 12 and each and every part thereof with the same force and effect as though set out at length herein.

33     Plaintiffs is informed and believes that the actions of Defendant, Taylor in knowingly making false allegations without investigation, as a pre-text for Defendant's attempted theft of Plaintiffs financial accounts were intentional, extreme, outrageous and done with the intent to cause emotional distress or with reckless disregard of the probability of causing Plaintiff, Carole Faulkner's emotional distress.

34.     The conduct of the defendant, Taylor includes, but is not limited to, the following: Defendant knowingly and wrongfully failed to investigate the "ownership" in any manner. Instead, Defendant published that Carole Faulkner was involved in government actions and government litigation relating to fraud, securities violations and numerous other activities occurring in Dallas, Texas which she is not a party, was never a party, nor involved in any of these actions or allegations. Defendant is abundantly aware of the specific parties of the litigation in Dallas including the persons and businesses involved in that litigation, which does not include either of the plaintiffs in that action. The knowledge that this conduct and false information provided by the defendant would result in damage to the plaintiff, Carole Faulkner and through association to U.S. Property Investments was obvious. Such interference caused extreme damage to the plaintiffs in the denial of usage of funds owned by the Plaintiffs, desperately needed to continue their business and other benefits to the Plaintiffs, as well as consequential economic damages. Defendant, Taylor continued his outrageous conduct after defaming Plaintiff, Carole

**Exhibit A, p. 000022**

Faulkner's good name by continuing to contact Bank of the West and demanding control of the financial account and monies owned and controlled exclusively by Carole Faulkner.

35.     As a direct and proximate result of the Defendant's conduct, Plaintiff, Carole Faulkner has been subjected to severe emotional distress and will continue to suffer severe and permanent humiliation, mental pain and anguish, and will continue to live in a constant state of emotional tension and distress.

36.     As a direct and proximate result of the Defendant's conduct, Plaintiff has suffered and continues to suffer substantial losses in income, earnings, and benefits and has been damaged in her capacity to grow her business, earn a salary from such business, and has lost and will continue to lose benefits, and such damage to Plaintiff in an amount to be shown according to proof.

37.     The conduct of Defendant in causing Plaintiff's relationships to be terminated without good, just or legitimate cause subjected Plaintiffs to cruel and unjust hardship in conscious disregard to Plaintiff's rights.  As it was anticipated by Defendant that Plaintiffs would be unable to find comparable funds in the foreseeable future, Plaintiffs is informed and believes and thereon alleges, that the interference and publication of false and damaging information by Defendant, was done with an intent to cause injury to Plaintiff. As a consequence of the aforesaid oppressive, malicious and despicable conduct, Plaintiff is entitled to an award of punitive damages in a sum to be shown according to proof. In addition, it is Plaintiff, Faulkner's belief that such acts were with malice, viciousness, willfulness, callousness, contemptibility and wantonness for the interest of the Plaintiff, Faulkner. If the Court does not intervene and if Defendant his agents, servants, and employees are not restrained and enjoined from, directly or indirectly, publishing false information or the release of any personally identifiable information

Exhibit A, p. 000023

of the Plaintiff, Plaintiff will suffer immediate and irreparable harm whereby there is no adequate remedy at law.

Wherefore, Plaintiff, Carole Faulkner prays for judgment against the Defendant, as follows:

1.   General damages in a sum according to proof;

2.   Special damages including consequential damages in a sum according to proof;

3.   Punitive damages in an amount according to proof;

4.   For interest provided by law including, but not limited to, Civil Code §3291;

5.   For attorney's fees in an amount to be shown according to proof;

6.   Injunction preventing future behavior by the defendant as outlined above against the Plaintiff.

7.   Costs of suit and for each other and further relief as the Court deems just and proper.

## SEVENTH CAUSE OF ACTION

### Invasion of Privacy

38.   Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 12 and each and every part thereof with the same force and effect as though set out at length herein.

39.   Plaintiffs is informed and believes that the actions of Defendant, Taylor in knowingly demanding personal identifiable information through making false allegations    to Bank of the West were intentional, extreme, outrageous and done with the intent to cause harm or with reckless disregard of the probability of causing Plaintiff, Carole Faulkner's harm through the access and potential distribution of her personal identifiable information in the possession of defendant and his agents.  Such acts were with malice, viciousness, willfulness, callousness, contemptibility and wantonness for the interest of the Plaintiff.

**Exhibit A, p. 000024**

40.     The conduct of the defendant, Taylor includes, but is not limited to, the following: Defendant knowingly and wrongfully failed to investigate the "ownership" in any manner, defendant Taylor invaded the privacy of Plaintiff, Faulkner.   Instead, Defendant demanded all documents a financial institution would have in their possession for Carole Faulkner or Carole Ann Faulkner with her Texas address, California address, her telephone number and personal email account. The defendant was able to obtain her social security number, date of birth and other personally identifiable information.  The knowledge that this conduct and the publication of false information provided by the defendant to the Bank  of the West would result in damage to the plaintiff, Carole Faulkner was obvious. Such obtaining of her personally identifiable information caused extreme damage to the plaintiff as well as consequential economic damages. Defendant, Taylor continued his outrageous conduct after obtaining of her personally identifiable information by continuing to contact Bank of the West and demanding control of additional financial information owned and controlled exclusively by Carole Faulkner. Such acts were with malice, viciousness, willfulness, callousness, contemptibility and wantonness for the interest of the Plaintiff. If the Court does not intervene and if Defendant is not restrained from obtaining or publishing the personal information of the Plaintiff. Plaintiff will suffer immediate and irreparable harm whereby there is no adequate remedy at law.

41.     As a direct and proximate result of the Defendant's conduct, Plaintiff, Carole Faulkner has been subjected to severe potential danger with the release of her personally identifiable information and will continue to suffer severe and permanent emotional tension and distress from this potential danger which cannot be compensated adequately from only monetary damages.

42.     As a direct and proximate result of the Defendant's conduct, Plaintiff will

Exhibit A, p. 000025

continue to lose benefits, security and privacy, and such other damages to Plaintiff in an amount to be shown according to proof. Plaintiff will suffer immediate and irreparable harm whereby there is no adequate remedy at law and an injunction should be granted.

43.     The conduct of Defendant in obtaining of her personally identifiable information without good, just or legitimate cause subjected Plaintiffs to cruel and unjust hardship in conscious disregard to Plaintiff's rights.  As it was anticipated by Defendant that obtaining of her personally identifiable information and potential publication of this information by Defendant, was done with an intent to cause injury to Plaintiff. As a consequence of the aforesaid oppressive, malicious and despicable conduct, Plaintiff is entitled to an award of punitive damages in a sum to be shown according to proof.

Wherefore, Plaintiff, Carole Faulkner prays for judgment against the Defendant, as follows:

1.     General damages in a sum according to proof;

2.     Special damages including consequential damages in a sum according to proof;

3.     Punitive damages in an amount according to proof;

4.     For interest provided by law including, but not limited to, Civil Code §3291;

5.     For attorney's fees in an amount to be shown according to proof;

6.     Injunction preventing future behavior by the defendant as outlined above against the Plaintiff.

7.     Costs of suit and for each other and further relief as the Court deems just and proper.


## EIGHTH  CAUSE OF ACTION

### Injunctive Relief Temporary and Permanent

44.     Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 12

Exhibit A, p. 000026

and each and every part thereof with the same force and effect as though set out at length herein.

45.     Such acts set forth above committed by the defendant were with malice, viciousness, willfulness, callousness, contemptibility and wantonness for the interest of the Plaintiffs.

46.     If the Court does not intervene and an injunction be Ordered on in this cause, enjoining and restraining defendant, his agents, servants, and employees from, directly or indirectly, from further interfering any business relationship or potential business opportunity, with the current and future contractual rights, relationship, and the prospective economic advantage of the Plaintiffs.

47.     If the Court does not intervene and an injunction be Ordered on in this cause, enjoining and  restraining defendant, his agents, servants, and employees from, directly or indirectly from publishing any personal or identifiable information relating or referring to Plaintiff Faulkner in any manner Plaintiff, Carole Faulkner will suffer immediate and irreparable harm whereby there is no adequate remedy at law.

Wherefore, Plaintiffs, Carole Faulkner and U.S. Property Investments, Inc. prays for judgment against the Defendant, as follows:

1.     Injunction preventing future behavior as outlined above against the Plaintiffs.

2.     Attorney's fees in an amount to be shown according to proof;

3.     Costs of suit and for each other and further relief as the Court deems just and proper

DATED: November 3, 2017

_____

Attorney for Plaintiffs

COMPLAINT FOR DAMAGES AND INJUNCTION                    PAGE 19

**Exhibit A, p. 000027**

**CORRIGAN & MORRIS, LLP**
Brian T. Corrigan  (Cal Bar No. 143188)
bcorrigan@cormorllp.com
Stanley C. Morris  (Cal. Bar No. 183620)
scm@cormorllp.com
12300 Wilshire Boulevard, Suite 210
Los Angeles, California 90025
Telephone: (310) 394-2800
Facsimile: (310) 394-2825

*Attorneys for Defendant*
    THOMAS L TAYLOR III

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CAROLE ANN FAULKNER and U.S. PROPERTY INVESTMENTS, INC., <br><br> Plaintiffs, <br><br> v. <br><br> THOMAS L. TAYLOR III, <br><br> Defendant. | Case No.: _____ <br><br> (Los Angeles Superior Court Case No.: SC128374) <br><br> **EXHIBIT B TO** <br><br> **NOTICE OF REMOVAL OF CIVIL ACTION UNDER 28 U.S.C. §§ 1442 AND 1441** |

CORRIGAN & MORRIS LLP
12300 Wilshire Boulevard, Suite 210
Los Angeles, CA 90025

NOTICE OF REMOVAL

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| **SECURITIES AND EXCHANGE COMMISSION,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **Case No.: 3:16-CV-1735-D** |
| | § | |
| **CHRISTOPHER A. FAULKNER,** | § | |
| **BREITLING ENERGY CORPORATION,** | § | |
| **JEREMY S. WAGERS,** | § | |
| **JUDSON F. (“RICK”) HOOVER,** | § | |
| **PARKER R. HALLAM,** | § | |
| **JOSEPH SIMO,** | § | |
| **DUSTIN MICHAEL MILLER RODRIGUEZ,** | § | |
| **BETH C. HANDKINS,** | § | |
| **GILBERT STEEDLEY,** | § | |
| **BREITLING OIL & GAS CORPORATION,** | § | |
| **CRUDE ENERGY, LLC,** | § | |
| **PATRIOT ENERGY, INC.,** | § | **FILED UNDER SEAL** |
| | § | **AND *EX PARTE*** |
| **Defendants,** | § | |
| | § | |
| **and** | § | |
| | § | |
| **TAMRA M. FREEDMAN and** | § | |
| **JETMIR AHMEDI,** | § | |
| | § | |
| **Relief Defendants.** | § | |
| | § | |

**ORDER APPOINTING TEMPORARY RECEIVER**

This matter has come before this Court upon motion of the Plaintiff U.S. Securities and

Exchange Commission ("SEC" or "Plaintiff") to appoint a receiver in the above-captioned

action.

The Court finds that, based on the record in these proceedings, the appointment of a

temporary receiver in this action is necessary and appropriate for the purposes of marshaling and

preserving all oil-and-gas related assets – in any form or of any kind whatsoever – owned,

controlled, possessed, or managed, directly or indirectly, by Defendants Christopher A. Faulkner,

**Exhibit B, p. 000028**

Breitling Oil & Gas Corporation ("BOG"), and Breitling Energy Corporation ("BECC") (collectively, the "Receivership Defendants"), including all oil-and-gas revenue from oil-and-gas operators or others payable to any of the Receivership Defendants, and all oil-and-gas assets held in the name of any of the Receivership Defendants ("Receivership Assets"). The Court grants this relief in part without prejudice to granting any of the remaining relief requested by Plaintiff in its motion.

This Court has subject matter jurisdiction over this action and personal jurisdiction over the Receivership Defendants.

**NOW THEREFORE, IT IS HEREBY ORDERED:**

1.      This Court hereby takes exclusive jurisdiction and possession of the Receivership Assets of whatever kind and wherever situated.

2.      Until further Order of this Court, **Thomas L. Taylor III** is hereby appointed to serve without bond as temporary receiver (the "Receiver") for the Receivership Assets.

## I.  Asset Freeze

3.      Except as otherwise specified herein, all Receivership Assets are frozen until further order of this Court. Accordingly, all persons and entities with direct or indirect control over any of the Receivership Assets, other than the Receiver, are hereby restrained and enjoined from directly or indirectly transferring, setting off, receiving, changing, selling, pledging, assigning, secreting, diverting, re-routing, liquidating or otherwise disposing of or withdrawing such assets. All persons and entities with direct or indirect possession, custody, or control over any Receivership Assets are ordered to relinquish such possession, custody, or control to the Receiver. This freeze shall include, but not be limited to, Receivership Assets that are (a) in the possession or control of oil-and-gas operators, including oil-and-gas revenue payments being held in suspense; (b) on deposit with financial institutions such as banks, brokerage firms, mutual

funds; or (c) oil-and-gas production revenue checks or proceeds in the possession or control of any of the Recivership Defendants.

## II.  Powers and Duties of Receiver

4.      The trustees, directors, officers, managers, employees, investment advisors, accountants, attorneys, partners, and other agents of the Receivership Defendants are hereby ordered to cooperate with the Receiver and aid his efforts.  Such persons and entities shall have no authority with respect to the Receivership Assets except to the extent as may hereafter be expressly granted by the Receiver, or by separate order of this Court.  The Receiver shall exercise control over the Receivership Assets, including: (a) collecting and possessing all Receivership Assets; (b) pursuing and preserving all claims related to the Receivership Assets; (c) communicating with oil-and-gas operators or any other individuals or entities transmitting oil-and-gas revenue payments to the Receivership Defendants; and (d) directing the payments of any and all oil-and-gas related revenue payments to the Receiver.

5.      Neither the Receivership Defendants nor any person holding or claiming any position of any sort with the Receivership Defendants shall possess any authority or control to act by or on behalf of the Receivership Defendants related to Receivership Assets.

6.      Subject to the specific provisions in Sections III through XIII, below, the Receiver shall have the following general powers and duties:

A.      To use reasonable efforts to determine the nature, location, and value of all Receivership Assets;

B.      To take possession, custody, and control of the Receivership Assets and records related thereto, and to manage and maintain them, pending further Order of this Court;

C.      To use Receivership Assets for paying expenses necessary or advisable in the ordinary course of business in discharging his duties as Receiver;

D.      To take any action related to the Receivership Assets that, prior to the

entry of this Order, could have been taken by the officers, directors, partners, managers, trustees, and agents of the Receivership Defendants;

E.    To engage and employ persons in his discretion to assist him in carrying out his duties and responsibilities hereunder, including, but not limited to, accountants and attorneys;

F.    To take such action as necessary and appropriate for the preservation of the Receivership Assets or to prevent the dissipation or concealment of the Receivership Assets;

G.    To issue subpoenas for documents and testimony consistent with the Federal Rules of Civil Procedure; and

H.    To take such other action as may be approved by this Court.

7.    Upon the request of the Receiver, the United States Marshals Service, in any judicial district, is hereby ordered to assist the Receiver in carrying out his duties to take possession, custody, and control of the Receivership Assets.

### III.  <u>Access to Information</u>

8.    The individual Receivership Defendants and the past and/or present officers, directors, agents, managers, general and limited partners, trustees, attorneys, accountants and employees of the entity Receivership Defendants, as well as those acting in their place, are hereby ordered and directed to preserve all paper and electronic information relating to the the Receivership Assets; such information shall include but not be limited to books, records, documents, accounts, and all other instruments and papers.

### IV.  <u>Access to Books, Records and Accounts</u>

9.    The Receiver is authorized to take immediate possession of all Receivership Assets and all books, records, and accounts relating to the Receivership Assets.  All persons and entities having control, custody, or possession of any of the Receivership Assets are hereby directed to turn over such books, records, and accounts to the Receiver, on his request.

10.    All oil-and-gas operators and all banks, brokerage firms, financial institutions,

and other persons or entities that have possession, custody, or control of any Receivership

Assets, held on account or otherwise, that receive actual notice of this Order by personal service,

facsimile transmission or otherwise shall:

> A.     Not liquidate, transfer, sell, convey or otherwise transfer any Receivership Assets, except upon instructions from the Receiver;
>
> B.     Not exercise any form of set-off, alleged set-off, lien, or any form of self-help whatsoever, or refuse to transfer any Receivership Assets to the Receiver's control without the permission of this Court;
>
> C.     Within five (5) business days of receipt of that notice, serve on the Receiver and counsel for the SEC a certified statement setting forth, with respect to each such account or other holding, the balance in the account or description of the assets as of the close of business on the date of receipt of the notice; and
>
> D.     Cooperate expeditiously in providing information and transferring Receivership Assets, and the accounts in which they are held, to the Receiver or at the direction of the Receiver.

## V.  Access to Private Mail Boxes and P.O. Boxes

11.     The Receiver is authorized to take immediate possession, custody, and control of

private mail box #383 located at 3930 Glade Road, Suite 108, Colleyville, TX 76034 and all

other private mail boxes and post-office boxes that have received oil-and-gas revenue in the

name, on behalf, or for the benefit of any of the Receivership Defendants since April 1, 2016.

The Receiver is authorized to change locks on such private mail boxes and post-office boxes

described above.  The Receiver shall have exclusive control of the keys for such private mail

boxes and post-office boxes described above.  The Receivership Defendants, or any other person

acting or purporting to act on their behalf, are ordered not to change such locks in any manner,

nor to have duplicate keys made, nor shall they have keys in their possession during the term of

the temporary receivership.

12.     The Receiver is authorized to open all mail directed to or received by or at the

private mail mailboxes and post-office boxes described above, and to inspect all such mail received prior to the entry of this Order, to determine whether items or information therein fall within the mandates of this Order.

## VI.  <u>Notice to Third Parties</u>

13.     The Receiver shall promptly give notice of his appointment to all known officers, directors, agents, employees, shareholders, creditors, debtors, managers and general and limited partners of the Receivership Defendants, as the Receiver deems necessary or advisable to effectuate the operation of the temporary receivership.

14.     All persons and entities owing any obligation, debt, or distribution with respect to an ownership interest to any Receivership Defendant arising out of any of the Receivership Assets shall, until further ordered by this Court, pay all such obligations in accordance with the terms thereof to the Receiver and its receipt for such payments shall have the same force and effect as if the Receivership Defendants had received such payment.

15.     In furtherance of his responsibilities in this matter, the Receiver is authorized to communicate with, and serve this Order upon, any person, entity, or government office that he deems appropriate to inform them of the status of this matter and/or the financial condition of the Receivership Assets.   All government offices that maintain public files of security interests in real and personal property shall, consistent with such office's applicable procedures, record this Order upon the request of the Receiver or the SEC.

16.     The Receiver is authorized to instruct the United States Postmaster to hold and/or reroute mail from oil-and-gas operators addressed to any of the Receivership Defendants (the "Receiver's Mail").  The Postmaster shall not comply with, and shall immediately report to the Receiver, any change of address or other instruction given by anyone other than the Receiver concerning the Receiver's Mail.  The Receivership Defendants shall not open any of the

Receiver's Mail and shall immediately turn over such mail, regardless of when received, to the

Receiver. All personal mail of the Receivership Defendants, and/or any mail appearing to

contain privileged information, and/or any mail not falling within the mandate of the Receiver,

shall be released to the named addressee by the Receiver. The foregoing instructions shall apply

to any proprietor, whether individual or entity, of any private mail box, depository, business or

service, or mail courier or delivery service, hired, rented or used by the Receivership Defendants.

The Receivership Defendants shall not open a new mailbox, or take any steps or make any

arrangements to receive mail in contravention of this Order, whether through the U.S. mail, a

private mail depository, or courier service.

## VII. **Injunction Against Interference with Receiver**

17.     The Receivership Defendants and all persons receiving notice of this Order by

personal service, facsimile, or otherwise, are hereby restrained and enjoined from directly or

indirectly taking any action or causing any action to be taken, without the express written

agreement of the Receiver, that would:

> A.     Interfere with the Receiver's efforts to take control, possession, or
> management of any Receivership Assets; such prohibited actions include
> but are not limited to, using self-help or executing or issuing or causing
> the execution or issuance of any court attachment, subpoena, replevin,
> execution, or other process for the purpose of impounding or taking
> possession of or interfering with or creating or enforcing a lien upon any
> Receivership Assets;
>
> B.     Hinder, obstruct or otherwise interfere with the Receiver in the
> performance of his duties; such prohibited actions include but are not
> limited to, concealing, destroying, or altering records or information;
>
> C.     Dissipate or otherwise diminish the value of any of the Receivership
> Assets; such prohibited actions include but are not limited to, releasing
> claims or disposing, transferring, exchanging, assigning, or in any way
> conveying any Receivership Assets, enforcing judgments, assessments, or
> claims against any Receivership Assets, attempting to modify, cancel,
> terminate, call, extinguish, revoke or accelerate (the due date), of any
> lease, loan, mortgage, indebtedness, security agreement or other

*SEC v. Faulkner, et al.*                    Page **7** of 11
Order Appointing Temporary Receiver

agreement executed by any Receivership Defendant arising out of any of the Receivership Assets or that otherwise affects Receivership Assets; or,

D.      Interfere with or harass the Receiver, or interfere in any manner with the exclusive jurisdiction of this Court over the Receivership Assets.

18.     The Receivership Defendants shall cooperate with and assist the Receiver in the performance of his duties.

19.     The Receiver shall promptly notify the Court and SEC counsel of any failure or apparent failure of any person or entity to comply in any way with the terms of this Order.

### VIII.  <u>Stay of Litigation</u>

20.     As set forth in detail below, the following proceedings, excluding the instant proceeding, any criminal investigation or proceeding, and all police or regulatory actions and actions of the SEC related to the above-captioned enforcement action, are stayed until further Order of this Court:

All civil legal proceedings of any nature, including, but not limited to, bankruptcy proceedings, arbitration proceedings, foreclosure actions, default proceedings, or other actions of any nature involving: (a) the Receiver, in his capacity as Receiver; and (b) any Receivership Assets, wherever located (such proceedings are hereinafter referred to as "Ancillary Proceedings").

21.     The parties to any and all Ancillary Proceedings are enjoined from commencing or continuing any such legal proceeding, or from taking any action, in connection with any such proceeding, including, but not limited to, the issuance or employment of process.

22.     All Ancillary Proceedings are stayed in their entirety, and all Courts having any jurisdiction thereof are enjoined from taking or permitting any action until further Order of this Court.   Further, as to a cause of action accrued or accruing in favor of one or more of the Receivership Defendants against a third person or party, any applicable statute of limitation is tolled during the period in which this injunction against commencement of legal proceedings is in effect as to that cause of action.

## IX.  Managing Assets

23.    The Receiver shall establish one or more custodial accounts at a federally insured bank to receive and hold any Receivership Assets that are cash or cash-equivalent assets.

24.    The Receiver's deposit account shall be entitled "Receiver's Account, Estate of Christopher A. Faulkner, Breitling Energy Corporation, and Breitling Oil & Gas Corporation" together with the name of the action.

## X.  Investigate and Prosecute Claims

25.    Subject to his obligation to conduct the temporary receivership in a reasonable and cost-effective manner, the Receiver is authorized, empowered, and directed to investigate the manner in which the Receivership Defendants have obtained, collected, and disposed of Receivership Assets.

26.    The Receiver has a continuing duty to ensure that there are no conflicts of interest between himself, his Retained Personnel (as that term is defined below), and the Receivership Defendants.

## XI.  Liability of Receiver

27.    Until further Order of this Court, the Receiver shall not be required to post bond or give an undertaking of any type in connection with his fiduciary obligations in this matter.

28.    The Receiver and his agents, acting within scope of such agency ("Retained Personnel") are entitled to rely on all outstanding rules of law and Orders of this Court and shall not be liable to anyone for their own good faith compliance with any order, rule, law, judgment, or decree.  In no event shall the Receiver or Retained Personnel be liable to anyone for their good faith compliance with their duties and responsibilities as Receiver or Retained Personnel.

29.    This Court shall retain jurisdiction over any action filed against the Receiver or Retained Personnel based upon acts or omissions committed in their representative capacities.

**Exhibit B, p. 000036**

30.     In the event the Receiver decides to resign, the Receiver shall first give written notice to the SEC's counsel of record and the Court of his intention, and the resignation shall not be effective until the Court appoints a successor.  The Receiver shall then follow such instructions as the Court may provide.

## XII.  Recommendations and Reports

31.     Within fourteen (14) days of the entry date of this Order, the Receiver shall file a status report with the Court.  The status report will include a summary of the activities of the receivership to date, including the existence, value, and location of all Receivership Assets identified by the Receiver.  It will also include a proposed plan for administering the receivership going forward.  The Receiver's fees – including all fees and costs for the Receiver and others retained to assist in the administration of the receivership – are capped at $75,000 during the initial 14-day period.  Further fee limitations, if any, will be set by the Court after the Receiver submits the status report.

## XIII.  Fees, Expenses and Accountings

32.     Subject to Paragraphs 33-35 immediately below, the Receiver need not obtain Court approval prior to the disbursement of cash for expenses in the ordinary course of the administration and operation of the receivership.  Further, prior Court approval is not required for payments of applicable federal, state or local taxes.

33.     Subject to Paragraph 34 immediately below, the Receiver is authorized to solicit persons and entities ("Retained Personnel") to assist him in carrying out the duties and responsibilities described in this Order.  The Receiver may engage Retained Personnel without obtaining an Order of the Court authorizing such engagement.

34.     Subject to the limitations in Paragraph 32 above, the Receiver and Retained Personnel are entitled to reasonable compensation and expense reimbursement from the

Receivership Estate as described in the "Billing Instructions for Receivers in Civil Actions

Commenced by the U.S. Securities and Exchange Commission" (the "Billing Instructions")

agreed to by the Receiver.  Such compensation shall require the prior approval of the Court.

      35.     Any Receiver motion for fees and expenses shall:

        A.     Comply with the terms of the Billing Instructions agreed to by the Receiver; and,

        B.     Contain representations (in addition to the Certification required by the Billing Instructions) that: (i) the fees and expenses included therein were incurred in the best interests of the Receivership Estate; and, (ii) with the exception of the Billing Instructions, the Receiver has not entered into any agreement, written or oral, express or implied, with any person or entity concerning the amount of compensation paid or to be paid from the Receivership Estate, or any sharing thereof.


**SO ORDERED.**

Signed August 14, 2017 at 7:52 a.m.


_(signature)_

SIDNEY A. FITZWATER
UNITED STATES DISTRICT JUDGE

**CORRIGAN & MORRIS, LLP**
Brian T. Corrigan  (Cal Bar No. 143188)
bcorrigan@cormorllp.com
Stanley C. Morris  (Cal. Bar No. 183620)
scm@cormorllp.com
12300 Wilshire Boulevard, Suite 210
Los Angeles, California 90025
Telephone: (310) 394-2800
Facsimile: (310) 394-2825

*Attorneys for Defendant*
        THOMAS L TAYLOR III

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CAROLE ANN FAULKNER and U.S. PROPERTY INVESTMENTS, INC., | Case No.: _____ |
| | (Los Angeles Superior Court Case No.: SC128374) |
| Plaintiffs, | |
| v. | **EXHIBIT C TO** |
| THOMAS L. TAYLOR III, | **NOTICE OF REMOVAL OF CIVIL ACTION UNDER 28 U.S.C. §§ 1442 AND 1441** |
| Defendant. | |

CORRIGAN & MORRIS LLP
12300 Wilshire Boulevard, Suite 210
Los Angeles, CA 90025

NOTICE OF REMOVAL

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE | § | |
| COMMISSION, | § | |
| | § | |
| Plaintiff, | § | |
| | § | Civil Action No. 3:16-CV-1735-D |
| VS. | § | |
| | § | |
| CHRISTOPHER A. FAULKNER, et al., | § | |
| | § | |
| Defendants. | § | |

**<u>ORDER</u>**

For the reasons set out in a memorandum opinion and order filed today, the court enters the following order.

The court finds, based on the record in these proceedings, that the appointment of a temporary receiver in this action is necessary and appropriate for the purposes of marshaling and preserving all assets—in any form or of any kind whatsoever—owned, controlled, managed, or possessed by defendants Christopher A. Faulkner, Breitling Oil & Gas Corporation ("BOG"), and Breitling Energy Corporation ("BECC") (collectively, the "Receivership Defendants"), directly or indirectly ("Receivership Assets").

The court has subject matter jurisdiction over this action and personal jurisdiction over the Receivership Defendants.

NOW THEREFORE, IT IS HEREBY ORDERED:

1.    The court hereby takes exclusive jurisdiction and possession of the Receivership Assets, of whatever kind and wherever situated.

2.    Until further order of the court, Thomas L. Taylor is appointed to serve without bond as temporary receiver (the "Receiver") for the estates of the Receivership Defendants and the

Receivership Assets.

## I. <u>Asset Freeze</u>

3.      Except as otherwise specified herein, all Receivership Assets are frozen until further order of this court.  Accordingly, all persons and entities with direct or indirect control over any Receivership Assets, other than the Receiver, are hereby restrained and enjoined from directly or indirectly transferring, setting off, receiving, changing, selling, pledging, assigning, liquidating, or otherwise disposing of or withdrawing such assets.  All persons and entities with direct or indirect control over any Receivership Assets are ordered to relinquish such control to the Receiver.  This freeze includes, but is not limited to, Receivership Assets that are (a) in the possession or control of oil and gas operators; or (b) on deposit with financial institutions such as banks, brokerage firms, and mutual funds.

## II. <u>General Powers and Duties of Receiver</u>

4.      The Receiver shall have all powers, authorities, rights, and privileges heretofore possessed by the officers, directors, managers, and general and limited partners of the entity Receivership Defendants under applicable state and federal law, by the governing charters, by-laws, articles and/or agreements, in addition to all powers and authority of a receiver at equity, and all powers conferred upon a receiver by the provisions of 28 U.S.C. §§ 754, 959, and 1692, and Fed. R. Civ. P. 66.

5.      The trustees, directors, officers, managers, employees, investment advisors, accountants, attorneys, and other agents of the entity Receivership Defendants are hereby dismissed, and the powers of any general partners, directors, and/or managers are hereby suspended.  Such persons and entities shall have no authority with respect to the entity Receivership Defendants' operations or assets, except to the extent as may hereafter be expressly granted by the Receiver.  The

Receiver shall assume and control the operation of the entity Receivership Defendants and shall pursue and preserve all of their claims.

6.      No person holding or claiming any position of any sort with the entity Receivership Defendants shall possess any authority to act by, or on behalf of, the entity Receivership Defendants.

7.      Subject to the specific provisions in Sections III through XIV, below, the Receiver shall have the following general powers and duties:

A.      To use reasonable efforts to determine the nature, location, and value of all Receivership Assets, including, but not limited to, monies, funds, securities, credits, effects, goods, chattels, lands, premises, leases, claims, rights, and other assets, together with all rents, profits, dividends, interest, or other income attributable thereto, of whatever kind, that the Receivership Defendants own, possess, have a beneficial interest in, or control directly or indirectly (collectively, the "Receivership Estate");

B.      To take custody, control, and possession of all Receivership Assets and records relevant thereto from the Receivership Defendants; to sue for and collect, recover, receive, and take into possession from third parties all Receivership Assets and records relevant thereto;

C.      To manage, control, operate, and maintain the Receivership Estate and hold in his possession, custody, and control all Receivership Assets, pending further order of the court;

D.      To use Receivership Assets for the benefit of the Receivership Estate, making payments and disbursements and incurring expenses as may be necessary or advisable in the ordinary course of business in discharging his duties as Receiver;

E.      To take any action that, prior to the entry of this order, could have been taken by the officers, directors, partners, managers, trustees, and agents of the entity Receivership Defendants;

F.      To engage and employ persons in his discretion to assist him in carrying out his duties and responsibilities hereunder, including, but not limited to, accountants, attorneys, securities traders, registered representatives, financial or business advisers, liquidating agents, real estate agents, forensic experts, brokers, traders, or auctioneers;

G.      To take such action as necessary and appropriate for the preservation of Receivership Assets or to prevent the dissipation or concealment of Receivership Assets;

H.   To issue subpoenas for documents and testimony consistent with the Federal Rules of Civil Procedure;

I.   To bring such legal actions based on law or equity in any state, federal, or foreign court as the Receiver deems necessary or appropriate in discharging his duties as Receiver;

J.   To pursue, resist, and defend all suits, actions, claims, and demands that may now be pending or that may be brought by or asserted against the Receivership Estate; and,

K.   To take such other action as may be approved by the court.

## III.  Access to Information

8.     Faulkner and the past and/or present officers, directors, agents, managers, general and limited partners, trustees, attorneys, accountants, and employees of the entity Receivership Defendants, as well as those acting in their place, are hereby ordered and directed to preserve and turn over to the Receiver forthwith all paper and electronic information of, and/or relating to, the Receivership Defendants and/or all Receivership Assets; such information shall include, but not be limited to, books, records, documents, accounts, and all other instruments and papers.

9.     Within fourteen (14) days of the entry of this order, the Receivership Defendants shall file with the court, and serve upon the Receiver and the U.S. Securities and Exchange Commission ("SEC" or "Plaintiff") a sworn statement, listing: (a) the identity, location, and estimated value of all Receivership Assets; (b) all employees (and job titles thereof), other personnel, attorneys, accountants, and any other agents or contractors of the Receivership Defendants; and (c) the names, addresses, and amounts of claims of all known creditors of the Receivership Defendants.

10.    Within thirty (30) days of the entry of this order, the Receivership Defendants shall file with the court and serve upon the Receiver and the SEC a sworn statement and accounting, with

complete documentation, covering the period from January 1, 2011 to the present:

A.      of all Receivership Assets, wherever located, held by, or in the name of, the Receivership Defendants, or in which any of them, directly or indirectly, has or had any beneficial interest, or over which any of them maintained or maintains and/or exercised or exercises control, including, but not limited to: (a) all securities, investments, funds, real estate, automobiles, jewelry and other assets, stating the location of each; and (b) any and all accounts, including all funds held in such accounts, with any oil and gas operator or with any bank, brokerage, or other financial institution held by, in the name of, or for the benefit of any of them, directly or indirectly, or over which any of them maintained or maintains and/or exercised or exercises any direct or indirect control, or in which any of them had or has a direct or indirect beneficial interest, including the account statements from each bank, brokerage or other financial institution;

B.      identifying every account at every bank, brokerage, or other financial institution: (a) over which Receivership Defendants has signatory authority; and (b) opened by, in the name of, or for the benefit of, or used by, the Receivership Defendants;

C.      identifying all credit, bank, charge, debit, or other deferred payment card issued to, or used by, each Receivership Defendants, including but not limited to the issuing institution, the card or account number(s), all persons or entities to which a card was issued and/or with authority to use a card, the balance of each account and/or card as of the most recent billing statement, and all statements for the last twelve (12) months;

D.      of all assets received by any of them from any person or entity, including the value, location, and disposition of any assets so received;

E.      of all funds received by the Receivership Defendants, and each of them, in any way related, directly or indirectly, to the conduct alleged in the SEC's first amended complaint (Doc. 22) or in the SEC's brief in support of plaintiff's *ex parte* emergency motion for temporary restraining order, asset freeze, appointment of receiver, and other ancillary relief ("Brief") (Doc. 103). The submission must clearly identify, among other things, all investors, the securities they purchased, the date and amount of their investments, and the current location of such funds;

G.      of all expenditures exceeding $1,000 made by any of them, including those made on their behalf by any person or entity; and

H.      of all transfers of assets made by any of them.

11.     Unless the court, on motion of a Receivership Defendant, orders otherwise, within thirty (30) days of the entry of this order, the Receivership Defendants shall provide to the Receiver and the SEC copies of the Receivership Defendants' federal income tax returns for 2010 through 2016, with all relevant and necessary underlying documentation.

12.     Subject to any applicable rights under the Fifth Amendment to the United States Constitution, Faulkner and the entity Receivership Defendants' past and/or present officers, directors, agents, attorneys, managers, shareholders, employees, accountants, debtors, creditors, managers and general and limited partners, and other appropriate persons or entities shall answer under oath to the Receiver all questions that the Receiver may put to them and produce all documents as required by the Receiver regarding the business of the Receivership Defendants, or any other matter relevant to the operation or administration of the receivership or the collection of funds due to the Receivership Defendants.  If the Receiver deems it necessary to require the appearance of the aforementioned persons or entities, the Receiver shall make his discovery requests in accordance with the Federal Rules of Civil Procedure.

13.     The Receivership Defendants are required to assist the Receiver in fulfilling his duties and obligations.  As such, subject to any applicable rights under the Fifth Amendment to the United States Constitution, they must respond promptly and truthfully to all requests for information and documents from the Receiver.

IV.  <u>Access to Books, Records and Accounts</u>

14.     The Receiver is authorized to take immediate possession of all assets, bank accounts or other financial accounts, books, and records and all other documents or instruments relating to the Receivership Defendants.  All persons and entities having control, custody, or possession of any Receivership Assets are hereby directed to turn over such property to the Receiver.

15.     The Receivership Defendants, as well as their agents, servants, employees, attorneys, any persons acting for or on behalf of the Receivership Defendants, and any persons receiving notice of this order by personal service, facsimile transmission, or otherwise, having possession of the property, business, books, records, accounts, or assets of the Receivership Defendants are hereby directed to deliver the same to the Receiver, his agents, and/or employees.

16.     All oil and gas operators and all banks, brokerage firms, financial institutions, and other persons or entities that have possession, custody, or control of any assets or funds held by, in the name of, or for the benefit of, directly or indirectly, and of the Receivership Defendants that receive actual notice of this order by personal service, facsimile transmission, or otherwise shall:

> A.     not liquidate, transfer, sell, convey, or otherwise transfer any assets, securities, funds, or accounts in the name of, or for the benefit of, the Receivership Defendants, except upon instructions from the Receiver;

> B.     not exercise any form of set-off, alleged set-off, lien, or any form of self-help whatsoever, or refuse to transfer any funds or assets to the Receiver's control, without the permission of the court;

> C.     within seven (7) days of receipt of that notice, file with the court and serve on the Receiver and counsel for the SEC a certified statement setting forth, with respect to each such account or other asset, the balance in the account or description of the assets as of the close of business on the date of receipt of the notice; and,

> D.     cooperate expeditiously in providing information and transferring funds, assets, and accounts to the Receiver, or at the direction of the Receiver.

17.     Paragraph 16 notwithstanding, the Receiver shall permit XL Speciality Insurance Company to process the Receivership Defendants' claims under Directors and Officers Insurance Policy Number ELU137222-14, until a further order of the court.

## V.  Access to Real and Personal Property

18.     The Receiver is authorized to take immediate possession of all personal property of

the Receivership Defendants, wherever located, including but not limited to, electronically stored information, computers, laptops, hard drives, external storage drives, and any other such memory, media or electronic storage devices, books, papers, data processing records, evidence of indebtedness, bank records and accounts, savings records and accounts, brokerage records and accounts, certificates of deposit, stocks, bonds, debentures, and other securities and investments, contracts, mortgages, furniture, office supplies and equipment.

19.    The Receiver is authorized to take immediate possession of all real property of the Receivership Defendants, wherever located, including, but not limited to, all ownership and leasehold interests and fixtures.  Upon receiving actual notice of this order by personal service, facsimile transmission, or otherwise, all persons other than law enforcement officials acting within the course and scope of their official duties, are (without the express written permission of the Receiver) prohibited from: (a) entering such premises; (b) removing anything from such premises; or (c) destroying, concealing, or erasing anything on such premises.

20.    In order to execute the express and implied terms of this order, the Receiver is authorized to change door locks to the premises described above.  The Receiver shall have exclusive control of the keys.  The Receivership Defendants, or any other person acting or purporting to act on their behalf, are ordered not to change the locks in any manner, nor to have duplicate keys made, nor shall they have such keys in their possession during the term of the receivership.

21.    The Receiver is authorized to open all mail directed to, or received by, or at the offices or post office boxes of the Receivership Defendants, and to inspect all mail opened prior to the entry of this order, to determine whether items or information therein fall within the mandates of this order.

22.    Upon the request of the Receiver, the United States Marshals Service, in any judicial

district, is hereby ordered to assist the Receiver in carrying out his duties to take possession, custody, and control of, or to identify the location of, any assets, records, or other materials belonging to the Receivership Estate.

## VI. Notice to Third Parties

23.     The Receiver shall promptly give notice of his appointment to all known officers, directors, agents, employees, shareholders, creditors, debtors, managers, and general and limited partners of the Receivership Defendants, as the Receiver deems necessary or advisable to effectuate the operation of the receivership.

24.     All persons and entities owing any obligation, debt, or distribution with respect to an ownership interest to any Receivership Defendant shall, until further ordered by the court, pay all such obligations in accordance with the terms thereof to the Receiver, and his receipt for such payments shall have the same force and effect as if the Receivership Defendants had received such payment.

25.     In furtherance of his responsibilities in this matter, the Receiver is authorized to communicate with, and serve this order on, any person, entity, or government office that he deems appropriate to inform them of the status of this matter and/or the financial condition of the Receivership Estate.   All government offices that maintain public files of security interests in real and personal property shall, consistent with such office's applicable procedures, record this order upon the request of the Receiver or the SEC.

26.     The Receiver is authorized to instruct the United States Postmaster to hold and/or reroute mail that is related, directly or indirectly, to the business, operations, or activities of any of the Receivership Defendants (the "Receiver's Mail"), including all mail addressed to, or for the benefit of, the Receivership Defendants.   The Postmaster shall not comply with, and shall

immediately report to the Receiver, any change of address or other instruction given by anyone other than the Receiver concerning the Receiver's Mail. The Receivership Defendants shall not open any of the Receiver's Mail and shall immediately turn over such mail, regardless of when received, to the Receiver.  All personal mail of Faulkner, and/or any mail appearing to contain privileged information related to Faulkner, and/or any mail not falling within the mandate of the Receiver, shall be released to the named addressee by the Receiver.  The foregoing instructions shall apply to any proprietor, whether individual or entity, of any private mail box, depository, business, or service, or mail courier or delivery service, hired, rented, or used by the Receivership Defendants.  The Receivership Defendants shall not open a new mailbox, or take any steps or make any arrangements to receive mail in contravention of this order, whether through the U.S. mail, a private mail depository, or courier service.

27.     Subject to payment for services provided, any entity furnishing water, electric, telephone, sewage, garbage or trash removal services to the Receivership Defendants shall maintain such service and transfer any such accounts to the Receiver, unless instructed to the contrary by the Receiver.

28.     Subject to paragraph 17 of this order, the Receiver is authorized to assert, prosecute, and/or negotiate any claim under any insurance policy held by or issued on behalf of the Receivership Defendants, or their officers, directors, agents, employees or trustees, and to take any and all appropriate steps in connection with such policies.

## VII.  <u>Injunction Against Interference with Receiver</u>

29.  The Receivership Defendants and all persons receiving notice of this order by personal service, facsimile, or otherwise, are hereby restrained and enjoined from directly or indirectly taking any action or causing any action to be taken, without the express written agreement of the Receiver, that would:

     A.    interfere with the Receiver's efforts to take control, possession, or management of any Receivership Assets; such prohibited actions include, but are not limited to, using self-help or executing or issuing or causing the execution or issuance of any court attachment, subpoena, replevin, execution, or other process for the purpose of impounding or taking possession of, or interfering with or creating or enforcing a lien upon, any Receivership Assets;

     B.    hinder, obstruct or otherwise interfere with the Receiver in the performance of his duties; such prohibited actions include, but are not limited to, concealing, destroying, or altering records or information;

     C.    dissipate or otherwise diminish the value of any Receivership Assets; such prohibited actions include, but are not limited to, releasing claims or disposing, transferring, exchanging, assigning, or in any way conveying any Receivership Assets, enforcing judgments, assessments, or claims against any Receivership Assets or any Receivership Defendant, attempting to modify, cancel, terminate, call, extinguish, revoke or accelerate (the due date), of any lease, loan, mortgage, indebtedness, security agreement or other agreement executed by any Receivership Defendant or that otherwise affects any Receivership Assets; or,

     D.    interfere with or harass the Receiver, or interfere in any manner with the exclusive jurisdiction of this court over the Receivership Estate.

30.  The Receivership Defendants shall cooperate with and assist the Receiver in the performance of his duties.

31.  The Receiver shall promptly notify the court and SEC counsel of any failure or apparent failure of any person or entity to comply in any way with the terms of this order.

## VIII.  <u>Stay of Litigation</u>

32.  As set forth in detail below, the following proceedings, excluding the instant

proceeding and all police or regulatory actions and actions of the SEC related to the above-captioned

enforcement action, are stayed until further order of the court:

> All civil legal proceedings of any nature, including, but not limited to, bankruptcy proceedings, arbitration proceedings, foreclosure actions, default proceedings, or other actions of any nature involving: (a) the Receiver, in his capacity as Receiver; (b) any Receivership Assets, wherever located; (c) the Receivership Defendants, including subsidiaries and partnerships; or, (d) any of the Receivership Defendants' past or present officers, directors, managers, agents, or general or limited partners sued for, or in connection with, any action taken by them while acting in such capacity of any nature, whether as plaintiff, defendant, third-party plaintiff, third-party defendant, or otherwise (such proceedings are hereinafter referred to as "Ancillary Proceedings").

33.    The parties to any and all Ancillary Proceedings are enjoined from commencing or

continuing any such legal proceeding, or from taking any action, in connection with any such

proceeding, including, but not limited to, the issuance or employment of process.

34.    All Ancillary Proceedings are stayed in their entirety, and all courts having any

jurisdiction thereof are enjoined from taking or permitting any action until further order of this court.

Further, as to a cause of action accrued or accruing in favor of one or more of the Receivership

Defendants against a third person or party, any applicable statute of limitation is tolled during the

period in which this injunction against commencement of legal proceedings is in effect as to that

cause of action.

## IX.  Managing Assets

35.    For the Receivership Estate, the Receiver shall establish one or more custodial

accounts at a federally insured bank to receive and hold all cash equivalent Receivership Assets (the

"Receivership Fund").

36.    The Receiver's deposit account shall be entitled "Receiver's Account, Estate of

Christopher A. Faulkner, Breitling Energy Corporation, and Breitling Oil & Gas Corporation,"

together with the name of the action.

37.     The Receiver may, without further order of this court, transfer, compromise, or otherwise dispose of any Receivership Assets, other than real estate, in the ordinary course of business, on terms and in the manner the Receiver deems most beneficial to the Receivership Estate, and with due regard to the realization of the true and proper value of such Receivership Assets.

38.     Subject to paragraph 39, immediately below, the Receiver is authorized to locate, list for sale or lease, engage a broker for sale or lease, cause the sale or lease, and take all necessary and reasonable actions to cause the sale or lease of all real property in the Receivership Estate, either at public or private sale, on terms and in the manner the Receiver deems most beneficial to the Receivership Estate, and with due regard to the realization of the true and proper value of such real property.

39.     Upon further order of this court, pursuant to such procedures as may be required by this court and additional authority such as 28 U.S.C. §§ 2001 and 2004, the Receiver is authorized to sell, and transfer clear title to, all real property in the Receivership Estates.

40.     The Receiver is authorized to take all actions to manage, maintain, and/or wind-down business operations of the Receivership Estate, including making legally required payments to creditors, employees, and agents of the Receivership Estate and communicating with vendors, investors, governmental and regulatory authorities, and others, as appropriate.

41.     The Receiver shall take all necessary steps to enable the Receivership Fund to obtain and maintain the status of a taxable "Settlement Fund," within the meaning of section 468B of the Internal Revenue Code and of the regulations, when applicable, whether proposed, temporary, or final, or pronouncements thereunder, including the filing of the elections and statements contemplated by those provisions.  The Receiver shall be designated the administrator of the Settlement Fund, pursuant to Treas. Reg. § 1.468B-2(k)(3)(i), and shall satisfy the administrative

requirements imposed by Treas. Reg. § 1.468B-2, including but not limited to (a) obtaining a taxpayer identification number, (b) timely filing applicable federal, state, and local tax returns and paying taxes reported thereon, and (c) satisfying any information, reporting, or withholding requirements imposed on distributions from the Settlement Fund.  The Receiver shall cause the Settlement Fund to pay taxes in a manner consistent with treatment of the Settlement Fund as a "Qualified Settlement Fund."  The Receivership Defendants shall cooperate with the Receiver in fulfilling the Settlement Funds' obligations under Treas. Reg. § 1.468B-2].

## X.  Investigate and Prosecute Claims

42.    Subject to the requirement, in Section VIII above, that leave of this court is required to resume or commence certain litigation, the Receiver is authorized, empowered, and directed to investigate, prosecute, defend, intervene in, or otherwise participate in, compromise, and/or adjust actions in any state, federal, or foreign court or proceeding of any kind as may in his discretion, and in consultation with SEC counsel, be advisable or proper to recover and/or conserve Receivership Assets.

43.    Subject to his obligation to expend receivership funds in a reasonable and cost-effective manner, the Receiver is authorized, empowered, and directed to investigate the manner in which the financial and business affairs of the Receivership Defendants were conducted and (after obtaining leave of the court) to institute such actions and legal proceedings, for the benefit and on behalf of the Receivership Estate, as the Receiver deems necessary and appropriate; the Receiver may seek, among other legal and equitable relief, the imposition of constructive trusts, disgorgement of profits, asset turnover, avoidance of fraudulent transfers, rescission and restitution, collection of debts, and such other relief from the court as may be necessary to enforce this order.  Where appropriate, the Receiver should provide prior notice to SEC counsel before commencing

investigations and/or actions.

44.     The Receiver hereby holds, and is therefore empowered to waive, all privileges, including the attorney-client privilege, held by the entity Receivership Defendants.  This paragraph does not apply to any applicable rights under the Fifth Amendment to the United States Constitution.

45.     The Receiver has a continuing duty to ensure that there are no conflicts of interest between the Receiver, his Retained Personnel (as that term is defined below), and the Receivership Estate.

## XI.  Bankruptcy Filing

46.     The Receiver may seek authorization of the court to file voluntary petitions for relief under Title 11 of the United States Code (the "Bankruptcy Code") for the entity Receivership Defendants.  If an entity Receivership Defendant is placed in bankruptcy proceedings, the Receiver may become, and may be empowered to operate each of the Receivership Estate as, a debtor in possession.  In such a situation, the Receiver shall have all of the powers and duties as provided a debtor in possession under the Bankruptcy Code to the exclusion of any other person or entity.  Pursuant to paragraph 4 above, the Receiver is vested with management authority for the entity Receivership Defendants and may therefore file and manage a Chapter 11 petition.

47.     The provisions of Section VIII above bar any person or entity, other than the Receiver, from placing the entity Receivership Defendants in bankruptcy proceedings.

## XII.  Liability of Receiver

48.     Until further order of the court, the Receiver shall not be required to post bond or give an undertaking of any type in connection with his fiduciary obligations in this matter.

49.     The Receiver and his agents, acting within scope of such agency ("Retained Personnel") are entitled to rely on all outstanding rules of law and orders of this court and shall not

be liable to anyone for their own good faith compliance with any order, rule, law, judgment, or decree. In no event shall the Receiver or Retained Personnel be liable to anyone for their good faith compliance with their duties and responsibilities as Receiver or Retained Personnel.

50.     This court shall retain jurisdiction over any action filed against the Receiver or Retained Personnel based upon acts or omissions committed in their representative capacities.

51.     In the event the Receiver decides to resign, the Receiver shall first give written notice to the SEC's counsel of record and the court of his intention, and the resignation shall not be effective until the court appoints a successor. The Receiver shall then follow such instructions as the court may provide.

## XIII.  Recommendations and Reports

52.     The Receiver is authorized, empowered, and directed to develop a plan for the fair, reasonable, and efficient recovery and liquidation of all remaining, recovered, and recoverable Receivership Assets (the "Liquidation Plan").

53.     Within thirty (30) days of the entry date of this order, the Receiver shall file a status report with the court. The status report shall include a summary of receivership activities to date. It shall also include a proposed plan for administering the receivership going forward, as well as a proposed deadline by which the Receiver will submit the Liquidation Plan. The Receiver's fees—including all fees and costs for the Receiver and others retained to assist in the administration and liquidation of the Receivership estate—are capped at $75,000 during the initial 30-day period. Further fee limitations, if any, will be set by the court after the Receiver submits the status report.

54.     Within the first day of each calendar quarter, beginning January 2, 2018, the Receiver shall file and serve a full report and accounting of each Receivership Estate (the "Quarterly Status Report"), reflecting (to the best of the Receiver's knowledge as of the period covered by the report)

the existence, value, and location of all Receivership Assets, and of the extent of liabilities, both those claimed to exist by others and those the Receiver believes to be legal obligations of the Receivership Estate.

55. The Quarterly Status Report shall contain the following:

A. a summary of the operations of the Receiver;

B. the amount of cash on hand, the amount and nature of accrued administrative expenses, and the amount of unencumbered funds in the estate;

C. a schedule of all the Receiver's receipts and disbursements (attached as Exhibit A to the Quarterly Status Report), with one column for the quarterly period covered and a second column for the entire duration of the receivership;

D. a description of all known Receivership Assets, including approximate or actual valuations, anticipated or proposed dispositions, and reasons for retaining assets where no disposition is intended;

E. a description of liquidated and unliquidated claims held by the Receivership Estate, including the need for forensic and/or investigatory resources; approximate valuations of claims; and anticipated or proposed methods of enforcing such claims (including likelihood of success in: (i) reducing the claims to judgment; and, (ii) collecting such judgments);

F. a list of all known creditors with their addresses and the amounts of their claims;

G. the status of Creditor Claims Proceedings, after such proceedings have been commenced; and,

H. the Receiver's recommendations for a continuation or discontinuation of the receivership and the reasons for the recommendations.

56. On the request of the SEC, the Receiver shall provide the SEC with any documentation that the SEC deems necessary to meet its reporting requirements, that is mandated by statute or Congress, or that is otherwise necessary to further the SEC's mission.

## XIV.  Fees, Expenses and Accountings

57.     Subject to paragraphs 58 through 64 immediately below, the Receiver need not obtain court approval prior to the disbursement of cash in the Receivership Fund for expenses in the ordinary course of the administration and operation of the receivership.  Further, prior court approval is not required for payments of applicable federal, state, or local taxes.

58.     Subject to paragraph 59 immediately below, the Receiver is authorized to solicit persons and entities to be Retained Personnel to assist him in carrying out the duties and responsibilities described in this Order.  The Receiver may engage Retained Personnel without obtaining an order of the court authorizing such engagement.

59.     Subject to the limitations in paragraph 53 above, the Receiver and Retained Personnel are entitled to reasonable compensation and expense reimbursement from the Receivership Estate as described in the "Billing Instructions for Receivers in Civil Actions Commenced by the U.S. Securities and Exchange Commission" (the "Billing Instructions") agreed to by the Receiver.  Such compensation shall require the prior approval of the court.

60.     Within forty-five (45) days after the end of each calendar quarter, the Receiver and Retained Personnel shall apply to the court for compensation and expense reimbursement from the Receivership Estate (the "Quarterly Fee Applications").  At least thirty (30) days prior to filing each Quarterly Fee Application with the court, the Receiver shall serve upon SEC counsel a complete copy of the proposed Application, together with all exhibits and relevant billing information in a format to be provided by SEC staff.

61.     All Quarterly Fee Applications will be interim and will be subject to cost benefit and final reviews at the close of the receivership.  At the close of the receivership, the Receiver shall file a final fee application, describing in detail the costs and benefits associated with all litigation and

other actions pursued by the Receiver during the course of the receivership.

  62. Quarterly Fee Applications may be subject to a holdback in the amount of 20% of the amount of fees and expenses for each application filed with the court.  The total amounts held back during the course of the receivership will be paid out at the discretion of the court as part of the final fee application submitted at the close of the receivership.

  63. Each Quarterly Fee Application shall:

   A. comply with the terms of the Billing Instructions agreed to by the Receiver; and,

   B. contain representations (in addition to the Certification required by the Billing Instructions) that: (i) the fees and expenses included therein were incurred in the best interests of the Receivership Estate; and (ii) with the exception of the Billing Instructions, the Receiver has not entered into any agreement, written or oral, express or implied, with any person or entity concerning the amount of compensation paid or to be paid from the Receivership Estate, or any sharing thereof.

  64. At the close of the Receivership, the Receiver shall submit a Final Accounting, in a format to be provided by SEC staff, as well as the Receiver's final application for compensation and expense reimbursement.

  **SO ORDERED**.

September 25, 2017.

SIDNEY A. FITZWATER
UNITED STATES DISTRICT JUDGE

**CORRIGAN & MORRIS, LLP**
Brian T. Corrigan  (Cal Bar No. 143188)
bcorrigan@cormorllp.com
Stanley C. Morris  (Cal. Bar No. 183620)
scm@cormorllp.com
12300 Wilshire Boulevard, Suite 210
Los Angeles, California 90025
Telephone: (310) 394-2800
Facsimile: (310) 394-2825

*Attorneys for Defendant*
    THOMAS L TAYLOR III

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CAROLE ANN FAULKNER and U.S. PROPERTY INVESTMENTS, INC., <br><br>            Plaintiffs, <br><br>     v. <br><br> THOMAS L. TAYLOR III, <br><br>            Defendant. | Case No.: _____ <br><br> (Los Angeles Superior Court Case No.: SC128374) <br><br> **EXHIBIT D TO** <br><br> **NOTICE OF REMOVAL OF CIVIL ACTION UNDER 28 U.S.C. §§ 1442 AND 1441** |

*CORRIGAN & MORRIS LLP*
*12300 Wilshire Boulevard, Suite 210*
*Los Angeles, CA 90025*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| **SECURITIES AND EXCHANGE** | § | |
| **COMMISSION**, | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Case No.: 3:16-cv-01735-D |
| | § | |
| **CHRISTOPHER A. FAULKNER,** | § | |
| **BREITLING ENERGY CORPORATION,** | § | |
| **JEREMY S. WAGERS, JUDSON F.** | § | |
| **("RICK") HOOVER, PARKER R.** | § | |
| **HALLAM, JOSEPH SIMO, DUSTIN** | § | |
| **MICHAEL MILLER RODRIGUEZ,** | § | |
| **BETH C. HANDKINS, GILBERT** | § | |
| **STEEDLEY, BREITLING OIL & GAS** | § | |
| **CORPORATION, CRUDE ENERGY,** | § | |
| **LLC, PATRIOT ENERGY, INC.,** | § | |
| Defendants, | § | |
| | § | |
| and | § | |
| | § | |
| **TAMRA M. FREEDMAN and** | § | |
| **JETMIR AHMEDI**, | § | |
| Relief Defendants. | § | |
| | § | |

RECEIVER'S MOTION TO AMEND ORDER TO SHOW CAUSE RE: CONTEMPT AGAINST
DEFENDANT CHRISTOPHER A. FAULKNER AND NON-PARTY CAROLE FAULKNER
AND BRIEF IN SUPPORT

THE TAYLOR LAW OFFICES, P.C.

Andrew M. Goforth
Texas State Bar: 24076405
goforth@tltaylorlaw.com
*Of Counsel*

245 West 18th Street
Houston, Texas 77008
Tel: 713.626.5300
Fax: 713.402.6154

COUNSEL FOR TEMPORARY RECEIVER

## TABLE OF CONTENTS

Table of Contents ................................................................................................................ iii

Table of Authorities ............................................................................................................ iv

I.    Summary of Violations ................................................................................................2

II.    Legal Authority .............................................................................................................6

III.   Chronology of Relevant Events ..................................................................................8

IV.   Argument ........................................................................................................................9

    A.   The RackAlley Sale Proceeds are Receivership Assets ....................................9

    B.   Faulkner and Carole Violated Numerous Provisions of the Order Appointing
        Receiver ............................................................................................................11

    C.   Faulkner and Carole Did Not Act with Good Faith ........................................15

V.    Relief Requested .........................................................................................................16

Exhibit D, p. 000063

## TABLE OF AUTHORITIES

<u>CASES</u>

*Am. Airlines, Inc. v. Allied Pilots Ass'n*, 228 F.3d 574 (5th Cir. 2000)  …………..………….6

*Chao v. Transocean Offshore, Inc.*, 276 F.3d 725 (5th Cir. 2002)  …..……..……..………..6

*Hicks v. Feiock*, 485 U.S. 624 (1988)  ………………………………………..……………..6

*In re Williams*, 306 F. Supp. 617 (D.D.C. 1969)  …………………………………………6

*Jim Walter Res., Inc. v. Int'l Union, United Mine Workers of Am.*, 609 F.2d 165 (5th Cir. 1980)  ………………………………………………………..………..6

*McComb v. Jacksonville Paper Co.*, 336 U.S. 187 (1949)  …………………………………6

*NLRB v. Laborers' Int'l Union of N. Am., AFL-CIO*, 882 F.2d 949 (5th Cir. 1989)  ….………7

*NLRB v. Trailways, Inc.*, 729 F.2d 1013 (5th Cir. 1984)  ……….…………………..……….6

*Petroleos Mexicanos v. Crawford Enters., Inc.*, 826 F.2d 392 (5th Cir. 1987)  …………….…..6

*Shillitani v. United States*, 384 U.S. 364 (1966)  ……………………..……………….……..6

*United States v. City of Jackson, Miss.*, 359 F.3d 727 (5th Cir. 2004)……………..………….6

*United States v. Ross*, 243 F. Supp. 496 (S.D.N.Y. 1965) …………………………………6

*Waffenschmidt v. Mackay*, 763 F.2d 711 (5th Cir. 1985) ……………………..……….7

<u>FEDERAL RULES AND STATUTES</u>

Fed. R. Civ. P. 65  …..…………………………………………………………….7

Exhibit D, p. 000064

Court-appointed Receiver Thomas L. Taylor III ("Receiver") moves the Court to amend its September 6, 2017 show cause Order (Dkt. 126) ("Show Cause Order") to address additional violations by Defendant Christopher A. Faulkner ("Faulkner") and his mother, non-party Carole A. Faulkner ("Carole") which have occurred since the Show Cause Order was entered. As detailed below, Faulkner and Carole have attempted to conceal, transfer, receive, and/or otherwise dispose of and withdraw $210,000 in Receivership Assets (the "RackAlley Proceeds," as further identified below) following entry of, and in violation of, the Court's September 25, 2017 Order appointing Mr. Taylor as Receiver (Dkt. 142) ("Order Appointing Receiver").[1] The Receiver also asks the Court to reschedule the November 6, 2017 show cause hearing and related deadlines set in the Show Cause Order to dates which would permit full briefing by Faulkner, Carole and the Receiver with respect to this Motion, and permit the newly-discovered acts in contempt of the Order Appointing Receiver detailed herein to be adjudicated at that hearing, in addition to the acts in violation of the Court's August 14, 2017 Order Appointing Temporary Receiver (Dkt. 108), as detailed in the Receiver's previously filed Motion for Order to Show Cause re: Contempt (Dkt. 123).[2]

The Receiver requests that the Court (i) hold that the RackAlley Proceeds are Receivership Assets; (ii) hold Faulkner and Carole in contempt of the Order Appointing Receiver; (iii) order Faulkner and Carole to pay to the Receiver any portion of the $210,000 in RackAlley Proceeds under their control; (iv) order Faulkner and Carole to pay to the Receiver all

---

[1] The Order Appointing Receiver expands the scope of assets placed under the Receiver's control from "**oil-and-gas related assets**" to "*all assets*—in any form or of any kind whatsoever—owned, controlled, managed, or possessed by … , directly or indirectly," Faulkner, Breitling Oil & Gas Corporation ("BOG"), and Breitling Energy Corporation ("BECC") (collectively the "Receivership Defendants"). Dkt. 142 p. 1 (emphasis added) (*compare* to Dkt. 108 p. 1).

[2] The Receiver incorporates by reference his previously filed Motion for Order to Show Cause re: Contempt (Dkt. 123) and Appendix in Support thereof (Dkt. 124).

reasonable costs and attorney's fees expended in pursuit of the RackAlley Proceeds and the filing and prosecution of this Motion; and, if necessary, (v) impose fines for their failure to do so; and (vi) order the United States Marshals Service to arrest them and hold them in custody until they purge themselves of their contempt by paying the Receiver any portion of the $210,000 in RackAlley Proceeds under their control.

## I.   SUMMARY OF VIOLATIONS

In a brazen plan and scheme to impede the Receiver from carrying out his duties and obligations under this Court's Orders of appointment (Dkts. 108, 142), Faulkner and Carole -- acting in concert -- have undertaken numerous actions to conceal and withdraw the $210,000 in RackAlley Proceeds. The RackAlley Proceeds derive from the early-September sale to HiVelocity Hosting ("HiVelocity") of assets of RackAlley, LLC ("RackAlley"), a technology company of which Faulkner is partial owner[3] (Taylor Decl. ¶11, **Exhibit O**, APP 004, 043-45); Carole is the registered agent for RackAlley in California. Taylor Decl. ¶13, **Exhibit S**, APP 005, 057. On September 21, 2017 RackAlley issued three checks comprising Faulkner's share of that sale (for $60,000, $70,000 and $80,000, respectively), the RackAlley Proceeds. On September 25, 2017, the Court entered the Order Appointing Receiver, and all assets owned, controlled, managed, or possessed, directly or indirectly, by Faulkner -- including the RackAlley Proceeds -- came within the scope of the Receivership Assets. Dkt. 142 p. 1.

The Receiver made written demands on counsel for Faulkner on October 2, 9, 10 and 16, 2017 for the turnover of the RackAlley Proceeds. Notwithstanding these demands, and after they

---

[3] Faulkner is entitled to at least $280,833.33 of proceeds from the sale of RackAlley's assets. Seventy-five percent of the sales proceeds were paid by HiVelocity to RackAlley, which then paid the RackAlley Proceeds for Faulkner's benefit. The remaining 25% are to be paid to RackAlley from escrow after nine months. **Exhibits P, Q**, APP 046-52.

were made, Faulkner and Carole engaged in the violative conduct below, refusing to turn over the RackAlley Proceeds to the Receiver and attempting to conceal and withdraw these proceeds for their own benefit.

The RackAlley Proceeds checks were issued -- at Faulkner's direction -- to U.S. Property Investments, Inc. ("USPI"), a Faulkner-owned Wyoming shell entity that he and Carole created.[4] The 2017 Annual Report filed with the Wyoming Secretary of State on September 6, 2017 listed "C A Faulkner" as President, Secretary and sole Director of USPI.[5] Faulkner directed RackAlley to mail the USPI checks to 2415 Eastern Canal Court, Venice, CA 90291, his residence at the time. Carole, representing herself as USPI's President and Secretary, using her date of birth and Social Security and Texas Drivers License numbers, and Faulkner's Venice, CA address, opened a USPI account (ending 826) ("USPI Account") in person at the at Bank of the West branch in Beverly Hills, CA. Declaration of Matt Zargar ("Zargar Decl."), APP 064.

On September 29, 2017 -- four days **after** Faulkner and Carole had actual notice of the Order Appointing Receiver -- Faulkner and Carole deposited the $60,000 RackAlley Proceeds check into the USPI Account. The Receiver sent a written demand to Faulkner's counsel Carter Biosvert on October 2, 2017 for the turnover of the RackAlley Proceeds. Rather than comply

---

[4] According to records maintained by the Wyoming Secretary of State, USPI was created on or about September 29, 2016. Declaration of Thomas L. Taylor III ("Taylor Decl.") ¶14, Exhibit T, APP 005. It appears that this entity was created to facilitate another fraudulent scheme perpetrated by Faulkner through his entity Homes, Inc. related to residential real estate "flipping" (*i.e.*, "property investments") in southern California. *See SEC v. Faulkner, et al*., Case No. 3:17-cv-02405-B (N.D. Tex. 2017) ("*Homes, Inc.*"). As with USPI, Carole opened an account at Bank of the West in the name of Homes, Inc.

[5] Both Faulkner and Carole share the initials "C. A." Their use of these initials in corporate and financial records permits each of them to act on behalf of their shell corporations and direct the transfer of assets with financial institutions. The use of the same naming convention has been attempted by Faulkner and Carole in the past to facilitate their fraudulent activity. *See, e.g.*, Appendix in Support of SEC's Motion for Preliminary Injunction, *Ex Parte* Temporary Restraining Order, Appointment of Receiver and Other Ancillary Relief (Dkt. 105), at APP 1521-24, ¶¶19, 21, 24, 26.

with the Receiver's demand, however, Faulkner and Carole acted to conceal their conduct from the Receiver, the SEC and criminal authorities when, on October 4, 2017 -- two days **after** the Receiver's first written turnover demand to Faulkner's counsel -- they caused to be filed with the Wyoming Secretary of State an Amended 2017 Annual Report removing "C A Faulkner" as President, Secretary and Director and substituting into these positions (and that of Vice President) Shannon Bresnahan ("Bresnahan"). Until recently, Bresnahan shared the Eastern Canal Court residence in Venice, CA with Faulkner. Bresnahan has represented to the Receiver (1) that she has no knowledge of or connection to USPI; and (2) that she had no knowledge of the Wyoming filing.[6]

On October 11, 2017 -- one day **after** a telephone conference between the Receiver, the SEC Staff and Faulkner's counsel regarding the turnover of the RackAlley Proceeds -- Faulkner and Carole attempted to deposit the two remaining checks of RackAlley Proceeds (for $70,000 and $80,000, respectively) into the USPI Account. These checks could not be deposited, however, because RackAlley had placed a hold on them with Bank of America at the insistence of the Receiver. In this regard, on September 29, 2017 the Receiver served on Mohamed Arab ("Arab"), Faulkner's RackAlley business partner, the Order Appointing Receiver and demanded that RackAlley turnover all RackAlley Proceeds still under its control. Taylor Decl. ¶15, **Exhibit U**, APP 005, 060. The Receiver forwarded the Order Appointing Receiver and his demand to Sigal Chattah, counsel for RackAlley in the HiVelocity sale transaction, on October 9, 2017 after learning of her representation. Arab, on advice from Chattah, has refused to turn over any portion

---

[6] On October 16, 2017 -- three days **after** Faulkner's and Carole's counsel were served with notice of the Receiver's production subpoena to Bank of the West regarding, *inter alia*, accounts related to Bresnahan -- Faulkner and Carole again amended USPI's 2017 Annual Report, removing Bresnahan and replacing her as Secretary and Director with a Gerald Pitts.

of the RackAlley Proceeds under RackAlley's control. However, he agreed to place a hold on the un-negotiated checks issued to USPI.[7] Taylor Decl. ¶16, **Exhibit V**, APP 005, 063.

On October 13, 2017 -- the **same day** the Receiver gave notice to Faulkner's counsel of his production subpoena to Bank of the West (Taylor Decl. ¶6, **Exhibit F**, APP 002, 015) -- Faulkner and Carole withdrew the $60,000 in RackAlley Proceeds that were deposited into the USPI Account, leaving a balance of $12.19. Carole wrote two checks (one made out to "Cash" for $10,000 and one to "Bank of the West (Cashier's Check)" for $50,000) for these funds. The Texas Drivers License number and expiration date handwritten in the memo line of the two checks match the Texas Drivers License number and birth month and day of Carole's birthdate on the USPI Account Corporation Signature Card. Carole used these funds to purchase a $60,000 cashier's check from Bank of the West and issued to USPI. Bank of the West informed the Receiver on Friday, October 20, 2017 that this cashier's check had not yet been negotiated, and that it would attempt to place the cashier's check on hold before it could be negotiated by Faulkner or Carole.

Faulkner and Carole's refusal to turn over the RackAlley Proceeds to the Receiver, and their attempts to conceal these assets and USPI's connection to them from the Receiver, and withdraw them from the USPI Account, violate the Order Appointing Receiver, necessitating the present Motion.

---

[7] Arab refuses to turn over the RackAlley Proceeds under RackAlley's control because USPI is not named in the Order Appointing Receiver -- notwithstanding the overwhelming evidence clearly establishing that Faulkner is entitled to the RackAlley Proceeds, that USPI is owned, controlled and managed by Faulkner, and that Faulkner instructed RackAlley to pay the RackAlley Proceeds to USPI in order to perpetrate a fraud upon the Receiver in contempt of the Order Appointing Receiver. Taylor Decl. ¶16, **Exhibit V**, APP 005, 063. Accordingly the Receiver seeks a determination by the Court that the RackAlley Proceeds are Receivership Assets, to facilitate their turnover by RackAlley.

## II.  LEGAL AUTHORITY

This Court has the inherent power to enforce compliance with its lawful orders and mandates by contempt. *See Shillitani v. United States,* 384 U.S. 364, 370 (1966). This power is essential to the proper conduct of the judicial function: without it, courts would be unable to preserve decorum or assert their authority by order or decree. *See, e.g., In re Williams,* 306 F. Supp. 617, 618 (D.D.C. 1969).

The Receiver seeks an order directing Faulkner and Carole to show cause why they should not be cited for civil contempt, a remedial device intended to achieve full compliance with the Court's Orders and to vindicate the authority of the Court. *See Hicks v. Feiock,* 485 U.S. 624, 631 (1988); *McComb v. Jacksonville Paper Co.,* 336 U.S. 187, 191 (1949); *Petroleos Mexicanos v. Crawford Enters., Inc.,* 826 F.2d 392, 399-400 (5th Cir. 1987). A movant in a civil contempt proceeding "must establish by clear and convincing evidence that (1) a court order was in effect, (2) the order required specified conduct by the respondent, and (3) the respondent failed to comply with the court's order." *United States v. City of Jackson, Miss.,* 359 F.3d 727, 731 (5th Cir. 2004).

"The contemptuous actions need not be willful so long as the contemnor actually failed to comply with the court's order." *Am. Airlines, Inc. v. Allied Pilots Ass'n,* 228 F.3d 574, 581 (5th Cir. 2000) (citing *NLRB v. Trailways, Inc.,* 729 F.2d 1013, 1017 (5th Cir. 1984)). "'[I]n civil contempt proceedings the question is not one of intent but whether the alleged contemnors have complied with the court's order.'" *Jim Walter Res., Inc. v. Int'l Union, United Mine Workers of Am.,* 609 F.2d 165, 168 (5th Cir. 1980) (quoting *United States v. Ross,* 243 F. Supp. 496, 499 (S.D.N.Y. 1965)). "Good faith is not a defense to a civil contempt; the question is whether the alleged contemnor complied with the court's order." *Chao v. Transocean Offshore, Inc.,* 276 F.3d 725, 728 (5th Cir. 2002).

Non-parties with actual notice of the court's order who knowingly aid and abet another in violating the court's order may also be held in contempt. *See NLRB v. Laborers' Int'l Union of N. Am., AFL-CIO*, 882 F.2d 949, 954 (5th Cir. 1989); *Waffenschmidt v. Mackay*, 763 F.2d 711, 714 (5th Cir. 1985). "[G]ood faith is relevant to whether [a non-party] aided or abetted [a party] in dissipating the funds with knowledge that [the non-party] was violating the court's orders." *Waffenschmidt, 763 F.2d at 726*; see also FED. R. CIV. P. 65(d)(2) (stating that every injunction and restraining order "binds … the following who receive actual notice of it by personal service or otherwise: (A) the parties; (B) the parties' officers, agents, servants, employees, and attorneys; and (C) other persons who are in active concert or participation with anyone described in Rule 65(d)(2)(A) or (B)").[8]

The Court entered the Order Appointing Receiver at 7:34 AM CDT on September 25, 2017. Taylor Decl. ¶3, **Exhibit A**, APP 002, 006. Counsel for Faulkner, and Carole (both individually and through her counsel of record), appear on the electronic service list in the CM/ECF case management system Notice of Electronic Filing. *Id*. Faulkner and Carole had actual notice of the Order Appointing Receiver at this time. All actions subsequently taken by them in contravention of the Order Appointing Receiver, detailed below, are in contempt of that Order.

---

[8] The Order Appointing Receiver also specifies that its provisions apply to persons who receive actual notice of it. *See*, *e.g.*, ¶3 ("all persons and entities with direct or indirect control over any of the Receivership Assets … are hereby restrained and enjoined…. All persons and entities with direct or indirect control over any Receivership Assets are ordered…"); ¶14 ("All persons and entities having control, custody, or possession of any of the Receivership Assets are hereby directed…"); ¶15 ("any persons receiving notice of this order … having possession of … records, … or assets of the Receivership Defendants are hereby directed…"); ¶29 ("The Receivership Defendants and all persons receiving notice of this Order by personal service, facsimile, or otherwise, are hereby restrained and enjoined…").

## III. CHRONOLOGY OF RELEVANT EVENTS

| Date | Description | APP |
|------|-------------|-----|
| **Date** | **Description** | **APP** |
| September 5, 2017 | Receiver files Motion for Order to Show Cause re: Contempt of Order Appointing Temporary Receiver (Dkt. 108) against Faulkner, Carole, entities | Dkt. 123 |
| September 6, 2017 | Court enters Show Cause Order | Dkt. 125 |
| September 6, 2017 | Carole opens the USPI Account at Bank of the West, represents she is President and Secretary of USPI | 028 |
| September 6, 2017 | USPI Annual Report filed with WY Sec. of State; C A Faulkner listed as Secretary/Director, President; C A Faulkner executes as Treasurer or Fiscal Agent | 040 |
| September 7, 2017 | Sale of RackAlley assets to HiVelocity closes | |
| September 21, 2017 | Three RackAlley Proceeds checks issued to USPI, mailed to Faulkner's home address | 036 |
| **September 25, 2017** | **Court enters Order Appointing Receiver; Faulkner and Carole served with same** | **Dkt. 142** |
| September 29, 2017 | Receiver transmits Order Appointing Receiver to Arab, demands the turnover of Faulkner's RackAlley Proceeds under RackAlley's control | 060 |
| September 29, 2017 | Faulkner and Carole deposit $60,000 RackAlley Proceeds check into USPI Account | 031, 035, 036 |
| October 2, 2017 | Receiver emails written demand for turnover of Faulkner's RackAlley Proceeds to Faulkner Counsel Carter Biosvert | 008 |
| October 4, 2017 | Faulkner and Carole cause to be filed with Wyoming Secretary of State an Amended 2017 Annual Report removing "C A Faulkner" as President, Secretary and Director of USPI, substituting in Shannon Bresnahan | 041 |
| October 9, 2017 | Receiver emails second written demand for turnover of Faulkner's RackAlley Proceeds to Faulkner counsel Carter Biosvert | 010 |

| Date | Description | APP |
|------|-------------|-----|
| October 9, 2017 | Receiver emails written demand for turnover of RackAlley Proceeds to RackAlley counsel Sigal Chattah | |
| October 10, 2017 | Receiver, SEC counsel and Faulkner's counsel participate in conference call regarding the Receiver's turnover demand for the RackAlley Proceeds | 002, 011 |
| October 10, 2017 | Receiver emails third written demand for turnover of RackAlley Proceeds to Faulkner counsel | 011 |
| October 11, 2017 | Faulkner and Carole attempt to deposit the $70,000 and $80,000 RackAlley Proceeds checks into USPI Account | 035, 036 |
| October 12, 2017 | RackAlley counsel Chattah represents in writing to Receiver that RackAlley placed a hold with its bank on the $70,000 and $80,000 RackAlley Proceeds checks issued to USPI | 063 |
| October 13, 2017 | Receiver serves production subpoena on Bank of the West; serves notice of same on all parties | 015 |
| October 13, 2017 | Faulkner and Carole withdraw the $60,000 in RackAlley Proceeds that had been deposited into USPI Account | 035, 038-39 |
| October 16, 2017 | Receiver emails fourth written demand for turnover of RackAlley Proceeds to counsel for Faulkner, Carole, RackAlley, and to Arab | 013 |
| October 16, 2017 | Faulkner and Carole cause to be filed with Wyoming Secretary of State an Amended 2017 Annual Report removing Bresnahan as President, Vice President, Secretary and Director, substituting in Gerald Pitts | 042 |

## IV. ARGUMENT

### A. The RackAlley Sale Proceeds are Receivership Assets

Mr. Taylor was appointed as receiver "for the estates of the Receivership Defendants and the Receivership Assets." Order Appointing Receiver ¶2. The Receivership Assets consist of "all assets—in any form or of any kind whatsoever—owned, controlled, managed, or possessed by

… directly or indirectly," the Receivership Defendants. *Id.* p. 1. The Receivership Estate consists of, collectively:

> all Receivership Assets, including, but not limited to, monies, funds, securities, credits, effects, goods, chattels, lands, premises, leases, claims, rights, and other assets, together with all rents, profits, dividends, interest, or other income attributable thereto, of whatever kind, that the Receivership Defendants own, possess, have a beneficial interest in, or control directly or indirectly.

*Id.* ¶7(A). Accordingly, the Receivership Assets and Estate include any ownership interest of Faulkner in other entities, and any assets nominally in the name of other entities but which are owned, controlled, managed, or possessed, directly or indirectly, by Faulkner. It also would include any proceeds from the sale of an entity owned by Faulkner, or sales proceeds to which Faulkner was entitled.

Faulkner and his business partners in RackAlley, Arab and Matthew Rapoport[9], sold RackAlley assets to HiVelocity in early September 2017. Proceeds from that sale were paid to RackAlley. Faulkner was entitled to approximately $280,833.33 to $300,000 in proceeds.[10] Taylor Decl. ¶11, **Exhibits O, P, Q**, APP 004, 043, 046, 051. Faulkner, Arab and Rapoport agreed to a distribution by RackAlley of Faulkner's proceeds to USPI, rather than Faulkner directly. Compare Exh. P to Exh. Q, APP 046, 051. In fact Arab transmitted the RackAlley Proceeds checks representing Faulkner's share of the sale to Faulkner's residence in Venice, CA. Taylor Decl. ¶7(d), **Exhibit J**, APP 003, 036-037. Faulkner's assignment of these proceeds to USPI -- a shell entity under his ownership and control -- was nothing more than an artifice to conceal Faulkner's receipt of these funds from the Receiver, the SEC and the criminal authorities.

---

[9] Rapoport is a co-defendant with Faulkner in the *Homes, Inc.* action.

[10] 75% of these proceeds were due immediately, with the remaining 25% to be paid from escrow approximately nine months after closing. Exhs. P, Q, APP 046, 051.

Moreover, "C A Faulkner" was the President, Secretary, and Director of USPI. Taylor Decl. ¶8, **Exhibit L**, APP 003, 040. No other persons were listed as officers, directors, or owners. *Id*. The USPI account at Bank of the West -- into which the RackAlley Proceeds were deposited -- bears Faulkner's residence address and the signatory on the account is Carole Ann Faulkner. Taylor Decl. ¶7(a), **Exhibit G**, APP 003, 028. Carole opened the USPI Account at Bank of the West in person, representing herself as USPI's President and Secretary. Zargar Decl., App 064; Taylor Decl. ¶7(a), **Exhibit G**, APP 003, 028. As a wholly owned entity of Faulkner's, all of USPI's assets are -- at minimum -- controlled and managed by Faulkner. Accordingly, USPI's assets are Receivership Assets.

### B. Faulkner and Carole Violated Numerous Provisions of the Order Appointing Receiver

As set forth above, Faulkner and Carole had actual notice of the Order Appointing Receiver when it was entered by the Court on September 25, 2017. Exh. A, APP 006. At that time, the RackAlley Proceeds came within the scope of the Receivership Assets and Receivership Estate.

The Order Appointing Receiver states that "all Receivership Assets are frozen," and that "all persons and entities with direct or indirect control over any Receivership Assets," are "restrained and enjoined from directly or indirectly transferring, setting off, receiving, changing, selling, pledging, assigning, liquidating, or otherwise disposing of or withdrawing such assets." *Id*. ¶3. Moreover, "all persons receiving notice of this order … [are] restrained and enjoined from directly or indirectly taking any action or causing any action to be taken … that would: … dissipate or otherwise diminish the value of any Receivership Assets…." *Id*. ¶29 (collectively, the "Asset Freeze Provisions").

Additionally, "[a]ll persons and entities with direct or indirect control over any Receivership Assets are ordered to relinquish such control to the Receiver." *Id*. ¶3. Furthermore, "Faulkner and the past … officers, directors, … [and] attorneys … of the entity Receivership Defendants …, as well as those acting in their place, … [are] ordered and directed to preserve and turn over to the Receiver forthwith all paper and electronic information of, and/or relating to, … all Receivership Assets…." *Id*. ¶8 (collectively the "Turnover Provisions").

Moreover, the Order Appointing Receiver:

> restrained and enjoined [all persons receiving notice of the order] from directly or indirectly taking any action or causing any action to be taken … that would: … A. interfere with the Receiver's efforts to take control, possession, or management of any Receivership Assets; … B. hinder, obstruct or otherwise interfere with the Receiver in the performance of his duties; … or, D. interfere with or harass the Receiver….

*Id*. ¶29 (emphasis added) (the "Interference Provisions"). Faulkner and Carole's conduct as set forth herein has violated the Asset Freeze, Turnover and Interference Provisions of the Order Appointing Receiver.

The Receiver made written demands on Carter Biosvert, counsel for Faulkner, on October 2, 9, 10 and 16, 2017 for the turnover of the RackAlley Proceeds. Taylor Decl. ¶4, **Exhibits B, C, D, E**, APP 002, 008, 010, 011, 013. On October 10, 2017 the Receiver, the SEC Staff and Faulkner's counsel held a conference call regarding the turnover of the RackAlley Proceeds. Taylor Decl. ¶5, APP 002. Faulkner and Carole had possession, custody, or control over RackAlley Proceeds (and records relating to same) when the Order Appointing Receiver was entered, and at the time of each of these demands. They refused to comply with the Court's Order and the Receiver's demands.

On September 29, 2017 -- four days **after** receiving notice of the Order Appointing Receiver -- Faulkner and Carole deposited the $60,000 check, a portion of the RackAlley

Proceeds, into the USPI Account in violation of the Asset Freeze and Turnover Provisions.[11] Taylor Decl. ¶7(b), (d), **Exhibits H, J**, APP 003, 031, 036-37. On October 11 -- one day after the Receiver's conference call with the SEC Staff and Faulkner's counsel -- Faulkner and Carole attempted to deposit the two remaining RackAlley Proceeds checks (of $70,000 and $80,000) into the USPI Account in violation of the Asset Freeze and Turnover Provisions. *Id*. They were unable to do so because RackAlley had placed a hold on these checks at the insistence of the Receiver. Taylor Decl. ¶16, **Exhibit V**, APP 005, 063.[12]

Two days later, when they learned the $150,000 in funds would not be deposited, Faulkner and Carole withdrew the $60,000 in RackAlley Proceeds that had been deposited into the USPI Account, leaving only $12.19 in the account, in violation of the Asset Freeze and Turnover Provisions. In this regard they wrote two checks -- one made out to "Cash" for $10,000 and one to "Bank of the West (Cashier's Check)" for $50,000. Taylor Decl. ¶7(e), **Exhibit K**, APP 003, 038. They then purchased a cashier's check for $60,000 from Bank of the West issued to USPI. Carole's Texas Drivers License number (ending 379) and expiration date (4/12/18) were hand-written in the "memo" line for both the $10,000 USPI check 9486 made out to cash and the $50,000 USPI check 9487 made out to "Bank of the West (cashier's check)." Taylor Decl. ¶7(e), **Exhibit K**, APP 003, 038-39. The Drivers License number on these checks matches

---

[11] Carole opened the USPI Account in person at the Beverly Hills Branch at 9401 Wilshire Blvd., Beverly Hills, CA on September 6, 2017. Zargar Decl., APP 064. Carole represented herself as USPI's President and Secretary, using her date of birth and Social Security and Texas Drivers License Numbers, and Faulkner's Venice, CA address. Taylor Decl. ¶7(a), **Exhibit G**, APP 003, 028. The Social Security Number given by Carole when opening the USPI Account (ending 74) also matches the Social Security Number given by Carole when opening CitiBank accounts in the name of "Cindy A Faulkner" on behalf of several Breitling entities. *See* Appendix in Support of SEC's Motion for Preliminary Injunction, *Ex Parte* Temporary Restraining Order, Appointment of Receiver and Other Ancillary Relief (Dkt. 105), at APP 1521-22, ¶¶19, 21.

[12] These amounts were credited to the USPI Account when the checks were negotiated, then debited from the USPI Account on October 13, 2017, once Bank of the West learned these funds would not be transmitted by Bank of America. Taylor Decl. ¶7(c), **Exhibit I**, APP 003, 035.

the Drivers License number given by Carole when opening the USPI Account. Taylor Decl. ¶7(a), **Exhibit G**, APP 003, 028. The Drivers License expiration date on these checks corresponds to the birth day and month given by Carole when opening the USPI Account. *Id*. Carole's presence was required to cash these two checks.

Faulkner and Carole also have endeavored to conceal their conduct -- and ties to the USPI entity through which they have perpetrated their fraud upon the Receiver -- in contempt of the Interference Provisions of the Order Appointing Receiver. In this regard, on October 4, 2017 -- two days **after** the Receiver's first written turnover demand to Faulkner's counsel -- Faulkner and Carole caused to be filed with the Wyoming Secretary of State an amendment to the USPI 2017 Annual Report. Taylor Decl. ¶9, **Exhibit M**, APP 003, 041. In it, they purported to remove "C A Faulkner" as President, Secretary and Director of USPI, and substituted into these positions (and that of Vice President) Shannon Bresnahan ("Bresnahan"), a then-girlfriend of Faulkner's with whom he shared the Venice, CA residence. Taylor Decl. ¶12, **Exhibit R**, APP 004, 053. Bresnahan has stated to the Receiver that she had no knowledge of the Wyoming filing and had no knowledge of, or connection to, USPI. *Id*. On Monday October 16, 2017 -- after the Receiver on the previous Friday gave notice to Faulkner's and Carole's counsel of his subpoena to Bank of the West, which requested, *inter alia*, documents for accounts related to Bresnahan -- Faulker and Carole caused to be filed another amendment to the USPI 2017 Annual Report in an attempt to obfuscate Faulkner's ownership of USPI. Taylor Decl. ¶10, **Exhibit N**, APP 004, 042. In this amendment, they removed Bresnahan as officer and director and replaced her with a Gerald Pitts. *Id*.

### C. Faulkner and Carole Did Not Act with Good Faith

Given the intentional -- and fraudulent -- conduct set forth herein it cannot seriously be contended that Faulkner or Carole acted in good faith when they violated -- and aided each other's violations of -- the Order Appointing Receiver. USPI is wholly unrelated to RackAlley. It is clear that Faulkner and Carole's use of USPI and the USPI Account opened and controlled by Carole were undertaken to conceal the assets of the RackAlley sale from the Receiver, the SEC and the criminal authorities. There is no evidence that USPI gave any consideration for the RackAlley Proceeds which Faulkner caused to be paid to it.

Moreover, Faulkner and Carole's use of the "C A Faulkner" naming convention permitted either of them, each with the initials C. A. Faulkner, to act on behalf of USPI. Carole also falsely claimed to be the President and Secretary of USPI in opening the USPI Account. Taylor Decl. ¶7(a), **Exhibit G**, APP 003, 030. She was never listed as President or Secretary in the filings made with the Wyoming Secretary of State. **Exhibits L, M, N, T**, APP 040, 041, 042, 058. Moreover, the only purpose of Faulkner and Carole's October 4, 2017 amendment to the USPI 2017 Annual Report was to conceal their connection to USPI. Taylor Decl. ¶9, **Exhibit M**, APP 003, 041. Once that change was discovered, they again amended the USPI 2017 Annual Report. **Exhibit N**, APP 042. The Court should hold that Carole acted intentionally and not in good faith in her violations of the Order Appointing Receiver and her aiding Faulkner in his violations of the Order Appointing Receiver.

Faulkner and Carole have engaged in intentional misconduct in bad faith with the purpose of concealing Receivership Assets and preventing the Receiver from obtaining possession of these assets. These actions directly violate the Order Appointing Receiver's Asset Freeze Provisions, Turnover Provisions, and Interference Provisions. The Receiver asks that

Faulkner and Carole be held in contempt for their conduct, which violates the Order Appointing Receiver, and be required to disgorge to the Receivership Estate any portion of the $210,000 in RackAlley Proceeds under their control.

## V. RELIEF REQUESTED

The Receiver asks that this Court amend its Show Cause Order (Dkt. 125) to require Faulkner and Carole also to show cause why they should not be adjudged to be in contempt of its September 25, 2017 Order Appointing Receiver for the conduct described herein. The Receiver further asks the Court to reschedule the November 6, 2017 show cause hearing and related deadlines set in the Show Cause Order to a date which would permit full briefing by Faulkner, Carole and the Receiver with respect to this Motion, and permit the acts in contempt of the Order Appointing Receiver detailed herein to be adjudicated at that hearing, along with the acts in violation of the Court's August 14, 2017 Order Appointing Temporary Receiver (Dkt. 108), as detailed in the Receiver's previously filed Motion for Order to Show Cause re: Contempt (Dkt. 123).

The Receiver requests that the Court (i) hold that the RackAlley Proceeds are Receivership Assets; (ii) hold Faulkner and Carole in contempt of the Order Appointing Receiver; (iii) order Faulkner and Carole to pay to the Receiver any portion of the $210,000 in RackAlley Proceeds under their control; (iv) order Faulkner and Carole to pay to the Receiver all reasonable costs and attorney's fees expended in pursuit of the RackAlley Proceeds and the filing and prosecution of this Motion; and, if necessary, (v) impose fines for their failure to do so; and (vi) order the United States Marshals Service to arrest them and hold them in custody until they purge themselves of their contempt by paying the Receiver any portion of the $210,000 in RackAlley Proceeds under their control.

Dated: October 22, 2017

Respectfully submitted,

THE TAYLOR LAW OFFICES, P.C.

By: _____

Andrew M. Goforth
Texas State Bar: 24076405
goforth@tltaylorlaw.com
*Of Counsel*

245 West 18th Street
Houston, Texas 77008
Tel: 713.626.5300
Fax: 713.402.6154

COUNSEL FOR RECEIVER


## CERTIFICATE OF CONFERENCE

I certify that on October 19, 2017 I conferred with counsel for the Securities and Exchange Commission, who do not oppose any of the relief requested herein.

I certify that on October 18, 2017 I conferred with counsel for Faulkner, who do not oppose the rescheduling of the Show Cause Hearing as requested herein.

I certify that on October 18, 2017 I conferred with counsel for Carole, who was not able to reach her client and respond substantively regarding opposition as of the filing of this Motion.

_____
/s/  Andrew M. Goforth
Andrew M. Goforth


## CERTIFICATE OF SERVICE

I certify that on October 22, 2017 I filed the foregoing document through the Court's CM/ECF system, which delivered electronic notice to all counsel of record.

_____
/s/  Andrew M. Goforth
Andrew M. Goforth

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**CORRIGAN & MORRIS, LLP**
Brian T. Corrigan  (Cal Bar No. 143188)
bcorrigan@cormorllp.com
Stanley C. Morris  (Cal. Bar No. 183620)
scm@cormorllp.com
12300 Wilshire Boulevard, Suite 210
Los Angeles, California 90025
Telephone: (310) 394-2800
Facsimile: (310) 394-2825

*Attorneys for Defendant*
   THOMAS L TAYLOR III

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| CAROLE ANN FAULKNER and U.S. PROPERTY INVESTMENTS, INC.,<br><br>          Plaintiffs,<br>   v.<br><br>THOMAS L. TAYLOR III,<br><br>          Defendant. | Case No.: _____<br><br>(Los Angeles Superior Court Case No.: SC128374)<br><br>**EXHIBIT E TO**<br><br>**NOTICE OF REMOVAL OF CIVIL ACTION UNDER 28 U.S.C. §§ 1442 AND 1441** |

**CORRIGAN & MORRIS LLP**
**12300 Wilshire Boulevard, Suite 210**
**Los Angeles, CA 90025**

NOTICE OF REMOVAL

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE | § | |
| COMMISSION, | § | |
| | § | |
| Plaintiff, | § | |
| | § | Civil Action No. 3:16-CV-1735-D |
| VS. | § | |
| | § | |
| CHRISTOPHER A. FAULKNER, et al., | § | |
| | § | |
| Defendants. | § | |

**<u>ORDER</u>**

Due to a conflicting criminal trial setting, the court must reset the contempt hearing scheduled for Monday, December 11, 2017 at 9:00 a.m. to Thursday, December 14, 2017 at 9:00 a.m.

Accordingly, the temporary receiver's September 5, 2017 motion for order to show cause re: contempt of order appointing temporary receiver against defendants Christopher A. Faulkner ("Faulkner"), Breitling Oil & Gas Corporation ("BOG") and Breitling Energy Corporation ("BECC"), and non-parties Carole Faulkner ("Carole") and Breitling Royalty Corporation ("BRC"), and his October 22, 2017 motion to amend order to show cause re: contempt against defendant Faulkner and non-party Carole are granted.

It is ordered that Faulkner, BOG, BECC, Carole, and BRC appear before the United States District Court for the Northern District of Texas, courtroom 1525 in the United States Courthouse, 1100 Commerce Street, Dallas, Texas, on Thursday, December 14, 2017 at 9:00 a.m. and show cause why they should not be held in civil contempt for violating the terms of the court's August 14, 2017 order appointing temporary receiver (Document No. 108) and the court's September 25, 2017 order appointing temporary receiver and granting other relief (Document No. 142). Faulkner, BOG,

**Exhibit E, p. 000082**

BECC, Carole, and BRC must also show cause why they should not be ordered to compensate the temporary receiver for his reasonable and necessary attorney's fees incurred in prosecuting the contempt motion, as amended.

Faulkner, BOG, BECC, Carole, and BRC are advised that they have the right to retain counsel, at their own expense, to represent them at the hearing. Faulkner and Carole are also advised that if they cannot afford an attorney to represent them, they may file a timely motion for appointed counsel. Faulkner and Carole may be required to provide financial information that will enable the court to decide whether they qualify for appointed counsel and whether they can pay part of the cost of appointed counsel.

No later than December 7, 2017, the temporary receiver and Faulkner, BOG, BECC, Carole, and BRC must file witness and exhibit lists that identify each witness whom the party or person expects to call and each exhibit that the party or person expects to introduce at the hearing. The witness and exhibit lists must comply with N.D. Tex. Civ. R. 26.2(b). No later than December 7, 2017, Faulkner, BOG, BECC, Carole, and BRC must also file their respective estimates of the length of the hearing so that the court can decide whether to impose time limits on the presentation of the evidence.

**SO ORDERED**.

November 21, 2017.

SIDNEY A. FITZWATER
UNITED STATES DISTRICT JUDGE

- 2 -

# EXHIBIT 3

**CORRIGAN & MORRIS, LLP**
Brian T. Corrigan  (Cal Bar No. 143188)
bcorrigan@cormorllp.com
Stanley C. Morris  (Cal. Bar No. 183620)
scm@cormorllp.com
12300 Wilshire Boulevard, Suite 210
Los Angeles, California 90025
Telephone: (310) 394-2800
Facsimile: (310) 394-2825

*Attorneys for Defendant*
THOMAS L TAYLOR III

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CAROLE ANN FAULKNER and U.S. PROPERTY INVESTMENTS, INC.,<br><br>          Plaintiffs,<br><br>   v.<br><br>THOMAS L. TAYLOR III,<br><br>          Defendant. | Case No.: 17-CV-08609-SJO-PLA<br><br>(Los Angeles Superior Court Case No.: SC128374)<br><br>**NOTICE OF MOTION AND MOTION TO TRANSFER VENUE**<br><br>**Date:  January 9, 2018**<br>**Time: 10:00 a.m.**<br>**Place:  350 West 1ˢᵗ Street**<br>**Los Angeles, CA 90012**<br>**Courtroom 10C** |

*Sidebar (vertical text):* CORRIGAN & MORRIS LLP
12300 Wilshire Boulevard, Suite 210
Los Angeles, CA 90025

**TO THE CLERK OF THE ABOVE-ENTITLED COURT, PLAINTIFF, AND PLAINTIFF'S COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that Defendant Thomas L. Taylor III ("Receiver"), Court-appointed receiver for Christopher A. Faulkner ("Faulkner"), Breitling Oil & Gas Company ("BOG"), and Breitling Energy Company ("BECC") (collectively the "Receivership Defendants") in the action styled *Securities and Exchange Commission v. Christopher A. Faulkner, Breitling Energy Corporation, Jeremy S. Wagers, Judson F. ("Rick") Hoover, Parker R. Hallam, Joseph Simo, Dustin Michael Miller Rodriguez, Beth C. Handkins, Gilbert Steedley, Breitling Oil & Gas Corporation, Crude Energy, LLC, Patriot Energy, Inc., Defendants, and Tamra M. Freedman and Jetmir Ahmedi, Relief Defendants,* Case No.: 3:16-cv-01735-D (N.D. Tex. 2016) (the "Enforcement Action"), by and through his counsel, will and hereby does move the Court for an order transferring venue of this action to the Northern District of Texas, so that it can be resolved by the Court who appointed the Receiver and who is presiding in the Enforcement Action (the "Motion"). The hearing on the Motion shall be at 10:00 a.m. on January 9, 2018, or as soon thereafter as the matter may be heard, in the Courtroom of the Honorable S. James Otero, located at the United States Courthouse, 350 West 1st Street, Los Angeles, California 90012, Courtroom 10C.

Receiver removed this action on November 28, 2017 pursuant to 28 U.S.C. §1442 and, alternatively, §1441. The action was wrongfully commenced in the California Superior Court for the County of Los Angeles, captioned *Carole Ann Faulkner and U.S. Property Investments, Inc. v. Thomas L. Taylor III*, Case No. SC-128374 (the "State Court Action"). To date, no proceedings have been held in that case.

This Motion is made pursuant to 28 U.S.C. §1404(a) on the grounds that:

**a. The Interests of Justice are Served Because The State Court Action Violated the Northern District of Texas Stay Order And Defies That**

CORRIGAN & MORRIS LLP
12300 Wilshire Boulevard, Suite 210
Los Angeles, CA 90025

**Court's Order Appointing the Receiver To Take The Actions That Are Complained Of In The Complaint.**  On September 25, 2017, the Northern District of Texas District Court entered an Order expanding the scope of the Receivership to include "all assets—in any form or of any kind whatsoever—owned, controlled, managed, or possessed by …, directly or indirectly," the Receivership Defendants. Declaration of Thomas Taylor filed herewith at Exhibit C, Order Appointing Receiver, at 1. Through the Order Appointing Receiver, the Court in the Enforcement Action stayed, inter alia, "[a]ll civil legal proceedings of any nature … involving: (a) the Receiver, in his capacity as Receiver; [and] (b) any Receivership Assets, wherever located….(such proceedings are hereinafter referred to as "Ancillary Proceedings")" Taylor Decl., Exh. C ¶32. "The parties to any and all Ancillary Proceedings are enjoined from commencing or continuing any such legal proceeding, or from taking any action, in connection with any such proceeding, including, but not limited to, the issuance or employment of process." *Id*. ¶33. All Ancillary Proceedings "are stayed in their entirety, and all courts having any jurisdiction thereof are enjoined from taking or permitting any action until further order of this court." *Id*. ¶34.  The State Court Action filed on November 14, 2017 commenced an Ancillary Proceeding that violated such stay and defied the Court's appointment of the Receiver to take the actions complained of in the Complaint.  See Court Stamped filing date on Complaint, Taylor Decl., Exh. A. This case should be transferred to the Northern District of Texas so that it may enforce its Orders.

**b.  Convenience of the Parties and Witnesses.**

(1)  There would be no need for witnesses if this matter is transferred to the Court overseeing the Enforcement Action because this case

CORRIGAN & MORRIS LLP
12300 Wilshire Boulevard, Suite 210
Los Angeles, CA 90025

violates the Court's Stay Order, is frivolous on its merits because the Receiver's actions were authorized by the Court's Orders and, for those reasons, the action would be expeditiously and summarily dismissed after reaching the Northern District of Texas.

(2) The Receiver resides in Texas, and the Court for which the Receiver is appointed, presides in the Northern District of Texas; and

(3) Carole is licensed to practice in the Northern District of Texas and had appeared as counsel in the Enforcement Action.

WHEREFORE, the Receiver prays for an order transferring this action to the Northern District of Texas and granting such other and further relief as the Court deems just.

Dated:  December 5, 2017          CORRIGAN & MORRIS LLP


                                  By:___/S/ BRIAN T. CORRIGAN____
                                     Brian T. Corrigan
                                     *Attorneys for Defendant*
                                     THOMAS L. TAYLOR III

CORRIGAN & MORRIS LLP
12300 Wilshire Boulevard, Suite 210
Los Angeles, CA 90025

# EXHIBIT 4

| | |
|---|---|
| **From:** | Stanley Morris |
| **To:** | carole@faulknerlegal.com |
| **Cc:** | Brian Corrigan |
| **Subject:** | Telephone Conference - Faulkner v. Taylor |
| **Date:** | Friday, December 08, 2017 8:59:34 AM |

Carol, I am writing to see if you have time for a quick phone call today. Local Rules require that we meet and confer before bring a motion to dismiss.

Please let me know when would be a good time? Thank you for your courtesy. Stan

Stanley C. Morris

**CORRIGAN & MORRIS** LLP

12300 WILSHIRE BLVD., SUITE 210

LOS ANGELES, CALIFORNIA 90025

T. 310.394.2828 | F. 310.394.2825 | M. 310.968.3453 |

Admitted in New York and California

Attention: This email may contain material that is confidential, privileged and/or attorney work product for the sole use of the intended recipient.  Any review, reliance or distribution by others or forwarding without express permission is strictly prohibited.  If you are not the intended recipient, please contact the sender and delete all copies.

# EXHIBIT 5

| From: | carole faulkner |
|---|---|
| To: | Brian Corrigan |
| Cc: | Stanley Morris |
| Subject: | Re: Summary of ECF Activity |
| Date: | Monday, December 11, 2017 2:35:01 PM |

This serves as confirmation that I have received your email and information.
Thank you

Carole Faulkner

---

**From:** Brian Corrigan <bcorrigan@cormorllp.com>
**To:** "faulkner4010@yahoo.com" <faulkner4010@yahoo.com>
**Cc:** Stanley Morris <scm@cormorllp.com>
**Sent:** Friday, December 8, 2017 7:56 PM
**Subject:** FW: Summary of ECF Activity

Carole, it was a pleasure speaking with you today.  I am sending this to the email address you gave me over the telephone.  Please confirm that the email has reached you.

I believe you have been served via mail with all papers filed in connection with the removal of the state court action to the federal court; as well as the motion to change venue.  Here are a couple of Orders received today in the case, Carole Ann Faulkner, et al. v. Thomas L. Taylor III.  Please make an appearance promptly in the case so that you are ensured to receive electronic notice from the Court of all filings.  If you believe you are missing anything, please feel free to ask for an electronic copy from me.  Regards, Brian

Brian T. Corrigan

**CORRIGAN & MORRIS LLP**
12300 WILSHIRE BOULEVARD, SUITE 210
WEST LOS ANGELES, CALIFORNIA 90025

DIRECT DIAL  (310) 394-2829
FACSIMILE (310) 394-2825

********************************************************************
CONFIDENTIAL COMMUNICATION.  This e-mail message is intended only for the personal use of the recipient(s) named above. This message may be an attorney-client communication and as such privileged and confidential.  If you are not an intended recipient, you may not review, copy or distribute this message. If you have received this communication in error, please notify us immediately by e-mail and delete the original message.

**From:** cacd_ecfmail@cacd.uscourts.gov [mailto:cacd_ecfmail@cacd.uscourts.gov]
**Sent:** Friday, December 08, 2017 12:01 AM
**To:** ecfnef@cacd.uscourts.gov
**Subject:** Summary of ECF Activity

This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT RESPOND to this e-mail because the mail box is unattended.

**\*\*\* NOTE TO PUBLIC ACCESS USERS \*\*\***
**This Daily Summary Report may contain documents for which one or more of the following policies apply:**

**Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To avoid later charges, download a copy of each document during this first viewing. However, if the referenced document is a transcript, the free copy and 30 page limit do not apply.**

**There is no charge for viewing opinions.**

**Activity has occurred in the following cases:**

**2:17-cv-08609-SJO-PLA Carole Ann Faulkner et al v. Thomas L. Taylor III**
**Initial Order upon Filing of Complaint - form only  13**
## Docket Text:
INITIAL STANDING ORDER upon filing of the complaint by Judge S. James Otero. (vcr)
**2:17-cv-08609-SJO-PLA Carole Ann Faulkner et al v. Thomas L. Taylor III**
**Initial Order Setting R26 Scheduling Conference - form only  14**
## Docket Text:
ORDER SETTING SCHEDULING CONFERENCE by Judge S. James Otero. Rule 26 Meeting Report due by 2/5/2018. Scheduling Conference set for 2/20/2018 at 08:30 AM before Judge S. James Otero. (vcr)

# EXHIBIT 6

**CORRIGAN & MORRIS, LLP**
Brian T. Corrigan  (Cal Bar No. 143188)
bcorrigan@cormorllp.com
Stanley C. Morris  (Cal. Bar No. 183620)
scm@cormorllp.com
12300 Wilshire Boulevard, Suite 210
Los Angeles, California 90025
Telephone: (310) 394-2800
Facsimile: (310) 394-2825

*Attorneys for Defendant*
        THOMAS L TAYLOR III

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CAROLE ANN FAULKNER and U.S. PROPERTY INVESTMENTS, INC., | Case No.: 17-CV-08609-SJO-PLA |
| | (Los Angeles Superior Court Case No.: SC128374) |
| Plaintiffs, | **NOTICE OF MOTION AND MOTION TO DISMISS** |
| v. | State Court Complaint Filed: November 14, 2017 |
| THOMAS L. TAYLOR III, | |
| Defendant. | State Court Complaint Served: November 27, 2017 |
| | Removed to Federal Court: November 28, 2017 |
| | **Judge: Hon. S. James Otero**<br>**Date:  January 16, 2018**<br>**Time: 10:00 a.m.**<br>**Place:  350 West 1st Street**<br>**Los Angeles, CA 90012**<br>**Courtroom 10C** |

*(left margin, rotated)* CORRIGAN & MORRIS LLP
12300 Wilshire Boulevard, Suite 210
Los Angeles, CA 90025

NOTICE OF MOTION AND MOTION TO DISMISS - 1

**TO THE CLERK OF THE ABOVE-ENTITLED COURT, PLAINTIFFS, AND PLAINTIFFS' COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that Defendant Thomas L. Taylor III ("Receiver"), Court-appointed receiver for Christopher A. Faulkner ("Faulkner"), Breitling Oil & Gas Company ("BOG"), and Breitling Energy Company ("BECC") (collectively the "Receivership Defendants") in the action styled *Securities and Exchange Commission v. Christopher A. Faulkner, Breitling Energy Corporation, Jeremy S. Wagers, Judson F. ("Rick") Hoover, Parker R. Hallam, Joseph Simo, Dustin Michael Miller Rodriguez, Beth C. Handkins, Gilbert Steedley, Breitling Oil & Gas Corporation, Crude Energy, LLC, Patriot Energy, Inc., Defendants, and Tamra M. Freedman and Jetmir Ahmedi, Relief Defendants,* Case No.: 3:16-cv-01735-D (N.D. Tex. 2016) (the "Enforcement Action"), by and through his counsel, will and hereby does move the Court for an order dismissing this action for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) because it was brought without first obtaining leave of the District Court for the Northern District of Texas in the Enforcement Action (the "Motion"). The hearing on the Motion shall be at 10:00 a.m. on January 16, 2018, or as soon thereafter as the matter may be heard, in the Courtroom of the Honorable S. James Otero, located at the United States Courthouse, 350 West 1st Street, Los Angeles, California 90012, Courtroom 10C.

Receiver removed this action on November 28, 2017 pursuant to 28 U.S.C. §1442 and, alternatively, §1441. The action was wrongfully commenced in the California Superior Court for the County of Los Angeles, captioned *Carole Ann Faulkner and U.S. Property Investments, Inc. v. Thomas L. Taylor III*, Case No. SC-128374 (the "State Court Action"). To date, no proceedings have been held in that case. The Receiver has moved to change venue of this action to the Northern District of Texas. The hearing on the venue motion is set for January 9, 2018 before this Court at 10:00 a.m.

CORRIGAN & MORRIS LLP
12300 Wilshire Boulevard, Suite 210
Los Angeles, CA 90025

This Motion is made pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure on the grounds that:

**a. Under the Order appointing Taylor as a Receiver, Plaintiffs' Complaint Was Filed In Contempt of the District Court's Order and Is Barred.**

On September 25, 2017, the Northern District of Texas District Court entered an Order expanding the scope of the Receivership to include "all assets— in any form or of any kind whatsoever—owned, controlled, managed, or possessed by …, directly or indirectly," the Receivership Defendants. Declaration of Thomas Taylor filed herewith at Exhibit F, Order Appointing Receiver, at 1. Through the Order Appointing Receiver, the Court in the Enforcement Action stayed, inter alia, "[a]ll civil legal proceedings of any nature … involving: (a) the Receiver, in his capacity as Receiver; [and] (b) any Receivership Assets, wherever located…." Taylor Decl., Exh. F ¶32. "The parties to any and all [such proceedings] are enjoined from commencing or continuing any such legal proceeding, or from taking any action, in connection with any such proceeding, including, but not limited to, the issuance or employment of process." *Id*. ¶33. All such proceedings "are stayed in their entirety, and all courts having any jurisdiction thereof are enjoined from taking or permitting any action until further order of this court." *Id*. ¶34.

The State Court Action filed on or around November 27, 2017 clearly violated such stay and defied the Court's appointment of the Receiver to take the actions complained of in the State Court Action.

**b. The Supreme Court Decision in *Barton v. Barbour*, 104 U.S. 126, 128 (1881) Mandates Dismissal for Lack of Subject Matter Jurisdiction.**

Under the circumstances described above, this case must be dismissed for lack of subject matter jurisdiction.  For more than 100 years, courts have recognized that under the Supreme Court's *Barton Doctrine*, only the court

CORRIGAN & MORRIS LLP
12300 Wilshire Boulevard, Suite 210
Los Angeles, CA 90025

appointing a receiver possesses subject-matter jurisdiction to hear suits against that receiver. *Barton v. Barbour*, 104 U.S. 126, 128 (1881).

Although omitted from the Complaint, on August 14, 2017, Mr. Taylor was appointed SEC Receiver in *Securities and Exchange Comm'n v. Faulkner, et al.* (U.S. Dist. Ct. N.D. Tex. No. 3:16-cv-1735-D (the "SEC Enforcement Action")).

The undersigned counsel certifies that this Motion is made following the conference of counsel pursuant to L.R. 7-3 which took place on December 8, 2017.

WHEREFORE, the Receiver prays for an order dismissing this action under Rule 12(b)(1) of the Federal Rules of Civil Procedure as it was commenced in violation of the Orders of the United States District Court and because this Court lacks subject-matter jurisdiction under the *Barton Doctrine*, and granting such other and further relief as the Court deems just.

Dated:  December 12, 2017                    CORRIGAN & MORRIS LLP


                                             By:/S/ BRIAN T. CORRIGAN____
                                                Brian T. Corrigan
                                                *Attorneys for Defendant*
                                                THOMAS L. TAYLOR III

# Applications/Ex Parte Applications/Motions/Petitions/Requests

2:17-cv-08609-SJO-PLA Carole Ann
Faulkner et al v. Thomas L. Taylor III

ACCO,(PLAx),DISCOVERY,MANADR

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

**Notice of Electronic Filing**

The following transaction was entered by Corrigan, Brian on 12/12/2017 at 5:59 PM PST and filed on
12/12/2017

**Case Name:**        Carole Ann Faulkner et al v. Thomas L. Taylor III
**Case Number:**      2:17-cv-08609-SJO-PLA
**Filer:**            Thomas L Taylor III
**Document Number:** 15

**Docket Text:**
**NOTICE OF MOTION AND MOTION to Dismiss for Lack of Jurisdiction filed by Defendant
Thomas L Taylor III. Motion set for hearing on 1/16/2018 at 10:00 AM before Judge S. James
Otero. (Corrigan, Brian)**


**2:17-cv-08609-SJO-PLA Notice has been electronically mailed to:**


Brian Thomas Corrigan      bcorrigan@cormorllp.com

Stanley C Morris      scm@cormorllp.com, 5564279420@filings.docketbird.com

**2:17-cv-08609-SJO-PLA Notice has been delivered by First Class U. S. Mail or by other means BY THE
FILER to :**

Carole Ann Faulkner
Law Offices of Carole A Faulkner
10866 Washington Boulevard Suite 448
Culver City, CA 90232

The following document(s) are associated with this transaction:

**Document description:** Main Document
**Original filename:** 121217 - Notice of Motion and Motion to Dismiss.pdf
**Electronic document Stamp:**
[STAMP cacdStamp_ID=1020290914 [Date=12/12/2017] [FileNumber=24698669-
0] [0a52f8caac67fa41e65718949e8e52e5d1b624d39f823747d1647b08bc7cc9e4ed
131ec35c4c190921dda0997777f25d913b29c690fa48fc73553909a4c94a4c]]

# EXHIBIT 7

| | |
|---|---|
| **From:** | carole faulkner |
| **To:** | Brian Corrigan; victor_cruz@cacd.uscourts.gov |
| **Subject:** | Re: Proposed Order re Request to Continue Hearing Faulkner v. Taylor Case No. 17-cv-08609-SJO-PLA |
| **Date:** | Thursday, December 21, 2017 7:17:35 AM |

Hello Brian;

I received your vm late last night. Sorry about the delay but I am traveling at this time.
I am not available the week of January 15, 2018, I am out of the state on business, but if you can schedule it any day during the week of January 22, 2018 that would be so helpful and I can attend. Thank you

Carole Faulkner

---

**From:** Brian Corrigan <bcorrigan@cormorllp.com>
**To:** "victor_cruz@cacd.uscourts.gov" <victor_cruz@cacd.uscourts.gov>
**Cc:** carole faulkner <faulkner4010@yahoo.com>
**Sent:** Wednesday, December 20, 2017 6:01 PM
**Subject:** Proposed Order re Request to Continue Hearing Faulkner v. Taylor Case No. 17-cv-08609-SJO-PLA

Please see attached Proposed Order in word, together with the ECF filed documents related thereto at Docket Entry 23 and 23-1.  If you need anything else, please feel free to respond to this email or call the number below.  Sincerely,

Brian T. Corrigan

**CORRIGAN & MORRIS LLP**
12300 WILSHIRE BOULEVARD, SUITE 210
WEST LOS ANGELES, CALIFORNIA 90025

DIRECT DIAL  (310) 394-2829
FACSIMILE (310) 394-2825

**********************************************************************
CONFIDENTIAL COMMUNICATION.  This e-mail message is intended only for the personal use of the recipient(s) named above. This message may be an attorney-client communication and as such privileged and confidential.  If you are not an intended recipient, you may not review, copy or distribute this message. If you have received this communication in error, please notify us immediately by e-mail and delete the original message.

---

Virus-free. www.avg.com

# EXHIBIT 8

| | |
|---|---|
| **From:** | carole faulkner |
| **To:** | Brian Corrigan |
| **Subject:** | Re: Proposed Order re Request to Continue Hearing Faulkner v. Taylor Case No. 17-cv-08609-SJO-PLA |
| **Date:** | Tuesday, December 26, 2017 12:58:22 PM |

Brian

I am sorry I must have misunderstood during our last conversation. I had understood that you were not moving forward on any of the matters and neither would I until the Dallas court had ruled on the contempt action. After the conversation, I was not objecting to the dismissal of the suit at that time and I would re-file the state action if necessary. If you want to file an unopposed dismissal I have no issue with that action.

Carole Faulkner

---

**From:** Brian Corrigan <bcorrigan@cormorllp.com>
**To:** carole faulkner <faulkner4010@yahoo.com>
**Cc:** Stanley Morris <scm@cormorllp.com>
**Sent:** Thursday, December 21, 2017 2:00 PM
**Subject:** RE: Proposed Order re Request to Continue Hearing Faulkner v. Taylor Case No. 17-cv-08609-SJO-PLA

Carole, we would be willing to move both hearings until the 22nd, if you agree to split the extra time.  So, instead of your opposition being due 21 days before the hearing, it would be due 24 days before the hearing (December 29).  That way we would both have three extra days to file our briefs.  I'll prepare a stipulation for your signature if you agree.  Let me know.  Brian

Brian T. Corrigan

## CORRIGAN & MORRIS LLP
12300 WILSHIRE BOULEVARD, SUITE 210
WEST LOS ANGELES, CALIFORNIA 90025

DIRECT DIAL  (310) 394-2829
FACSIMILE (310) 394-2825

*********************************************************************
CONFIDENTIAL COMMUNICATION.  This e-mail message is intended only for the personal use of the recipient(s) named above. This message may be an attorney-client communication and as such privileged and confidential.  If you are not an intended recipient, you may not review, copy or distribute this message. If you have received this communication in error, please notify us immediately by e-mail and delete the original message.

---

**From:** carole faulkner [mailto:faulkner4010@yahoo.com]
**Sent:** Thursday, December 21, 2017 7:17 AM
**To:** Brian Corrigan <bcorrigan@cormorllp.com>; victor_cruz@cacd.uscourts.gov
**Subject:** Re: Proposed Order re Request to Continue Hearing Faulkner v. Taylor Case No. 17-cv-08609-SJO-PLA

Hello Brian;

I received your vm late last night. Sorry about the delay but I am traveling at this time.
I am not available the week of January 15, 2018, I am out of the state on
business, but if you can schedule it any day during the week of January 22, 2018 that
would be so helpful and I can attend.
Thank you

Carole Faulkner

---

**From:** Brian Corrigan <bcorrigan@cormorllp.com>
**To:** "victor_cruz@cacd.uscourts.gov" <victor_cruz@cacd.uscourts.gov>
**Cc:** carole faulkner <faulkner4010@yahoo.com>
**Sent:** Wednesday, December 20, 2017 6:01 PM
**Subject:** Proposed Order re Request to Continue Hearing Faulkner v. Taylor Case No. 17-cv-08609-
SJO-PLA

Please see attached Proposed Order in word, together with the ECF filed documents
related thereto at Docket Entry 23 and 23-1.  If you need anything else, please feel
free to respond to this email or call the number below.  Sincerely,

Brian T. Corrigan

**CORRIGAN & MORRIS LLP**
12300 WILSHIRE BOULEVARD, SUITE 210
WEST LOS ANGELES, CALIFORNIA 90025

DIRECT DIAL  (310) 394-2829
FACSIMILE (310) 394-2825

*********************************************************************
CONFIDENTIAL COMMUNICATION.  This e-mail message is intended only for the personal use of the
recipient(s) named above. This message may be an attorney-client communication and as such
privileged and confidential.  If you are not an intended recipient, you may not review, copy or distribute
this message. If you have received this communication in error, please notify us immediately by e-mail
and delete the original message.

|  | Virus-free. www.avg.com |

# EXHIBIT 9

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

Priority _____
Send _____
Enter _____
Closed _____
JS-5/JS-6 _____
Scan Only _____

CASE NO.: **CV 17-08609 SJO (PLA)**       DATE: **February 13, 2018**

TITLE:       **Carole Ann Faulkner et al v. Thomas L. Taylor III**

========================================================================
PRESENT: **THE HONORABLE S. JAMES OTERO, UNITED STATES DISTRICT JUDGE**

Victor Paul Cruz                              Not Present
Courtroom Clerk                               Court Reporter

**COUNSEL PRESENT FOR PLAINTIFF:**       **COUNSEL PRESENT FOR DEFENDANT:**

Not Present                                   Not Present

========================================================================
PROCEEDINGS (in chambers): **ORDER GRANTING DEFENDANT'S MOTION TO DISMISS FOR LACK OF JURISDICTION** [Docket No. 15]; **DENYING AS MOOT DEFENDANT'S MOTION TO CHANGE VENUE TO NORTHERN DISTRICT OF TEXAS** [Docket No. 8]

These matters are before the Court on (1) Defendant Thomas L. Taylor III's ("Defendant") Motion to Dismiss For Lack of Jurisdiction ("Dismissal Motion"), filed December 12, 2017; and (2) Defendant's Motion to Change Venue to Northern District of Texas ("Venue Motion"), filed December 5, 2017. Plaintiffs Carole Ann Faulkner and U.S. Property Investment, Inc. ("USPI") (collectively, "Plaintiffs") have not, to date, opposed either motion. The Court found these matters suitable for disposition without oral argument and vacated the hearings set for January 16, 2018. *See* Fed. R. Civ. P. 78(b). For the reasons stated below, the Court **GRANTS** Defendant's Dismissal Motion and **DENIES AS MOOT** Defendant's Venue Motion.

I.       FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs filed this action in the Superior Court for the County of Los Angeles on November 14, 2017, alleging eight causes of action against Defendant for intentional interference with contract, intentional interference with prospective economic advantage, negligent interference with business relationships, intentional infliction of emotional distress, invasion of privacy, and defamation. (*See* Notice of Removal, Ex. A ("Compl."), ECF No. 1-1.) Defendant removed the action to this Court on November 28, 2017. (Notice of Removal, ECF No. 1.) The gravamen of Plaintiffs' claims surround unspecified but allegedly "fabricated, deceitful, fictitious, and inflaming information" provided by Defendant to Bank of the West and Rack Alley, LLC ("Rack Alley") that interfered with Plaintiffs' business relationships with these two entities. (Compl. ¶¶ 5-12.)

Absent from the Complaint is the history of the relationship between the parties and the context of the information underlying the claims. Defendant is a court-appointed Receiver tasked with marshaling and preserving assets managed by Plaintiff Carole Ann Faulkner's son Christopher A. Faulkner pursuant to an action for securities fraud in the Northern District of Texas (the "SEC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

**CASE NO.:**  CV 17-08609 SJO (PLA)          **DATE:**  February 13, 2018

Action").[1]  *See Securities and Exchange Commission v. Faulkner et al*, No.  16-cv-01735 (N.D. Tex.).  The First Amended Complaint ("FAC") in the SEC Action alleges that Christopher A. Faulkner used a series of entities controlled by him to misappropriate at least $30 million in investor funds to "maintain a lifestyle of decadence and debauchery." (FAC ¶ 1, No. 16-cv-01735, ECF No. 22.)

Defendant was appointed as Temporary Receiver over "all oil-and-gas related assets– in any form or of any kind whatsoever– owned, controlled, possessed, or managed, directly or indirectly, by" Christopher A. Faulkner on August 14, 2017.  (Order Appointing Temporary Receiver ["Original Receivership Order"], No. 16-cv-01735, ECF No. 108.) The Original Receivership Order was later expanded to include "all assets"– not just "oil-and-gas related assets"– on September 25, 2017. (Order Granting Prelim. Inj., Asset Freeze ["Expanded Receivership Order"], No. 16-cv-01735, ECF No. 142.)  Both the Original Receivership Order and the Expanded Receivership Order stay "[a]ll civil legal proceedings of any nature . . . involving: (a) the Receiver, in his capacity as Reciever; and (b) any Receivership Assets, wherever located[.]" (Original Receivership Order at 8; Expanded Receivership Order at 12.)  The Expanded Receivership Order further states that the Northern District of Texas "shall retain jurisdiction over any action filed against the Receiver. . . based upon acts or omissions committed in their representative capacities."  (Expanded Receivership Order at 16.)

In mid-September, Christopher A. Faulkner transferred his share of the proceeds from the sale of Rack Alley, a technology company, to Plaintiff USPI, an entity controlled by both him and Plaintiff Carole A. Faulkner.  (Decl. of Receiver Thomas L. Taylor III in supp. Mot. ("Taylor Decl.") ¶ 14, ECF No. 17.)  Identifying these proceeds as "Receivership Assets" under the Expanded Receivership Order, Defendant demanded that Rack Alley and Bank of the West freeze and turn over any of these assets under their possession, custody or control, as well as turn over any information related to the transaction and payments to USPI.  (Taylor Decl. ¶ 14.)  On October 22, 2017, Defendant filed a motion for contempt against Plaintiff Carole A. Faulkner setting forth her role in the scheme to move the Rack Alley proceeds to USPI's accounts at Bank of the West. (Mot. to Amend Order, No. 16-cv-01735, ECF No. 166.)  The instant action followed.

## II.    DISCUSSION

Defendant moves to dismiss the instant action for lack of subject matter jurisdiction under Federal Rule of Civil Procedure ("Rule") 12(b)(1), or, in the alternative, to transfer the action to the Northern District of Texas.

---

[1] Citations to docket entries in *Securities and Exchange Commission v. Faulkner et al*, No. 16-cv-01735 (N.D. Tex.), of which the Court takes judicial notice pursuant to Federal Rules of Evidence 201(b) and 201(c)(1), are hereinafter cited as "([Document title], No. 16-cv-01735, ECF No. [X].)".

JS6

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

### CIVIL MINUTES - GENERAL

**CASE NO.:**  <u>CV 17-08609 SJO (PLA)</u>          **DATE:**  <u>February 13, 2018</u>

    A.   <u>Legal Standard</u>

In *Barton v. Barbour*, the Supreme Court announced the "general rule that before suit is brought against a receiver leave of the court by which he was appointed must be obtained." 104 U.S. 126, 128 (1881).  While the aforementioned "*Barton* doctrine" was originally applied in the context of bankruptcy proceedings, the Ninth Circuit has found that the rule also applies to receiverships in actions for securities fraud.  *S.E.C. v. Rubera*, 535 F. App'x 553, 554 (9th Cir. 2013).  Courts applying the *Barton* doctrine have consistently found that when leave of court has not been obtained, any other forum adjudicating the action lacks subject matter jurisdiction.  *See, e.g.*, *In re Crown Vantage, Inc.*, 421 F.3d 963, 971 (9th Cir. 2005).  Dismissal of the action is thus properly granted under Rule 12(b)(1), which allows a defendant to move for dismissal on grounds that the court lacks jurisdiction over the subject matter.  Fed. R. Civ. P. 12(b)(1).

    B.   <u>Analysis</u>

It is clear from the vague allegations in the Complaint and the context of the action that Plaintiffs' claims derive from Defendant's conduct in his role as Receiver in the SEC Action.  Plaintiffs' failure to oppose Defendant's motions also indicates a lack of intent to pursue the current action and an admission of the facts as stated in Defendant's motions.  Under both the *Barton* doctrine and the receivership orders in the SEC Action, the Northern District of Texas retains sole jurisdiction over these matters.  Plaintiffs' claims are thus properly dismissed under Rule 12(b)(1).

III.   <u>RULING</u>

Fore the foregoing reasons, the Court **GRANTS** Defendant's Motion to Dismiss for Lack of Jurisdiction and **DENIES AS MOOT** Defendant's Motion to Change Venue to Northern District of Texas.  This matter shall close.

IT IS SO ORDERED.