IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, § § § | |
| Plaintiff, § § | Civil Action No. 3:16-CV-1735-D |
| VS. § § | |
| CHRISTOPHER A. FAULKNER, et al., § § | |
| Defendants. § | |

MEMORANDUM OPINION
AND ORDER

In this enforcement action by the U.S. Securities and Exchange Commission ("SEC"), the court-appointed temporary receiver ("Receiver") applies for reasonable and necessary attorney's fees and costs incurred in prosecuting a civil contempt motion. Nonparties Carole Faulkner ("Carole") and U.S. Property Investments, Inc. ("USPI") have filed a response in opposition. For the reasons that follow, the court approves the application and awards the Receiver $183,376.34 in attorney's fees and costs.

I

Earlier this year, the court held defendants Christopher A. Faulkner ("Faulkner"), Breitling Oil & Gas Corporation ("BOG"), and Breitling Energy Corporation ("BECC"), and nonparties Carole, Breitling Royalties Corporation ("BRC"), and USPI in civil contempt for violating three court orders: the August 14, 2017 order appointing a temporary receiver ("August 14 Receivership Order"), the August 14, 2017 order freezing several defendants'

assets ("August 14 Asset Freeze Order") (collectively, the "August 14 Orders"), and the September 25, 2017 order appointing a temporary receiver ("September 25 Receivership Order"). *See SEC v. Faulkner*, 2018 WL 888910, at *1 (N.D. Tex. Feb. 13, 2018) (Fitzwater, J.). The court held that Faulkner, BOG, and BECC—knowingly aided and abetted by BRC—violated the August 14 Order by diverting receivership assets, failing to produce required documents, and failing to produce required corporate representatives. *Id.* at *14-17. The court also held that Faulkner—knowingly aided and abetted by Carole—violated the September 25 Order by failing to turn over proceeds from the sale of one of his companies, RackAlley LLC (the "RackAlley Proceeds"). *Id.* Finally, the court held that Carole and USPI had aided and abetted Faulkner in violating the September 25 Order by commencing a lawsuit against the Receiver in California state court without leave of this court. *Id.* at *13. In addition to holding these defendants and nonparties in civil contempt, the court held that the Receiver was "entitled to recover his reasonable and necessary attorney's fees incurred in prosecuting the instant contempt motion," *id.* at *17, and it ordered, in pertinent part, that "Carole pay, jointly and severally with USPI, the Receiver's reasonable and necessary attorney's fees and costs incurred by the lawsuit she filed in California state court," *id.* at *15.

The Receiver now applies for this relief. The Receiver and his law firm, Taylor Law, seek to recover $114,555.59 in attorneys' fees. The Receiver also requests $54,440.00 for Dykema Cox Smith ("Dykema"), the counsel retained to conduct the contempt hearing on the Receiver's behalf. Finally, the Receiver seeks $14,379.88 in attorney's fees for

Dykema's local counsel, Corrigan & Morris, who was hired to address the California state lawsuit.

The Receiver requests that the award of these attorney's fees be allocated according to the culpability of the various contemnors. In doing so, the Receiver divides the fees into four groups: one group for each of the three sets of conduct addressed in the contempt hearing, and one group for general hearing preparation. For the failure to produce required documents, failure to produce required corporate representatives, and for changing mailbox locations, the Receiver alleges that Faulkner, BECC, BOG, and BRC are responsible for $48,481.00 in attorney's fees. For the conduct related to the RackAlley Proceeds, the Receiver maintains that Faulkner and Carole are responsible for $42,391.00. And for the California state lawsuit, the Receiver contends that Carole and USPI are liable for $42,089.88. Finally, the Receiver divides the total amount of fees and expenses related to preparing for the contempt—$50,414.46—into thirds "to allocate an equal share to each of the three issues for which the [c]ontemnors were held to be in contempt." Supp. to Receiver's Application at 2. Accordingly, the Receiver maintains that Faulkner, BECC, BOG, and BRC are liable for an additional $16,804.82 share (for a combined total of $65,285.82) related to their failure to produce required documents, failure to produce required corporate representatives, and for changing mailbox locations; Faulkner and Carole are liable for an additional $16,804.82 share (for a combined total of $59,195.82) related to their conduct surrounding the RackAlley Proceeds; and Carole and USPI are liable for an additional $16,804.82 share (for a combined total of $58,894.70) related to the California

lawsuit. Carole and USPI are the only parties who have filed opposition pleadings to this relief.

II

"'An award of attorneys' fees and costs to the prevailing party in a civil contempt action is determined according to the "lodestar method."'" *SEC v. AmeriFirst Funding, Inc.*, 2008 WL 2185193, at \*1 (N.D. Tex. May 27, 2008) (Fitzwater, C.J.) (quoting *Microsoft Corp. v. United Computer Res. of N.J., Inc.*, 216 F.Supp.2d 383, 387 (D.N.J. 2002)). The lodestar fee is calculated "by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate." *Rutherford v. Harris Cnty., Tex.*, 197 F.3d 173, 192 (5th Cir. 1999). While there is a strong presumption of the reasonableness of the lodestar amount, *see Saizan v. Delta Concrete Products Co.*, 448 F.3d 795, 800 (5th Cir. 2006), the court must "consider whether the lodestar amount should be adjusted upward or downward, depending on the circumstances of the case and after addressing the *Johnson* factors."[1] *Rutherford*, 197 F.3d at 192; *see Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983) (citing

---

[1] The *Johnson* factors are: (1) the time and labor required for the litigation; (2) the novelty and complication of the issues; (3) the skill required to properly litigate the issues; (4) whether the attorney was precluded from other employment by the acceptance of this case; (5) the attorney's customary fee; (6) whether the fee is fixed or contingent; (7) whether the client or the circumstances imposed time limitations; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorney; (10) the "undesirability" of the case; (11) the nature and length of the attorney-client relationship; and (12) awards in similar cases. *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974). "In applying [the *Johnson* factors], the district court must explain the findings and the reasons upon which the award is based. However, it is not required to address fully each of the 12 factors." *Curtis v. Bill Hanna Ford, Inc.*, 822 F.2d 549, 552 (5th Cir. 1987) (citation omitted).

*Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974) ("The product of reasonable hours times a reasonable rate does not end the inquiry. There remain other considerations that may lead the district court to adjust the fee upward or downward, including the important factor of the 'results obtained.'"). "[T]he district court must be careful not to double count a *Johnson* factor already considered in calculating the lodestar[.]" *Walker v. U.S. Dep't of Housing & Urban Dev.*, 99 F.3d 761, 771-72 (5th Cir. 1996) (internal quotation marks and ellipsis omitted) (indicating that first and seventh *Johnson* factors are already included in lodestar amount). "The most critical factor in determining an attorney's fee award is the degree of success obtained." *Saizan*, 448 F.3d at 799 (internal quotation marks omitted) (quoting *Singer v. City of Waco*, 324 F.3d 813, 829 (5th Cir. 2003)). As the party seeking attorney's fees, the Receiver is "charged with the burden of showing the reasonableness of the hours billed and, therefore, [is] also charged with proving that [his attorneys] exercised billing judgment." *Saizan*, 448 F.3d at 799. "Billing judgment requires documentation of the hours charged and of the hours written off as unproductive, excessive, or redundant." *Id*.

III

The court first examines Carole's objections to the reasonableness of the Receiver's application for attorney's fees and costs.

A

Carole maintains that the Receiver's application for attorney's fees and costs is unreasonable for several reasons. She contends that Faulkner should share responsibility for

the attorney's fees related to the California state lawsuit; the Receiver is attempting to hold her liable for fees and costs associated with issues for which the court did not find her in contempt; and the Receiver should not be able to recoup costs associated with the California lawsuit incurred after the parties allegedly agreed to dismiss the suit on December 8, 2017. The Receiver maintains that these objections rely on erroneous factual assertions, and that the attorney's fees are both reasonable and necessary.

B

The court finds that none of Carole's objections to the Receiver's application for attorney's fees has merit.

1

Carole first contends that because Faulkner and Carole jointly control USPI, the California state lawsuit could not have been filed without Faulkner's consent. Therefore, Carole posits that Faulkner shares in responsibility for this conduct and that "the total amount of the reasonable and necessary attorney fees and costs associated with the California litigation must be divided" evenly among Faulkner, Carole, and USPI. Carole Resp. at 2. The court disagrees.

In its contempt ruling found "by clear and convincing evidence that Carole and USPI violated the plain terms of the September 25 Receivership Order's stay provisions" by filing a lawsuit against the Receiver in California state court. *Faulkner*, 2018 WL 888910, at \*13. Accordingly, the court ordered "that Carole pay, jointly and severally with USPI, the

Receiver's reasonable and necessary attorney's fees and costs incurred by the lawsuit she filed in California state court." *Id.* at *15. The Receiver's request fully comports with this ruling.

Carole provides no reason why the court's decision should be relitigated. Although the court found that Faulkner jointly controlled USPI with Carole, no party to the contempt proceeding presents any evidence suggesting that Faulkner's approval was required for USPI to be a party to the lawsuit. Nor did Carole or the Receiver present any evidence that Faulkner played a direct role in filing the California lawsuit. And Carole and USPI are the only plaintiffs listed on the California lawsuit's complaint. *See* Receiver Ex. 58. The court therefore declines either to alter its contempt ruling or to find that the Receiver's application for attorney's fees is unreasonable on this basis.

2

Carole separately maintains that the Receiver's requested fees are unreasonable because the award he seeks includes fees related to the California lawsuit incurred after she and the Receiver allegedly entered into an agreement that the lawsuit would be dismissed. She maintains that, on December 8, 2017, she and the Receiver's California counsel, Bryan Corrigan, Esquire ("Corrigan"), decided that Corrigan would file "an agreed order of dismissal with the California court." Carole Resp. at 3. She avers that Corrigan instead "continu[ed] to deliberately and malicious[ly] incur attorney fees and costs" by filing a motion to dismiss and motion to transfer venue, despite Carole's continued protests to adhere

to the alleged agreement. *Id.* Carole contends that any requested attorney's fees incurred after December 8 are therefore unnecessary and unreasonable. The court again disagrees.

Carole is attempting to relitigate the court's contempt ruling through assertions regarding her interaction with the Receiver's California counsel that are *unsworn* and that she is first making *after* the contempt hearing. Had she made them at the hearing she would have been under oath and subject to cross-examination. The court declines to consider these new, unsworn assertions. And aside from the unsworn assertions, Carole offers no emails, affidavits, declarations, or other evidence that would support the existence of an agreement with the Receiver or his California counsel to dismiss the California lawsuit.

Moreover, Carole's own filings in this court discredit her claims. Carole filed her and USPI's response to the Receiver's second motion to show cause on December 11, 2017. Despite being filed three days after Carole and Corrigan allegedly reached their agreement, the brief made no mention of any impending dismissal of the California lawsuit. Instead, Carole maintained that she "and USPI had a right to protect their assets" by filing the lawsuit "when the Receiver acted in bad faith" in taking control of the RackAlley Proceeds. Carole and USPI Resp. to Receiver 2d Mot. for Order to Show Cause at 3. Because the record does not support the finding that there was an agreement to dismiss the California lawsuit, the court declines to accept Carole's newly alleged and unsupported claims.

In all other respects, the Receiver's proposed allocation of fees to Carole is commensurate with her culpability as adjudicated in the contempt proceeding. The court

held that Carole aided and abetted Faulkner in violating the September 25 Order by refusing to turn over the Rack Alley Proceeds and by filing the California lawsuit. All of the attorney's fees for which the Receiver maintains Carole is responsible are related to that conduct or her share of the hearing preparation. For these reasons, the court finds the Receiver's application for attorney's fees reasonable with respect to the fees he allocates to Carole.

IV

After an independent review of the Receiver's application for attorney's fees and the contemporaneous billing records from Taylor Law, Dykema, and Corrigan & Morris, the court finds that the requested fees are reasonable and necessary under the lodestar method and the *Johnson* standards. Similarly, because it is tailored to the Receiver's success in prosecuting the contempt motion, the court adopts the Receiver's allocation of attorney's fees based on the contemnors' varying responsibility. See *AmeriFirst Funding, Inc.*, 2008 WL 3260376, at *2 ("Thus in granting an application for fees and costs related to a successful contempt prosecution, the court is not required to impose joint and several liability on the contemnors, and it may apportion liability according to relative responsibility."). Without any further opposition from the contemnors—besides Carole's objections discussed above—and in the absence of any issues related to the reasonableness of the Receiver's fee request that warrant a *sua sponte* response from the court, the court grants the Receiver's March 13, 2018 application for payment of professional fees and expenses incurred in prosecuting the motion to show cause.

* * *

Accordingly, the court approves the Receiver's fee application and awards him the total sum of $183,376.34 in attorney's fees and costs. The court holds that, of this sum, Faulkner, BECC, BOG, and BRC are jointly and severally liable for $65,285.82 in attorney's fees and costs; Faulkner and Carole are jointly and severally liable for $59,195.82; and Carole and USPI are jointly and severally liable for $58,894.70.[2] Payment of these sums is due no later than 30 days after this memorandum opinion and order is filed.

**SO ORDERED**.

June 7, 2018.

_____
SIDNEY A. FITZWATER
UNITED STATES DISTRICT JUDGE

---

[2]This adds up to a combined total of $183,376.34 in requested attorney's fees and costs, which corresponds to the total attorney's fees and costs represented in the submitted contemporaneous billing records. When the fees listed in the Receiver's first brief are combined, however, they add up to $183,375.47. Because the prior figure is derived from the billing records, the court adopts that figure and its corresponding allocation among the contemnors.