IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, § § § | |
| Plaintiff, § § | Civil Action No. 3:16-CV-1735-D |
| VS. § § | |
| CHRISTOPHER A. FAULKNER, et al., § § | |
| Defendants. § | |

MEMORANDUM OPINION
AND ORDER

Nonparty Rothstein, Kass & Co., PLLC ("Rothstein Kass") moves the court to clarify the scope of its September 25, 2017 order in this case (the "Stay Order"). The Stay Order, in relevant part, stayed all civil litigation involving former officers and directors of Breitling Energy Corporation ("BECC") "*sued for, or in connection with*, any action taken by them while acting in such capacity . . . whether as *plaintiff*, defendant, . . . or otherwise." Stay Order ¶ 32 (emphasis added). The principal question presented is whether the Stay Order covers a state-court lawsuit brought by former directors and officers of BECC *as plaintiffs* against Rothstein Kass for negligence and fraud in conducting an audit. Because the court intended the Stay Order to reach such actions, it grants Rothstein Kass's motion and clarifies that the state-court lawsuit is temporarily stayed under the Stay Order.

I

This is a civil enforcement action by plaintiff Securities and Exchange Commission ("SEC") against defendant Christopher A. Faulkner ("Faulkner") and other defendants, alleging that Faulkner orchestrated a massive fraud scheme by which he swindled investors out of millions of dollars over a multi-year period. This case is already the subject of a number of memorandum opinions and orders. *See, e.g., SEC v. Faulkner*, 2017 WL 4238705, at *1 (N.D. Tex. Sept. 25, 2017) (Fitzwater, J.). The court will therefore confine its discussion of the facts to those that are necessary to understand today's decision.[1]

In 2012, two private Texas corporations involved in Faulkner's alleged fraud scheme—Breitling Oil & Gas Corporation ("BOG") and Breitling Royalties Corporation ("BRC") (collectively, "Breitling")—began discussions with Bering Exploration, Inc. ("Bering"), a publicly-traded Texas corporation, about a possible reverse merger.[2] Breitling hired Rothstein Kass to audit its books in anticipation of the merger. While the audit was ongoing, the transaction went forward. The parties to the deal executed the reverse merger in December 2013, and the resulting publicly-traded entity—formerly known as

---

[1]These facts are largely taken from the fifth amended petition in the state-court action, which is included in Rothstein Kass's appendix. *See* 5th Am. Pet., *Jinsun, L.L.C. v. Rothstein, Kass & Co.*, No. CC-17-06249-C (Cty. Ct. at Law No. 3, Dall. Cty., Tex. July 24, 2018). They are provided for background and context.

[2]A reverse merger occurs when a private business merges into a publicly-traded shell company and thereby becomes, in effect, a public company. *See* Use of Form S-8, Form 8-K, and Form 20-F by Shell Companies, 70 Fed. Reg. 42,234, 42,234 (July 21, 2005). The transaction results in a single, publicly-traded entity that is controlled by the owners of the formerly private company. *See id.*

Bering—changed its name to BECC in January 2014. Rothstein Kass issued an unqualified audit opinion shortly thereafter. When the SEC filed the present lawsuit in 2016, it named BECC and BOG as defendants, alleging that the companies were integral parts of Faulkner's scheme to defraud investors. The court appointed a temporary receiver ("Receiver") over BECC and BOG, and issued the Stay Order, in September 2017.[3]

Just before the reverse merger, three individuals directly or indirectly owned a significant percentage of Bering's stock: J. Leonard Ivins ("Ivins"), Kevan Casey ("Casey"), and Steven M. Plumb ("Plumb"). Ivins and Plumb were both directors and officers of Bering. In November 2017 Ivins, Plumb, and the various companies through which Casey had indirectly owned Bering (collectively, the "*Jinsun* Plaintiffs" or "nonmovants") filed suit against Rothstein Kass in Texas state court. *See Jinsun, L.L.C. v. Rothstein, Kass & Co.*, No. CC-17-06249-C (Cty. Ct. at Law No. 3, Dall. Cty., Tex. filed Nov. 28, 2017) (the "*Jinsun* Action"). As that lawsuit now stands, the *Jinsun* Plaintiffs allege that Rothstein Kass knew or should have known about inconsistencies in Breitling's financial statements, both immediately before the reverse merger and shortly thereafter, and either failed to disclose them or intentionally concealed them. The *Jinsun* Plaintiffs allege that, were it not for

---

[3]The court issued a first amended order appointing receiver in September 2018 (the "Amended Order"), which supersedes the original Stay Order, but is—for the purposes of the present motion—identical to the Stay Order in wording and effect. The Amended Order's stay of litigation merely replaces the word "Defendants" with the word "Entities," to account for the inclusion of several nonparties in the receivership estate. *Compare* Amended Order ¶ 32, *with* Stay Order ¶ 32. The court will therefore refer only to the Stay Order throughout this memorandum opinion and order.

Rothstein Kass's actions and omissions, they would not have closed on, or would have rescinded, the reverse merger, and thereby would have minimized their losses. They seek relief on the basis of various state-law theories of negligence and fraud. Of significance for purposes of Rothstein Kass's instant motion, one of the remedies they seek is the forfeiture or disgorgement of all fees Breitling paid to Rothstein Kass in connection with the reverse merger.

Rothstein Kass now moves for clarification that the Stay Order applies to the *Jinsun* Action. In the alternative, Rothstein Kass seeks permission to conduct discovery from BECC. The *Jinsun* Plaintiffs argue that the Stay Order does not apply to the *Jinsun* Action and that the discovery would be unnecessary and inappropriate.

II

The court has wide discretion to fashion equitable remedies in the context of an SEC civil enforcement action. *See SEC v. Posner*, 16 F.3d 520, 521 (2d Cir. 1994). It is "axiomatic" that this discretion includes "broad authority to issue blanket stays of litigation to preserve the property placed in receivership pursuant to SEC actions." *SEC v. Stanford Int'l Bank Ltd.*, 424 Fed. Appx. 338, 340 (5th Cir. 2011) (per curiam); *accord Rishmague v. Winter*, 616 Fed. Appx. 138, 139-40 (5th Cir. 2015); *Schauss v. Metals Depository Corp.*, 757 F.2d 649, 654 (5th Cir. 1985). "Such orders can serve as an important tool permitting a district court to prevent dissipation of property or assets subject to multiple claims in various locales." *Schauss*, 757 F.2d at 654. This power is not limited to enjoining suits against entities that have been placed in receivership—at least where the stay order is

nonetheless necessary to protect receivership assets. *See SEC v. Kaleta*, 530 Fed. Appx. 360, 361-63 (5th Cir. 2013) (per curiam). The court will, of course, consider legal precedent, but because receivership cases are "highly fact-specific," "it is neither surprising nor dispositive [if] there is no case law directly controlling" whether the court can stay a particular litigation. *Id.* at 362.

III

A

Rothstein Kass and the *Jinsun* Plaintiffs largely focus their arguments on the language of the Stay Order, which stays all of the following types of proceedings:

> [a]ll civil legal proceedings of any nature, including, but not limited to, bankruptcy proceedings, arbitration proceedings, foreclosure actions, default proceedings, or other actions of any nature involving: (a) the Receiver, in his capacity as Receiver; (b) any Receivership Assets, wherever located; (c) the Receivership Defendants, including subsidiaries and partnerships; or, (d) any of the Receivership Defendants' past or present officers, directors, managers, agents, or general or limited partners sued for, or in connection with, any action taken by them while acting in such capacity of any nature, whether as plaintiff, defendant, third-party plaintiff, third-party defendant, or otherwise (such proceedings are hereinafter referred to as "Ancillary Proceedings").

Stay Order ¶ 32. Rothstein Kass and the nonmovants agree that at least two of the *Jinsun* Plaintiffs—Ivins and Plumb—were officers and directors of Bering, which has since become the receivership defendant BECC.[4]

---

[4]The nonmovants emphasize that five of the seven *Jinsun* Plaintiffs were never officers or directors of BECC or Bering. These five plaintiffs—the companies through which

The *Jinsun* Plaintiffs argue that because the *Jinsun* Action is not *against* any former officers or directors of BECC, the Stay Order, by its express language, is inapplicable. In other words, they read the Stay Order to apply to "[a]ll civil legal proceedings . . . involving . . . any of [BECC's] past or present officers [or] directors . . . sued for, or [sued] in connection with, any action taken by them while acting in such capacity." *Id.* They further contend that staying the *Jinsun* Action would not serve the purpose of the Stay Order—and might, in fact, exceed the court's authority under the All Writs Act, 28 U.S.C. § 1651—because it does nothing to protect any receivership assets.[5]

Rothstein Kass asserts that the *Jinsun* Plaintiffs' reading of the Stay Order is inconsistent with other language in the order that expressly contemplates that directors and

---

Casey owned Bering's stock—are entities rather than individuals. But the language of the Stay Order is not limited to lawsuits in which a *majority* of the plaintiffs are former directors or officers of a receivership defendant. Rather, it reaches "actions of any nature involving . . . *any* of the Receivership Defendants' past or present officers [or] directors . . . sued for, or in connection with, any action taken by them while acting in such capacity." Stay Order ¶ 32 (emphasis added).

[5]The *Jinsun* Plaintiffs also argue that their position is consistent with different stay orders this court has issued in past SEC receivership cases. Those stay orders were "unambiguously limited to suits against (1) parties before the court, and (2) receivership assets." Nonmovants' Resp. 6 (citing Order Appointing Receiver, *SEC v. ABC Viaticals, Inc.*, No. 3:06-CV-2136-P (N.D. Tex. Nov. 17, 2006) (Solis, J.). The nonmovants assume that changes in stay orders over time reflect changes in the SEC's template for such orders, thus shedding light on the meaning of the present Stay Order. In essence, they treat previous orders like earlier drafts of an ambiguous contract or statute, from which the intent of the drafters might be divined. But this argument is misguided. While the SEC does submit proposed orders in many receivership cases, and courts often adopt them, it is not the intent of the SEC that controls the scope of a court's order. Rather, it is the intent of the issuing court.

officers might be involved in a lawsuit *as plaintiffs*. Rothstein Kass reads the order to apply to "[a]ll civil legal proceedings . . . involving . . . any of [BECC's] past or present officers [or] directors . . . in connection with, any action taken by them while acting in such capacity . . . whether as plaintiff, defendant, . . . or otherwise." *Id.* Rothstein Kass points out that receivership assets *are* potentially at stake in the *Jinsun* Action because the relief sought in that case includes the disgorgement of funds that Breitling paid to Rothstein Kass—a claim that properly belongs to the receivership estate.[6]

B

The court agrees with Rothstein Kass's interpretation of the Stay Order. The order is worded broadly to reach all litigation that might lead to the *ad hoc* depletion of receivership assets, including lawsuits like the *Jinsun* Action.

Preliminarily, the court has authority to stay the *Jinsun* Action. The outer limits of a district court's power to stay proceedings ancillary to an SEC receivership are not clearly defined. But, at the very least, a district court can stay other lawsuits to the extent necessary to protect receivership assets. *See Rishmague*, 616 Fed. Appx. at 139-40; *Kaleta*, 530 Fed. Appx. at 361-63; *Stanford Int'l Bank Ltd.*, 424 Fed. Appx. at 340-41; *Schauss*, 757 F.2d at 654. Such a stay does not exceed the court's statutory authority under the All Writs Act; to

---

[6]Rothstein Kass further notes that the *Jinsun* Plaintiffs have asserted a negligence claim, which is another claim that the Receiver could bring on behalf of the receivership estate. But Rothstein Kass does not explain why this claim—brought by the *Jinsun* Plaintiffs in their individual, rather than derivative, capacities—necessarily implicates receivership assets.

the contrary, "the district court has within its equity power the authority to protect its jurisdiction over a receivership estate through the All Writs Act, 28 U.S.C. § 1651, and through its injunctive powers." *SEC v. Parish*, 2010 WL 8347143, at *5 (D.S.C. Feb. 10, 2010) (quoting *Gilchrist v. Gen. Elec. Capital Corp.*, 262 F.3d 295, 302 (4th Cir. 2001)), *amended by* 2010 WL 8347144, at *1 (D.S.C. Apr. 8, 2010).

The *Jinsun* Action falls within the scope of this authority because it involves potential receivership assets. The Receiver states in his most recent status report that he "is continuing his investigation and is conducting discovery regarding services provided to the Receivership Entities by legal and accounting professionals and others," and will "determine whether claw back actions are appropriate regarding professional fees and expenses paid by the Receivership entities." Oct. 10, 2018 Quarterly Status Report at 15. The *Jinsun* Plaintiffs seek, *inter alia*, the same remedy: the disgorgement of fees that Rothstein Kass received from Breitling in connection with the reverse merger.

Obviously, Rothstein Kass cannot forfeit the same fees more than once. The purpose of disgorgement or forfeiture is "strip[ping] the defendant of a wrongful gain." *In re Longview Energy Co.*, 464 S.W.3d 353, 361 (Tex. 2015) (alteration in original) (quoting RESTATEMENT (THIRD) OF RESTITUTION AND UNJUST ENRICHMENT § 51 cmt. a (2011)); *see Happy Endings Dog Rescue v. Gregory*, 501 S.W.3d 287, 291 (Tex. App. 2016, pet. denied). If Rothstein Kass is forced to disgorge its fees in the *Jinsun* Action, it will possess no allegedly wrongful gain to disgorge to the Receiver. *Cf. In re Sherman*, 491 F.3d 948, 965 n.19 (9th Cir. 2007) (discussing similar limitation on disgorgement remedy under federal

securities laws); *Litton Indus., Inc. v. Lehman Bros. Kuhn Loeb Inc.*, 734 F. Supp. 1071, 1076 (S.D.N.Y. 1990) ("[O]nce ill-gotten gains have been disgorged to the SEC, there remains no unjust enrichment and, therefore, no basis for further disgorgement in a private action."). To preserve the Receiver's possible claim for fees to which Faulkner's investors might be justly entitled, this court can stay the *Jinsun* Action.

And the Stay Order, by its terms, reaches the *Jinsun* Action. The *Jinsun* Plaintiffs' reliance on the words "sued for" is perhaps understandable, but misplaced nonetheless. First, the Stay Order's scope is expanded by the "in connection with" language; the stay therefore applies to "[a]ll civil legal proceedings . . . involving . . . any of [BECC's] past or present officers [or] directors . . . in connection with, any action taken by them while acting in such capacity." Stay Order ¶ 32. Second, the Stay Order clearly contemplates that former directors and officers might be involved in lawsuits in a capacity other than as a defendant. It applies whether a former director or officer is a "plaintiff, defendant, third-party plaintiff, third-party defendant, or otherwise," and it states that all such lawsuits are stayed. *Id.* The *Jinsun* Plaintiffs seek relief as plaintiffs "in connection with" their actions as directors and officers of Bering, which is now the receivership defendant BECC. They allege that Rothstein Kass misled them into going through with an unwise transaction on Bering's behalf. Therefore, the *Jinsun* Action is within the scope of the Stay Order.

The *Jinsun* Action also qualifies as one "otherwise" "involving . . . the Receivership Defendants," Stay Order ¶ 32, because it "necessarily impacts the potential rights or property of the Receivership Defendant[s] and, through [them], the Receivership Estate," *SEC v.*

*Alleca*, 2015 WL 999888, at *3 (N.D. Ga. Mar. 5, 2015) (interpreting identical stay order). As noted above, the Receiver is considering pursuing disgorgement claims against entities that provided professional services to the ones in receivership. Rothstein Kass qualifies as such an entity. But if the *Jinsun* Plaintiffs succeed in disgorging Rothstein Kass's fees before the Receiver can file his own claim against the accounting firm, the Receiver's attempt to recover a potential receivership asset may be thwarted. The *Jinsun* Action thus impacts the potential rights and property of the receivership defendants and the receivership estate.[7]

\* \* \*

For the reasons stated, the court grants Rothstein Kass's motion to clarify that the Stay Order reaches the *Jinsun* Action, and it clarifies that the *Jinsun* Action is stayed under the Stay Order pending further order of this court. The clerk of court is directed to transmit a copy of this memorandum opinion and order to the County Clerk of Dallas County, Texas.

**SO ORDERED**.

October 24, 2018.

							_____
							SIDNEY A. FITZWATER
							SENIOR JUDGE

---

[7]Because the court is granting Rothstein Kass's motion for clarification, it need not consider Rothstein Kass's request in the alternative for discovery from BECC.