IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, § § § | |
| Plaintiff, § § | Civil Action No. 3:16-CV-1735-D |
| VS. § § | |
| CHRISTOPHER A. FAULKNER, et al., § § | |
| Defendants. § | |

MEMORANDUM OPINION
AND ORDER

On June 7, 2018 the court ordered nonparty Carole Faulkner ("Carole") to pay the court-appointed temporary receiver in this case ("Receiver") roughly $118,000 in attorney's fees within 30 days as a sanction for her civil contempt (the "Fee Award"). When she failed to make any payment toward the Fee Award, the Receiver moved to hold her in contempt. Following the contempt hearing, and for the reasons that follow,[1] the court finds by clear and convincing evidence that Carole violated the Fee Award and that she has not met her burden of showing that compliance is impossible. The court therefore holds Carole in civil contempt and orders that she pay the Receiver the sum of $118,090.52 within 90 days of the date this memorandum opinion and order is filed. If she fails to do so, the court will impose a coercive, nonpunitive fine of $250 per day, payable to the clerk of court, beginning the day after the 90-day deadline expires.

---

[1]The court sets out in this memorandum opinion and order its findings of fact and conclusions of law. *See* Fed. R. Civ. P. 52(a)(1).

I

This is an enforcement action by the U.S. Securities and Exchange Commission ("SEC") against Christopher A. Faulkner ("Christopher") and other defendants, alleging that Christopher orchestrated a massive fraud scheme by which he swindled investors out of millions of dollars over a multi-year period. The present case is already the subject of a number of memorandum opinions and orders. *See, e.g., SEC v. Faulkner*, 2018 WL 5458789, at *1 (N.D. Tex. Oct. 29, 2018) (Fitzwater, J.) (collecting cases) (denying motion to impose constructive trust). The court will therefore confine its discussion of the facts to those that are necessary to understand this decision.

On September 25, 2018 the court granted the SEC's motion to appoint a receiver over the assets of certain defendant individuals and entities. *See SEC v. Faulkner*, 2017 WL 4238705, at *4 (N.D. Tex. Sept. 25, 2017) (Fitzwater, J.). The accompanying order appointing a receiver ("September 25 Order") froze Christopher's assets and imposed a mandatory stay of all related litigation. In February 2018, after an evidentiary hearing, the court issued an order ("Contempt Order") holding Carole in civil contempt for violating the September 25 Order on two different grounds. The first was based on Carole's activities with respect to an entity called U.S. Property Investments, Inc. ("USPI"), which she and Christopher jointly controlled. *See SEC v. Faulkner*, 2018 WL 888910, at *12 (N.D. Tex. Feb. 13, 2018) (Fitzwater, J.). Christopher had received an influx of funds from the September 2017 sale of RackAlley, LLC ("RackAlley"), an entity in which he had held a one-third ownership interest. *Id.* at *10. Instead of turning over these funds to the Receiver,

as required by the September 25 Order, Christopher directed that the funds be paid to USPI. *Id.* Carole used her joint control over USPI to aid and abet Christopher's violation by preventing the Receiver from accessing proceeds that were deposited in USPI's bank account. *Id.* at *12. Carole and USPI further violated the September 25 Order's stay of litigation by filing suit against the Receiver in California state court on various state-law theories of "interference" with the RackAlley transaction. *Id.* at *13. The court accordingly ordered Carole to turn over the RackAlley proceeds in USPI's possession, to dismiss the California state court case, and to pay the reasonable and necessary attorney's fees and costs that the Receiver incurred in defending the California lawsuit. *Id.* at *15.

In June 2018 the court entered the Fee Award, which detailed the amounts for which Carole was jointly and severally liable to the Receiver under the Contempt Order. *See SEC v. Faulkner*, 2018 WL 2739029 (N.D. Tex. June 7, 2018) (Fitzwater, J.). The court held that "[Christopher] Faulkner and Carole are jointly and severally liable for $59,195.82; and Carole and USPI are jointly and severally liable for $58,894.70." *Id.* at *4. In total, Carole is jointly and severally liable for the sum of $118,090.52.[2] The court gave Carole 30 days from the date the Fee Award was filed to pay the amount due. *Id.* In August 2018 the Receiver moved for a show-cause order, contending that the court should hold Carole in contempt for failing to make any payment toward the Fee Award by the required deadline.

---

[2]The court has since imposed an additional sanction of $10,045.50 on Carole for violating Rule 11 in the course of the present proceedings. *See SEC v. Faulkner*, 2018 WL 5924042, at *5 (N.D. Tex. Nov. 13, 2018) (Fitzwater, J.). The Receiver has not sought to hold Carole in contempt for nonpayment of this additional sanction.

The court granted the Receiver's motion, ordered Carole to show cause why she should not be held in contempt, and set the matter for an evidentiary hearing. *See Faulkner*, 2018 WL 5459178, at *3-4. The court conducted the hearing on December 14, 2018.

II

The court begins by deciding whether Carole is in contempt of the Contempt Order and the Fee Award.

A

A court may enforce compliance with any valid order, including a contempt order, through civil contempt. *See SEC v. Res. Dev. Int'l LLC*, 217 Fed. Appx. 296, 298 (5th Cir. 2007) (per curiam); *SEC v. AmeriFirst Funding, Inc.*, 2008 WL 5191896, at *4-5 (N.D. Tex. Dec. 11, 2008) (Fitzwater, C.J.). "[A] movant in a civil contempt proceeding bears the burden of establishing by clear and convincing evidence 1) that a court order was in effect, 2) that the order required certain conduct by the respondent, and 3) that the respondent failed to comply with the court's order." *Whitcraft v. Brown*, 570 F.3d 268, 271-72 (5th Cir. 2009) (quoting *Martin v. Trinity Indus., Inc.*, 959 F.2d 45, 47 (5th Cir. 1992)).[3] Although intent is

---

[3]
> Clear and convincing evidence is that weight of proof which produces in the mind of the trier of fact a firm belief or conviction . . . so clear, direct and weighty and convincing as to enable the fact finder to come to a clear conviction, without hesitancy, of the truth of precise facts of the case.

*Hornbeck Offshore Servs., L.L.C. v. Salazar*, 713 F.3d 787, 792 (5th Cir. 2013) (alteration in original) (quoting *Shafer v. Army & Air Force Exch. Serv.*, 376 F.3d 386, 396 (5th Cir. 2004)).

irrelevant when a *party* is a respondent in a civil contempt proceeding, the court can only hold a *nonparty* like Carole in contempt upon clear and convincing evidence that she violated the order intentionally. *See id.* at 272. Impossibility is a defense to contempt. If it is established that compliance with the order is impossible, "neither the moving party nor the court has any reason to proceed with the civil contempt action." *United States v. Rylander*, 460 U.S. 752, 757 (1983). The alleged contemnor bears the burden of producing credible evidence to show that compliance is impossible. *Id.*

B

The Receiver has proved by clear and convincing evidence that Carole should be held in civil contempt. He established that two court orders were in effect: the Fee Award and the Contempt Order. These orders required Carole to pay the Receiver $118,090.52 within 30 days of June 7, 2018. *See Faulkner*, 2018 WL 2739029, at *4. The Receiver testified that Carole did not do so. Indeed, according to the Receiver's testimony, the closest Carole came to complying was when she initiated settlement negotiations with the Receiver in November 2018. The negotiations concerned the possibility that Carole might satisfy all of the sanctions against her and purge herself of contempt by paying the Receiver from the proceeds of the sale of her residence. These negotiations were unsuccessful. Thus far, Carole has not paid anything toward the Fee Award.[4]

---

[4]Carole elicited testimony that she paid $10,000 to the Receiver after the Contempt Order was initially filed. This payment, however, actually constituted the return of receivership assets to which Carole was never entitled; it was not a payment toward the $118,090.52 in attorney's fees now at issue. *See Faulkner*, 2018 WL 888910, at *15. This

The Receiver also proved by clear and convincing evidence that Carole had the requisite intent to violate the Contempt Order and the Fee Award. Her own testimony demonstrates this by clear and convincing evidence. She undoubtedly knew about the contents of the Contempt Order because she took steps to comply with it in other respects before she left for an extended vacation in Lebanon. The Contempt Order stated that Carole was jointly and severally liable for the Receiver's attorney's fees related to the California state court action, although the court had not yet determined the exact amount of those fees. *See Faulkner*, 2018 WL 888910, at *15. Moreover, Carole admitted during her hearing testimony that, while she was in Lebanon, she learned that she was "responsible for all these fees," Hrg. Tr. at 19; it is reasonable for the court to infer that this admission refers to the Fee Award. Carole could have paid *something* toward the Fee Award. She testified that she had around $10,000 in her possession in June 2018, but instead of using that money to make at least some payment to the Receiver, she loaned it to First Capital Gold, Inc. ("First Capital"). The court therefore finds by clear and convincing evidence that Carole intentionally violated the Contempt Order and the Fee Award.

---

payment therefore does not demonstrate Carole's compliance with the Fee Award.

C

The court now considers whether Carole met her burden of proving that compliance with the Fee Award is impossible.

1

Carole's testimony shows that the equity she has in her residence is sufficient to cover the full amount of the sanction. Carole argues that the court cannot take the value of her residence into account because it is protected by Texas homestead law. The court disagrees.

Texas laws protecting the homestead are expansive and deeply rooted. *See Zwernemann v. Von Rosenburg*, 13 S.W. 485, 487 (Tex. 1890). Homestead rights have long been zealously guarded, and they trace back to Texas' days as a republic, prior to admission into the Union. *See* Act of Jan. 26, 1839, 1839 Laws of Rep. of Tex. 1236. They "are not only based upon a tender regard for the welfare of the citizen, but have for their object the stability and welfare of the state." *Andrews v. Sec. Nat'l Bank*, 50 S.W.2d 253, 256 (Tex. 1932). "The homestead exemption was founded on principles of soundest policy. . . . Its design was not only to protect citizens and their families from destitution, but also cherish and support in bosoms of individuals, those feelings of sublime independence which are so essential to maintenance of free institutions." *Franklin v. Coffee*, 18 Tex. 413, 415-16 (1857). Tex. Const. art. XVI, § 50 provides that no homestead can be the subject of a forced sale for payment of any debts other than those within a narrow group, and that any lien securing a debt outside of that group is invalid.

But when a contemnor is ordered to pay money as a sanction for violating a court

order, the court *can* consider the value of the contemnor's homestead. Thus on multiple occasions courts in this circuit have concluded that they can take homestead assets into account, or seize them outright, when imposing sanctions under civil contempt orders. *See, e.g., Guerrero v. Satterwhite*, 2014 WL 1052417, at *5 n.3 (S.D. Tex. Mar. 18, 2014) (Rosenthal, J.) ("The sanctions were not a money judgment for which a party is prohibited from seizing exempt property to satisfy; so, any argument that Satterwhite's exempt assets could not be seized is meritless."); *BKS Props., Inc. v. Shumate*, 271 B.R. 794, 803-04 (N.D. Tex. Jan. 15, 2002) (Kendall, J.) ("The Fifth Circuit has recognized that federal courts may consider the value of assets, even if such assets are exempt from a creditor's reach, in assessing sanctions for contempt." (citing *SEC v. AMX Int'l, Inc.*, 7 F.3d 71, 76 (5th Cir. 1993) (per curiam))); *Faulkner v. Kornman*, 2012 WL 864574, at *2-3 (Bankr. S.D. Tex. Mar. 13, 2012) ("The First Contempt Order is not a mere money judgment. . . . Kornman's exempt assets may be used to satisfy the First Contempt Order.").

In fact, it is questionable whether Texas' homestead protection, by its terms, applies at all in the context of this case. The homestead is protected against forced sale for all debts except those included in a narrow group, and any liens securing debts outside of that group are invalid. *Benchmark Bank v. Crowder*, 919 S.W.2d 657, 660 (Tex. 1996) (citing Tex. Const. art. XVI, § 50). But the instant matter does not involve a forced sale, a debt, or a lien. And the court is not forcing the sale of Carole's residence. The Supreme Court of Texas has, on at least one occasion, defined a forced sale as

> a sale made at the time and in the manner prescribed by law, in virtue of an execution issued on a judgment already rendered by a court of competent jurisdiction; or, in other words, a forced sale is one which is made under the process of the court, and in the mode prescribed by law.

*Roots v. Robertson*, 55 S.W. 308, 309 (Tex. 1900). The court is not ordering the sale of Carole's residence via a process prescribed by law, so by definition it is not effecting a "forced sale." In fact, Carole need not sell her residence to purge herself of contempt, provided she can find another way to satisfy the Fee Award.

Additionally, the Fee Award is not a debt or a judgment. In the analogous context of Texas' constitutional prohibition against imprisonment for debts, the Fifth Circuit has concluded that a party can be held in contempt and imprisoned for failing to make payments in accordance with a court order in the public interest, because such an order is not a debt. *Pierce v. Vision Invs., Inc.*, 779 F.2d 302, 309-10 (5th Cir. 1986). At least one court in this circuit has concluded that a contempt order is a court order in the public interest. *See Kornman*, 2012 WL 864574, at *3. It is reasonable to conclude that a sanction imposed pursuant to a contempt order likewise is not a debt for purposes of Article XVI, § 50.[5]

Nor is the court attempting to impose on Carole's property a lien that might be invalidated by the Texas Constitution. A lien is a "legal right or interest that a creditor has in another's property, lasting [usually] until a debt or duty that it secures is satisfied." *Lien*,

---

[5]Moreover, a Texas court cannot convert a *judgment* for attorney's fees into a *sanction* because doing so would circumvent homestead protections. *See Harleaux v. Harleaux*, 154 S.W.3d 925, 928 (Tex. App. 2005, no pet.). This prohibition suggests that a sanction *can* generally be enforced against a homestead, whereas a judgment cannot be.

BLACK'S LAW DICTIONARY (10th ed. 2014). Here, the court is not granting the Receiver any particular legal right or interest in Carole's residence, even though the Receiver requested such an interest. Rather, the court is simply taking Carole's residence into account when deciding whether Carole has sufficient assets to satisfy the contempt sanctions against her.

The evidence at the December 14 hearing shows that Carole's residence is worth somewhere between $428,000 and $450,000. The low end of the range is based on a recent Tarrant County tax appraisal; the upper end is the price at which Carole listed her residence for sale in 2018. There are two mortgages on the property totaling less than $75,000, leaving Carole with at least $353,000 of equity. Thus, as Carole has acknowledged, the equity in her residence is sufficient to satisfy the Fee Award. Carole has failed to produce persuasive evidence showing that compliance with the Fee Award is impossible.

2

Moreover, even if the court were precluded from taking Carole's residence into account, it could still hold Carole in contempt for failing to make at least a partial effort to pay the Fee Award.

> [W]hen an order requires a party to pay a sum certain, a mere showing that the party was unable to pay the entire amount by the date specified is insufficient to avoid a finding of contempt. When a party is absolutely unable to comply due to poverty or insolvency, inability to comply is a complete defense. Otherwise, the party must pay what he or she can.

*United States v. Smith*, 2018 WL 4524123, at *6 (E.D. Tex. Sept. 13, 2018) (quoting *SEC v. Musella*, 818 F. Supp. 600, 602 (S.D.N.Y. 1993)), *rec. adopted*, 2018 WL 5668532, at *11

(E.D. Tex. Oct. 31, 2018); *see also In re Res. Tech. Corp.*, 624 F.3d 376, 387 (7th Cir. 2010) ("[W]here, as here, there has been no effort at even partial compliance with the court's order, the inability-to-pay defense requires a showing of a 'complete inability' to pay[.]" (quoting *Huber v. Marine Midland Bank*, 51 F.3d 5, 10 (2d Cir. 1995))). Thus unless Carole shows that she was unable to pay anything at all toward the Fee Award, the court may hold her in contempt.

The hearing evidence shows that Carole was not completely impoverished when the court issued the Fee Award in June 2018. As noted above, Carole testified that she had around $10,000 in her possession that month. But instead of using that money to make at least some payment to the Receiver, she loaned it to First Capital. First Capital later paid back most of the loan balance, but Carole still made no attempt to comply with the Fee Award until she initiated settlement negotiations regarding the sale of her residence. Because Carole could have paid *something* toward the Fee Award, she has not demonstrated that she is absolutely unable to comply. A finding of contempt is therefore appropriate because the Receiver has met his burden of proof and Carole has failed to meet hers.

III

Having concluded that Carole is in contempt of the Fee Award, the court now addresses the question of the appropriate sanction.

"Upon a finding of contempt, the district court has broad discretion in assessing sanctions to protect the sanctity of its decrees and the legal process." *Test Masters Educ. Servs., Inc. v. Singh*, 428 F.3d 559, 582 (5th Cir. 2005) (citing *Am. Airlines, Inc. v. Allied*

*Pilots Ass'n*, 228 F.3d 574, 585 (5th Cir. 2000)). "Judicial sanctions in civil contempt proceedings, may in a proper case, be employed for either or both of two purposes: to coerce the defendant into compliance with the court's order, and to compensate the complainant for losses sustained." *Am. Airlines*, 228 F.3d at 585 (quoting *United States v. United Mine Workers of Am.*, 330 U.S. 258, 303-04 (1947)). "The imposition or denial of sanctions of necessity involves a fact-intensive inquiry into the circumstances surrounding the activity that is the subject of sanctions." *Test Masters*, 428 F.3d at 582 (quoting *Thomas v. Capital Sec. Servs., Inc.*, 836 F.2d 866, 873 (5th Cir. 1988) (en banc)). When a contempt sanction is coercive, "the district court has broad discretion to design a remedy that will bring about compliance." *Perfect Fit Indus., Inc. v. Acme Quilting Co.*, 673 F.2d 53, 57 (2d Cir. 1982) (citing *Vuitton et Fils S.A. v. Carousel Handbags*, 592 F.2d 126, 130 (2d Cir. 1979); *Powell v. Ward*, 643 F.2d 924, 933 (2d Cir. 1981) (per curiam)). The court can require that the contemnors pay reasonable attorney's fees incurred by the moving party in obtaining a contempt finding. *See Cook v. Ochsner Found. Hosp.*, 559 F.2d 270, 272 (5th Cir. 1977) ("Courts have, and must have, the inherent authority to enforce their judicial orders and decrees in cases of civil contempt. Discretion, including the discretion to award attorneys' fees, must be left to a court in the enforcement of its decrees." (citing *United Mine Workers*, 330 U.S. at 303-04)). The court is also permitted to impose a conditional fine for the purpose of compelling the contemnor to comply with the court's order, provided the amount is reasonably designed to force compliance, without being punitive. *In re Dinnan*, 625 F.2d 1146, 1149 (5th Cir. 1980) (per curiam) (citing *United Mine Workers*, 330 U.S. at 303-04).

"A coercive, nonpunitive fine payable to the clerk of the court is an appropriate tool in civil contempt cases." *Id.* (citing cases and treatises).

The Receiver requests that the court imprison Carole until she makes a good-faith effort to comply with the Fee Award.[6] "The paradigmatic coercive, civil contempt sanction . . . involves confining a contemnor indefinitely until [she] complies with an affirmative command[.]" *Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 828 (1994). Such a sanction is coercive rather than punitive because the contemnor is able to purge her contempt at any time by undertaking an affirmative act, and thus "carries the keys of [her] prison in [her] own pocket." *Id.* (quoting *Gompers v. Bucks Stove & Range Co.*, 221 U.S. 418, 442 (1911)). But given the severity of imprisonment in the context of this case, the court finds that it is unwarranted as the initial coercive sanction. *See NASCO, Inc. v. Calcasieu Television & Radio, Inc.*, 583 F. Supp. 115, 121 (W.D. La. 1984) ("[Imprisonment] is a drastic coercive measure reserved for the most extraordinary circumstances and should be used sparingly."). Moreover, ordering Carole's immediate imprisonment might prompt her to sell her residence at a price below market value, which could conceivably compromise the Receiver's ability to collect all the sanctions he is owed.

Instead, the court will impose on Carole a coercive, nonpunitive fine of $250 per day

---

[6]At the December 14 hearing, the Receiver requested an additional remedy: a contempt judgment lien against Carole's residence. The Receiver did not offer any examples of courts imposing such liens, nor has this court found any examples on its own. Even if the court assumes *arguendo* that it is empowered to impose such a lien, it is unnecessary to do so—the court's chosen sanction is sufficiently coercive.

unless she pays the Receiver the sum of $118,090.52 within 90 days of the date this memorandum opinion and order is filed. To be clear, the court is *not* ordering Carole to sell her residence. Instead, it is taking the value of Carole's residence into account in deciding whether it is possible for her to comply with the Fee Award, which it is permitted to do notwithstanding Texas homestead law. If Carole can satisfy the sanction without selling her residence, she need not sell it to comply with today's decision.[7]

\* \* \*

For the reasons explained, the court holds Carole in civil contempt of the Contempt Order and the Fee Award. The court orders Carole to pay the Receiver the sum of $118,090.52 within 90 days of the date this memorandum opinion and order is filed. If Carole fails to do so, she will be subject to a daily coercive fine of $250, payable to the clerk of court, beginning the day after the 90-day deadline expires.

**SO ORDERED**.

January 22, 2019.

_____
SIDNEY A. FITZWATER
SENIOR JUDGE

---

[7]Carole testified at the December 14 hearing that she needs to remain in her residence because she can live there expense-free until she gets back on her feet. The court observes that, after subtracting Carole's two mortgages and all the money she owes to the Receiver, Carole still has at least $225,000 of equity in her residence. This sum should be more than sufficient to enable Carole to support herself.