IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | § § § § | |
| Plaintiff, | § § | Civil Action No. 3:16-CV-1735-D |
| VS. | § § | |
| CHRISTOPHER A. FAULKNER, et al., | § § | |
| Defendants. | § | |

MEMORANDUM OPINION
AND ORDER

The court-appointed temporary receiver ("Receiver") moves the court to order nonparty Frost Bank ("Frost") to turn over cash in its possession that was used to purchase certain cashier's checks. Concluding that the funds in question were not at the time of the purchase, and are not now, receivership assets, the court denies the motion.

I

This is a civil enforcement action by plaintiff U.S. Securities and Exchange Commission ("SEC") against defendant Christopher A. Faulkner ("Faulkner") and other defendants, alleging that Faulkner orchestrated a massive fraud scheme by which he swindled investors out of millions of dollars over a multi-year period. The present case is already the subject of a number of memorandum opinions and orders. *See SEC v. Faulkner* (*Faulkner VII*), 2018 WL 5458789, at *1 (N.D. Tex. Oct. 29, 2018) (Fitzwater, J.) (collecting cases). The court will therefore summarize only the background facts that are pertinent to today's decision.

In January 2013 Faulkner purchased a residence using wrongfully-diverted investor assets. *See SEC v. Faulkner* (*Faulkner VI*), 2018 WL 4362729, at *5 (N.D. Tex. Sept. 12, 2018) (Fitzwater, J.).[1] Either at the time of purchase or at some later time, the residence became the property of Inwood Investments, Inc. ("Inwood"), a company controlled by Faulkner that is now part of the receivership estate. *See id.*; *Faulkner VII*, 2018 WL 5458789, at *1 & n.1. Inwood sold the property to an unrelated buyer in July 2017—after the SEC initiated the present lawsuit, but before the court first appointed a receiver on August 14, 2017. *Id.* at *1. The sum of $953,000 in proceeds from the sale was deposited with Frost in an account in Inwood's name, and from that sum $840,000 of funds were converted to cashier's checks[2] payable to "Carole Faulkner" ("Carole") and "C.A. Faulkner." According to Frost, the balance of the Inwood account is now zero, and the account was closed on August 1, 2017.

Shortly after the cashier's checks were issued, the government began to seek their return. A week after the sale of the Faulkner residence, a United States Magistrate Judge issued a criminal seizure warrant authorizing the forfeiture of the instruments. Agents from the Federal Bureau of Investigation questioned Carole about the checks' whereabouts; she

---

[1]The court reached its conclusion about the source of the assets on the basis of unrebutted evidence. *See Faulkner VI*, 2018 WL 4362729, at *4.

[2]The instruments in question bear serial numbers that end in the following four digits: 9770, 9771, 9772, 9775, 9777, 9778, 9779, and 9781. *Cf.* Fed. R. Civ. P. 5.2(a)(4) (addressing use of last four digits for financial-account numbers). The court will refer to these as the "cashier's checks," the "checks," or the "instruments." Other cashier's checks were issued from the sale proceeds, but those are not the subject of the present motion.

told them that she had sent the checks to Faulkner in California via Federal Express, and that the checks had been lost in transit. After the court entered the September 2017 receivership order, the Receiver began attempting to recover from Frost the funds used to purchase the cashier's checks. The Receiver's counsel sent Frost a letter in March 2018 asserting that these funds were receivership assets, and demanding that Frost either turn over the money immediately or interplead it for the resolution of any adverse claims. So far, Frost has still not complied with these demands. It has, however, executed a stop payment order for the cashier's checks and has dishonored one check in the amount of $50,000 that was presented to a foreign bank for payment.[3]

In October 2018 the Receiver sent another letter to Frost informing it of this court's September 2018 first amended order appointing receiver, which explicitly included Inwood and its assets in the receivership estate. The letter also informed Frost that six of the cashier's checks, with a total face value of $780,000, had been located in the possession of Beniammine "Benny" Kheir ("Kheir"), a resident of Lebanon. The Receiver renewed his demand that the cash used to purchase the cashier's checks be turned over to the receivership estate, asserting that Frost had no potential liability on the checks because neither Kheir nor anyone else could ever claim holder-in-due-course status.

The Receiver now moves the court to order Frost to turn over the funds used to purchase the cashier's checks. Frost opposes the motion, contending that the cash is not a

---

[3]The $50,000 check—presented on March 26, 2018—bears a serial number that ends in the four digits 9781. It is now in Frost's possession.

receivership asset and that Frost could be subjected to liability if it later dishonors the cashier's checks.

II

The parties in their briefing have extensively addressed the question whether Frost can still be liable under any circumstances to a holder of the cashier's checks. Although the answer to this question might bear on the equities of today's decision, it does not control the principal legal issue presented: whether the funds used to purchase the cashier's checks were, at the time the checks were purchased, or are now, receivership assets.

The funds used to purchase the cashier's checks were not receivership assets at the time of the purchase because this payment occurred before the court appointed a receiver in this case. *See Am. Cancer Soc'y v. Cook*, 675 F.3d 524, 529 (5th Cir. 2012) (rejecting receiver's argument that receivership order alone entitled her to possession of cash that was donated to third-party charity before receiver was appointed).

Nor are the funds that Frost would use to satisfy the cashier's checks now receivership assets.[4] A cashier's check is "a draft with respect to which the drawer and drawee are the same bank or branches of the same bank." Tex. Bus. & Com. Code Ann. § 3.104(g) (West 2002 & Supp. 2018). In other words, it "is a bill of exchange drawn by a bank on itself and accepted in advance by the act of its issuance." *Humble Nat'l Bank v. DCV, Inc.*, 933 S.W.2d 224, 237 (Tex. App. 1996, writ denied) (citing *Guar. Fed. Sav. Bank v. Horseshoe*

---

[4]The court expresses no opinion on whether the cashier's checks themselves are receivership assets.

*Operating Co.*, 793 S.W.2d 652, 656 (Tex. 1990); *Wertz v. Richardson Heights Bank & Tr.*, 495 S.W.2d 572, 574 (Tex. 1973)). "A cashier's check circulates through commerce as 'the functional equivalent of cash.'" *Id.* (quoting *Arline v. Omnibank, N.A.*, 894 S.W.2d 76, 82 (Tex. App. 1995, no writ)). "[A] cashier's check or other draft drawn on the drawer is treated as a draft to reflect common commercial usage, but the liability of the drawer [(i.e., the bank)] is . . . the same as that of the maker of a note rather than that of the drawer of a draft." Tex. Bus. & Com. Code Ann. § 3.412 cmt. 1 (West 2002 & Supp. 2018).

From this understanding, it is clear that the funds that Frost would now use to satisfy the cashier's checks do not belong to Inwood, Faulkner, or any other receivership entity. Rather, they belong to Frost, because the cashier's checks represent an obligation of Frost itself. Frost is both the drawer and the drawee of the instruments: it has ordered itself—or promised, *see id.*—to pay a certain sum to the checks' rightful holders upon demand. It issued the cashier's checks in exchange for Inwood's payment, *to Frost*, of an equivalent sum of money from Inwood's checking account.

The Receiver has therefore failed to establish his entitlement to the funds used to purchase the cashier's checks.

### III

Frost asks the court for guidance regarding the use of interpleader to resolve all claims to the dishonored $50,000 cashier's check, which is now in Frost's possession. *See supra* note 3. In essence, Frost is requesting that the court issue an advisory opinion about the proper course of action with respect to the check. The court declines this request. *See*

*Princeton Univ. v. Schmid*, 455 U.S. 100, 102 (1982) (per curiam) ("[Courts] do not sit to decide hypothetical issues or to give advisory opinions about issues as to which there are not adverse parties before us.").

In its response brief, Frost also requests that it be "protected from future liability and the costs and expenses associated with" defending against third-party claims to the cashier's checks. Resp. Br. 24. This request is not cognizable as presented. "A request for a court order must be made by motion," must "state with particularity the grounds for seeking the order," and must "state the relief sought." Fed. R. Civ. P. 7(b)(1). Frost does not frame its request as a motion,[5] does not provide any legal basis for its request, and—perhaps most important—does not explain what form its proposed protection might take. *Cf. United States ex rel. Willard v. Humana Health Plan of Tex. Inc.*, 336 F.3d 375, 387 (5th Cir. 2003) ("[A] bare request in an opposition to a motion to dismiss—without any indication of the particular grounds on which the amendment is sought, *cf.* [Rule] 7(b)—does not constitute a motion within the contemplation of Rule 15(a)." (first alteration in original) (quoting *Confederate Mem'l Ass'n, Inc. v. Hines*, 995 F.2d 295, 299 (D.C. Cir. 1993))).

---

[5]If Frost's request *is* a motion, Frost does not identify it as such in the title of its brief. *See* N.D. Tex. Civ. R. 5.1(c) ("[A] document may contain more than one pleading, motion, or other paper . . . [but] must clearly identify each included pleading, motion, or other paper in its title."); *see, e.g., In re Alamosa Holdings, Inc.*, 382 F.Supp.2d 832, 867 n.9 (N.D. Tex. 2005) (Cummings, J.) (denying motion for leave to amend because, *inter alia*, party failed to abide by Rule 5.1(c)).

IV

The Receiver also requests that the court award him the attorney's fees he has incurred in attempting to recover assets from Frost. He contends that he is entitled to such fees because Frost has "no valid reason" for failing to turn over the cash backing the cashier's checks. Receiver Br. 12. But the Receiver has not established his entitlement to relief on the merits of his motion for turnover of assets, and, moreover, has failed to specify a legal basis for his request for attorney's fees. The court therefore denies his request for attorney's fees.[6]

\* \* \*

For the reasons stated, the court denies the Receiver's motion for turnover of assets and request for attorney's fees and all relief that Frost seeks in response.

**SO ORDERED**.

February 25, 2019.

_____
SIDNEY A. FITZWATER
SENIOR JUDGE

---

[6]Additionally, the Receiver argues in his reply brief that Frost is not entitled to attorney's fees. The court does not understand Frost to be requesting attorney's fees at this time. To the extent Frost does make such a request, the court denies it because Frost has failed to state any legal basis for an award of attorney's fees.