IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

SECURITIES AND EXCHANGE § 
COMMISSION, §
 §
 §
Plaintiff, §
 § Civil Action No. 3:16-CV-1735-D
VS. §
 §
CHRISTOPHER A. FAULKNER, et al., §
 §
Defendants. §

MEMORANDUM OPINION
AND ORDER

In a prior memorandum opinion and order, *SEC v. Faulkner*, 2018 WL 5279321 (N.D. Tex. Oct. 24, 2018) (Fitzwater, J.) (the "Clarification Order"), the court granted nonparty Rothstein, Kass & Co., PLLC's ("Rothstein Kass's") motion to clarify the scope of the court's September 25, 2017 stay order (the "Stay Order"), and clarified that a Texas county court lawsuit—the *Jinsun* Action[1]—is stayed under the Stay Order pending further court order. The *Jinsun* Plaintiffs[2] now move to vacate the Clarification Order, contending that the Stay Order does not encompass the sixth amended petition to be filed in the *Jinsun* Action. Rothstein Kass, joined by the court-appointed temporary receiver ("Receiver"), opposes the motion. For the reasons that follow, the court denies the motion.

---

[1]*Jinsun, L.L.C. v. Rothstein, Kass & Co.*, No. CC-17-06249-C (Cty. Ct. at Law No. 3, Dall. Cty., Tex. filed Nov. 28, 2017).

[2]The *Jinsun* Plaintiffs are J. Leonard Ivins, Steven M. Plumb, and several companies controlled by Kevan Casey: Jinsun, L.L.C., Silver Star Holdings Trust, KM Casey No. 1 Ltd., TPH Holdings, L.L.C., and Vertical Holdings L.L.C.

I

This is a civil enforcement action by plaintiff U.S. Securities and Exchange Commission ("SEC") against defendant Christopher A. Faulkner ("Faulkner") and other defendants, alleging that Faulkner orchestrated a massive fraud scheme by which he swindled investors out of millions of dollars over a multi-year period. The background facts underlying the present motion are identical to those set out in the Clarification Order. *See Faulkner*, 2018 WL 5279321, at *1-2.

In essence, the dispute arises from Rothstein Kass's role in a reverse merger involving two private corporations that were part of Faulkner's fraud scheme—Breitling Oil & Gas Corporation ("BOG") and Breitling Royalties Corporation ("BRC") (collectively, "Breitling")—and Bering Exploration, Inc. ("Bering"), a public corporation that later became Breitling Energy Corporation ("BECC"). *See id.* at *1. Breitling hired Rothstein Kass to audit its books in anticipation of the reverse merger. *See id.* A few months after the merger was completed in December 2013, Rothstein Kass issued an unqualified audit opinion. *See id.*

In November 2017 the *Jinsun* Plaintiffs—Bering's pre-merger shareholders—sued Rothstein Kass in Texas county court in the *Jinsun* Action. They allege that Rothstein Kass knew or should have known about inconsistencies in Breitling's financial statements, both immediately before the reverse merger and shortly thereafter, and either failed to disclose them or intentionally concealed them. *See Faulkner*, 2018 WL 5279321, at *2. The *Jinsun* Plaintiffs seek relief under a number of theories, including (as relevant here) professional

negligence and negligent misrepresentation.³  As the *Jinsun* Action now stands, the *Jinsun* Plaintiffs also assert a claim for equitable forfeiture and disgorgement of the professional fees Breitling paid to Rothstein Kass.

In August 2018 Rothstein Kass moved for clarification that the Stay Order⁴ applies to the *Jinsun* Action.  The court, relying on two complementary rationales, granted the motion.  *See id.* at *5.  First, the court observed that while "[t]he outer limits of a district court's power to stay proceedings ancillary to an SEC receivership are not clearly defined," that power at least extends to lawsuits that implicate receivership assets.  *Id.* at *3.  The court reasoned that the *Jinsun* Action threatened a receivership asset—the Receiver's own potential claim against Rothstein Kass for disgorgement—because if Rothstein Kass forfeited its fees to the *Jinsun* Plaintiffs, it could not disgorge the same fees to the Receiver.  *See id.* at *4.  Therefore, the court concluded that it had the power to stay the *Jinsun* Action.  *See id.*

Second, the court turned to the language of the Stay Order itself.  It interpreted the Stay Order as applying to "[a]ll civil legal proceedings . . . involving . . . any of [BECC's]

---

³The *Jinsun* Plaintiffs assert two different counts of negligence.  Count IV is clearly framed as a negligent misrepresentation claim.  Count III is not expressly couched as a professional negligence claim, but it alleges that Rothstein Kass breached its duty to perform a competent audit, and thus sounds in professional negligence.  *See, e.g., Greenstein, Logan & Co. v. Burgess Mktg., Inc.*, 744 S.W.2d 170, 185 (Tex. App. 1987, writ denied) ("[Auditors] owe their clients a duty to exercise the degree of care, skill and competence that reasonably competent members of their profession would exercise under similar circumstances.").

⁴The court will continue to refer to the Stay Order, and not to the court's September 2018 first amended order appointing a receiver (which superseded the Stay Order), for the reasons given in the Clarification Order.  *See Faulkner*, 2018 WL 5279321, at *1 n.3.

past or present officers [or] directors . . . in connection with, any action taken by them while acting in such capacity . . . whether as plaintiff, defendant, . . . or otherwise." *Id.* at *3 (quoting Stay Order ¶ 32). Because the *Jinsun* Action involved two former directors of BECC—J. Leonard Ivins ("Ivins") and Steven M. Plumb ("Plumb")—who were on the board of Bering until the reverse merger and who sought relief as plaintiffs in connection with actions taken by them in their capacity as directors, the *Jinsun* Action fell within the Stay Order's plain language. *See id.* at *4. The court also held that the *Jinsun* Action qualified as "one 'otherwise' 'involving . . . the Receivership Defendants'" because it "necessarily impacts the potential rights or property of the Receivership Defendant[s] and, through [them], the Receivership Estate." *Id.* (alterations in original) (first quoting Stay Order ¶ 32, then quoting *SEC v. Alleca*, 2015 WL 999888, at *3 (N.D. Ga. Mar. 5, 2015)). The *Jinsun* Action fell within this category because it implicated the Receiver's potential disgorgement claim. *See id.*

The *Jinsun* Plaintiffs now move to vacate the Clarification Order so that the *Jinsun* Action can proceed. They assert that they have resolved the concerns that the court laid out in the Clarification Order. They explain that they intend to "nonsuit"[5] their claim for equitable forfeiture and disgorgement, and to clarify in their sixth amended petition that Ivins and Plumb are asserting their claims in their capacities as shareholders only, not as directors

---

[5]A "nonsuit" is a procedural device recognized by Texas law that is roughly equivalent to a voluntary dismissal under Fed. R. Civ. P. 41(a). *See Edgar v. Gen. Elec. Co.*, 2002 WL 34722191, at *1 (N.D. Tex. Mar. 5, 2002) (Fitzwater, J.).

or officers of Bering. In the alternative, the *Jinsun* Plaintiffs request that, if the court concludes that the claims of Ivins and Plumb are still stayed, they be given relief from the stay as to the companies controlled by Kevan Casey, who were never directors or officers of Bering.

Rothstein Kass and the Receiver oppose the motion.[6] Rothstein Kass maintains that the plain language of the Stay Order applies to the *Jinsun* Action, and that the lawsuit implicates receivership assets because one of the claims asserted—professional negligence—requires privity between the plaintiff and defendant, and therefore properly, and only, belongs to the Receiver. The Receiver joins in Rothstein Kass's argument, and further informs the court that he will shortly seek leave to file his own civil action against Rothstein Kass for disgorgement of fees and professional negligence. The *Jinsun* Plaintiffs reply that

---

[6]Rothstein Kass contends that the *Jinsun* Plaintiffs failed to confer before filing the motion and failed to include a certificate of conference, both in violation of N.D. Tex. Civ. R. 7.1(a)-(b). The *Jinsun* Plaintiffs respond that they did not violate a local rule because a motion to vacate is not listed in N.D. Tex. Civ. R. 7.1(h) as a motion that requires a certificate of conference.

The *Jinsun* Plaintiffs' position is contrary to the plain language of Rule 7.1(h), which provides that, "[i]f a motion is not listed, a brief and certificate of conference *are* required." *Id.* (emphasis added). But the court will not deny the motion to clarify based on this failure to adhere to Rule 7.1(h).

"Failure to comply with a local civil rule of this court is to be carefully avoided and should not be repeated." *Obregon v. Melton*, 2002 WL 1792086, at *1 n.3 (N.D. Tex. Aug. 2, 2002) (Fitzwater, J.). But "the failure to file a certificate of conference presents no basis to deny the motion where, as here, it is clear that the motion is opposed and that a conference would neither have eliminated nor narrowed the parties' dispute." *Id.* In the instant context, the *Jinsun* Plaintiffs' motion is obviously opposed, and it is unlikely that a conference would have eliminated or narrowed the parties' dispute.

the Receiver has no claim against Rothstein Kass for professional negligence because any such claim would be barred by the statute of limitations and by the equitable doctrine of *in pari delicto*.

II

The court has wide discretion to fashion equitable remedies in the context of an SEC civil enforcement action. *See SEC v. Posner*, 16 F.3d 520, 521 (2d Cir. 1994). It is "axiomatic" that this discretion includes "broad authority to issue blanket stays of litigation to preserve the property placed in receivership pursuant to SEC actions." *SEC v. Stanford Int'l Bank Ltd.*, 424 Fed. Appx. 338, 340 (5th Cir. 2011) (per curiam); *accord Rishmague v. Winter*, 616 Fed. Appx. 138, 139-40 (5th Cir. 2015); *Schauss v. Metals Depository Corp.*, 757 F.2d 649, 654 (5th Cir. 1985). "Such orders can serve as an important tool permitting a district court to prevent dissipation of property or assets subject to multiple claims in various locales." *Schauss*, 757 F.2d at 654. This power is not limited to enjoining suits against entities that have been placed in receivership—at least where the stay order is nonetheless necessary to protect receivership assets. *See SEC v. Kaleta*, 530 Fed. Appx. 360, 361-63 (5th Cir. 2013) (per curiam). Although the court considers legal precedent, because receivership cases are "highly fact-specific," "it is neither surprising nor dispositive [if] there is no case law directly controlling" whether the court can stay a particular litigation. *Id.* at 362.

III

So long as the *Jinsun* Plaintiffs continue to pursue their claim for professional negligence, the *Jinsun* Action remains stayed by the Stay Order.

A

The *Jinsun* Plaintiffs' claim for professional negligence against Rothstein Kass is an asset of the Receiver.

The assets of a receivership estate include any causes of action belonging to the receivership entities. *See, e.g., Reneker v. Offill*, 2009 WL 804134, at *4 (N.D. Tex. Mar. 26, 2009) (Fitzwater, C.J.) ("In the Receivership Order, the court took exclusive jurisdiction and possession of the Receivership Assets—including any causes of action belonging to the [receivership entities.]"). To determine whether a given claim belongs to the receivership estate, it is appropriate to conduct a Fed. R. Civ. P. 12(b)(6)-type analysis, looking only at the allegations in the complaint. *See SEC v. Sharp Capital, Inc.*, 315 F.3d 541, 544 (5th Cir. 2003). The Fifth Circuit has endorsed (in *dicta*) a two-part test: if (1) the cause of action alleges only an indirect harm to the plaintiff—one that derives from harm to a receivership entity—and (2) a receivership entity could have itself raised the claim for its own direct injury, then the claim belongs to the Receiver. *See id.* (quoting *In re Educators Grp. Health Tr.*, 25 F.3d 1281, 1284 (5th Cir. 1994)). "That the defendant may have a valid defense on the merits of a claim brought by the [receivership entity] goes to the resolution of the claim, and not to the ability of the [receivership entity] to assert the claim." *In re Educators*, 25 F.3d at 1286. This two-part test strikes a sensible balance, and the court will apply it even

though the Fifth Circuit did not expressly adopt it in *Sharp Capital*. The test ensures that a claim is treated as a receivership asset only if the Receiver could have brought the claim directly and—due to the claim's derivative nature—the *Jinsun* Plaintiffs could not have done so.

Here, the *Jinsun* Plaintiffs' claim for professional negligence is necessarily derivative of the Receiver's own claim. Under Texas law, professional negligence requires privity of contract between the plaintiff and the defendant. *See Ervin v. Mann Frankfort Stein & Lipp CPAs, L.L.P.*, 234 S.W.3d 172, 182 (Tex. App. 2007, no pet.) (accounting services); *see also City of Houston v. Towers Watson & Co.*, 2015 WL 5604059, at *4 (S.D. Tex. Sept. 23, 2015) (actuarial services); *Brannan Paving GP, LLC v. Pavement Markings, Inc.*, 446 S.W.3d 14, 26 (Tex. App. 2013, pet. denied) (insurance brokerage services); *W. Hous. Airport, Inc. v. Millennium Ins. Agency, Inc.*, 349 S.W.3d 748, 752 (Tex. App. 2011, pet. denied) (same); *Hartman v. Urban*, 946 S.W.2d 546, 548-50 (Tex. App. 1997, no writ) (engineering services); *Wright v. Gundersen*, 956 S.W.2d 43, 48 (Tex. App. 1996, no writ) (attorney services). "Privity is the contractual connection or relationship that exists between two or more parties." *Ervin*, 234 S.W.3d at 182 (citing *Wright*, 956 S.W.2d at 48). "The accountant-client relationship is a contractual relationship that creates privity between the accountant and the client, permitting only the client to bring a claim for professional negligence against the accountant." *Id.* (citing *Prospect High Income Fund v. Grant Thornton, LLP*, 203 S.W.3d 602, 609 (Tex. App. 2006), *rev'd in part on other grounds*, 314 S.W.3d 913 (Tex. 2010)).

The *Jinsun* Plaintiffs' proposed sixth amended petition alleges that "*Breitling* [i.e., BOG and BRC] hired Rothstein Kass . . . to audit Breitling's financial statements." *Jinsun* Ps. App. 20 (emphasis added). Nowhere do the *Jinsun* Plaintiffs allege the existence of an express or implied contract between Rothstein Kass and the individual shareholders of Bering or BECC. Thus the *Jinsun* Plaintiffs, who assert their claims in their capacity as shareholders, do not themselves have a cause of action for professional negligence; any claim they assert is necessarily derivative of the potential claims of a receivership entity. *See Haut v. Green Café Mgmt., Inc.*, 376 S.W.3d 171, 177 (Tex. App. 2012, no pet.) (citing *Wingate v. Hajdik*, 795 S.W.2d 717, 719 (Tex. 1990)) ("The general rule in Texas is that a corporate shareholder has no individual cause of action for damages caused by a wrong done solely to the corporation.").

And a receivership entity could have brought a claim for professional negligence against Rothstein Kass at the time the receivership began. "To establish liability for professional negligence, the plaintiff must show the existence of a duty, a breach of that duty, and damages arising from the breach," as well as privity of contract. *Towers Watson & Co.*, 2015 WL 5604059, at *4 (quoting *Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 314 (5th Cir. 2002)). It appears from the sixth amended petition that BOG, BRC, and possibly BECC actually hired Rothstein Kass, and therefore were in privity with it. *See Ervin*, 234 S.W.3d at 182. Rothstein Kass owed these entities a duty: it is well-established that accountants and auditors "owe their clients a duty to exercise the degree of care, skill and competence that reasonably competent members of their profession would

exercise under similar circumstances." *Greenstein, Logan & Co. v. Burgess Mktg., Inc.*, 744 S.W.2d 170, 185 (Tex. App. 1987, writ denied); *see also In re Sunpoint Secs., Inc.*, 377 B.R. 513, 556 (Bankr. E.D. Tex. 2007) (same). The *Jinsun* Plaintiffs allege that Rothstein Kass breached that duty by, *inter alia*, failing to comply with Generally Accepted Auditing Standards. *Cf. Greenstein*, 744 S.W.2d at 185 ("An accountant usually discharges the duty owed to his client by complying with recognized industry standards, such as the 'Generally Accepted Auditing Standards,' when performing an audit."). As for causation and damages, the *Jinsun* Plaintiffs allege that they would have rescinded the reverse merger transaction but for Rothstein Kass's acts and omissions. Had they done so, BECC would never have fallen into Faulkner's hands, and the scale of the overall fraud scheme—and its resulting harm[7] to a number of receivership entities—would have been reduced. Thus the Receiver may bring a professional negligence suit on behalf of these entities.

The *Jinsun* Plaintiffs maintain that the Receiver has no such claim because Rothstein Kass could successfully assert the affirmative defenses of *in pari delicto* and the statute of limitations.[8] But the possible existence of a viable defense does not control whether the

---

[7]The court takes judicial notice of the fact that Faulkner pleaded guilty to wrongfully diverting millions of dollars from the companies under his control for his own personal benefit. *See* Factual Resume, *United States v. Faulkner*, 3:18-CR-500-B (N.D. Tex. Oct. 4, 2018) (Boyle, J.).

[8]"[*I*]*n pari delicto* is an affirmative defense[.]" *Rogers v. McDorman*, 521 F.3d 381, 386 (5th Cir. 2008). The same is true of the statute of limitations. *See* Rule 8(c)(1). The court expresses no opinion on the merits of any claims that the Receiver may assert against Rothstein Kass for professional negligence or of any possible defenses.

receivership estate owns a claim in the first instance. *See In re Educators*, 25 F.3d at 1286 (refusing to consider possibility of successful *in pari delicto* defense in determining whether cause of action belonged to estate); *In re Today's Destiny, Inc.*, 388 B.R. 737, 746-47 (Bankr. S.D. Tex. 2008) (same); *see also Official Comm. of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP*, 322 F.3d 147, 157 (2d Cir. 2003) (reaching same conclusion under Texas law). Any claim for professional negligence against Rothstein Kass regarding the reverse merger is therefore a receivership asset.

B

The *Jinsun* Action also falls within the plain scope of the Stay Order despite the *Jinsun* Plaintiffs' attempt to clarify the capacity of, or to sever, Ivins and Plumb.[9]

It does not matter whether the sixth amended petition renders the *Jinsun* Action a "civil legal proceeding[] . . . involving . . . any of [BECC's] past or present officers [or] directors . . . in connection with, any action taken by them while acting in such capacity . . . whether as plaintiff, defendant, . . . or otherwise." The Clarification Order also rests on the fact that the *Jinsun* Action is "one 'otherwise' 'involving . . . the Receivership Defendants'"

---

[9]Generally, a district court is considered to be in the best position to interpret its own orders. *See, e.g., In re Vela*, 2009 WL 6506881, at *6 (W.D. Tex. Sept. 15, 2009) ("When a district court's decision is based on an interpretation of its own order, [appellate] review is . . . deferential because district courts are in the best position to interpret their own orders." (quoting *JTH Tax, Inc. v. H & R Block E. Tax Servs., Inc.*, 359 F.3d 699, 705 (4th Cir. 2004))); *see also Alley v. U.S. Dep't of Health & Human Servs.*, 590 F.3d 1195, 1202 (11th Cir. 2009) ("[G]reat deference is due the interpretation placed on the terms of an injunctive order by the court who issued and must enforce it." (alteration in original) (quoting *Ala. Nursing Home Ass'n v. Harris*, 617 F.2d 385, 388 (5th Cir. 1980))).

because it impacts the potential rights or property of the receivership estate. *See Faulkner*, 2018 WL 5279321, at *4 (quoting Stay Order ¶ 32). So long as the *Jinsun* Action continues to implicate causes of action that properly belong to the Receiver, it will be stayed by this court's Stay Order.

IV

In denying the motion to vacate, the court observes that the claims the *Jinsun* Plaintiffs bring *other than* for professional negligence do not appear to be receivership assets. Rothstein Kass and the Receiver do not argue that these other claims—for aiding and abetting a breach of fiduciary duty, aiding and abetting violations of the Texas Securities Act,[10] negligent misrepresentation, common-law fraud and aiding and abetting fraud, fraud by non-disclosure, and statutory fraud—are derivative of a direct claim held by a receivership entity. Rather, these claims appear to allege harms inflicted directly on the *Jinsun* Plaintiffs themselves. *See* 11 William V. Dorsaneo III, *Texas Litigation Guide* § 162.01 (2019) ("When the wrongful acts violate duties owed directly to the injured shareholder rather than to the corporation, the shareholder may prosecute a direct action individually."); *cf. Murphy v. Campbell*, 964 S.W.2d 265, 268 (Tex. 1997) (where tax advisor counseled dissolving corporation *and* its shareholders, and consequences of tax treatment of dissolution fell directly on shareholders, shareholders had direct cause of action against advisor). The Receiver has not yet expressed any intent to pursue similar claims on behalf of the

---

[10]*See* Tex. Rev. Civ. Stat. Ann. art. 581-33(F)(2) (West 2010).

Receivership Estate. And even if the Receiver does opt to pursue similar theories of recovery, it would not render the *Jinsun* Plaintiffs' claims the property of the receivership, because those claims are not derivative of the Receiver's potential claims. *See Sharp Capital*, 315 F.3d at 544. Accordingly, it appears that, if the *Jinsun* Plaintiffs were to nonsuit their professional negligence claim against Rothstein Kass, the *Jinsun* Action would no longer threaten receivership assets.[11]

Additionally, if the *Jinsun* Action were no longer to implicate receivership assets, it would fall outside the scope of the Stay Order. Such an action would not be "one 'otherwise' 'involving . . . the Receivership Defendants'" because it would not impact the potential rights or property of the receivership estate. *See Faulkner*, 2018 WL 5279321, at *4 (quoting Stay Order ¶ 32). And if Ivins and Plumb do not seek relief in the *Jinsun* Action in their capacity as former directors or officers of BECC, the *Jinsun* Action would not seem to be a "civil legal proceeding[] . . . involving . . . any of [BECC's] past or present officers [or] directors . . . in connection with, any action taken by them while acting in such capacity . . . whether as plaintiff, defendant, . . . or otherwise." *Id.* (quoting Stay Order ¶ 32).

---

[11]The court expresses no opinion on whether the *Jinsun* Plaintiffs have stated plausible claims for these causes of action, including, for example, whether any receivership entity owed a fiduciary duty to the *Jinsun* Plaintiffs. *See Meyer v. Cathey*, 167 S.W.3d 327, 330-31 (Tex. 2005) (per curiam) (setting out standard for determining existence of fiduciary duty under Texas law). The court only holds that the claims, as pleaded, are not derivative of any claim held by a receivership entity.

* * *

For the reasons stated, the court denies the *Jinsun* Plaintiffs' motion to vacate.

**SO ORDERED**.

March 5, 2019.

_____
SIDNEY A. FITZWATER
SENIOR JUDGE