IN THE UNITED STATES DISTRICT
COURT FOR THE NORTHERN DISTRICT
OF TEXAS DALLAS DIVISION

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, <br>     Plaintiff, <br><br> v. <br><br> CHRISTOPHER A. FAULKNER, etal <br>     Defendants | § § § § § § § § § | Case No.: 3:16-cv-01735-D |

## OBJECTION TO RECEIVER'S PROPOSED PLAN OF DISTRIBUTION

Non-Party Carole Faulkner files this Objection to Receiver's Proposed Plan of Distribution of the Assets of Inwood Investments and would show the Court as follows:

### I.
### INTRODUCTION AND APPLICABLE FACTS

In January 2016 Christopher Faulkner, as the President of Inwood Investments Inc ("Inwood Investments") and Carole Faulkner, individually ("Ms. Faulkner") began negotiations of a management services agreement to include the management and sale of the property owned by Inwood Investments and located at 8216 Inwood Road, Dallas County, TX ("the Property"). After several weeks and months of negotiations Ms. Faulkner was convinced to enter into an agreement with Inwood Investments and thereafter a final agreement was reached and she executed the Management Services Agreement effective on March 1, 2016 ("the Agreement").

Prior to her concurrence to execute the Agreement and as part of the understanding of Ms. Faulkner, and the agreement by Christopher Faulkner and Inwood Investments, they would

amend a prior 2002 Promissory Note ("the Amendment") in the amount of Fifty-seven Thousand US Dollars ($57,000.00 )("Tyler Street Funds") which was provided as an investment by Ms. Faulkner in Christopher Faulkner's prior residence at 2809 Tyler Street, Tarrant County, Texas and was due and owed from the proceeds of Tyler Street sale. Thereafter instead of repayment the Tyler Street Funds had been provided and utilized for the purchase of the Property for the exclusive benefit of Inwood Investments. The Tyler Street funds were utilized without knowledge, approval from, or payment to Ms. Faulkner and which was still due and owing to her at that time. It was determined that the funds owed under the Amendment were to be incorporated into and integrated with the funds owed under the Agreement by Inwood Investments from the sale of the Property.

After extensive negotiations and prior to March 1, 2016 Christopher Faulkner and Ms. Faulkner reached and executed the Agreement relating to the responsibilities and payment for expenses from her personal funds and services that Ms. Faulkner would perform until and through the sale and closing of the Property which occurred during July 2017. The Agreement specified the obligations, responsibilities and compensation of Ms. Faulkner. Ms. Faulkner performed all her responsibilities and obligations under the Agreement, including payment of expenses on the Property from her personal funds. Upon the funding from the sale of the Property, Ms. Faulkner was due her full compensation.  Ms. Faulkner obtained custody and possession of the funds at closing from the sale of the Property, including her compensation. With control and possession of her compensation at all times she acquired ownership rights to and of those funds. Immediately upon closing Ms. Faulkner received a partial payment of the expenses incurred in the amount of $30,000.00. No additional monies were distributed to her at that time, though she

retained custody and possession of all funds, including the monies owned by her under the Agreement.

Ms. Faulkner beginning in 2016 negotiated at arms length and in good faith an agreement which she had no interest in or desire to undertake for the performance of services, expending her personal time and monies to manage, support, and maintain a Property until such unknown time as she was able to sell the property. The cardinal rule in the construction of contracts is that the mutual intention of the parties as exhibited by their language, acts, and conduct, shall govern. It is the objective thing, manifestation of mutual consent, which is essential. (*Brant* v. *California Dairies, Inc.,* 4 Cal.2d 128, 133 [48 P.2d 13]; 1 Williston on Contracts 41, § 22.) [2] The law imputes to a person the intention corresponding to the reasonable meaning of his language, acts, and conduct. (*Platt* v. *Union Packing Co.,* 32 Cal.App.2d 329, 336 [89 P.2d 662].)

In July 2017 upon the completion of Ms. Faulkner's obligations under the Agreement, the closing, funding of the sale of the property, and Ms. Faulkner possession and control of all of the monies owed to her under the Agreement, the ownership of Ms. Faulkner's funds were vested exclusively in her and should never have been included in the Receivership of Inwood Investments therefore, her funds in their entirety should be returned to her. The monies owed under the Agreement and the funds legally owned by Ms. Faulkner are still held by the Receiver, or in the alternative and based on information and belief the remaining funds from the sale of the Property are being held by Frost Bank where they were deposited, controlled, and partially owned by Ms. Faulkner and has not been released to her. The cardinal rule in the construction of contracts is that the mutual intention of the parties as exhibited by their language, acts, and conduct, shall govern. It is the objective thing, manifestation of mutual consent, which is

essential. (*Brant* v. *California Dairies, Inc.,* 4 Cal.2d 128, 133 [48 P.2d 13]; 1 Williston on Contracts 41, § 22.) [2] The law imputes to a person the intention corresponding to the reasonable meaning of his language, acts, and conduct. (*Platt* v. *Union Packing Co.,* 32 Cal.App.2d 329, 336 [89 P.2d 662].) Once ownership of the funds was established in Ms. Faulkner, her granting temporary possession to another party does not affect the ownership of the funds. There was never an actual transference nor an intent to transfer any of Ms. Faulkner's ownership of her funds to any third party, including, Inwood Investments or Frost Bank. Legal ownership of the funds remained exclusively in Ms. Faulkner, at the most it could be argued that Inwood Investments or Frost Bank had temporary possession of her funds for a limited time which thereafter her funds were to be returned to her. During Frost Bank or Inwood Investments' temporary possession of her funds, Ms. Faulkner did not relinquish any of her ownership rights only the right of temporary possession of the funds. *H.S. Crocker Co., Inc. v. McFaddin* 307 P.2d 429 (1957).

## II.
## OBJCTION TO THE PLAN

Based on the information and belief at this time by Ms. Faulkner, she objects to the Receiver's Proposed Plan of Distribution for Inwood Investments. The negotiations and execution of the Agreement were prior to the institution of the dispute that led to or the establishment of the Receivership of Inwood Investments or Christopher Faulkner. All work, time, services, and expenses paid for the benefit of Inwood Investments were performed, owing, and paid to Ms. Faulkner and owned by her prior to the establishment of the Receiverships of Inwood Investments or Christopher Faulkner.

Ms. Faulkner at all times during 2016 and through closing and funding of the Property in mid

2017 was acting in good faith of payment when she performed her continuing obligations under the Agreement. All agreements, payments, work, and time expended by Ms. Faulkner were fully performed prior to any knowledge or establishment of a receivership relating to Inwood Investments or Christopher Faulkner. The monies owed by Inwood Investments included the original $57,000 from the 2002 monies under the Amendment which was remitted and accepted by Ms. Faulkner in July 2017. At the remittance and acceptance of the monies as all that was owed to Ms. Faulkner, ownership of the monies in Ms. Faulkner's possession and control was acquired by her. The assets from the Receivership of Inwood Investments, which includes the monies legally owned by Ms. Faulkner under the fully performed Agreement, should not be distributed until such time as Ms. Faulkner is paid in full for the monies owed to her or the monies legally owned by Ms. Faulkner is returned to her. For these reasons Carole Faulkner objects to the Receiver's proposed plan of distribution.

Based on the information and belief at this time, upon closing, funding in July 2017, and payment at that time by Inwood Investments to Ms. Faulkner all of the monies owed to her under the Agreement was in her possession and control, therefore at that time, the legal ownership of the funds were in Ms. Faulkner and was not a part of the assets of Inwood Investments and should never have been included in the Receivership of Inwood Investments and should be rightfully returned to her.

### III.
### PRAYER

WHEREFORE, non-party Respondent Carole Faulkner respectfully objects to the Receiver's proposed plan of distribution of assets of Inwood Investments and requests this Court to sustain the objection and the Plan be modified to distribute the funds of Inwood

Investments, Inc that were incurred, owed to, and owned by Carole Faulkner prior to the establishment of the receiverships of Inwood Investments or Christopher Faulkner, and granting her all other and further relief to which she is justly entitled.

Dated: June 28, 2019

           Respectfully submitted,
           /s/Carole A. Faulkner/
           Carole A. Faulkner
           Texas Bar 06855150
           Law Offices of Carole A Faulkner
           4010 Ambleside Ct
           Colleyville, TX 76034
           Telephone 817 879 1377
           Email faulkner4010@yahoo.com

**ATTORNEY FOR NON-PARTY, CAROLE A. FAULKNER**

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document has been served via the Court's ECF filing system on the 28TH day of June 2019, to all attorneys in this case.

           /s/ Carole A. Faulkner/
           Carole A. Faulkner