IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>   Plaintiff,<br><br>VS.<br><br>CHRISTOPHER A. FAULKNER, et al.,<br><br>   Defendants. | §<br>§<br>§<br>§<br>§ Civil Action No. 3:16-CV-1735-D<br>§<br>§<br>§<br>§<br>§ |

MEMORANDUM OPINION
AND ORDER

The court-appointed temporary receiver ("Receiver") moves for authority to sell a number of oil and gas interests, to use an online public auction to sell those interests, and to retain a sales and marketing firm. For the reasons that follow, the court grants the Receiver's motion and enters a separate order effecting this decision.[1]

I

The Receiver proposes to sell the portfolio of oil and gas interests included in the receivership estate, as well as any oil and gas interests that the estate recovers in the future ("the Breitling Portfolio").[2] He seeks permission to employ EnergyNet.com, LLC

---

[1] In making this ruling, the court expresses no opinion on the Receiver's proposed plan of distribution, which is currently pending before the court and which is the subject of a number of objections. The question of how the Receiver should sell the assets of the estate is separate from the question of how to distribute the proceeds to investors.

[2] Although for purposes of this decision the court need not set out the background facts of this receivership proceeding, they can be found in sources such as *SEC v. Faulkner*, 2018 WL 4362729, at *1 (N.D. Tex. Sept. 12, 2018) (Fitzwater, J.).

("EnergyNet") to help market and sell these assets. According to the Receiver, "EnergyNet is an upstream oil & gas property transaction advisory firm specializing in the preparation, evaluation, analysis, marketing, negotiation, and closing of oil and gas property transactions." Mot. 4. The firm hosts an online auction marketplace where potential buyers can submit bids "24 hours a day, 7 days a week, 365 days a year." *Id.* It has sold over 60,000 oil and gas properties since its founding in 1999, for a total of over $6.75 billion, and among its sellers are the Federal Deposit Insurance Corporation and several U.S. states. EnergyNet has assisted a number of court-appointed receivers in disposing of estate assets, including the present Receiver in an unrelated case.

Under the sales and marketing agreement negotiated by the Receiver, EnergyNet will perform a number of services related to the Breitling Portfolio. EnergyNet will recommend which assets should be packaged together and which should be sold separately; will suggest transaction structures and establish a timeline for presentation of the properties; will assist in the valuation process; will create comprehensive asset summaries and a "virtual data room" for potential buyers; will publish the properties and solicit bids on its auction website; will assist with negotiations and due diligence requests; and will support the Receiver in closing proposed sales. For these services, EnergyNet will be entitled to a flat-rate 3 percent commission on any final sales that are approved by the court. EnergyNet will also enjoy the liability protection that is extended to all of the Receiver's agents by ¶ 49 of the court's second amended order appointing receiver.

The Receiver maintains that working with EnergyNet is the best way to market the

working interests and royalty interests in the Breitling Portfolio, so that he can maximize the value received by defrauded investors. As an additional precaution, the Receiver will seek the court's approval of every sale agreement. No objection has been filed to the sale procedure proposed by the Receiver.[3]

II

"The court has authority to authorize the sale of real estate within the receivership estate." *SEC v. AmeriFirst Funding, Inc.*, 2008 WL 706846, at *1 (N.D. Tex. Mar. 11, 2008) (Fitzwater, C.J.) (citing *SEC v. Am. Capital Invs., Inc.*, 98 F.3d 1133, 1144-45 (9th Cir. 1996), *abrogated in part by Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83 (1998)). This authority is limited by 28 U.S.C. § 2001. *See id.* Moreover, public sales of real estate must comply with the notice requirements set out in 28 U.S.C. § 2002. The Receiver's proposed sale process complies with both statutes.

Section 2001(a) provides, in relevant part, that "[p]roperty in the possession of a receiver or receivers appointed by one or more district courts shall be sold at public sale in the district wherein any such receiver was first appointed." The Receiver was appointed in

---

[3]Some investors—those who received purported conveyances of royalty interests—object to the Receiver's proposed distribution plan to the extent the Receiver intends to invalidate those conveyances and liquidate those royalty interests. These objections, however, have no bearing on the present decision. The Receiver indicates in his motion that he does not consider the contested royalty interests to be fit for sale at this time, and will not sell them until the purported conveyances are invalidated; by then, the court will already have ruled on the relevant objections. If the Receiver attempts to sell a contested royalty interest before clearing title to that interest, any affected person can object when the Receiver presents the sale agreement to the court for approval, and the court will consider the objection at that time.

the Northern District of Texas. EnergyNet has its principal place of business in Amarillo, which is within the Northern District of Texas. Thus the text of the statute, interpreted literally, allows for the sale of receivership assets via EnergyNet's website. No one contends otherwise—nor has anyone argued that an online auction would be a less effective means of selling the oil and gas interests than an in-person, physical auction in this District. *See Pennant Mgmt., Inc. v. First Farmers Fin., LLC*, 2015 WL 5180678, at *7 (N.D. Ill. Sept. 4, 2015) (approving online auction as public sale under § 2001(a) in the absence of any objections).

Section 2002 imposes certain notice requirements that must be met before a public sale of receivership property. The statute provides, in relevant part:

> [a] public sale of realty or interest therein under any order, judgment or decree of any court of the United States shall not be made without notice published once a week for at least four weeks prior to the sale in at least one newspaper regularly issued and of general circulation in the county, state, or judicial district of the United States wherein the realty is situated.
>
> If such realty is situated in more than one county, state, district or circuit, such notice shall be published in one or more of the counties, states, or districts wherein it is situated, as the court directs.

28 U.S.C. § 2002. Courts have approved, in the absence of any objections, notice procedures that deviated from the text of § 2002 in non-substantial ways, *see, e.g., United States v. Rodenberg*, 2006 WL 3743842, at *1 (N.D. Iowa Dec. 18, 2006), or that relied on modern advertising methods that were more effective, under the circumstances, than strict adherence to the statutory procedure, *see, e.g., Pennant*, 2015 WL 5180678, at *7.

The Receiver does not propose to publish notice in any newspaper of general circulation. Instead, for at least four weeks prior to the first auction, he will publish notice of the sale of the Breitling Portfolio in an electronic newsletter that is popular in the oil and gas industry. He will also post notice of each individual auction on the EnergyNet website and on the receivership website, www.breitlingreceivership.com.

Under the circumstances, the court concludes that this process substantially complies with § 2002. The Receiver asserts that "[t]he thousands of underlying oil and gas interest assets comprising the Breitling Portfolio are located across numerous Texas counties and approximately six other states." Mot. 10. This assertion finds support in various private placement memoranda circulated by Faulkner's companies during the fraud scheme. To require the Receiver to circulate notice of each individual sale in a physical newspaper, either nationally or in some county where an underlying property happens to be located, would be an unjustifiable waste of receivership resources. Nor would such a procedure be effective in this case. If the Receiver were selling fee simple interests in plots of land located within one or two counties, it would make sense to require local publication, because area residents might be particularly interested bidders. *See, e.g., AmeriFirst Funding*, 2008 WL 706846, at *1-2 & n.1 (requiring publication in local newspaper of general circulation before sale of six tracts of land located in two adjacent Texas counties). But abstract assets like working interests and royalty interests would not necessarily fetch a high price from local bidders; the court agrees with the Receiver that it would be better to publish notice in a source that is likely to reach participants in the oil and gas industry. And, again, no one has objected to the

Receiver's proposed notice procedure. The court therefore approves it.

* * *

For the reasons stated, the court grants the Receiver's motion for authority to sell oil and gas assets and enters a separate order effecting this decision.

**SO ORDERED**.

July 26, 2019.

                                        SIDNEY A. FITZWATER
                                        SENIOR JUDGE