1          CAUSE NO. CC-17-06249-C

2

3   JINSUN, L.L.C., SILVER      )    IN THE COUNTY COURT
    STAR HOLDINGS TRUST, TPH    )
4   HOLDINGS, L.L.C., VERTICAL  )
    HOLDINGS L.L.C., STEVEN M.  )
5   PLUMB, AND J. LEONARD       )
    IVINS,                      )
6                               )
7       Plaintiffs,             )
                                )
    VS.                         )    AT LAW NO. 3
8                               )
    ROTHSTEIN, KASS & COMPANY,  )
9   PLLC,                       )
                                )
10      Defendant.              )    OF DALLAS COUNTY, TEXAS

11

12

13

14

15          REPORTER'S TRANSCRIPT OF PROCEEDINGS

16               JANUARY 9, 2020

17

18   Job No: 173986

19        On January 9, 2020, at 10:33 a.m., the

20   following proceedings came on to be heard in the

21   above-entitled and -numbered cause before Honorable

22   Judge Sally Montgomery (via telephone), held at the

23   offices of Brian Lauten, PC, 3811 Turtle Creek

24   Boulevard, Suite 1450, in the City of Dallas, County of

25   Dallas, State of Texas.

```
 1              A P P E A R A N C E S

 2

 3    FOR THE PLAINTIFFS:

 4            Brian Lauten, Esq.
              BRIAN LAUTEN

 5            3811 Turtle Creek Boulevard

 6            Dallas, Texas 75219

 7

 8            Marquette Wolf, Esq. (via telephone)
              TED B. LYON & ASSOCIATES

 9            18601 LBJ Freeway

10            Mesquite, Texas 75150

11

12    FOR THE DEFENDANTS:

13            Thomas Zaccaro, Esq.
              Timothy Reynolds, Esq.

14            PAUL HASTINGS
              515 South Flower Street

15            Los Angeles, California 90071

16

17

18            Leon Carter, Esq. (via telephone)
              CARTER ARNETT

19            8150 North Central Expressway

20            Dallas, Texas 75206

21

22

23

24

25
```

Page 3

1                        I N D E X

2                                                      PAGE

3    Appearances                                       2

4

5    Proceedings                                       4

6

7    Reporter's Certificate                            27

8

9

10                       EXHIBITS

11   NUMBER              DESCRIPTION              PAGE

12   (None marked)

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 4

1                      P R O C E E D I N G S

2              THE COURT:  Okay.  Good morning.

3              MR. LAUTEN:  Good morning.

4              THE COURT:  Who's on the phone?

5              MR. LAUTEN:  Your Honor, you've got Brian

6    Lauten, Tom Zaccaro, and Timothy Reynolds in my office.

7    We're in a deposition.  I've got --

8              THE COURT:  Slow down just a minute.  This

9    is on the record.  That's a little too quick.

10             All right.  Brian Lauten.  Who else?

11             MR. LAUTEN:  Tom Zaccaro.

12             THE COURT:  Keep going.

13             MR. ZACCARO:  And Timothy Reynolds.  We're

14   in the same room.

15             And I want to tell you, we have a court

16   reporter here taking a record.  Is that okay, or do you

17   want her to stop typing?

18             THE COURT:  Well, I've got my court

19   reporter taking the record right now too.  No, I think

20   she should.  She can probably hear better than Janet.

21             MR. LAUTEN:  Okay.

22             MR. CARTER:  Judge, Leon Carter here.  I'm

23   in my office on behalf of Defendant Rothstein Kass, but

24   I'm in my office.  I'm a little under the weather,

25   so -- I'm at the office.

1          THE COURT:  What is your name?

2          MR. CARTER:  Leon.  This is Leon Carter.

3          MR. WOLF:  Marquette Wolf also by remote.

4          THE COURT:  And who else is on this call?

5    Anyone?

6          MR. CARTER:  I think that's it.

7          THE COURT:  Okay.  What's going on today?

8          MR. LAUTEN:  Judge, I'll try to be pretty

9    brief.  So here's the issue.  We have a scheduling

10   order in this case, and fact witness discovery closed

11   last month.  We are feverishly deposing a bunch of

12   experts this month, including right now.  We're in my

13   office producing my second expert this week for

14   deposition.

15          And this case is set for trial, as you

16   know, in March.  My client, or the main principal in

17   one of my plaintiff entities, Kevin Casey, he's been

18   deposed twice in this case for an excessive amount --

19          THE COURT:  What -- what is the name of

20   the motion that we're hearing?  Do you have a motion

21   filed?

22          MR. LAUTEN:  Yes, Your Honor.  Last --

23   yesterday afternoon, I filed an emergency motion for

24   protective order, a motion for sanctions, and a motion

25   to show cause.

1         THE COURT:  Okay.  And so what's going on?

2         MR. LAUTEN:  So earlier this week, the day

3    before yesterday, Mr. Wolf was in my office producing

4    one of our experts for deposition in this case, and the

5    defense lawyer, Mr. Zaccaro -- my client, Kevin Casey,

6    who has been deposed twice already, fact witness

7    discovery is closed -- he attended the deposition.

8         And in the deposition, the defense lawyer

9    served my client with a subpoena to give a deposition

10    next week in another case where Rothstein Kass is being

11    sued by the receiver.

12         My client is in Australia next week, but

13    more importantly, this is an end run on your scheduling

14    order that closed fact witness discovery.

15         They're trying to get more testimony

16    through a different proceeding of my client, who knows

17    absolutely nothing about the auditing malpractice that

18    allegedly occurred in this different case, and it's in

19    direct violation, we believe, to your order.

20         They're also trying to depose two other

21    witnesses in that case who have already been deposed in

22    the present case.

23         Meanwhile, in this other case, they have

24    a -- the defendant has a pending motion to dismiss for

25    12(b)(6), which, if granted, they won't even have to

1    take depositions in that other case.

2              They don't even have a trial setting in

3    the other case.  And they're trying to make us produce

4    our clients once again in violation of the scheduling

5    order in this case.

6              And we would ask the Court to grant

7    protection to stop them from doing that.

8              And there have been other things that

9    continue to happen that we believe are improper.

10              For example, they send process servers

11    into our experts' offices and had them served with

12    subpoenas, instead of going through us, even having

13    document production due on Christmas Eve when I was on

14    vacation.

15              We would ask the Court to grant protection

16    to stop them from trying to use a different proceeding

17    to get information that they can't get in this case

18    without seeking leave from your scheduling order.

19              I have offered --

20              THE COURT:  Okay.

21              MR. LAUTEN:  Go ahead.

22              THE COURT:  Okay.  Hang on.  I would --

23    I'm going to let you respond, but I will say this, that

24    not one word can be asked of them regarding the facts

25    of this case without leave of the Court, either in

1  another matter or this matter.

2            MR. CARTER:  Judge, this is Leon Carter on

3  behalf of Defendant Rothstein Kass.

4            The subpoenas for the depositions that

5  were served on the prospective deponents are in a

6  totally different case in the Northern District of

7  Texas, in Federal Court, in Judge Fitzwater's court.

8            And in that case, the plaintiff in that

9  case, Thomas L. Taylor, the Court-appointed receiver

10 for Breitling Energy Corporation, he listed all three

11 of the prospective deponents who we served with a

12 subpoena to take that deposition.

13            That plan in that Federal Court case in

14 Judge Fitzwater's court identified each one of them as

15 fact witnesses in that Federal Court case.

16            They want to take their depositions at

17 some point.  They have not objected to the deposition.

18 They identified these people as persons with knowledge

19 of relevant facts.

20            We have simply indicated, in that

21 particular federal court action, we would like to take

22 that deposition as well.

23            THE COURT:  Well --

24            MR. CARTER:  We had asked Mr. Lauten time

25 and time again, does he represent these people, does he

Page 9

1   represent these people.  He never told us if he did.

2   Because we wanted to serve the appropriate person or

3   the appropriate attorney.  He never told us he did.

4               But he's asking you to parse depositions

5   in a federal court action, which I don't think the

6   Court has power to do that.

7               MR. LAUTEN:  Your Honor --

8               THE COURT:  What he said was -- no, my

9   turn again.

10              What he said, though, is they're only --

11  it's a receiver, and I assume that the situation in

12  this case is part of that action, right?

13              MR. LAUTEN:  Can I -- can I respond to

14  that, Judge?

15              THE COURT:  No, not yet.

16              Since there are no deadlines in the other

17  case, I'm still not going to allow anyone to ask -- and

18  the federal case doesn't trump this situation,

19  especially if there are no deadlines -- doesn't trump

20  the scheduling order here.

21              You cannot ask them about anything that is

22  the subject of this case in these depositions until

23  after this case is completed -- trial is completed in

24  March.  It's pretty quick.

25              Then you can ask them anything additional

Page 10

1    that doesn't come out during the trial of this case.

2                    MR. CARTER:  I don't -- I don't understand

3    what the Court just said.

4                    THE COURT:  So what I'm saying is, there's

5    going to be a trial in this case in March, right?

6                    MR. CARTER:  In March, March 24th.

7                    THE COURT:  And a lot of information is

8    going to -- there's going to be a lot of testimony and

9    things like that.

10                   So after this trial is concluded, that may

11   solve a lot of the need for depositions in the other

12   case if it deals with the assets that the receiver's

13   concerned with.

14                   So if it's not then cleared up by the

15   trial of this case, then you're free to ask additional

16   questions, but it needs to be after the trial of this

17   case, which is March 24th.

18                   MR. CARTER:  So the Court did not say that

19   we cannot take these depositions?  The Court is not

20   saying that it's prohibiting us in a separate federal

21   court matter from taking the depositions?  You're not

22   saying that?

23                   THE COURT:  Yeah, I am, if they ask

24   anything that deals with the subject of this case, till

25   after March 24th, because it would not be efficient.

1          MR. WOLF:  And, Judge, I think it's

2    important -- this is Marquette -- that you hear what

3    we've learned from the receiver to kind of really fill

4    in the blanks that Mr. Carter left, because it -- it

5    sounds -- what you're saying and what the receiver's

6    attorney is saying sound very similar.

7          I think it's important for you to get a

8    full understanding of exactly what's going on.

9          Brian has correspondence, I think

10   recently, like today or last night --

11         Brian, can you share that with the judge?

12         MR. LAUTEN:  Yes, Your Honor.  I've got an

13   email from this morning -- and I've handed Mr. Zaccaro

14   a copy, and I'll make it -- I'll supplement the record

15   with it -- it's an email from this morning, Your Honor,

16   from the attorney for the receiver in the other case,

17   where Mr. Zaccaro wants to depose my client next week.

18         And here's what the email this morning

19   says:  Brian - here is the scheduling order in the

20   receiver's case (publicly available on PACER).  There

21   is no trial date.  Discovery doesn't close until

22   August 14th.

23         I found it strange that RK wanted to push

24   these depos forward so quickly when (1) the Court has

25   yet to rule on their 12(b)(6) motion to dismiss.  (I've

1  never had a federal court defendant agree to start

2  discovery prior to a ruling on their motion to dismiss,

3  let alone be the one pushing to start depos); Number

4  (2), the Court just issued the scheduling order at the

5  end of October; and (3), I had barely served RFPs on RK

6  after that and just got their response and document

7  production in December.  They were actually trying to

8  schedule the three depos in December, but I pushed them

9  off because I was not ready.

10          That said, as a plaintiff's lawyer, I

11  always want to aggressively push a case forward, so I

12  agreed to these depo dates in January.  But all of the

13  above made me feel that these depos were more geared

14  towards somehow affecting your case.  (I don't know if

15  you are calling Wagers and Hoover live or not.)

16          Casey made no -- Casey's my client, Your

17  Honor -- quote, Casey made no sense since I have no

18  idea how his depo would be relevant in the receiver's

19  case.

20          That's the email from the receiver's

21  lawyer in the case where they want to depose my client,

22  Mr. Casey, next week, saying, I don't even know how

23  it's relevant.

24          MR. ZACCARO:  Well --

25          MR. CARTER:  And I can say this, Your

Page 13

1    Honor.  This is Leon Carter.  Mr. Zaccaro might want to

2    add something.

3              But if -- if Mr. Lauten and Mr. Wolf want

4    to object to these depositions, the proper forum is

5    before Judge Fitzwater, because, as of today, neither

6    Mr. Wolf nor Lauten nor the receiver has objected or

7    filed any motion before Judge Fitzwater regarding our

8    efforts to take those depositions.  No one has done a

9    thing in that regard.

10             And if you read -- I don't know if you've

11   had a chance to read Mr. Lauten's motion, but he has

12   cited no authority in their motion to support the

13   relief that they're requesting, none whatsoever.

14             He's making some -- some factual

15   allegations that we don't think, in whole or in part,

16   are accurate.

17             But he doesn't cite any authority that

18   gives this court, the state court, the authority to

19   prohibit us from taking depositions of fact witnesses

20   that have been identified in a related federal court

21   action, to preclude us from taking those depositions,

22   none whatsoever.

23             MR. ZACCARO:  Your Honor, this is Tom

24   Zaccaro.  You know, part of our concern here is that

25   we're doing this on an emergency basis without any

Page 14

1   ability to submit any paperwork to the Court, any

2   briefs, any evidence, and the result of which is to

3   essentially stay our discovery in a different federal

4   court case.

5           Now we have Mr. Lauten reading an email

6   into the record.  Well, there are lots of emails

7   relevant to this issue which we don't have the ability

8   to get before the Court because this motion was filed

9   yesterday afternoon, and here we are in the middle of a

10  deposition on the -- on the phone with you at -- at

11  10:45 in the morning.

12          Now, the fact of the matter is, in the

13  federal case, we have a whole deposition schedule, not

14  just the ones that we want to take, but -- but the ones

15  the receiver wants to take, and not just for these

16  witnesses that Mr. Lauten identified, but a whole

17  series of witnesses.

18          And the fact of the matter is --

19          THE COURT:  Apparently -- apparently --

20  excuse me.  But apparently the receiver doesn't want

21  these depositions right now.

22          MR. ZACCARO:  That's not true.  And, of

23  course, Mr. Lauten is just reading an email into the

24  record.  There's lots of emails that tell the full

25  context of what's happening.  We've agreed --

1          THE COURT:  All right.  Do you have an

2    email -- do you have an e-mail that says the receiver

3    wants them this fast?

4          MR. ZACCARO:  Well, Your Honor, in my

5    hand, no.  I didn't even know --

6          THE COURT:  All right.  If the answer is

7    no --

8          MR. ZACCARO:  Well, I don't have it with

9    me, but there's been a complete exchange of -- of email

10   correspondence with the receiver.  I don't have them

11   because we've had no notice of this.  We've had no

12   opportunity to --

13         THE COURT:  All right.  Well --

14         MR. ZACCARO:  -- submit papers to the

15   Court.

16         THE COURT:  All right.  Here's -- here's

17   the situation.  If the receiver has not sent an email

18   saying he wants them, and, in fact, said he's not ready

19   for them yet, I have a problem with that.  I think

20   Judge Fitzwater would as well.

21         MR. CARTER:  The receiver could file an

22   objection to that or file some sort of motion, which

23   the receiver has not done, Judge.

24         THE COURT:  I -- I understand.  I

25   understand what you're saying, but I'm also curious

Page 16

1    about this -- I have a right to be -- since it does

2    affect the parties in my case, and I don't want an end

3    run when it's not necessary and inefficient.

4                    And so here's the warning.  I don't

5    know -- listen.  Hear me out.

6                    I'm not sure that I do have the ability to

7    stop depositions in a federal case.  I'm pretty sure I

8    don't.

9                    However, if this Court finds out, based on

10   what I'm hearing, that the receiver doesn't want these

11   depositions right now, it's not going to be good when

12   you all -- if you proceed in the federal case to try to

13   get these depositions when you come back to this Court,

14   if you ask them questions about this case, and the

15   receiver didn't even want them yet.

16                   So you need to be honest with me and

17   yourself.  You need to review your emails.  And if the

18   receiver doesn't want them yet, you don't have --

19   you've got plenty of time to wait until after the trial

20   of this case.  If this is all true what I'm hearing,

21   it's trouble.

22                   MR. CARTER:  It's what?

23                   THE COURT:  I don't have jurisdiction to

24   stop those depositions.  I just want to be clear.

25                   MR. ZACCARO:  Your Honor, I also want to

1   point out, the two cases have the same core facts that

2   arise out of the same audit involving --

3              THE COURT:  Good.  If there's no need to

4   rush it, because you have plenty of time in the other

5   case, until after this trial, then don't rush it.

6              MR. ZACCARO:  Well, Your Honor, I think we

7   need --

8              THE COURT:  That's all I've -- that's all

9   I have to say.  I'm done.

10             MR. ZACCARO:  I appreciate that, your

11  Honor.

12             MR. CARTER:  Okay.

13             MR. ZACCARO:  Are you anticipating that we

14  would submit additional documents to you about

15  discovery in the other case, or should we just go

16  forward?  I mean, I appreciate Your Honor's ruling --

17             THE COURT:  I'm saying, I don't see, based

18  on what I'm hearing, that you need to go forward right

19  now in that other case on these issues.

20             It sounds like it's untimely what you're

21  doing and that it's really a way to get additional

22  discovery in this case, and it's unnecessary and

23  inefficient and costly.  And I hope that doesn't turn

24  out to be the case, and I suggest you all talk to each

25  other.

Page 18

1          And it does sound like you will need to

2   stop these depositions for Judge Fitzwater to hear

3   this; but in the meantime, this record is clear so he

4   can understand this Court's mind.

5          MR. LAUTEN:  Can I say one more thing,

6   Your Honor?

7          THE COURT:  What?

8          MR. LAUTEN:  This morning --

9          THE COURT:  Go ahead.

10         MR. LAUTEN:  This morning, Rothstein Kass

11  filed a response to our emergency motion, and in that

12  response that was filed in your court this morning,

13  they put in there why they need to take my client's

14  deposition, and the reason they offer is a -- is the

15  very disputed issue about whether my clients owned this

16  piece of oil and gas property at the time of the

17  merger, which they actually asked my expert about two

18  days ago on the very day that the defense lawyer

19  subpoenaed my client for this deposition in my office.

20         MR. ZACCARO:  Well --

21         MR. LAUTEN:  So they've admitted in their

22  response that they want to depose Kevin Casey on the

23  very thing that they are trying to seek leave to depose

24  him on in this case.

25         MR. ZACCARO:  And, Your Honor -- this is

Page 19

1    Tom Zaccaro.  Ownership of that asset is an issue in

2    the federal case.  It's -- the receiver --

3                THE COURT:  I don't need -- I'm not going

4    to go round and round, and I'm not going to play games,

5    and I'm not going to let you all play games.  You all

6    need to be honest with each other.

7                And if these depositions can wait until a

8    timely fashion when the receiver is interested in them

9    and after the motion to dismiss has been heard -- if

10   they can wait -- and I'm going to be hearing from the

11   receiver -- this hearing will continue.

12               Right now, I'm going to take it under

13   advisement, and I'm going to assume it's going to be

14   filed in federal court, and that the record will be

15   used.

16               So y'all need to be straight with each

17   other, no games.

18               MR. CARTER:  So you said what needs to be

19   filed in federal court --

20               THE REPORTER:  I'm sorry?  Mr. Carter,

21   could you repeat that, please.

22               MR. CARTER:  Yeah, I apologize for not

23   saying who I was as well.

24               Judge, you're saying what's going to be

25   filed in federal court?  The plaintiffs' motion to

Page 20

1    quash?  Is that what you're saying?

2                THE COURT:  Sounds like it needs to be.

3                MR. CARTER:  Okay.

4                THE COURT:  I'm agreeing with you on that.

5    I don't think I have authority.

6                MR. CARTER:  Okay.

7                THE COURT:  But at the same time, I don't

8    like what I'm hearing, and if I did have authority, I

9    probably would stop these depositions.

10               MR. CARTER:  I understand.  Has the Court

11   had an opportunity to read our response that I filed

12   this morning?

13               THE COURT:  I haven't had time to read

14   anything.  I just got -- I've been in trial.  I just

15   finished my last one.

16               MR. CARTER:  Okay.

17               THE COURT:  I can only -- I don't -- I'm

18   just saying, I already know that there's been a

19   tremendous amount of pressure applied that I felt was

20   inappropriate against plaintiffs' attorney relative to

21   all the discovery and not having it Bates-stamped and

22   organized and everything else, and I hope this is not a

23   continuation of the same.

24               MR. CARTER:  And I don't think it is,

25   Judge.  I know it's not.

1          THE COURT:  Well, I'm just saying, I don't

2  know, and I hope it's not true, and I plan to probably

3  be hearing from the receiver later about the timing of

4  this and the question of that.

5          MR. CARTER:  Okay.

6          THE COURT:  So hopefully there won't be

7  any games, but in the meantime I don't think I have

8  jurisdiction.

9          MR. CARTER:  Well, I think the point --

10 okay.  I agree with that, Judge.  I think the point

11 that I want to make -- the final point -- and I think

12 Mr. Lauten will have to agree with this -- we have been

13 trying for some time now to find out if Mr. Lauten

14 represented one or more of these witnesses --

15         THE REPORTER:   I'm having trouble hearing

16 again.

17         MR. WOLF:  Judge, let me speak to that.

18 Let me just -- I can clear all of this up.

19         THE REPORTER:   I cannot hear.  I'm sorry.

20         THE COURT:  We're getting a little

21 back-feed going.

22         Okay.  Mr. Wolf, proceed.

23         MR. WOLF:  Yeah, to be more efficient and

24 put this thing to bed, we can facilitate getting these

25 depositions done sometime in May or June, months before

1  the close of discovery in that case.

2            That way, the defendants know they're

3  going to get whatever depositions they want in that

4  case without perfecting an end run on the order that

5  you've issued in this case.

6            There's no hurry, as I understand it from

7  looking at PACER, and if all they want is their

8  depositions, and it's truly not an effort to circumvent

9  a state court order, then there should be no harm in

10 waiting.

11            THE COURT:  That is --

12            MR. WOLF:  And I will say this, while you

13 may not have jurisdiction to stop a deposition in

14 federal court, you have jurisdiction over these lawyers

15 if they pull an end run around to circumvent your order

16 in this case.

17            THE COURT:  I believe that's what I just

18 said.  I believe that's what I just said.  So just be

19 sure that there are no games on this.

20            MR. CARTER:  And, Judge, we're not going

21 to play games.  I think you know me and most of the

22 attorneys on this phone have known me for a while.  I'm

23 still trying to get my head around how an end run if

24 we're trying to take the deposition in a federal court

25 action that is still pending --

Page 23

1    THE COURT:  Mr. Carter, it's real obvious

2    to me, okay?

3    MR. CARTER:  It is?

4    THE COURT:  It's very obvious to me

5    because there's just no need for these right now.  It's

6    a waste of time right now because of the fact that

7    there will be a trial where everything will be blanched

8    out in March, and we just don't need them until after

9    that time.  So it's --

10   MR. CARTER:  So you're saying that we

11   don't have the permission that we need, we need to find

12   out after and not before the trial?

13   THE COURT:  Exactly.  I don't see any

14   reason why you need it, considering the deadlines in

15   the other case, and I promise you I find this to be a

16   very inefficient way to proceed, and I can't -- I don't

17   understand it, and I'm not going to understand it.  It

18   makes no sense.

19   MR. CARTER:  All right.  I don't think

20   inefficient makes it improper.  It might be inefficient

21   from your vantage point, but I don't think that makes

22   it improper.

23   THE COURT:  I think it makes it improper

24   if you're doing things out of sync from the way they're

25   normally done, for example, the hearing on the

Page 24

1   motion to dismiss.

2           MR. ZACCARO:  Well, your Honor --

3           THE COURT:  I'm just saying, be sure this

4   is not going on, because if this is going on and I hear

5   from the receiver, there will be consequences later.

6   Be sure you're doing -- you're being aboveboard on

7   this.  I have concerns about it.

8           MR. LAUTEN:  And if the Court grants their

9   motion to dismiss, they won't need a single deposition

10  in the other case, and that's pending.

11          THE COURT:  I'm way ahead of you.

12          MR. LAUTEN:  Yeah.

13          THE COURT:  I've been doing this for 23

14  years.

15          MR. LAUTEN:  I understand, Judge.

16          THE COURT:  I've given a warning, and I've

17  got this record, and we'll see what happens.

18          MR. ZACCARO:  Well, Your Honor, this is

19  Tom Zaccaro.  You know, the suggestion is that there's

20  no need to take the discovery now in the federal case.

21          You know, the receiver has asked us to

22  consider settlement of that case, and part of the

23  reason for these depositions is to assess issues

24  relevant to settlement, including statute of

25  limitations.

1        That's the main reason we wanted to take

2   these depositions now, to see if -- if we should

3   entertain this -- the receiver's request and entrees to

4   us for settlement.  That's why we're trying to take

5   these depositions.

6        What assets the receiver owns, including

7   the oil and gas fields that Mr. Lauten referred to, is

8   highly relevant to that inquiry, and the witnesses'

9   knowledge, as laid out -- as we will lay out in that

10  case, is relevant to a lot of issues, including statute

11  of limitations.  That's why we were intending to take

12  these depositions.

13        Now, we can delay all that and delay the

14  settlement discussions, but so the Court is clear, the

15  reason why these depositions were timed for when they

16  were was mostly to evaluate and entertain the

17  receiver's request to us that we consider a settlement

18  of that case.

19        So there is no gain here.  There is no

20  gain here.

21        THE COURT:  It sounds like the receiver --

22  it sounds like the receiver wasn't prepared for these

23  right now either.

24        MR. ZACCARO:  Well, I think -- we'll

25  submit the full record to the Court, and the Court will

Page 26

1    see that the receiver agreed to these depositions and

2    is going to oppose an effort to -- to delay them.

3                 But we'll have the receiver opine on that

4    and advise the Court.

5                 THE COURT:  Okay.

6                 MR. LAUTEN:  That's not true.

7                 THE COURT:  Well, I've made myself clear,

8    so carry on.  Let me know what happens.

9                 MR. CARTER:  Thank you for your time.

10                MR. LAUTEN:  Thank you, Judge.

11                THE COURT:  You're welcome.

12                (Proceedings concluded at 11:00 a.m.)

13

14

15

16

17

18

19

20

21

22

23

24

25

```
1              CAUSE NO. CC-17-06249-C

2

3  JINSUN, L.L.C., SILVER     )    IN THE COUNTY COURT
   STAR HOLDINGS TRUST, TPH   )
4  HOLDINGS, L.L.C., VERTICAL )
   HOLDINGS L.L.C., STEVEN M. )
5  PLUMB, AND J. LEONARD      )
   IVINS,                     )
6                             )
       Plaintiffs,            )
7                             )
   VS.                        )   AT LAW NO. 3
8                             )
   ROTHSTEIN, KASS & COMPANY, )
9  PLLC,                      )
                              )
10       Defendant.           )   OF DALLAS COUNTY, TEXAS
11

12

13

14

15              REPORTER'S CERTIFICATE

16

17        I, Therese J. Casterline, Certified Shorthand
18  Reporter in and for the State of Texas, certify that
19  the foregoing proceedings were reported
20  stenographically by me at the time and place indicated.
21        I further certify that I am neither counsel
22  for, related to, nor employed by any of the parties or
23  attorneys in the action in which this proceeding was
24  taken, and further that I am not financially or
25  otherwise interested in the outcome of the action.
```

Page 28

1          Given under my hand on this the 10th day of
2     January, 2020.
3
4
5
6                        _Therese Casterline_
       _____
       Therese J. Casterline, Texas CSR
7      5001, Expiration Date:  4/30/22
       Firm Registration No. 615
8      TSG Reporting - Worldwide
       747 Third Avenue
9      New York, New York  10017
       (877) 702-9580
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25