IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

SECURITIES AND EXCHANGE § 
COMMISSION, §
 §
Plaintiff, §
 § Civil Action No. 3:16-CV-1735-D
VS. §
 §
CHRISTOPHER A. FAULKNER, et al., §
 §
Defendants. §

MEMORANDUM OPINION
AND ORDER

Nonparty Rothstein, Kass & Company, PLLC ("Rothstein Kass") moves the court to clarify that its September 25, 2017 order ("Stay Order") precludes the plaintiffs in the *Jinsun* Action[1] ("*Jinsun* Plaintiffs")[2] from bringing their state court claim for aiding and abetting a breach of fiduciary duty and conspiracy to aid and abet a breach of fiduciary duty. The *Jinsun* Plaintiffs oppose Rothstein Kass's motion.[3] For the following reasons, the court

---

[1]*Jinsun, L.L.C. v. Rothstein, Kass & Co.*, No. CC-17-06249-C (Cty. Ct. at Law No. 3, Dall. Cty., Tex. filed Nov. 28, 2017).

[2]The *Jinsun* Plaintiffs are J. Leonard Ivins, Steven M. Plumb, and several companies controlled by Kevan Casey: Jinsun, L.L.C., Silver Star Holdings Trust, KM Casey No. 1 Ltd., TPH Holdings, L.L.C., and Vertical Holdings L.L.C.

[3]The *Jinsun* Plaintiffs' response to Rothstein Kass's motion was due on November 6, 2019. *See* N.D. Tex. Civ. R. 7.1(e) ("A response and brief to an opposed motion must be filed within 21 days from the date the motion is filed."). The *Jinsun* Plaintiffs' response, filed January 13, 2020, was filed more than two months after the 21-day deadline. Although the court could decide Rothstein Kass's motion without considering the *Jinsun* Plaintiffs' late-filed response, because it is granting Rothstein Kass's motion, it will address the response, despite its untimeliness.

grants the motion and holds that the *Jinsun* Action remains stayed by the Stay Order.

I

This is a civil enforcement action by plaintiff U.S. Securities and Exchange Commission ("SEC") against defendant Christopher A. Faulkner ("Faulkner") and other defendants, alleging that Faulkner orchestrated a massive fraud scheme by which he swindled investors out of millions of dollars over a multi-year period. The background facts underlying the present motion are set out in *SEC v. Faulkner*, 2018 WL 5279321, at *1-2 (N.D. Tex. Oct. 24, 2018) (Fitzwater, J.), and *SEC v. Faulkner*, 2019 WL 1040679, at *1-2 (N.D. Tex. Mar. 5, 2019) (Fitzwater, J.).

In essence, the dispute arises from Rothstein Kass's role in a reverse merger involving two private corporations that were part of Faulkner's fraud scheme—Breitling Oil & Gas Corporation ("BOG") and Breitling Royalties Corporation ("BRC") (collectively, "Breitling")—and Bering Exploration, Inc. ("Bering"), a public corporation that later became Breitling Energy Corporation ("BECC"). *See Faulkner*, 2018 WL 5279321 at *1. Breitling hired Rothstein Kass to audit its books in anticipation of the reverse merger. *See id.* A few months after the merger was completed in December 2013, Rothstein Kass issued an unqualified audit opinion. *See id.*

In pertinent part, the Stay Order stays, until further order of the court:

> All civil legal proceedings of any nature . . . involving . . . any Receivership Assets . . . the Receivership Defendants . . . or . . . any of the Receivership Defendants' past or present officers, directors, managers, agents, or general or limited partners sued for, or in connection with, any action taken by them while acting

> in such capacity of any nature, whether as plaintiff, defendant, third-party plaintiff, third-party defendant, or otherwise.

Stay Order ¶ 32. The Receivership Defendants are defined to include Faulkner, BOG, and BECC.

In November 2017 the *Jinsun* Plaintiffs—Bering's pre-merger shareholders—sued Rothstein Kass in Texas county court in the *Jinsun* Action, alleging that Rothstein Kass knew or should have known about inconsistencies in Breitling's financial statements, both immediately before the reverse merger and shortly thereafter, and either failed to disclose them or intentionally concealed them. *See Faulkner*, 2018 WL 5279321, at *2. In August 2018 Rothstein Kass moved for clarification of the Stay Order, asking this court to clarify whether the Stay Order applied to the *Jinsun* Action. In an October 24, 2018 memorandum opinion and order, the court held that the Stay Order did apply to the *Jinsun* Action based on language in the Stay Order itself and the fact that the *Jinsun* Action threatened a receivership asset (i.e., the potential claim of the court-appointed temporary receiver ("Receiver") against Rothstein Kass for disgorgement). *Faulkner*, 2018 WL 5279321, at *4-5.

Shortly thereafter, the *Jinsun* Plaintiffs filed a motion to vacate the October 24, 2018 memorandum opinion and order. They argued that the *Jinsun* Action could now proceed because they intended to "nonsuit"[4] their claim for equitable forfeiture and disgorgement and to clarify in their sixth amended petition that *Jinsun* Plaintiffs J. Leonard Ivins ("Ivins") and

---

[4]A "nonsuit" is a procedural device recognized by Texas law that is roughly equivalent to a voluntary dismissal under Fed. R. Civ. P. 41(a). *See Edgar v. Gen. Elec. Co.*, 2002 WL 34722191, at *1 (N.D. Tex. Mar. 5, 2002) (Fitzwater, J.).

Steven M. Plumb ("Plumb") were asserting their claims in their capacities as shareholders only, not as directors or officers of Bering. *Faulkner*, 2019 WL 1040679, at *2. The court rejected the *Jinsun* Plaintiffs' arguments, holding in a March 5, 2019 memorandum opinion and order that the *Jinsun* Plaintiffs' claim for professional negligence against Rothstein Kass is an asset of the Receiver under the two-part test articulated in *SEC v. Sharp Capital, Inc.*, 315 F.3d 541, 544 (5th Cir. 2003), and that despite the *Jinsun* Plaintiffs' attempt to clarify the capacities in which Ivins and Plumb sued, the *Jinsun* Action fell within the plain scope of the Stay Order. *Faulkner*, 2019 WL 1040679, at *3-5.

On July 1, 2019 the Receiver filed suit against Rothstein Kass, alleging, *inter alia*, that Rothstein Kass aided, abetted, and participated in Faulkner's breach of fiduciary duties owed to the Breitling entities "by causing BOG, BRC, BECC, [and others] to engage in an illegal fraudulent scheme that enabled Faulkner to misappropriate millions of dollars from the Breitling entities." Compl. ¶ 85, *Taylor v. Rothstein Kass & Co.*, No. 3:19-CV-1594-D (N.D. Tex. July 1, 2019) (Fitzwater, J.). Two months later, the *Jinsun* Plaintiffs filed their ninth amended petition in the *Jinsun* Action, alleging, *inter alia*, a claim against Rothstein Kass for aiding and abetting a breach of fiduciary duty and conspiracy to aid and abet a breach of fiduciary duty ("Fiduciary Duty Claim").

Rothstein Kass now seeks additional clarification of the Stay Order. It argues that the *Jinsun* Action should be stayed so long as the *Jinsun* Plaintiffs pursue their Fiduciary Duty Claim because this claim, to the extent that it exists at all, belongs to the Receiver and is therefore stayed under the Stay Order. The Receiver does not object to the relief Rothstein

Kass seeks. The *Jinsun* Plaintiffs oppose the motion.

II

The court has wide discretion to fashion equitable remedies in the context of an SEC civil enforcement action. *See SEC v. Posner*, 16 F.3d 520, 521 (2d Cir. 1994). It is "axiomatic" that this discretion includes "broad authority to issue blanket stays of litigation to preserve the property placed in receivership pursuant to SEC actions." *SEC v. Stanford Int'l Bank Ltd.*, 424 Fed. Appx. 338, 340 (5th Cir. 2011) (per curiam); *accord Zacarias v. Stanford Int'l Bank Ltd.*, 945 F.3d 883, 896-97 (5th Cir. 2019); *Rishmague v. Winter*, 616 Fed. Appx. 138, 139-40 (5th Cir. 2015); *Schauss v. Metals Depository Corp.*, 757 F.2d 649, 654 (5th Cir. 1985). "Such orders can serve as an important tool permitting a district court to prevent dissipation of property or assets subject to multiple claims in various locales." *Schauss*, 757 F.2d at 654; *accord Zacarias*, 945 F.3d at 897. This power is not limited to enjoining suits against entities that have been placed in receivership—at least where the stay order is nonetheless necessary to protect receivership assets. *See SEC v. Kaleta*, 530 Fed. Appx. 360, 361-63 (5th Cir. 2013) (per curiam). The court will, of course, consider legal precedent, but because receivership cases are "highly fact-specific," "it is neither surprising nor dispositive [if] there is no case law directly controlling" whether the court can stay a particular litigation. *Id.* at 362.

III

The court holds that the *Jinsun* Plaintiffs' Fiduciary Duty Claim is an asset of the receivership estate.

A

The assets of a receivership estate include any causes of action belonging to the receivership entities. *See, e.g., Reneker v. Offill*, 2009 WL 804134, at *4 (N.D. Tex. Mar. 26, 2009) (Fitzwater, C.J.) ("In the Receivership Order, the court took exclusive jurisdiction and possession of the Receivership Assets—including any causes of action belonging to the [receivership entities.]"). To determine whether a given claim belongs to the receivership estate, it is appropriate to conduct a Fed. R. Civ. P. 12(b)(6)-type analysis, looking only at the allegations in the complaint. *See Sharp Capital*, 315 F.3d at 544. The Fifth Circuit has laid out (in *dicta*) a two-part test: if (1) the cause of action alleges only an indirect harm to the plaintiff—one that derives from harm to a receivership entity—and (2) a receivership entity could have itself raised the claim for its own direct injury, then the claim belongs to the receivership estate. *See id.* (quoting *In re Educators Grp. Health Tr.*, 25 F.3d 1281, 1284 (5th Cir. 1994)). This two-part test strikes a sensible balance, and the court will apply it, as it did in the March 5, 2019 memorandum opinion and order, even though the Fifth Circuit did not expressly adopt it in *Sharp Capital*. *See Faulkner*, 2019 WL 1040679, at *3. The test ensures that a claim is treated as a receivership asset only if the Receiver could have brought the claim directly.

B

The court concludes, under the first part of the *Sharp Capital* test, that the *Jinsun* Plaintiffs' Fiduciary Duty Claim alleges only an indirect harm to the *Jinsun* Plaintiffs, i.e., it is necessarily derivative of the Receiver's own claim.

1

"Under Texas law, 'where a third party knowingly participates in the breach of duty of a fiduciary, such third party becomes a joint tortfeasor with the fiduciary and is liable as such.'" *Meadows v. Hartford Life Ins. Co.*, 492 F.3d 634, 639 (5th Cir. 2007) (quoting *Kinzbach Tool Co. v. Corbett-Wallace Corp.*, 160 S.W.2d 509, 514 (Tex. 1942)). Assuming that the *Jinsun* Plaintiffs' Fiduciary Duty Claim is comparable to a claim under Texas law for knowing participation in a breach of fiduciary duty,[5] the *Jinsun* Plaintiffs must prove the existence of an underlying fiduciary relationship. *See, e.g., Meadows*, 492 F.3d at 639 ("To establish a claim for knowing participation in a breach of fiduciary duty, a plaintiff must assert: (1) the existence of a fiduciary relationship; (2) that the third party knew of the fiduciary relationship; and (3) that the third party was aware that it was participating in the breach of that fiduciary relationship." (quoting *Cox Tex. Newspapers, L.P. v. Wootten*, 59 S.W.3d 717, 721-22 (Tex. App. 2001, pet. denied))).

In their ninth amended petition, the *Jinsun* Plaintiffs allege that "Breitling's officers,

---

[5]As this court recently noted in *Taylor v. Rothstein Kass & Co.*, 2020 WL 554583, at *6 n.4 (N.D. Tex. Feb. 4, 2020) (Fitzwater, J.), "[a]lthough the Supreme Court of Texas has not explicitly recognized a cause of action for aiding and abetting, it does recognize a cause of action for knowing participation in a breach of a fiduciary duty."

directors, and managers owed Plaintiffs a formal fiduciary duty (or, alternatively, an informal fiduciary duty) during the executory phase and throughout the negotiations and ultimate consummation of the merger transaction," 9th Am. Pet. ¶ 40, *Jinsun, L.L.C. v. Rothstein, Kass & Co.*, No. CC-17-06249-C (Cty. Ct. at Law No. 3, Dall. Cty., Tex. Sept. 20, 2019), and that "Rothstein Kass knowingly participated and encouraged the furtherance of the fraud and Breitling's officers and management's breaches of fiduciary duties to Plaintiffs," *id.* ¶ 41. In response to Rothstein Kass's second set of interrogatories, the *Jinsun* Plaintiffs clarified their belief as to the source of the alleged fiduciary duty:

> Bering Exploration, Inc. stopped its business activities when it was requested to do so based upon the representation by Breitling's management and officers—including Chris Faulkner—so that the numbers in advance of the merger would remain static through the merger; and, furthermore, Plaintiffs were to become shareholders in the surviving Breitling entities post-merger. Consequently, there was a relationship of trust and confidence between the parties, wherein Plaintiffs and the various Breitling parties were ostensibly joint venturers and/or partners.

Vertical Holdings, LLC's Objs. & Answers to 2d Set of Interrogatories at 3.[6]

2

To the extent the *Jinsun* Plaintiffs are asserting that Rothstein Kass participated in the

---

[6]Rothstein Kass only includes Vertical Holdings, LLC's ("Vertical Holdings'") interrogatory response in its appendix, but states in its brief that "[t]he *Jinsun* Plaintiffs' *responses* specify [the basis for their Fiduciary Duty Claim]." Rothstein Kass Br. 5 (emphasis added). Because the *Jinsun* Plaintiffs do not suggest that other interrogatory responses differ from Vertical Holdings' response, the court assumes that all of the *Jinsun* Plaintiffs filed the same response.

beach of a fiduciary duty owed *to Bering* due either to a "relationship of trust and confidence" or a relationship as "joint venturers and/or partners," the harm to the *Jinsun* Plaintiffs is an indirect harm. This is because the duty arose, if at all, between Breitling's management and officers, on the one hand, and Bering (which is now BECC), on the other hand.

In their ninth amended petition, the *Jinsun* Plaintiffs expressly allege that

> [f]or purposes of clarity, Steven Plumb and Leonard Ivins want to make it abundantly clear that they are not pursuing claims "in connection with their actions as [former] directors and officers," of Breitling Oil & Gas Corporation, but, rather, they are pursuing their claims *as former shareholders* of Bering Exploration, Inc.

9th Am. Pet. at 1 (emphasis added). There is no allegation, however, that there was a "relationship of trust and confidence" between Breitling's management/officers and the *shareholders* of Bering. The request to stop business activities, on which the *Jinsun* Plaintiffs appear to rely as the basis for the alleged fiduciary duty, was directed at Bering, not its shareholders. And there is no plausible allegation in the ninth amended petition that Breitling's management/officers and the *shareholders* of Bering were joint venturers and/or partners. Accordingly, the *Jinsun* Plaintiffs, who assert the Fiduciary Duty Claim in their capacity as shareholders, do not themselves have a cause of action for aiding and abetting a breach of fiduciary duty or conspiracy to aid and abet a breach of fiduciary duty. "[A]ny claim they assert is necessarily derivative of the potential claims of a receivership entity." *Faulkner*, 2019 WL 1040679, at *4 (citing *Haut v. Green Café Mgmt.*,

*Inc.*, 376 S.W.3d 171, 177 (Tex. App. 2012, no pet.) ("The general rule in Texas is that a corporate shareholder has no individual cause of action for damages caused by a wrong done solely to the corporation.")).[7]

3

The *Jinsun* Plaintiffs argue that the Receiver's breach of fiduciary duty claim is "totally dissimilar" from their Fiduciary Duty Claim filed in state court. They reason that,

> [t]o this end, the Receiver is claiming that Rothstein Kass's participation in breaches of fiduciary duty with the Breitling officers and directors caused DAMAGE TO THE BREITLING ENTITIES AND INVESTORS THAT ARE PART AND PARCEL OF THE RECEIVERSHIP. Plaintiffs in state court are NOT SUING FOR THAT. Plaintiffs in state court are suing for their own losses to their own individualized shares in their former company, *Bering*, before Bering ever merged with Breitling. The RECEIVER CANNOT SUE FOR THE VALUE OF PLAINTIFFS' INDIVIDUALIZED SHARES IN A DIFFERENT COMPANY THAT IS NOT APART OF THE RECEIVERSHIP—*NOR IS THE RECEIVER MAKING SUCH*

---

[7]In the March 5, 2019 memorandum opinion and order, the court observed that the claims the *Jinsun* Plaintiffs bring *other than* for professional negligence—including for aiding and abetting a breach of fiduciary duty—"do not appear to be receivership assets." *Faulkner*, 2019 WL 1040679, at *5. It noted that the Receiver "has not yet expressed any intent to pursue similar claims on behalf of the Receivership Estate," and that "even if the Receiver does opt to pursue similar theories of recovery, it would not render the *Jinsun* Plaintiffs' claims the property of the receivership, *because those claims are not derivative of the Receiver's potential claims.*" *Id.* (emphasis added). Today's holding, which is based on the allegations in the ninth amended petition and the *Jinsun* Plaintiffs' response to Rothstein Kass's second set of interrogatories, is not inconsistent with the March 5, 2019 memorandum opinion and order. In any event, the quoted *dicta* from the March 5, 2019 memorandum opinion and order was based on briefing regarding the *professional negligence* claim, not the Fiduciary Duty Claim, and was written before the Receiver filed the *Taylor* action, in which he clearly sues Rothstein Kass for "Aiding, Abetting, or Participation in Breaches of Fiduciary Duties." *Taylor* Compl. at 29.

*A CLAIM.*

*Jinsun* Ps. Br. 7 (bold font omitted). This argument is flawed.

First, the *Jinsun* Plaintiffs assert that Bering is "not []part of the receivership." *Id.* Bering, however, became the receivership defendant BECC. The Receiver is entitled to pursue, and has, in fact, pursued, claims for damages both to Bering (pre-merger) and to BECC (post-merger).

Second, to the extent the *Jinsun* Plaintiffs seek to recover for the loss in value of their shares in Bering, an individual shareholder generally has "no separate and independent right of action for injuries suffered by the corporation which merely result in the depreciation of the value of their stock." *Wingate v. Hajdik*, 795 S.W.2d 717, 719 (Tex. 1990) (citations omitted). Accordingly, an action for such injury must be brought by the corporation, not its individual shareholders. *Id.* Thus "to recover for wrongs done to the corporation, the shareholder must bring the suit derivatively in the name of the corporation so that each shareholder will be made whole if the corporation obtains compensation from the wrongdoer." *Webre v. Sneed*, 358 S.W.3d 322, 329-30 (Tex. App. 2011) (quoting *Redmon v. Griffith*, 202 S.W.3d 225, 234 (Tex. App. 2006, pet. denied)), *aff'd*, 465 S.W.3d 169 (Tex. 2015). In other words, the *Jinsun* Plaintiffs' Fiduciary Duty Claim is a claim that belongs to Bering (now BECC), which is a receivership defendant.[8]

---

[8]The *Jinsun* Plaintiffs also argue that Rothstein Kass has abused the discovery process; that it is using the instant motion to obtain relief in federal court that it cannot get in state court, i.e., additional discovery after the close of the discovery period and a continuance of the state court trial; and that it is "hijack[ing] [the *Jinsun*] Plaintiffs' right to

C

Turning to the second element of the *Sharp Capital* test, not only could a receivership entity have brought a claim for knowingly participating in the breach of a fiduciary duty at the time the receivership began, the Receiver *has actually brought* this cause of action against Rothstein Kass. In *Taylor* the Receiver alleges a claim for "Aiding, Abetting, or Participation in Breaches of Fiduciary Duties." He asserts, *inter alia*, that:

> Faulkner owed fiduciary duties to the Breitling entities [(defined to include BOG, BRC, BECC, and others)]. He breached his fiduciary duties by causing BOG, BRC, BECC, Crude and Patriot to engage in an illegal fraudulent scheme that enabled Faulkner to misappropriate millions of dollars from the Breitling entities, causing these entities to suffer millions of dollars of additional losses, and causing them to incur millions of dollars of increased liabilities, including without limitation professional and administrative liabilities. . . . Defendants knowingly or recklessly aided, abetted, or participated in these breaches of fiduciary duties.

*Taylor* Compl. ¶¶ 85-86. Although the *Jinsun* Plaintiffs argue that their Fiduciary Duty Claim is "totally dissimilar" from the Receiver's claim—an argument that the court rejects, *see supra* § III (B)(3)—they do not contend that the Receiver cannot bring this claim.[9]

---

a trial in state court," *Jinsun* Ps. Br. 8. The court does not address these arguments because Rothstein Kass's motivations are immaterial to the question whether the Stay Order applies to the *Jinsun* Plaintiffs' Fiduciary Duty Claim.

[9]Although in *Taylor* the court dismissed the Receiver's claim against Rothstein Kass for aiding and abetting Faulkner's breaches of fiduciary duties, *Taylor*, 2020 WL 554583, at *5, it did not dismiss the Receiver's claim for participation in breaches of fiduciary duty, *id.* at *7 n.6. Moreover, even if a claim for aiding and abetting a breach of fiduciary duty or for conspiracy to aid and abet a breach of fiduciary duty would ultimately fail on the merits if the Receiver were to assert it, these claims (meritorious or not) still belong to the

Accordingly, the court holds that the *Jinsun* Plaintiffs' Fiduciary Duty Claim against Rothstein Kass regarding the reverse merger is therefore a receivership asset.

IV

The *Jinsun* Action also falls within the plain scope of the Stay Order because it impacts the potential rights or property of the receivership estate. *See Faulkner*, 2019 WL 1040679, at *5. As this court explained in the March 5, 2019 memorandum opinion and order, "[s]o long as the *Jinsun* Action continues to implicate causes of action that properly belong to the Receiver, it will be stayed by this court's Stay Order." *Id.*

\* \* \*

For the reasons stated, the court grants Rothstein Kass's motion for additional clarification of Stay Order, and it clarifies that the *Jinsun* Action is stayed under the Stay Order pending further order of this court. The clerk of court is directed to transmit a copy of this memorandum opinion and order to the clerk of County Court at Law No. 3 of Dallas County, Texas.

**SO ORDERED**.

February 6, 2020.

_____
SIDNEY A. FITZWATER
SENIOR JUDGE

---

receivership estate, and are assets of the Receiver, not the *Jinsun* plaintiffs.