IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | § § § |
| Plaintiff, | § § |
| VS. | § Civil Action No. 3:16-CV-1735-D § § |
| CHRISTOPHER A. FAULKNER, et al., | § § |
| Defendants. | § |

MEMORANDUM OPINION
AND ORDER

Non-parties the *Jinsun* Plaintiffs[1] move the court to lift or modify the stay order entered in this case so that they can proceed to trial in county court in the *Jinsun* Action[2] on their remaining state-law claims. For the following reasons, the court denies the motion.

I

Because the pertinent background facts and procedural history are set out in several prior memorandum opinions and orders,[3] the court will recount them only as necessary to understand this decision.

---

[1]The *Jinsun* Plaintiffs are J. Leonard Ivins, Steven M. Plumb, and several companies controlled by Kevan Casey: Jinsun, L.L.C., Silver Star Holdings Trust, TPH Holdings, L.L.C., and Vertical Holdings L.L.C.

[2]*Jinsun, L.L.C. v. Rothstein, Kass & Co.*, No. CC-17-06249-C (Cty. Ct. at Law No. 3, Dall. Cty., Tex. filed Nov. 28, 2017).

[3]*See SEC v. Faulkner*, 2020 WL 584614, at *1-2 (N.D. Tex. Feb. 6, 2020) (Fitzwater, J.); *SEC v. Faulkner*, 2019 WL 1040679, at *1-2 (N.D. Tex. Mar. 5, 2019) (Fitzwater, J.); *SEC v. Faulkner*, 2018 WL 5279321, at *1-2 (N.D. Tex. Oct. 24, 2018) (Fitzwater, J.).

This is a civil enforcement action by plaintiff U.S. Securities and Exchange Commission ("SEC") against defendant Christopher A. Faulkner ("Faulkner") and other defendants, alleging that Faulkner orchestrated a massive fraud scheme by which he swindled investors out of millions of dollars over a multi-year period. The dispute at issue arises from nonparty Rothstein, Kass & Company, PLLC's ("Rothstein Kass's") role in a reverse merger involving two private corporations that were part of Faulkner's fraud scheme—Breitling Oil & Gas Corporation and Breitling Royalties Corporation (collectively, "Breitling")—and Bering Exploration, Inc. ("Bering"), a public corporation that later became Breitling Energy Corporation. *See SEC v. Faulkner*, 2018 WL 5279321, at *1 (N.D. Tex. Oct. 24, 2018) (Fitzwater, J.). Breitling hired Rothstein Kass to audit its books in anticipation of the reverse merger. *See id.* A few months after the merger was completed, Rothstein Kass issued an unqualified audit opinion. *See id.*

On September 25, 2017—over two months before the *Jinsun* Plaintiffs initiated the *Jinsun* Action—this court entered an order ("Stay Order") staying, until further order of the court:

> [a]ll civil legal proceedings of any nature . . . involving . . . any Receivership Assets . . . the Receivership Defendants . . . or . . . any of the Receivership Defendants' past or present officers, directors, managers, agents, or general or limited partners sued for, or in connection with, any action taken by them while acting in such capacity of any nature, whether as plaintiff, defendant, third-party plaintiff, third-party defendant, or otherwise.

Stay Order ¶ 32. On November 28, 2017 the *Jinsun* Plaintiffs—Bering's pre-merger shareholders—sued Rothstein Kass in Texas county court in the *Jinsun* Action, alleging that

Rothstein Kass knew or should have known about inconsistencies in Breitling's financial statements, both immediately before the reverse merger and shortly thereafter, and either failed to disclose them or intentionally concealed them. *See Faulkner*, 2018 WL 5279321, at *2. In three separate memorandum opinions and orders, the court has held that its Stay Order applies to the *Jinsun* Action. *See SEC v. Faulkner*, 2020 WL 584614, at *7 (N.D. Tex. Feb. 6, 2020) (Fitzwater, J.); *SEC v. Faulkner*, 2019 WL 1040679, at *5 (N.D. Tex. Mar. 5, 2019) (Fitzwater, J.); *Faulkner*, 2018 WL 5279321, at *3-4.

Consistent with the court's recent memorandum opinion and order in *Faulkner*, 2020 WL 584614, at *3, 7, the *Jinsun* Plaintiffs have agreed to immediately dismiss with prejudice their Fiduciary Duty Claim[4] against Rothstein Kass. They contend that the remaining claims pleaded in their ninth amended petition in the *Jinsun* Action have no impact on receivership assets,[5] and they seek an order lifting or modifying the Stay Order so that they can proceed to trial in county court on March 24, 2020 on their remaining state-law claims. Rothstein

---

[4]In its most recent opinion, the court held that the *Jinsun* Plaintiffs' Fiduciary Duty Claim is an asset of the receivership estate, and that the *Jinsun* action is therefore stayed under the Stay Order. *Faulkner*, 2020 WL 584614, at *3, 7.

[5]In their motion, the *Jinsun* Plaintiffs assert, without explanation, that their remaining causes of action "do not belong to the Receiver." *Jinsun* Ps. Br. 4. To the extent they have attempted to remedy this deficiency by expanding on the reasoning in their reply brief, *see* Reply 4-8, thus depriving Rothstein Kass and the Receiver of an opportunity to respond, the court declines to consider the expanded reasoning found in the reply brief. *Cf. Jacobs v. Tapscott*, 2006 WL 2728827, at *7 (N.D. Tex. Sept. 25, 2006) (Fitzwater, J.) ("[T]he court will not consider an argument raised for the first time in a reply brief." (citing *Senior Unsecured Creditors' Comm. of First RepublicBank Corp. v. FDIC*, 749 F. Supp. 758, 772 (N.D. Tex. 1990) (Fitzwater, J.))), *aff'd*, 277 Fed. Appx. 483 (5th Cir. 2008).

Kass and the Receiver oppose the *Jinsun* Plaintiffs' motion.

II

Courts considering whether to lift a stay of litigation entered pursuant to a receivership order have applied the following three-part test that balances the interests of the receiver and the moving parties: (1) whether refusing to lift the stay genuinely preserves the *status quo* or whether the moving party will suffer substantial injury if it is not permitted to proceed; (2) the time in the course of the receivership at which the motion for relief from the stay is made; and (3) the merits of the moving party's underlying claim. *SEC v. Stanford Int'l Bank Ltd.*, 424 Fed. Appx. 338, 341 (5th Cir. 2011) (per curiam) (quoting *SEC v. Wencke*, 742 F.2d 1230, 1231 (9th Cir. 1984) (establishing balancing test)). "The interests of the Receiver are very broad and include not only protection of the receivership *res*, but also protection of defrauded investors and considerations of judicial economy." *SEC v. Univ. Fin.*, 760 F.2d 1034, 1038 (9th Cir. 1985) (citing *SEC v. Wencke*, 622 F.2d 1363, 1372-73 (9th Cir. 1980)). The movant bears the burden to show that the stay should be lifted. *United States v. Acorn Tech. Fund, L.P.*, 429 F.3d 438, 450 (3d Cir. 2005).

III

The *Jinsun* Plaintiffs ask the court to lift or modify the Stay Order on the grounds that the stay does not genuinely preserve the *status quo* and they will suffer an "immediate and substantial injury" if the stay is not lifted. *Jinsun* Ps. Br. 2. Regarding the "immediate and substantial injury," the *Jinsun* Plaintiffs contend that one of the *Jinsun* Plaintiffs, Len Ivins ("Ivins"), is in very poor health, and that "[i]f this case is delayed further, Plaintiffs' Counsel

seriously doubts Len Ivins will see his case tried to verdict." *Id.* at 5. They also contend that an "extraordinary amount of financial resources have been expended preparing for a March 24, 2020 trial in state court," *id.*, and that they "need a resolution to this dispute, which has been pending for over two years," *id.* at 6.

In response, Rothstein Kass argues that the injury the *Jinsun* Plaintiffs maintain they will suffer if the stay is not lifted is heavily outweighed by the harm to the receivership estate if the court lifts the Stay Order. Rothstein Kass maintains that "[d]epriving the receivership estate of its potential and actual claims and alleged damages (particularly given that the *Jinsun* Plaintiffs are seeking almost $15 million in damages for the North Edna Lease) would significantly harm the estate and future potential claimants," Rothstein Kass Br. 17-18; that it is not the *Jinsun* Plaintiffs' *status quo* that must be preserved, but rather that of the receivership interests, and that the *status quo* is plainly preserved when the court enforces its Stay Order, protecting possible and potential receivership assets and allowing the receivership process to run its course; that as former Bering shareholders, the *Jinsun* Plaintiffs may pursue any relief to which they may be entitled through the receivership process; and that permitting the *Jinsun* Plaintiffs to proceed in the *Jinsun* Action and pursue recovery of admitted receivership assets would adversely and significantly impact the receivership estate and any other possible claimants, and would impermissibly favor the *Jinsun* Plaintiffs over the interests of the receivership estate.

IV

The Court denies the *Jinsun* Plaintiffs' request to lift or modify the Stay Order because the equities continue to favor maintenance of the (pre-*Jinsun* Action) *status quo*.

A

The first *Wencke* factor—whether the moving party will suffer substantial injury—weighs in favor of the receivership. This factor is essentially a balancing of the *Jinsun* Plaintiffs' interests with the interests of the receivership. *See Stanford*, 424 Fed. Appx. at 341 ("The first factor essentially balances the interests in preserving the receivership estate with the interests of the Appellants."). Although it can be assumed that the *Jinsun* Plaintiffs will suffer injury if they are not permitted to proceed to trial in the *Jinsun* Action, that injury does not outweigh the interest the receivership has in maintaining the receivership estate. The Receiver is diligently pursuing receivership assets from which an equitable distribution can be made to *all* individuals and entities adversely affected by Faulkner's fraudulent scheme. *See id.* (The Receiver's task to "marshal, preserve and conserve the receivership estate is as much for [the *Jinsun* Plaintiffs'] benefit as for the benefit of all of the other investors—investors who also lost amounts of money."). If the *Jinsun* Action were permitted to proceed, the *Jinsun* Plaintiffs in effect would be granted priority over others who were victimized by Faulkner's fraudulent scheme. The *Jinsun* Plaintiffs seek to recover in excess of $16 million in the *Jinsun* Action. If they are successful, this substantial sum likely would not be available for equitable distribution to all victims, including the *Jinsun* Plaintiffs.

Regarding the "extraordinary amount of financial resources" the *Jinsun* Plaintiffs have expended in litigating the *Jinsun* Action, it should be noted that the Stay Order has been in place since September 25, 2017, and it was entered over two months *before* the *Jinsun* Action was even initiated. Moreover, while the *Jinsun* Action has been pending, this court has consistently held that the *Jinsun* Action is stayed by the Stay Order. *See Faulkner*, 2020 WL 584614, at *7; *Faulkner*, 2019 WL 1040679, at *5; *Faulkner*, 2018 WL 5279321, at *3-4.[6] The *Jinsun* Plaintiffs' decision to vigorously pursue the *Jinsun* Action, despite multiple indications that their suit would be stayed under the Stay Order, is insufficient to persuade the court, in weighing the equities, that the stay should be lifted or modified.

Although the court is not unsympathetic to the *Jinsun* Plaintiffs' desire, in light of Ivins' serious health concerns, to see the *Jinsun* Action tried to a verdict, Ivins is but one of several persons adversely affected (directly or indirectly) by Faulkner's fraudulent scheme, and the court declines to make a special exception based on one plaintiff's age or health condition. The court holds that the first *Wencke* factor weighs in favor of maintaining the stay.

B

The second *Wencke* factor—the timing of the request—also weighs in favor of

---

[6]In the court's February 6, 2020 memorandum opinion and order, it explained why *dicta* in its March 5, 2019 memorandum opinion and order regarding claims that did not appear to be receivership assets was not inconsistent with its February 6 ruling. *See Faulkner*, 2020 WL 584614, at *5 n.7.

maintaining the stay.  Although the Receiver was appointed on September 25, 2017,[7] he continues to collect assets and pursue various receivership estate claims.  The Receiver has filed a motion to approve his proposed plan for the ultimate distribution of receivership assets and to establish procedures to determine and disallow final claims, but his proposed plan has been objected to, and the motion remains to be decided.  If the *Jinsun* Action were permitted to proceed, the Receiver would lose necessary control over receivership assets (the Receiver has himself sued Rothstein Kass) that should remain available to the Receiver in order to administer the receivership estate.

C

The court expresses no opinion on the third factor: the merits of the *Jinsun* Plaintiffs' underlying claim in their county court suit.  Even if the lawsuit is meritorious, the claims are contested.  This factor does not outweigh the other factors, which weigh in favor of preserving the stay.

D

Having weighed the *Wencke* factors and concluded that, on balance, they favor maintaining the *status quo*, the court denies the *Jinsun* Plaintiffs' motion to lift stay.

---

[7]The Receiver was appointed temporarily, on an emergency basis, on August 14, 2017.  On September 25, 2017 the court entered the receivership order that is now in effect, and it has since been amended twice.

* * *

For the reasons stated, the court denies the *Jinsun* Plaintiffs' February 10, 2020 verified emergency motion to lift stay, or, in the alternative, to modify stay. The clerk of court is directed to transmit a copy of this memorandum opinion and order to the clerk of County Court at Law No. 3 of Dallas County, Texas.

**SO ORDERED**.

February 25, 2020.

_____
SIDNEY A. FITZWATER
SENIOR JUDGE