# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | § | |
| Plaintiff, | § § | |
| v. | § § | |
| CHRISTOPHER A. FAULKNER, BREITLING ENERGY CORPORATION, JEREM S. WAGER, JUDSON F. ("RICK") HOOVER, PARKER A. HALLAM, JOSEPH SIMO, DUSTIN MICHAEL MILLER RODRIGUEZ, BETH C. HANDKINS, GILBERT STEEDLEY, BREITLING OIL & GAS CORPORATION, CRUDE ENERGY, LLC, PATRIOT ENERGY, INC. | § § § § § § § § § § | Civil Action No. 3:16-cv-1735-D |
| Defendants. | § § | |
| And | § | |
| TAMRA M. FREEDMAN and JETMIR AHMEDI, | § § | |
| Relief Defendants. | § § | |
| THOMAS L. TAYLOR III, solely in his capacity as Court-appointed temporary receiver for Breitling Energy Corporation, et al., | § § § | |
| Plaintiff, | § § | |
| v. | § | Civil Action No. 3:19-CV-1594-D |
| ROTHSTEIN KASS & COMPANY PLLC, et al. | § § | |
| Defendants. | § | |

## RECEIVER'S UNOPPOSED MOTION TO APPROVE PROPOSED SETTLEMENT WITH ROTHSTEIN KASS AND EXPEDITED REQUEST FOR ENTRY OF SCHEDULING ORDER AND BRIEF IN SUPPORT

# **Table of Contents**

Table of Authorities ................................................................................................ iv

I.  INTRODUCTION ......................................................................................... 6

II.  BACKGROUND ........................................................................................... 6

  A. Authority of the Receiver ......................................................................... 6

  B. The Investigation of Claims Against Rothstein Kass Defendants ................................. 8

  C. The Rothstein Kass Action .......................................................................... 10

  D. Mediation ....................................................................................... 11

  E. The Rothstein Kass Settlement ..................................................................... 12

III.  REQUEST FOR APPROVAL OF THE ROTHSTEIN KASS SETTLEMENT ............... 13

  A. Legal Standards ............................................................................... 13

  B. The Rothstein Kass Settlement Satisfies the Factors for Settlement Approval ............. 15

    1) Value of the Proposed Settlement ................................................................ 15

    2) Value and Merits of the Receiver's Claims ................................................... 16

    3) The Risk that Litigation Would Dissipate Receivership Assets ................................ 17

    4) The Complexity and Costs of Future Litigation ........................................ 18

    5) The Implications of the Rothstein Kass Settlement on Other Claimants ................... 19

    6) The Value and Merits of Any Foreclosed Parties' Potential Claims ...................... 19

    7) Other Equities Attendant to the Situation ................................................. 20

IV.  REQUEST FOR APPROVAL OF THE SCHEDULING ORDER AND NOTICE ......... 20

ii

V.      CONCLUSION & PRAYER ............................................................................. 21

CERTIFICATE OF CONFERENCE .............................................................................. 23

CERTIFICATE OF SERVICE ....................................................................................... 23

## Table of Authorities

*Cases*

Janvey v. Alguire
  *No. 3:09-cv-00724, slip op. at 31, 34 (N.D. Tex. July 30, 2014)* ............................................. 14

Jinsun, L.L.C., et al v. Rothstein Kass & Co., PLLC
  *No. CC-17-06249, in the County Court at Law No. 3, Dallas County, Texas* ......................... 21

Klein v. O'Neal, Inc.
  *705 F. Supp. 2d 632, 649 (N.D. Tex. 2010)* .............................................................................. 16

Lydondell Chem. Co. v. Occidental Chem. Corp.
  *608 F.3d 284, 297 n.43 (5th Cir. 2010)* .................................................................................... 15

SEC v. Faulkner et al.
  *Case No. 3:16-CV-1735-D (N.D. Tex. 2016)* .............................................................................. 7

SEC v. Kaleta
  *2012 WL 401069, at \*4 (S.D. Tex. Feb. 7, 2012)* .............................................................. 14, 15

SEC v. Kaleta
  *530 F. App'x 360, 362 (5th Cir. 2013)* .................................................................................... 14

SEC v. Parish
  *2010 WL 8347143, at \*6 (D.S.C. Feb. 10, 2010), modified, 2010 WL 8347144 (D.S.C. Apr. 8, 2010)* ............................................................................................................................................ 19

Zacarias v. Stanford Int'l Bank, Ltd.
  *945 F.3d 883 (5th Cir. 2019)* .......................................................................................... 14, 20

COMES NOW Plaintiff Thomas L. Taylor III ("Receiver"), solely in his capacity as temporary Receiver for the Breitling group of companies,[1] and moves the Court to approve the settlement (the "Rothstein Kass Settlement" or "Settlement") among and between the Receiver and Defendants Rothstein Kass P.A. d/b/a/ Rothstein Kass & Co. P.C. ("Rothstein Kass P.C."), and Rothstein Kass & Company, PLLC ("Rothstein Kass PLLC", together with Rothstein Kass P.C., "Rothstein Kass" or "Defendants"). The fully executed Rothstein Kass Settlement Agreement is attached as **Exhibit 1** to the Appendix (App. 0003-14).

The Receiver further requests that the Court enter the Scheduling Order[2] attached as **Exhibit 2** to the Appendix (App. 00015-21) setting deadlines for resolution of any objections to the Settlement as well as to the separately filed Motion to Enter Proposed Bar Order,[3] and also approve the form of the proposed Notices attached as **Exhibits 3** and **4** to the Appendix (App. 00022-26 and 00027-28).

The Receiver requests that this Court find that the Rothstein Kass Settlement is fair, equitable, and in the best interests of the Receivership Estate and all its claimants, and to approve the Rothstein Kass Settlement. In support thereof, the Receiver respectfully states the following:

---

[1] Specifically, the Receiver files this Motion in his capacity as court-appointed Receiver for Breitling Oil & Gas Corporation ("BOG"), Breitling Royalties Corporation ("BRC"), Breitling Energy Corporation ("BECC"), and Crude Energy, LLC ("Crude Energy"), Crude Royalties, LLC ("Crude Royalties"), Patriot Energy, Inc. ("Patriot"), and Bering Exploration, Inc. ("Bering").

[2] The Receiver requests that the Court promptly enter the Scheduling Order, without waiting the twenty-one (21) days contemplated by Local Rule 7.1(e) for interested parties to respond to this Motion, because such Scheduling Order merely approves the notice and objection procedure and does not constitute a final approval of the Settlement.

[3] As discussed in the Motion to Enter Proposed Bar Bar Order being filed concurrently herewith, the Settlement is conditioned on entry of the Bar Order.

## I.  <u>INTRODUCTION</u>

1.      As part of his lengthy and thorough investigation of the Breitling fraud scheme, and after having filed and litigated claims against Defendants in the lawsuit styled *Taylor v. Rothstein Kass & Company PLLC, et al*., Civil Action No. 3:19-cv-1594-D, in the Northern District of Texas – Dallas Division (the "Rothstein Kass Action") over the course of the last year and a half, the Receiver has reached a settlement with Defendants, who provided audit services to BOG, BRC, and BECC (the "Breitling Entities.")  Under the agreement, once approved and effective, Rothstein Kass's insurance carrier, on behalf of Rothstein Kass, has agreed to pay **$7.0 million** to the Receiver for distribution to Breitling claimants whose claims have been allowed by the Receiver. In return, Defendants and Brian Matlock ("Matlock")[4] seek a release of all claims that have been asserted or which could have been asserted against them by the Receiver in the Rothstein Kass Action or otherwise.

2.      As discussed further herein, the Rothstein Kass Settlement is the result of mediation with the Hon. Judge Jeff Kaplan (retired) and is driven, in part, by available insurance, as the Receiver recognizes that Defendants' largest potentially collectible asset is their (depleting) insurance policy.

## II.  <u>BACKGROUND</u>

### A.  *Authority of the Receiver*

3.      On June 24, 2016, the United States Securities & Exchange Commission ("SEC") filed its enforcement Complaint against several of the Receivership Entities as well as several individuals, including Breitling CEO and primary perpetrator of the Breitling fraud, Christopher

---

[4] Matlock is a defendant in the Rothstein Kass Action but as a condition of the Settlement will be dismissed with prejudice within ten (10) days of Rothstein Kass's payment of the Settlement amount.

Faulkner ("Faulkner").  On August 14, 2017 the Court appointed Plaintiff Thomas L. Taylor III as temporary Receiver for Breitling Oil and Gas Corporation ("BOG") and Breitling Energy Corporation ("BECC").  *See* SEC Action[5], ECF No. 108, as amended by Order, ECF No. 142, as amended by First Amended Order Appointing Receiver, ECF No. 320, as amended by Second Amended Order Appointing Receiver, ECF No. 418 (collectively referred to as the "Receivership Order").[6] Pursuant to the Receivership Order, the Receiver currently serves as temporary receiver for the estates of Faulkner, BOG, BECC, Breitling Royalties Corporation ("BRC"), Crude Energy, LLC ("Crude Energy"), Crude Royalties, LLC ("Crude Royalties") and Patriot Energy, Inc. ("Patriot"), Breitling Ventures Corporation, Breitling Holdings Corporation, Breitling Operating Corporation, Inwood Investments, Inc. and Grand Mesa Investments, Inc., and their predecessor companies, including Bering Exploration, Inc., ("Bering")[7] (collectively, excluding Faulkner, the "Receivership Entities").  Receivership Order at ¶2.

4.     The Receiver has been specifically appointed as receiver for and over the "Receivership Assets", *id*. at ¶2, which includes "all assets—in any form or of any kind whatsoever— owned, controlled, managed, or possessed by…, directly or indirectly," Faulkner and the Receivership Entities. *Id*.  The Receivership Order also specifically authorizes and empowers the Receiver to investigate and prosecute claims "in his discretion" in order to recover funds for the Receivership estate. *Id.*, at ¶¶ 42-43.

5.     Accordingly, and following his own investigation, which included interviews of witnesses, review of thousands of pages of Breitling records and analysis of the facts surrounding

---

[5] *SEC v. Faulkner et al*., Case No. 3:16-CV-1735-D (N.D. Tex. 2016) (the "SEC Action").
[6] Unless otherwise specified, citations to the Receivership Order refer to pages and paragraphs in ECF No. 418 in the SEC Action.
[7] Bering was a public company that merged with BOG and BRC to become BECC and is therefore a Receivership Entity.

certain parties that may have assisted or participated in the Breitling fraud, on July 12, 2019 the Receiver filed his Unopposed Motion for Leave to Engage Litigation Counsel on a Contingency Fee Basis [ECF No. 456] in order to retain the undersigned counsel ("Litigation Counsel") to prosecute claims in Ancillary Proceedings against Rothstein Kass and Brian Matlock, as well as to investigate and prosecute claims against any other potentially liable third parties involved in the Breitling fraud. The Court granted said Motion via its Order dated July 15, 2019 [ECF No. 457] (the "Litigation Counsel Retention Order"). The Receiver thereafter shared with Litigation Counsel the evidence regarding Rothstein Kass and Matlock that he had gathered and, following Litigation Counsel's review of said materials and further discussions with the Receiver concerning the facts of the potential claims against Rothstein Kass and Matlock, on July 12, 2019 the Receiver engaged Litigation Counsel on a 30% contingency fee basis to prosecute the Receiver's litigation claims against Defendants and Matlock.

### B. *The Investigation of Claims Against Rothstein Kass Defendants*

6.     Based on the preliminary evidence gathered and reviewed by the Receiver concerning Rothstein Kass's auditor relationship with the Breitling entities, which evidence the Receiver found sufficient to warrant the filing of a Complaint, the Receiver filed the Original Complaint against Defendants and Matlock on July 1, 2019 [Rothstein Kass Action, ECF No. 1]. Shortly after said filing and following their July 12, 2019 retention by the Receiver, Litigation Counsel entered appearances in the case as lead counsel and thereafter vigorously prosecuted the case for over a year and a half until the Settlement was reached. Litigation Counsel spent hundreds of hours over a roughly six month period performing a detailed review and analysis of all of the paper and electronic records that Defendants and the SEC had previously produced to the Receiver, including the review of months of e-mail communications between Defendants and Faulkner and

other individuals at Breitling, as well as thousands of pages of documents belonging to the Receivership Entities that were in the custody of the Receiver.  Furthermore, and because the SEC had taken the testimony of dozens of former Breitling executives as well as of Defendants' employees beginning in 2013, Litigation Counsel reviewed over 35+ deposition transcripts in order to "get up to speed" on the case and the history and internal operations of the Receivership Entities.

7.      The investigation and prosecution of the Receiver's claims against Defendants necessarily required Litigation Counsel to, on the front end, spend hundreds of hours  investigating and understanding the background and history of the complex web of the Receivership Entities, the financial transactions, securities offering materials, interrelationships and dealings between and among the various Receivership Entities and the investors that invested with the Receivership Entities, and the complex facts relating to Faulkner's fraud scheme and how it was perpetrated through the various Receivership Entities.  Accordingly, as part of their investigation and litigation of the claims against Defendants, Litigation Counsel also reviewed voluminous documents, emails, and deposition transcripts and SEC investigative testimony obtained in the SEC Action as well as the Receiver's interviews and depositions of various former Breitling employees.

8.      Without a comprehensive investigation and understanding of this complex background, it would not have been possible to formulate or litigate viable claims against Defendants.

9.      In summary, the Receiver and Litigation Counsel conducted a thorough analysis of, and litigated, a series of claims against Defendants and Matlock considering:

     a.   claims available under both state and federal law;

    b.  the viability of those claims considering the facts underlying Defendants' role as auditors for Breitling and this Court's previous rulings; and

    c.  the success of similar claims in other securities fraud scheme cases, both in the Fifth Circuit and elsewhere.

**C.** *The Rothstein Kass Action*

10.    As this Court is aware and as described above, the Receiver commenced the litigation against Defendants in the Rothstein Kass Action on July 1, 2019.

11.    On September 3, 2019 the Defendants and Matlock filed a Motion to Dismiss the Receiver's Original Complaint in its entirety.  Rothstein Kass Action, ECF No 19.  The Receiver filed his Response to Defendants' Motion to Dismiss on September 20, 2019  [*id.*, ECF No. 22], and Defendants filed their Reply in support of their Motion to Dismiss on October 4, 2019 [*id.*, ECF No. 25].

12.    By its Memorandum Opinion and Order dated February 4, 2020 [Rothstein Kass Action, ECF No. 34], the Court granted in part and denied in part Defendants and Matlock's Motion to Dismiss, denying Defendants' and Matlock's motion with respect to the Receiver's participation in breach of fiduciary duty and negligence claims, but granting it with respect to the Receiver's other claims.  The Receiver then filed his Amended Complaint against Defendants and Matlock on April 24, 2020 [Rothstein Kass Action, ECF No. 45].  The Amended Complaint asserted claims against Defendants and Matlock for negligence and participation in breaches of fiduciary duties.

13.    Thereafter, the parties engaged in substantive discovery, producing and reviewing thousands of documents and taking 19 depositions of individuals and entities related to the Breitling entities, as well as of each party's expert witnesses.

14.     On December 8, 2020, Defendants and Matlock filed their Motion for Summary Judgment and Brief in support, asking the Court to dismiss the Receiver's remaining claims [Rothstein Kass Action, ECF Nos. 94 and 95].   On January 12, 2021, the Receiver filed his response to Defendants' and Matlock's Motion for Summary Judgment [Rothstein Kass Action, ECF No. 100].  The parties then engaged in two mediation sessions with Judge Kaplan prior to the due date for Defendants' and Matlock's Reply in Support of their Motion for Summary Judgment.

### D. *Mediation*

15.     Mediation was held with Hon. Judge Jeff Kaplan on January 20, 2021.  Prior to the mediation, Defendants provided the Receiver with Rothstein Kass's applicable insurance policy information, which revealed that Defendants had depleting or "wasting" malpractice liability policies.

16.     The parties were unable to reach an agreement at the first mediation session but agreed to participate in a second mediation session after the parties had further time to consider their positions.   As a result of the parties' good faith negotiations and with the help of Judge Kaplan, the parties were able to reach agreement during the second mediation, resulting in the Rothstein Kass Settlement.

17.     Without the efforts of the Receiver and Litigation Counsel in investigating and prosecuting these claims as part of the Receiver's overall effort to recover money for the benefit of the victims of the Breitling fraud, the settlement could never have been achieved, and the Rothstein Kass Action would have lasted months longer with an uncertain outcome and at great expense to both parties and resulting in the further depletion of the Rothstein Kass insurance policy.

18.     Since the settlement was reached, the Parties have spent considerable time and effort drafting, revising, and negotiating the form and terms of the Rothstein Kass Settlement Agreement, for which the Receiver now seeks approval.

### E. *The Rothstein Kass Settlement*

19.     The proposed Rothstein Kass Settlement is the result of over a year and a half of litigation and well in excess of a thousand hours of investigative and litigation work by the Receiver and Litigation Counsel and was negotiated and entered into as a result of arm's-length negotiation.

20.     The essential terms of the Rothstein Kass Settlement Agreement are that:

a) Upon approval of the settlement by the Court, Rothstein Kass (through its insurance carrier) will pay $7 million, which will be deposited with the Receiver as required pursuant to the Settlement Agreement;

b) The Receiver on behalf of the Receivership Estate (including the Receivership Entities), will fully release the Defendants and Matlock from all claims asserted, or which could have been asserted, in the Rothstein Kass Action;

c) The Receiver will dismiss Brian Matlock from the Rothstein Kass action with prejudice;

d) The Receiver will dismiss the Rothstein Kass Action with prejudice with each party bearing its own costs and attorneys' fees; and

e) The Court will enter the Bar Order that is the subject of the separately filed Motion to Enter Proposed Bar Order.

Copies of the Rothstein Kass Agreement, this Motion, and other supporting papers may be obtained from the Court's docket and will also be available on the website of the Receiver (www.breitlingreceivership.com).

21.     For the reasons described herein, the Rothstein Kass Settlement is fair, equitable, reasonable, and in the interests of the Receivership Estate and all those who would claim substantive rights to distribution of its assets.

22.     The Receiver and Litigation Counsel are confident that their investigation of Rothstein Kass's and Matlock's activities related to Breitling and the litigation of the claims against Rothstein Kass have been thorough.  The Receiver and Litigation Counsel are likewise confident that they have sufficient information to enter into and endorse the Rothstein Kass Settlement.  As discussed in more detail below, the Receiver and Litigation Counsel are also confident that the Rothstein Kass Settlement is fair and reasonable taking into consideration not only the merits of the claims, but also the risks, uncertainties, and expenses associated with litigation as well as the limited amounts of available insurance and its depleting nature.  Therefore, the Receiver and Litigation Counsel believe that the Rothstein Kass Settlement is in the best interests of the Breitling Receivership Estate and the Breitling investors and should be approved by the Court.

23.     All Breitling investors have been given notice of the Receivership's and the Receiver's plan of distribution which was approved by this Court on April 28, 2020 [SEC Action, ECF No. 542], and the Receiver intends to distribute the net proceeds from the Rothstein Kass Settlement to the Breitling investors pursuant to the approved plan of distribution.

### III.  REQUEST FOR APPROVAL OF THE ROTHSTEIN KASS SETTLEMENT

### A. *Legal Standards*

24.     "'[T]he district court has broad powers and wide discretion to determine the appropriate relief in an equity receivership.'" *SEC v. Kaleta*, 530 F. App'x 360, 362 (5th Cir. 2013)

(quoting *SEC v. Safety Fin. Serv.*, 674 F.2d 368, 372-73 (5th Cir. 1982)); *see also Zacarias v. Stanford Int'l Bank, Ltd.*, 945 F.3d 883 (5th Cir. 2019).  "These powers include the court's 'inherent equitable authority to issue a variety of "ancillary relief" measures in actions brought by the SEC to enforce the federal securities laws.'" *Kaleta* at 362 (quoting *SEC v. Wencke*, 622 F.2d 1363, 1369 (9th Cir. 1980)).  "[N]o federal rules prescribe a particular standard for approving settlements in the context of an equity receivership; instead, a district court has wide discretion to determine what relief is appropriate." *SEC v. Kaleta*, 2012 WL 401069, at *4 (S.D. Tex. Feb. 7, 2012) (quoting *Gordon v. Dadante*, 336 F. App'x 540, 549 (6th Cir. 2009), *aff'd*, 530 F. App'x 360 (5th Cir. 2013).  Congress enacted a "loose scheme" for federal equity receivers "on purpose" and "wished to expand the reach and power of federal equity receivers, especially in the context of consolidation." *Janvey v. Alguire*, No. 3:09-cv-00724, slip op. at 31, 34 (N.D. Tex. July 30, 2014).

25.     Moreover, "courts have consistently held that Congress intended for federal equity receivers to be utilized in situations involving federal securities laws, like the present receivership," and in such cases for the court to act as a court in equity for the benefit of defrauded investors.  *See id.* at 35 (internal quotation marks omitted); *see also* 15 U.S.C. § 80a-41(d). "Now . . . the corporations created and initially controlled by [Faulkner] are controlled by a receiver whose only object is to maximize the value of the corporations for the benefit of their investors and any creditors." *Janvey v. Alguire*, slip op. at 44 (quoting *Democratic Senatorial Campaign Comm.*, 712 F.3d 185, 191 (5th Cir. 2013) (quoting *Scholes v. Lehmann*, 56 F.3d 750, 755 (7th Cir. 1995)).

26.     The Receivership Order in the SEC Action closely reflects and furthers all of the above objectives, directing the Receiver to prosecute, defend, and compromise actions in order to maximize timely distributions to claimants.

27.     The ability to compromise claims is critical to this Receivership.  Courts have long emphasized that public policy favors settlement.  *See, e.g.*, *Lydondell Chem. Co. v. Occidental Chem. Corp.*, 608 F.3d 284, 297 n.43 (5th Cir. 2010).  That is especially true here, where the victims of the Breitling fraud scheme await recovery, further costs would come directly out of the Receivership Estate, and the Rothstein Kass Settlement would allow the Receiver to make a significant distribution.

28.     In approving Receivership settlements, this Court and other district courts in this Circuit have also looked to factors such as: (1) the value of the proposed settlement; (2) the value and merits of the receiver's potential claims; (3) the risk that litigation would dissipate the receivership assets; (4) the complexity and costs of future litigation; (5) the implications of any satisfaction of an award on other claimants; (6) the value and merits of any foreclosed parties' potential claims; and (7) other equities incident to the situation. *Kaleta*, 2012 WL 401069, at *4 (citations omitted).  The Receiver addresses each of these factors below.

**B.  *The Rothstein Kass Settlement Satisfies the Factors for Settlement Approval***

   *1)  Value of the Proposed Settlement*

29.     The $7 million payment in the Rothstein Kass Settlement is substantial given the depleting nature of the applicable insurance policies.  "A proposed settlement need not obtain the largest conceivable recovery . . . to be worthy of approval; it must simply be fair and adequate considering all the relevant circumstances." *Klein v. O'Neal, Inc.*, 705 F. Supp. 2d 632, 649 (N.D.

Tex. 2010).  In the absence of evidence otherwise, a district court may conclude that a proposed settlement amount is sufficient.  *Kaleta*, 2012 WL 401069, at *4.  Moreover, no federal rules prescribe a particular standard for approving settlements in the context of an equity receivership; instead, a district court has wide discretion to determine what relief is appropriate.  *Gordon*, 336 F. App'x at 549.  The value of the Rothstein Kass Settlement to the Receivership Estate and the Breitling victims, when taken in context, is therefore significant.

### 2)  *Value and Merits of the Receiver's Claims*

30.     The Receiver and Litigation Counsel of course believe that the claims filed against Defendants in the Rothstein Kass Action are meritorious and would be successful.  However, they are not without substantial risk and uncertainty.  Indeed, more than half of the original case was dismissed by this Court pursuant to its Memorandum Opinion and Order regarding Defendants' Motion to Dismiss.  Moreover, the Receiver's ability to collect the maximum value of a judgment from Rothstein Kass is difficult given the nature of said firm's depleting insurance policies. Indeed, if the Receiver had litigated the Rothstein Kass Action to trial, the insurance policies would have been further depleted.  As such, the Receiver considers that through this settlement he recovered a substantial amount of the available insurance proceeds that would have been available had he litigated the case to trial (i) a year earlier and (ii) without having to incur the significant expense of trial.

31.     Moreover, the case was not without risk and uncertainty.  Defendants and Matlock deny any liability to the Receiver and have vigorously disputed the validity of the remaining Receiver claims asserted in the Rothstein Kass Action.  Among others, the following issues are hotly contested and promise months of uncertain litigation:

> a.   Whether the Receiver's negligence claims expired under the relevant statute of
>       limitations;

    b.   Whether the Defendants and Matlock were in privity with the Receivership Entities, as required for a negligence claim;

    c.   Whether the Receiver could satisfy the applicable breach of duty and causation requirements for a negligence claim;

    d.   Whether Christopher Faulkner, Jeremy Wagers, and Judson "Rick" Hoover breached their fiduciary duties to the Receivership Entities;

    e.   Whether Defendants had sufficient knowledge to meet the standards for the Receiver's claims for knowing participation in breaches of fiduciary duty;

    f.   Whether Defendants knowingly participated in Faulkner, Wagers, and/or Hoover's alleged breaches of fiduciary duty;

    g.   Whether the Receiver has valid, supportable damage models; and

    h.   Most importantly, whether, even after a successful judgment in the Rothstein Kass Action (and affirmance of such judgment on appeal), the Receiver would be able to collect any more from Rothstein Kass than the Rothstein Kass Settlement already offers.

32.    For these and other reasons, but for the Rothstein Kass Settlement, the Rothstein Kass Action would be vigorously defended by Defendants and Matlock, its prosecution would be expensive and protracted, and the ultimate outcome of such litigation would be uncertain. In light of these issues, the Receiver and Litigation Counsel believe that the Rothstein Kass Settlement reflects a fair and reasonable compromise between the parties that is in the best interests of the Receivership Estate.

### 3)  *The Risk that Litigation Would Dissipate Receivership Assets*

33.    The Receiver believes that litigation against Defendants would most likely go on for at least an additional four to six months or more with no guarantee of a recovery. While Litigation Counsel have entered into a contingent fee arrangement with the Receiver to prosecute the claims, the Receiver is paid by the hour and is involved in overseeing the litigation and coordinating strategy with the overall Breitling Receivership case and other litigation. The

Rothstein Kass Settlement avoids further expense associated with the prosecution of the Rothstein Kass Action and continued monitoring and oversight of the case by the Receiver.

34.     Furthermore, as part of the fee agreement between the Receiver and Litigation Counsel, the Receiver agreed that he would fund or reimburse all expenses associated with the Rothstein Kass Action, including, *inter alia*, expert fees and out-of-pocket litigation expenses (court reporters, videographers, travel, copy expenses, etc.).  Because the case against Defendants involves claims of professional negligence, expert witness testimony as to Defendants' compliance with professional standards has been necessary, and expert witness fees to date have been substantial and such expert fees for trial preparation would have been a significant expense going forward if the Rothstein Kass Action were not settled, and could easily have run into the hundreds of thousands of dollars.  Other out-of-pocket litigation costs could have been substantial going into trial, including trial graphics, mock trial and jury consultant expenses, cost of reproduction of documents and trial exhibits, and attendance of experts at trial.  Thus, total additional out-of-pocket costs to prosecute the claims against Defendants and Matlock would have almost certainly been *at least* several hundred thousand dollars due to the complex nature of the claims, the need for expert testimony, and the voluminous nature of the records involved.

### 4)  *The Complexity and Costs of Future Litigation*

35.     The prosecution of the Rothstein Kass Action would undoubtedly be challenging and expensive, as discussed above.  As the Court is aware, the facts and legal analysis of the Breitling scheme are extraordinarily complex.  There is no question that the Rothstein Kass Action, involving claims of professional negligence, among others, tens of millions of dollars in claimed damages, and a fraud scheme operated through a complex web of interrelated companies that spanned nearly 6 years, is extraordinarily complex, and would cause the Receivership Estate to

incur substantial expense to litigate to final judgment.  As stated above, additional litigation expenses incurred to try the case could have easily reached several hundred thousand dollars.

### 5)  *The Implications of the Rothstein Kass Settlement on Other Claimants*

36.     The Receiver will distribute the net proceeds from the Rothstein Kass Settlement to the Breitling investor claimants pursuant to the Court approved plan of distribution.  Thus, the relief requested herein will further "[t]he primary purpose of the equitable receivership [which] is the marshaling of the estate's assets for the benefit of all the aggrieved investors and other creditors of the receivership entities." *SEC v. Parish*, 2010 WL 8347143, at *6 (D.S.C. Feb. 10, 2010), *modified*, 2010 WL 8347144 (D.S.C. Apr. 8, 2010) (approving settlement).

### 6)  *The Value and Merits of Any Foreclosed Parties' Potential Claims*

37.     The Receiver seeks to bar or foreclose any Breitling investor or creditor from pursuing claims (if any) against Defendants and Matlock.  The merits of this bar are discussed in the Receiver's separately filed Motion to Enter the Proposed Bar Order.

38.     Given that the Breitling investors and other interested parties have been put on notice of the Receivership and that the Receiver has either recognized the Breitling investors' claims or has notified the Breitling investors of their rights and opportunities to present claims in the Receivership, and that all Breitling investors whose claims are recognized by the Receiver will receive a distribution from the Rothstein Kass Settlement, the proposed settlement represents the best opportunity to provide funds quickly to the Breitling victims and to distribute those funds in an orderly fashion without consumption of additional expenses.  *Zacarias v. Stanford Int'l Bank, Ltd.*, 945 F.3d 883 (5th Cir. 2019).

### 7) *Other Equities Attendant to the Situation*

39.     Again, the Receiver believes that he has achieved the best settlement possible with Defendants given the circumstances surrounding Defendants' depleting insurance policy. The Receiver and Litigation Counsel believe that they struck the right balance in settling the case at this time, prior to further erosion of Defendants' insurance policy and prior to trial preparation and additional summary judgment litigation, which would have increased costs for the Receiver while at the same time decreasing the potential amount of recoverable assets from Defendants. The Receiver and Litigation Counsel therefore believe they have achieved and delivered an excellent result for the benefit of the Breitling victims.

40.     The Receiver and Litigation Counsel spent considerable time and effort to reach a settlement that is fair and equitable to the Receivership Estate and the defrauded Breitling investors. While the Receiver and Litigation Counsel firmly believe that they could prevail in their causes of action against Defendants, Defendants and Matlock vigorously deny any wrongdoing or liability, and have indicated that they believe they would successfully defend all claims against them. Defendants and Matlock also have the resources, consisting mainly of the insurance policy proceeds that are being depleted by defense costs, to defend themselves and to litigate the issues through a final trial court judgment, and appeal if necessary, which means the litigation could take years to be resolved without a settlement.

41.     The Receiver and Litigation Counsel therefore believe that the terms of the Rothstein Kass Settlement offer the highest net benefit to the Receivership Estate, in terms of maximizing Receivership assets and minimizing the expense to obtain them.

### IV. <u>REQUEST FOR APPROVAL OF THE SCHEDULING ORDER AND NOTICE</u>

42.     Pursuant to the terms of the Rothstein Kass Settlement, the Receiver asks the Court to enter the Scheduling Order in the form attached as Exhibit 2 to the Appendix to this motion, which preliminary approves the Rothstein Kass Settlement as fair and reasonable based upon the Court's review of this Motion and the Rothstein Kass Settlement Agreement, and sets deadlines for the filing of objections and responses to objections to the Rothstein Kass Settlement Agreement and the Bar Order.

43.     Likewise, as part of the Settlement, the Receiver proposes that the Notice attached as Exhibit 3 to the Appendix (the "Notice") be sent via electronic service to all counsel of record for any Person who is, at the time of Notice, a party, movant, claimant, or interested party in this action, including the plaintiffs in *Jinsun, L.L.C., et al v. Rothstein Kass & Co., PLLC*, No. CC-17-06249, in the County Court at Law No. 3, Dallas County, Texas ("*Jinsun*").  The Receiver further proposes that notice be posted on the website of the Receiver along with complete copies of this Agreement, including all exhibits.  The Receiver further proposes that the notice attached as Exhibit 4 to the Appendix be published once in the national edition of *The Wall Street Journal* and once in the Dallas Morning News.

44.     These proposed notices are reasonable and sufficient to satisfy due process and to notify interested parties wishing to file an objection to or be heard with respect to the terms of the Rothstein Kass Settlement Agreement or the Bar order of the objection deadline.

## V.  <u>CONCLUSION & PRAYER</u>

45.     The Rothstein Kass Settlement represents a substantial and important recovery for the Receivership Estate and the Breitling Investors.  The amount of the recovery, the time and costs involved in pursuing litigation against Defendants and Matlock, and the uncertain prospects

for obtaining and then recovering on a judgment against Defendants and Matlock, all weigh heavily toward approving the Rothstein Kass Settlement.

WHEREFORE, PREMISES CONSIDERED, the Receiver respectfully requests this Court:

a.   Enter the proposed Scheduling Order providing for notice of this Motion and the related Motion to Enter Proposed Bar Order;

b.   Grant this Motion;

c.   Approve the Rothstein Kass Settlement;

d.   Grant the Receiver all other relief to which he is entitled.

Dated: April 21, 2021

**THE TAYLOR LAW OFFICES, P.C.**

By: */s/ Thomas L. Taylor, III*
     Thomas L, Taylor III, Receiver
     taylor@tltaylorlaw.com
     245 West 18th Street
     Houston, Texas 77008
     (713) 626-5300
     (713) 402-6154 (Facsimile)

**CASTILLO SNYDER, P.C.**

By: /s/ Edward C. Snyder
     Edward C. Snyder
     esnyder@casnlaw.com
     Jesse R. Castillo
     jcastillo@casnlaw.com
     700 N. St. Mary's Street, Suite 1560
     San Antonio, Texas 78205
     (210) 630-4200
     (210) 630-4210 (Facsimile)

**LITIGATION COUNSEL FOR THE
RECEIVER THOMAS L. TAYLOR**

## CERTIFICATE OF CONFERENCE

I certify that the I conferred with counsel for Plaintiff Securities and Exchange Commission, who does not oppose the relief sought herein.

/s/ *Thomas L. Taylor III*
Thomas L. Taylor III

## CERTIFICATE OF SERVICE

On April 21, 2021, I electronically submitted the foregoing document with the clerk of the court of the U.S. District Court, Northern District of Texas, using the electronic case filing system of the Court. All parties who have appeared in this proceeding will be served via ECF. Investors and other interested parties will be served and given notice of the hearing on this Motion as approved by the Court.

/s/ *Edward C. Snyder*
Edward C. Snyder