IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

SECURITIES AND EXCHANGE      §
COMMISSION,                   §
                             §
              Plaintiff,      §
                             §   Civil Action No. 3:16-CV-1735-D
VS.                           §
                             §
CHRISTOPHER A. FAULKNER, et al., §
                             §
              Defendants.     §

MEMORANDUM OPINION
AND ORDER

In this equity receivership established in connection with a U.S. Securities and
Exchange Commission ("SEC") civil enforcement action, the court-appointed temporary
receiver ("Receiver") seeks preliminary approval of a $7 million settlement reached in an
ancillary lawsuit that he has brought against an accounting firm. The principal question
presented is whether, as the settlement's terms require, the court can effectively bar a lawsuit
that a group of shareholders of one of the receivership entities—the *Jinsun* Plaintiffs—seek
to continue litigating against the accounting firm. This question turns on whether the group's
claims are independent and non-derivative—meaning that they cannot be barred. Concluding
that such a bar can be imposed in this case, the court grants the Receiver's motion to approve
the proposed settlement to the extent of preliminarily approving the settlement, grants the
Receiver's request for entry of a scheduling order, grants the Receiver's motion to enter a
proposed bar order to the extent of preliminarily approving the proposed final bar order, and

denies the *Jinsun* Plaintiffs' third motion to lift stay.[1]

## I

Because this lawsuit and the related equity receivership are the subject of several opinions, the court will focus its recitation of the background facts and procedural history on what is pertinent to the motions decided here.

## A

This is an SEC civil enforcement action in which the court has established an equity receivership. Thomas L. Taylor III, the Receiver, seeks preliminary approval of a proposed $7 million settlement of an ancillary lawsuit that he has brought against Rothstein Kass P.A. d/b/a/ Rothstein Kass & Co. P.C. ("Rothstein Kass P.C."), and Rothstein Kass & Company, PLLC ("Rothstein Kass PLLC") (collectively, "Rothstein Kass," unless the context otherwise requires).[2] Rothstein Kass, an accounting firm, provided audit services to three receivership entities: Breitling Oil & Gas Company ("BOG"), Breitling Royalties Corporation ("BRC"), and Breitling Energy Corporation ("BECC") (collectively, the "Breitling Entities," unless the context otherwise requires). The Receiver also moves for entry of a scheduling order for resolving objections to the proposed settlement, and, joined by Rothstein Kass, moves for

---

[1]The *Jinsun* Plaintiffs sought and obtained leave to file their May 19, 2021 appendix under seal to comply with the terms of a protective order entered in the *Jinsun* Action. Because this memorandum opinion and order does not disclose sealed information that the court concludes should first be reviewed by counsel for possible redactions, the court is not filing it under seal.

[2]Brian Matlock is also a defendant. As a condition of the settlement, he will be dismissed with prejudice once the settlement amount is paid.

entry of a final bar order that permanently enjoins the Receiver and other categories of persons and entities from continuing or commencing claims or legal proceedings against Rothstein Kass, among others.  Pertinent to the motions now under consideration, the final bar order would prevent a group of plaintiffs—the "*Jinsun* Plaintiffs"[3]—from continuing to prosecute a lawsuit—the "*Jinsun* Action"[4]—that they have brought against Rothstein Kass[5] in a county court at law in Dallas County, Texas.

The *Jinsun* Plaintiffs urge the court to approve the proposed $7 million settlement with Rothstein Kass, but they oppose the proposed settlement to the extent it calls for adoption of a final bar order that would prevent them from prosecuting the *Jinsun* Action. And they move to lift the stay on prosecuting the *Jinsun* Action ("Stay Order"), which the court has thus far declined to rescind.

B

About two months after the court entered the Stay Order—and despite the entry of the stay—the *Jinsun* Plaintiffs on November 28, 2017 filed the *Jinsun* Action against Rothstein

---

[3]The *Jinsun* Plaintiffs are Jinsun, L.L.C., Silver Star Holdings Trust, TPH Holdings, L.L.C., Vertical Holdings, L.L.C., Steven M. Plumb, and J. Leonard Ivins.

[4]The *Jinsun* Action is *Jinsun, L.L.C. v. Rothstein Kass & Co.*, No. CC-17-06249-C, (Cnty. Ct. at Law No. 3, Dall. Cnty., Tex. filed Nov. 28, 2017).

[5]There are indications in the briefing that the parties disagree about who is the proper Rothstein Kass defendant.  *See, e.g.,* Rec'r 4-21-21 Mot. to Enter Prop. Bar Order (ECF No. 594) at 5 n.9 ("The Receiver and the *Jinsun* Plaintiffs have since argued that Rothstein Kass P.C., rather than Rothstein Kass PLLC, is the proper defendant in both suits. For ease of reference, the Receiver will refer to Rothstein Kass collectively in discussing the suits and the Rothstein Kass entities.").  This disagreement does not appear to impede the court's evaluation of the merits of the pending motions.

- 3 -

Kass in a county court at law in Dallas County, Texas.  The *Jinsun* Action is related to unqualified audit opinions about BOG, BRC, and BECC given by Rothstein Kass in 2014 in connection with a reverse merger ("Reverse Merger")[6] between and among Bering Exploration, Inc. ("Bering"), then a publicly-traded corporation, and BOG and BRC, two Faulkner-controlled private companies.  The *Jinsun* Plaintiffs are former officers, directors, and shareholders of Bering.  In the *Jinsun* Action, the *Jinsun* Plaintiffs sue in their capacities as former Bering shareholders.  *See* Rothstein Kass 4-28-21 App. (ECF No. 599) at 7 (referring to plaintiffs in introduction to ninth amended petition filed in county court at law as former "shareholders of Bering").[7]

---

[6]A reverse merger occurs when a private business merges into a publicly-traded shell company and thereby becomes, in effect, a public company.  *See* Use of Form S-8, Form 8-K, and Form 20-F by Shell Companies, 70 Fed. Reg. 42,234, 42,234 (July 21, 2005).  The transaction results in a single, publicly-traded entity that is controlled by the owners of the formerly private company.  *See id.*

[7]Additionally, in their ninth amended petition the *Jinsun* Plaintiffs state:

<u>CAPACITY IN WHICH CLAIMS ARE BROUGHT</u>

For purposes of clarity, Steven Plumb and Leonard Ivins want to make it abundantly clear that they are not pursuing claims "in connection with their actions as [former] directors and officers," of Breitling Oil & Gas Corporation, but, rather, they are pursuing their claims as former shareholders of Bering Exploration, Inc.  Plumb and Ivins' claims asserted herein have absolutely nothing to do with the fact that they were once associated with Breitling upon which this Court can take judicial notice.

Rothstein Kass 4-28-21 App. (ECF No. 599) at 6 (bold font omitted; brackets in original).

In 2012 BOG and BRC began discussions with Bering about a possible reverse merger. BOG and BRC hired Rothstein Kass to audit its books in anticipation of this transaction. In December 2013 Bering, BOG, and BRC effected the Reverse Merger through an Asset Purchase Agreement ("APA"). Bering acquired certain assets and liabilities of BOG and BRC in exchange for approximately 92.5% of Bering's issued shares. Bering was the surviving entity, and, following the Reverse Merger, it changed its name to "Breitling Energy Corporation" (i.e., "BECC"). The *Jinsun* Plaintiffs were not parties, individually, to the APA.

BOG and BRC, and, following the Reverse Merger, BECC, hired Rothstein Kass to audit financial statements prepared by the three companies. Rothstein Kass issued unqualified audit opinions in 2014.

In the *Jinsun* Action, the *Jinsun* Plaintiffs allege that Rothstein Kass knew or should have known about inconsistencies in the financial statements of BOG and BRC, both immediately before the Reverse Merger and shortly thereafter, and either failed to disclose them or intentionally concealed them. *See SEC v. Faulkner* (*Faulkner I*), 2018 WL 5279321, at \*2 (N.D. Tex. Oct. 24, 2018) (Fitzwater, J.). As of their current county-court pleading—their ninth amended petition—the *Jinsun* Plaintiffs allege that Rothstein Kass is liable to them on six counts:[8] aiding and abetting a breach of fiduciary duty and conspiracy

---

[8]These six do not include count VII, under which the *Jinsun* Plaintiffs seek to defeat the cap on punitive damages based on allegations of the commission of commercial bribery and/or aiding and abetting commercial bribery and securing the execution of documents by deception and conspiracy to execute documents by deception.

to aid and abet a breach of fiduciary duty (count I); aiding and abetting violations of the

Texas Securities Act and conspiracy to aid and abet violations of the Texas Securities Act

(count II); negligent misrepresentation (count III); common law fraud and aiding and abetting

fraud (count IV); fraud by nondisclosure (count V); and statutory fraud (count VI).[9]

In a series of rulings, this court has either clarified that the Stay Order applies to and

precludes the *Jinsun* Plaintiffs from prosecuting the *Jinsun* Action or has declined to lift the

stay so that the *Jinsun* Action can proceed.  *See Faulkner I*, 2018 WL 5279321, at *4-5

(clarifying that the Stay Order applied to the *Jinsun* Action based on language in the Stay

Order itself and the fact that the *Jinsun* Action threatened a receivership asset (i.e., the

Receiver's potential disgorgement claim against Rothstein Kass)); *SEC v. Faulkner*

(*Faulkner II*), 2019 WL 1040679, at *3-5 (N.D. Tex. Mar. 5, 2019) (Fitzwater, J.) (denying

motion of the *Jinsun* Plaintiffs to vacate *Faulkner I* based on their intention to nonsuit their

claim for equitable forfeiture and disgorgement and to clarify that two of the *Jinsun* Plaintiffs

were asserting their claims as shareholders only, not as directors or officers of Bering, after

concluding that the *Jinsun* Plaintiffs' claim for professional negligence against Rothstein

Kass was an asset of the Receiver under the two-part test articulated in *SEC v. Sharp Capital,*

*Inc.*, 315 F.3d 541, 544 (5th Cir. 2003), and that, despite the *Jinsun* Plaintiffs' attempt to

clarify the capacities in which they sued, the *Jinsun* Action fell within the plain scope of the

---

[9]The *Jinsun* Plaintiffs acknowledge in their motion to lift stay that, as soon as the court lifts the stay (assuming it does), they will dismiss their breach of fiduciary duty claim with prejudice.  *Jinsun* Ps. 4-7-21 Mot. to Lift Stay (ECF No. 587) at 12 n.1.

- 6 -

Stay Order); *SEC v. Faulkner* (*Faulkner III*), 2020 WL 584614, at *3-7 (N.D. Tex. Feb. 6, 2020) (Fitzwater, J.) (clarifying that the *Jinsun* Action was stayed under the Stay Order because the *Jinsun* Plaintiffs' fiduciary duty claim was a receivership asset and because the *Jinsun* Action impacted the potential rights or property of the receivership); and *SEC v. Faulkner*, 2020 WL 905354, at *3-4 (N.D. Tex. Feb. 25, 2020) (declining to lift or modify the Stay Order after finding, under the factors set forth in *SEC v. Wencke*, 742 F.2d 1230, 1231 (9th Cir. 1984), that the equities continued to favor maintenance of the (pre-*Jinsun* Action) *status quo*).

C

In 2019, following an investigation of the audit services that Rothstein Kass and Brian Matlock ("Matlock") (a Senior Manager, and later a Principal of Rothstein Kass) provided to BOG, BRC, and BECC, the Receiver filed suit against Rothstein Kass. In his amended complaint—filed in response to the court's ruling on Rothstein Kass's motion to dismiss—the Receiver alleges claims for negligence and participation in breaches of fiduciary duties.

Following pretrial proceedings that lasted over 18 months, and hundreds of hours of preparation by the Receiver's counsel, the Receiver and the defendants agreed to settle, subject to court approval. Under the agreement, once the settlement is approved and effective, Rothstein Kass's insurance carrier, on behalf of Rothstein Kass, will pay $7 million to the Receiver for distribution to claimants whose claims have been allowed by the Receiver. In return, defendants and Matlock will be released of all claims that have been,

- 7 -

or that could have been, asserted against them by the Receiver in this lawsuit or otherwise. In particular, under the proposed final bar order, the Receiver and other categories of persons and entities—including the *Jinsun* Plaintiffs—will be permanently enjoined from directly or indirectly continuing or commencing claims or legal proceedings against Rothstein Kass.[10]

The Receiver now moves for preliminary approval of the settlement with Rothstein

---

[10]In the Receiver's words:

> [t]he proposed Bar Order would bar, restrain, and enjoin the Receiver, the Receivership Estate, the *Jinsun* Plaintiffs, and all other persons or entities, collectively or individually, from directly, indirectly, or through a third party, instituting, reinstituting, intervening in, initiating, commencing, maintaining, continuing, filing, encouraging, soliciting, supporting, participating in, collaborating in, or otherwise prosecuting, against Rothstein Kass or any of the Rothstein Kass Released Parties, any action, lawsuit, cause of action, claim, investigation, demand, complaint, or proceeding of any nature, including but not limited to litigation, arbitration, or other proceeding, in any forum, whether individually, derivatively, on behalf of a class, as a member of a class, or in any other capacity whatsoever, that in any way relates to, is based upon, arises from, related to, or is connected with (i) the Rothstein Kass audits of BOG, BRC, and BECC; (ii) the Receivership Entities; (iii) any investment of any type with any one or more of the Receivership Entities; (iv) any one or more of Rothstein Kass's relationships with any one or more of the Receivership Entities; (v) the *Jinsun* action; (vi) Rothstein Kass's provision of services to or for the benefit or on behalf of the Receivership Entities; or (vii) all matters that were or could have been asserted in the SEC Action, the Rothstein Kass Action, the *Jinsun* Action, or any proceeding concerning the Receivership Entities pending or commenced in any forum.

Rec'r 4-21-21 Mot. to Enter Prop. Bar Order (ECF No. 594) at 10-11.

Kass,[11] for entry of a scheduling order for resolving objections to the proposed settlement, and, joined by Rothstein Kass, for entry of the proposed final bar order.[12]  The Receiver asks the court to approve the bar order for the following reasons: first, the Rothstein Kass settlement, which is contingent on entry of the bar order, would provide a $7 million payment to the receivership, benefiting all receivership claimants; second, the only currently pending claims against Rothstein Kass (the *Jinsun* Action claims) infringe on receivership assets and are derivative and not independent of the Receiver's own claims against Rothstein Kass; third, absent the Rothstein Kass settlement and bar order, there is a meaningful risk that factual or legal issues could be resolved adversely to the receivership, resulting in no recovery or a significantly lower recovery than the proposed $7 million settlement; and, fourth, continuing to litigate the Receiver's lawsuit against Rothstein Kass will result in the expenditure of receivership assets for attorney's fees, expert witness fees, and other litigation expenses and will risk eroding the remaining Rothstein Kass insurance policy proceeds to pay defense costs for the litigation.

---

[11]The Receiver entitles the motion to approve proposed settlement with Rothstein Kass and expedited request for entry of scheduling order as "unopposed."  Although the motion is not opposed by the SEC, it *is* opposed by the *Jinsun* Plaintiffs.  In a May 3, 2021 order, the court deemed it appropriate to await receipt and consideration of objections before ruling on the motion.  *See* May 3, 2021 Order at 1-2.

[12]The Receiver has also filed a motion for approval of the settlement in the underlying lawsuit brought against Rothstein Kass PLLC and others: *Taylor v. Rothstein Kass & Co.*, No. 3:19-CV-1594-D (N.D. Tex. filed July 1, 2019) (Fitzwater, J.).  By separate order filed in that case, the court is giving preliminary approval to the proposed settlement, subject to receiving and considering objections lodged under the procedure prescribed in this receivership action.

The *Jinsun* Plaintiffs partially oppose the Receiver's motions and separately move the court to lift the stay that applies to the *Jinsun* Action.[13]  They urge the court to approve the $7 million settlement, but they oppose the requested final bar order.  *See, e.g., Jinsun* Ps. 5-19-21 Reply to Rec'r Resp. to 3d Mot. to Lift Stay (ECF No. 609) at 1-2 ("As articulated in their Response to Receiver's Motion for a Bar Order, this Court should approve the $7,000,000 settlement between Receiver and Rothstein Kass; *however*, it should *deny* any request for a Bar Order for the reasons articulated in [the *Jinsun*] Plaintiffs' Response, and it should lift the Stay so that [the *Jinsun*] Plaintiffs can liquidate their direct tort claims against Rothstein Kass and have their day in court too.").  The court has heard oral argument on the motions.

II

Because the parties' motions are interrelated,[14] the court will consider and address

---

[13]The lift stay motion also requests that the court take judicial notice of the settlement between the Receiver and Rothstein Kass.  This request is granted.

[14]Several filings confirm the interrelatedness of the pending motions.  *See, e.g., Jinsun* Ps. 5-19-21 Reply to Rec'r Resp. to 3d Mot. to Lift Stay (ECF No. 609) at 1 ("The issues regarding [the *Jinsun*] Plaintiffs' Third Motion to Lift Stay and Receiver's Motion for a Bar Order are intertwined.  Therefore, [the *Jinsun*] Plaintiffs incorporate by reference their Objections and Response to Receiver's Motion for a Bar Order as set forth fully herein, which shall also constitute their Reply Brief."); *Jinsun* Ps. 5-19-21 Objs. & Resp. to Mot. to Approve Settlement (ECF No. 610) at 1 ("On this day, [the *Jinsun*] Plaintiffs filed their Response to Receiver's Motion to Enter a Bar Order and they also filed a Motion for Leave to file various confidential documents germane to these issues under seal.  [The *Jinsun*] Plaintiffs incorporate by reference those filings as set forth fully herein."); *Jinsun* Ps. 5-19-21 Consol. Objs. & Resp. (ECF No. 605) at 12 ("[The *Jinsun*] Plaintiffs file this Response to Receiver's Motion to Approve the Settlement and his Motion to Enter a Bar Order.  This Brief shall also serve as [the *Jinsun*] Plaintiffs' Reply to Receiver's Response to [the *Jinsun*]

them together.

"[T]he district court has broad powers and wide discretion to determine the appropriate relief in an equity receivership." *SEC v. Safety Fin. Serv., Inc.*, 674 F.2d 368, 372-73 (5th Cir. 1982) (citation omitted). "Receivership courts . . . may . . . exercise discretion to approve settlements of disputed claims to receivership assets, provided that the settlements are 'fair and equitable and in the best interests of the estate.'" *SEC v. Stanford Int'l Bank, Ltd.* (*Lloyds*), 927 F.3d 830, 840 (5th Cir. 2019) (quoting *Ritchie Cap. Mgmt., L.L.C. v. Kelley*, 785 F.3d 273, 278 (8th Cir. 2015)). "[N]o federal rules prescribe a particular standard for approving settlements in the context of an equity receivership; instead a district court has wide discretion to determine what relief is appropriate." *Gordon v. Dadante*, 336 Fed. Appx. 540, 549 (6th Cir. 2009). "Determining the fairness of the settlement [in an equity receivership] is left to the sound discretion of the trial court," and this court's decision will not be overturned "absent a clear showing of abuse of that discretion." *Sterling v. Stewart*, 158 F.3d 1199, 1202 (11th Cir. 1998) (citation omitted).

The district court's "discretion derives not only from the statutory grant of power [in 28 U.S.C. § 754], but also the court's equitable power to fashion appropriate remedies as 'ancillary relief' measures." *Lloyds*, 927 F.3d at 840 (quoting *SEC v. Wencke*, 622 F.2d 1363, 1369 (9th Cir. 1980)). "Courts have accordingly exercised their discretion to issue bar orders to prevent parties from initiating or continuing lawsuits that would dissipate

---

Plaintiffs' Third Motion to Lift Stay." (citations omitted)).

receivership assets or otherwise interfere with the collection and distribution of the assets." *Id.* (citation omitted); *see also Zacarias v. Stanford Int'l Bank, Ltd.*, 945 F.3d 883, 897 (5th Cir. 2019) (recognizing that court's "broad powers" in the context of an equity receivership "can include both stays of claims in other courts against the receivership and bar orders foreclosing suit against third party defendants with whom the receiver is also engaged in litigation" (footnotes omitted)).

Although "the district court has broad powers and wide discretion to determine relief in an equity receivership," *Lloyds*, 927 F.3d at 840 (quoting *Safety Fin. Serv., Inc.*, 674 F.2d at 372-73), "[n]either a receiver's nor a receivership court's power is unlimited[.]" *Id.* (citing *Whitcomb v. Chavis*, 403 U.S. 124, 161 (1971)).  There are two important limitations on the district court's power to approve a settlement and bar order in the receivership context. "Both derive from the broader principle that the receiver collects and distributes only assets of the entity in receivership."  *Id.* at 841.  First, "an equity receiver may sue *only to redress injuries to the entity in receivership.*"  *Id.* (citing *Scholes v. Lehmann*, 56 F.3d 750, 753 (7th Cir. 1995)).  Second, "the court may not exercise unbridled authority over assets belonging to third parties to which the receivership estate has no claim."  *Id*.  In sum, "the receivership court cannot reach claims that are independent and non-derivative and that do not involve assets claimed by the receivership."  *Zacarias*, 945 F.3d at 897 (citing *Lloyds*, 927 F.3d at 840); *see also Lloyds*, 927 F.3d at 843 ("[A] district court's *in rem* jurisdiction over the estate may [not] serve as a basis to permanently bar and extinguish independent, non-derivative third party claims that do not affect the *res* of the receivership estate.").

- 12 -

III

The *Jinsun* Plaintiffs urge the court to approve the $7 million settlement, but they oppose the requested bar order on several grounds. Because the principal basis for their opposition is that their claims against Rothstein Kass are independent and non-derivative and cannot be barred as a condition for approving the proposed settlement, the court will address this question before considering the other arguments that the *Jinsun* Plaintiffs rely on to oppose preliminary approval of the proposed settlement.

A

The *Jinsun* Plaintiffs maintain that the remaining claims[15] in the *Jinsun* Action are independent and non-derivative and that the Receiver has failed to prove that they belong to the receivership estate or that he has standing to bring (or actually did bring) them.[16] The court disagrees. Because the *Jinsun* Plaintiffs' remaining claims belong to Bering (now BECC),[17] a receivership entity,[18] the Receiver has standing to bring and settle these claims.

_____

[15]At oral argument, counsel for the *Jinsun* Plaintiffs conceded that their previously pleaded claims for professional negligence and for aiding and abetting breach of fiduciary duty belong to the receivership.

[16]To the extent the *Jinsun* Plaintiffs object to the *evidence* on which the Receiver relies to support his motion, the court concludes for the reasons explained below that the *Jinsun* Plaintiffs' objections do not provide a basis to deny the relief that the Receiver and Rothstein Kass seek. *See infra* § IV(B).

[17]In this discussion, the court for simplicity will refer to Bering, both before and after it was renamed BECC, as "Bering."

[18]The *Jinsun* Plaintiffs continue to argue that Bering is not a receivership entity. *See Jinsun* Ps. 5-19-21 Consol. Objs. & Resp. (ECF No. 605) at 16. The court has already rejected this argument. *See Faulkner III*, 2020 WL 584614 , at *6 ("the *Jinsun* Plaintiffs

- 13 -

1

The assets of a receivership estate include any causes of action belonging to the receivership entities. *See, e.g., Reneker v. Offill*, 2009 WL 804134, at *4 (N.D. Tex. Mar. 26, 2009) (Fitzwater, C.J.) ("In the Receivership Order, the court took exclusive jurisdiction and possession of the Receivership Assets—including any causes of action belonging to the [receivership entities.]").  To determine whether a given claim belongs to the receivership estate, it is appropriate to conduct a Fed. R. Civ. P. 12(b)(6)-type analysis, looking only at the allegations in the complaint. *See Sharp Capital*, 315 F.3d at 544.  The Fifth Circuit has set out (in *dicta*) a two-part test to determine whether a claim belongs to the receivership estate. *Id.*  If (1) the cause of action alleges only an indirect harm to the plaintiff—one that derives from harm to a receivership entity—and (2) a receivership entity could have itself raised the claim for its own direct injury, then the claim belongs to the receivership estate. *See id.* (quoting *In re Educators Grp. Health Tr.*, 25 F.3d 1281, 1284 (5th Cir. 1994)). Although the Fifth Circuit has not expressly adopted the two-part test in *Sharp Capital*, this court has relied on it before in this case and will do so again. *See Faulkner III*, 2020 WL 584614, at *3-6; *Faulkner II*, 2019 WL 1040679, at *3.

---

assert that Bering is 'not []part of the receivership.'  Bering, however, became the receivership defendant BECC.  The Receiver is entitled to pursue, and has, in fact, pursued, claims for damages both to Bering (pre-merger) and to BECC (post-merger)." (citation omitted)).

2

The court begins with the first part of the *Sharp Capital* test, considering whether the *Jinsun* Plaintiffs allege only an indirect harm that derives from harm to a receivership entity. In their opposition to the proposed bar order, the *Jinsun* Plaintiffs identify two injuries that resulted from Rothstein Kass's unqualified audits of Breitling and failure to disclose Faulkner's fraud: (1) the loss of their rescission rights, and (2) the lost value of their stock in Bering.[19]  Both of these alleged injuries are direct injuries with respect to *Bering*, a receivership entity.  To the extent the *Jinsun* Plaintiffs have also been injured, their injuries are derivative.

In their opposition brief, the *Jinsun* Plaintiffs state that they are "suing for the loss of their rescission rights."  *Jinsun* Ps. 5-19-21 Consol. Objs. & Resp. (ECF No. 605) at 17. They maintain that,

> [h]ad [they] known that, in violation of the representations and warranties set forth in Article 2.4 of the APA, they would not receive accurate financial statements, or had Rothstein Kass withdrawn as the auditor, or had Rothstein Kass disclosed the fraud set forth in its own [Summary Review Memorandum, in which Rothstein Kass documented Faulkner's fraud scam at length], [the *Jinsun*] Plaintiffs would have exercised their rescission rights, Breitling would never have become public, and [the *Jinsun*] Plaintiffs would still own their Bering shares, which would have remained uncontaminated by Faulkner's criminal

---

[19]At oral argument, counsel for the *Jinsun* Plaintiffs stated that "the damage is the loss of the value of their shares and ownership rights in Bering."  Tr. Oral Arg. 38.  Because it is unclear from this statement whether the *Jinsun* Plaintiffs also intend to pursue their "loss of rescission rights" theory, the court will address both of the alleged injuries—i.e., loss of rescission rights and loss in share value—described in the *Jinsun* Plaintiffs' briefs.

enterprise.

*Id.* at 23; *see also id.* at 24 ("'[B]ut for' Rothstein Kass' negligent misrepresentations in sponsoring materially misleading financial statements, which were riddled with fraud—[*Jinsun* Plaintiffs] lost their rescission rights and their ability to unwind the deal, which would have returned [*Jinsun* Plaintiffs] to the status *quo ante*."). It is undisputed, however, that the *Jinsun* Plaintiffs—who are suing *only in their capacities as former shareholders of Bering*—were not parties to the APA. *See* Rec'r 4-21-21 App. (ECF No. 595) at 7. As non-parties, the *Jinsun* Plaintiffs had no right at any point to rescind the APA. Only BOG, BRC, and/or Bering could have lost any alleged "rescission rights" as a result of Rothstein Kass's conduct, because only they were parties to the APA.[20] Accordingly, "because only Bering could have rescission rights related to the APA, the Receiver properly holds—and thus may settle and agree to bar—any claims against Rothstein Kass grounded in the right to rescind the APA." Rothstein Kass 6-2-21 Resp. to *Jinsun* Ps. Objs. (ECF No.

---

[20]At oral argument, counsel for the *Jinsun* Plaintiffs described several possible outcomes had Rothstein Kass disclosed Faulkner's fraud or refused to issue the unqualified audit opinion. Counsel argued that, had the fraud been disclosed, Bering's lawyer would have ensured that the transaction did not go forward; that, without an unqualified audit opinion, Breitling could not have become a publicly-traded company; and that because the *Jinsun* Plaintiffs had enough shares in the aggregate to sell the company to someone else, they could have done so or could have held on to the company and retained its value. But each of these scenarios demonstrates that *Bering* was injured as a result of Rothstein Kass's issuance of an unqualified audit opinion and failure to disclose the fraud. As Rothstein Kass points out, "only Bering's officers and directors could have controlled its entry into the Reverse Merger, continued operations, or sale to another company." Rothstein Kass 4-28-21 Br. (ECF No. 598) at 12. The *Jinsun* Plaintiffs have failed to describe any injury that they, *as shareholders*, suffered that is independent of injury to Bering.

614) at 5.  In other words, any harm to the *Jinsun* Plaintiffs caused by the alleged loss of rescission rights derives from and is dependent on harm to Bering.

To the extent the *Jinsun* Plaintiffs seek to recover "actual damages in the lost value of their shares, which are millions of dollars," Rothstein Kass 4-28-21 App. (ECF No. 599) at 33-34, the court explained in *Faulkner III* that

> an individual shareholder generally has "no separate and independent right of action for injuries suffered by the corporation which merely result in the depreciation of the value of their stock." *Wingate v. Hajdik*, 795 S.W.2d 717, 719 (Tex. 1990) (citations omitted).  Accordingly, an action for such injury must be brought by the corporation, not its individual shareholders.  *Id.*  Thus "to recover for wrongs done to the corporation, the shareholder must bring the suit derivatively in the name of the corporation so that each shareholder will be made whole if the corporation obtains compensation from the wrongdoer." *Webre v. Sneed*, 358 S.W.3d 322, 329-30 (Tex. App. 2011) (quoting *Redmon v. Griffith*, 202 S.W.3d 225, 234 (Tex. App. 2006, pet. denied)), *aff'd*, 465 S.W.3d 169 (Tex. 2015).

*Faulkner III*, 2020 WL 584614, at *6.  In other words, any claim based on the loss in value of the *Jinsun* Plaintiffs' stock is a claim that derives from harm to the receivership entity Bering.

The *Jinsun* Plaintiffs have failed to identify any harm that they have suffered independently of the harm to Bering.  Instead, the claims they allege, as shareholders of Bering, are based only on *indirect* harm.  Accordingly, the first part of the *Sharp Capital* test is satisfied.

3

The second part of the *Sharp Capital* test considers whether a receivership entity could itself have raised the claims for its own direct injury.  *See Sharp Capital*, 315 F.3d at 544.  The court concludes that the Receiver could have brought all of the remaining claims alleged in the *Jinsun* Plaintiffs' ninth amended petition on behalf of Bering, and, accordingly, that under *Sharp Capital* these claims belong to the receivership estate.

Standing in the shoes of Bering, the Receiver could have brought the negligent misrepresentation claim to recover for Bering's own direct injury.  In support of their claim, the *Jinsun* Plaintiffs allege that Rothstein Kass misrepresented and supplied false information regarding Breitling's financial condition; that the *Jinsun* Plaintiffs relied on Rothstein Kass's misrepresentations and omissions "in making the decisions to move forward with the reverse merger and their lockup agreements," Rothstein Kass 4-28-21 App. (ECF No. 599) at 24; and that "[h]ad Rothstein Kass retracted its unqualified audit opinion at any time during the relevant period in a timely manner, [the *Jinsun*] Plaintiffs could have immediately sought rescission of the lock-up agreements, and presumably avoided millions of dollars in unnecessary losses," *id*.  Bering could have asserted an identical claim based on these same injuries—i.e., the loss of rescission rights and the millions of dollars in additional losses—caused by the same alleged misconduct by the same actors.  *See, e.g., Zacarias*, 945 F.3d at 898 (citing *SEC v. DeYoung*, 850 F.3d 1172, 1176 (10th Cir. 2017)), for the proposition that claims involving "the same loss, from the same entities, related to the same conduct, and arising out of the same transactions and occurrences by the same actors" are

- 18 -

"substantially identical" and can be barred by receivership court).  In fact, in the underlying lawsuit (the *Taylor v. Rothstein Kass* action), the Receiver alleges that Rothstein Kass's negligent acts or omissions, i.e., "turn[ing] a blind eye to the red flags they encountered during Rothstein's audit and thereafter issu[ing] the unqualified audit opinion," Am. Compl. ¶ 78, *Taylor v. Rothstein Kass & Co.* No. 3:19-CV-1594-D (N.D. Tex. Apr. 24, 2020) (Fitzwater, J.), "proximately caused injury to Breitling[, defined to include BECC,] by enabling Faulkner to continue his fraud, misappropriating over $18 million from Breitling, causing these companies to suffer millions of dollars of additional losses, and causing them to incur millions of dollars of increased liabilities," *id.* ¶ 85.  Although the Receiver asserts a negligence/gross negligence theory of liability, the underlying conduct and resulting damages are the same as those alleged in the *Jinsun* Action.

Similarly, the Receiver, on behalf of Bering, could have brought the *Jinsun* Plaintiffs' fraud claims, all of which are based on Rothstein Kass's alleged misrepresentations and the resulting loss of rescission rights, and Texas Securities Act claim, which is based on the allegation that Rothstein Kass aided and abetted the violation of Tex. Rev. Civ. Stat. Ann. art. 581-33 (West 2010), committed by Breitling's officers, directors, and managers.[21]  None of these claims alleges conduct, injury, or resulting damages unique to the *Jinsun* Plaintiffs, as shareholders, that could not also serve as the basis for the same claim brought by Bering.

_____

[21]In concluding, based on the allegations in the ninth amended petition, that the Receiver could have brought the *Jinsun* Plaintiffs' Texas Securities Act claim , the court does not suggest that a claim under the Texas Securities Act would have succeeded on the merits. What matters under *Sharp Capital* is whether the Receiver could have brought the claim.

In their opposition brief and at oral argument, the *Jinsun* Plaintiffs argued that, under *Blue Bell, Inc. v. Peat, Marwick, Mitchell & Co.*, 715 S.W.2d 408 (Tex. App. 1986, writ ref'd n.r.e.), Rothstein Kass owed them "a separate and independent legal duty to make no negligent misrepresentations." *Jinsun* Ps. 5-19-21 Consol. Objs. & Resp. (ECF No. 605) at 18.[22] But no such claim is alleged in the *Jinsun* Plaintiffs' ninth amended petition. So even assuming *arguendo* that Rothstein Kass owed the *Jinsun* Plaintiffs a separate and independent duty—a question the court does not now decide—the *Jinsun* Plaintiffs still have failed to allege any injury—independent of the injury to Bering—that resulted from Rothstein Kass's alleged misrepresentations or failures to disclose. The *Jinsun* Plaintiffs plead only that they "would have exercised their rescission rights, Breitling would never have become public, and [they] would still own their Bering shares, which would have remained uncontaminated by Faulkner's criminal enterprise." *Id.* at 23. And as the court has already explained, *see supra* § III(A)(2), any loss of rescission rights is an injury only to Bering, not to its individual shareholders.

------

[22]In *McCamish, Martin, Brown & Loeffler v. F.E. Appling Interests*, 991 S.W.2d 787 (Tex. 1999), the Supreme Court of Texas "overruled by implication the portion of the *Blue Bell* opinion extending accountant liability to those parties the accountants should know would rely on their opinions." *Compass Bank v. King, Griffin & Adamson P.C.*, 2003 WL 22077721, at *4 (N.D. Tex. Sept. 5, 2003) (Godbey, J.), *aff'd,* 388 F.3d 504 (5th Cir. 2004). Although not pleaded in the *Jinsun* Plaintiffs' ninth amended petition, the *Jinsun* Plaintiffs cite evidence in their opposition brief for the proposition that "Rothstein Kass knew [the *Jinsun*] Plaintiffs were the end-users of the financial statements; and, furthermore, [the *Jinsun*] Plaintiffs testified that they were relying upon Rothstein Kass's audit opinion in effectuating the transaction." Ps. 5-19-21 Consol. Objs. & Resp. (ECF No. 605) at 21.

4

In sum, both parts of *Sharp Capital* are satisfied.  The *Jinsun* Plaintiffs' remaining causes of action allege only an indirect harm that derives from harm to Bering.  And the Receiver, standing in the shoes of Bering, could have raised all of the remaining claims for Bering's own direct injuries.  The court therefore concludes that the remaining claims belong to the receivership estate and that the Receiver has standing to bring and settle these claims.

B

Permitting the *Jinsun* Plaintiffs to proceed with their claims in the *Jinsun* Action would also interfere with assets claimed by the receivership estate.  *Cf. Zacarias*, 945 F.3d at 897 ("[T]he receivership court cannot reach claims that are independent and non-derivative and that do not involve assets claimed by the receivership." (citation omitted)).  Under similar circumstances—i.e., a third party settlement conditioned on the district court's entering bar orders enjoining "Stanford-Ponzi-scheme-related" claims against the settling defendants—the Fifth Circuit in *Zacarias* explained:

> [t]he Plaintiffs-Objectors' claims affect receivership assets because every dollar the Plaintiffs-Objectors recover from [the third-party brokers] is a dollar that the receiver cannot, frustrating the receiver's pro rata distribution to investors—a core element of its draw upon equity. . . . [The brokers] negotiated for the bar orders as preconditions of their respective settlements.  The brokers' incentives to settle are reduced—likely eliminated—if each . . . investor retains an option to pursue full recovery in individual satellite litigation.  Such resolution is no resolution.  And the costs of undermining this settlement are potentially large.  The receivership—and thus qualifying investor claimants—would be deprived of $132 million in settlement proceeds.  Continued prosecution of the

> receiver['s] suit against [the brokers] could result in the same if not greater recovery, but this is speculation. Further, any potential value of the receiver's ultimate recovery must be reduced by the costs of prolonged litigation over the same assets, not only in the receiver's own action but also in the Plaintiffs-Objectors' myriad satellite suits, into which the receivership is likely to be drawn.

*Zacarias*, 945 F.3d at 900-01.

As in *Zacarias*, the *Jinsun* Plaintiffs' claims interfere with receivership assets because, if the bar order is not entered, the receivership will be deprived of $7 million in settlement proceeds. This is not because Rothstein Kass lacks other means to fund a settlement with the Receiver. It is because, "without a Bar Order, there will be no settlement between the Receiver and Rothstein Kass." Rothstein Kass 6-2-21 Resp. to *Jinsun* Ps. Objs. (ECF No. 614) at 14. And regardless of Rothstein Kass's *ability* to pay both the Receiver's settlement amount and the amount the *Jinsun* Plaintiffs seek in the *Jinsun* Action,[23] continued litigation in both of these lawsuits will be expensive (potentially depleting funds available under Rothstein Kass's "wasting" insurance policy) and cannot guarantee that the Receiver will ever recover, for the benefit of the receivership, the $7 million he has negotiated in settlement.

## C

Accordingly, because the *Jinsun* Plaintiffs' remaining claims are derivative and not independent of the claims of Bering, and because these claims would interfere with

---

[23]The court concludes below that the proposed settlement is fair, just, and equitable, regardless of Rothstein Kass's alleged ability to pay more. *See infra* § IV(D).

receivership assets (i.e., the $7 million of settlement proceeds), the Receiver has standing to settle this lawsuit and bar the claims of the *Jinsun* Plaintiffs.  *See Zacarias*, 945 F.3d at 897.

IV

Nor do the *Jinsun* Plaintiffs' other arguments, alone or in combination, persuade the court to find in its wide discretion that the proposed settlement should not be preliminarily approved because it is not fair, just, and equitable and in the best interests of the receivership estate.

A

The *Jinsun* Plaintiffs rely on decisions of this court to argue that their claims are independent and non-derivative.

1

The *Jinsun* Plaintiffs cite *Reneker v. Offill*—which Rothstein Kass relied on when moving for summary judgment in the Receiver's lawsuit—for the proposition that the Receiver cannot assert claims for individualized losses to investors or other third parties, which the *Jinsun* Plaintiffs maintain are the claims they are asserting.  But insofar as pertinent here, *Reneker* merely stands for the general (and in this case uncontested) rule that a receiver cannot pursue the independent and non-derivative claims of investors in entities in receivership; he can only bring claims that belong to the entities for whom he is the appointed representative.  *See Reneker*, 2009 WL 804134, at *5.  The court can apply this rule of law with full force while simultaneously imposing the bar order based on the specific facts of this case—i.e., barring claims by the *Jinsun* Plaintiffs that are not independent and

non-derivative as a condition for approving the proposed settlement.

2

The *Jinsun* Plaintiffs also rely on *Reneker* in tandem with *Faulkner II*. But neither *Faulkner II* nor the two decisions in combination support the position of the *Jinsun* Plaintiffs either.

The *Jinsun* Plaintiffs are correct that, in *Faulkner II*, the court observed that the claims they brought, other than for professional negligence—i.e., for aiding and abetting a breach of fiduciary duty, aiding and abetting violations of the Texas Securities Act, negligent misrepresentation, common-law fraud and aiding and abetting fraud, fraud by non-disclosure, and statutory fraud)—did not appear to be receivership assets. *See Faulkner II*, 2019 WL 1040679, at *5. But in *Faulkner III* the court clarified that this statement in *Faulkner II* was *dicta*:

> Today's holding, which is based on the allegations in the ninth amended petition and the *Jinsun* Plaintiffs' response to Rothstein Kass's second set of interrogatories, is not inconsistent with [*Faulkner II*]. In any event, the quoted *dicta* from [*Faulkner II*] was based on briefing regarding the *professional negligence* claim, not the Fiduciary Duty Claim, and was written before the Receiver filed the *Taylor* action, in which he clearly sues Rothstein Kass for "Aiding, Abetting, or Participation in Breaches of Fiduciary Duties." *Taylor* Compl. at 29.

*Faulkner III*, 2020 WL 584614, at *5 n.7.

Accordingly, neither *Reneker*, *Faulkner II*, nor the two decisions in combination support the conclusion that the claims of the *Jinsun* Plaintiffs in the *Jinsun* Action are

- 24 -

independent and non-derivative.

3

The *Jinsun* Plaintiffs also contend that the court has already ruled in *Taylor v. Scheef & Stone, LLP*, 2020 WL 4432848 (N.D. Tex. July 31, 2020) (Fitzwater, J.)—another ancillary suit initiated in this equity receivership—that the Receiver may not bring claims against third parties for misrepresentations made to investors.  Again, *Taylor* can be harmonized with the court's conclusion that the bar order can be imposed as a condition of approving the Receiver's proposed settlement with Rothstein Kass.

In *Taylor* the Receiver sued Scheef & Stone, the Breitling Entities' primary outside counsel, alleging various claims, including for participating in Faulkner's fraudulent scheme. *Id.* at *2.  The court dismissed this claim because, *inter alia*, "[the Receiver] may only assert a fraud claim against Scheef & Stone predicated on Scheef & Stone's fraudulent conduct directed at the *Breitling Entities*—not investors or regulators."  *Id.* at *10.  In other words, because the Breitling Entities had not been injured by Scheef & Stone's allegedly fraudulent conduct, the Receiver, standing in the Breitling Entities' shoes, could not plausibly allege a fraud claim against Scheef & Stone.  In contrast, in the present case the *only* alleged injury is to a receivership entity—i.e., the *Jinsun* Plaintiffs' "los[s of] their rescission rights and their ability to unwind the deal, which would have returned the [the *Jinsun*] Plaintiffs to the status *quo ante*," *Jinsun* Ps. 5-19-21 Consol. Objs. & Resp. (ECF No. 605) at 24, and "the lost value of [the *Jinsun*] Plaintiffs' stock in Bering as a result of misrepresentations (both affirmatively in the audit opinion and by omission) made to them by Rothstein Kass," *Jinsun*

- 25 -

Ps. 6-7-21 Consol. Reply (ECF No. 617) at 10.  For the reasons explained above, *see supra* § III(A), the *Jinsun* Plaintiffs have not identified an injury that they have suffered independently of the injury to Bering (now BECC).  Accordingly, the holding and reasoning of *Taylor* are not inconsistent with today's decision.

B

1

The *Jinsun* Plaintiffs contend that the Receiver and Rothstein Kass rely on inadmissible exhibits in support of their motions.  The *Jinsun* Plaintiffs posit that the motions of the Receiver and Rothstein Kass rely on appendixes that contain unauthenticated documents that are irrelevant hearsay, and, with no authenticating declarations, that the Receiver has no evidence to meet his burden of proving that the *Jinsun* Plaintiffs' claims belong to the Receiver; that unsworn expert reports offered to prove the truth of the matter asserted are inadmissible hearsay and cannot be used as evidence; that pleadings are not competent evidence; that the appendixes of the Receiver and Rothstein Kass contain nothing more than unsworn expert reports, memoranda, and unsworn pleadings; that the authentication, relevance, and hearsay objections of the *Jinsun* Plaintiffs should be sustained; and that, because the Receiver has no evidence to prove that the *Jinsun* Plaintiffs' direct claims belong to the receivership estate, the Receiver has failed to meet his burden of proof, his motion for a bar order should be denied on this basis alone, and the *Jinsun* Plaintiffs' third motion to lift stay should be granted.

2

As a threshold issue, the court questions whether the Rules of Evidence even apply when a court considers whether to give preliminary approval to a proposed settlement of an ancillary lawsuit brought by a receiver in an equity receivership. Preliminary approval is a tentative decision that triggers implementation of the procedures for, and precedes, final approval. And even at the final approval stage, a district court has broad discretion to determine the evidence it will consider, provided its procedures are consistent with the ultimate goal of determining whether the proposed settlement is fair, adequate, and reasonable. *See Tenn. Ass'n of Health Maint. Orgs., Inc. v. Grier*, 262 F.3d 559, 567 (6th Cir. 2001) (stating in class action settlement context that district court has "discretion to limit the fairness hearing . . . so long as such limitations are consistent with the ultimate goal of determining whether the proposed settlement is fair, adequate and reasonable"); *Int'l Union, United Auto., Aerospace, & Agr. Implement Workers of Am. v. Gen. Motors Corp.*, 497 F.3d 615, 636-37 (6th Cir. 2007) (stating in class action settlement context that "[o]ur court, and several others, have . . . deferred to the district court's traditionally broad discretion over the evidence it considers when reviewing a proposed class action settlement."). And in some respects, the Rules of Evidence clearly do not apply. For example, when determining under the *Sharp Capital* test whether a given claim belongs to the receivership estate, it is appropriate to conduct a Rule 12(b)(6)-type analysis, looking only at the allegations in the complaint. *See Sharp Capital*, 315 F.3d at 544. The Rules of Evidence do not govern this type of inquiry.

Despite the questionable application of the Rules of Evidence at the preliminary approval stage (if not at the final approval stage, as well), the court need not resolve this issue.  As the court will explain next, for several reasons, the *Jinsun* Plaintiffs' objections fail to provide a basis to deny the relief that the Receiver and Rothstein Kass seek.

3

First, the Receiver and Rothstein Kass do not need several of the challenged documents to establish that the *Jinsun* Plaintiffs' claims against Rothstein Kass are derivative and not independent.  Consequently, the court has not relied on them, and the objections are moot to the extent made to such documents.

Second, the *Jinsun* Plaintiffs' briefs do not specify the documents to which they are objecting—other than, apparently, by challenging *each and every* document in the appendixes of the Receiver and Rothstein Kass.  *See Jinsun* Ps. 5-19-21 Consol. Objs. & Resp. (ECF No. 605) at 13 (objecting to appendixes of the Receiver and Rothstein Kass as containing "nothing other than unsworn expert reports, memoranda, and unsworn pleadings"); *Jinsun* Ps. 6-7-21 Consol. Reply (ECF No. 617) at 5-6 (arguing that the Receiver has no admissible evidence to prove standing).  But some documents in the appendixes of the Receiver and Rothstein Kass are unquestionably the *Jinsun* Plaintiffs' *own* documents.  *See* Rec'r 6-2-21 Resp. to *Jinsun* Ps. Objs. (ECF No. 616) at 3 ("surely the Objectors do not sincerely object to the authenticity or reliability of their own documents").  This means that the court can rely on these particular items of evidence without being concerned that they have not been properly authenticated.  *See* Fed. R. Evid. 901(a) ("To

- 28 -

satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is.").

Third, the challenged documents are not excludable as hearsay because they are not offered for the truth of the matter of asserted.  *See* Fed. R. Evid. 801(c) ("'Hearsay' means a statement that: (1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement.").  The Receiver acknowledges that "[t]he expert reports, pleadings, and memoranda included as exhibits are not offered for the truth of the matters asserted therein.  Rather, these documents demonstrate the *claims* and *allegations* made by the Objectors themselves."  Rec'r 6-2-21 Resp. to *Jinsun* Ps. Objs. (ECF No. 616) at 2-3.  So to the extent the court is relying on any document to which the *Jinsun* Plaintiffs make a hearsay objection, it has not done so for the truth of what the document asserts but to determine the claims and allegations made by the *Jinsun* Plaintiffs.

## C

The *Jinsun* Plaintiffs advance three estoppel arguments.  They contend that the Receiver is estopped from asserting that he owns the *Jinsun* Plaintiffs' claims because the *Jinsun* Plaintiffs are not beneficiaries of the proposed settlement; that Rothstein Kass is estopped from claiming that the *Jinsun* Plaintiffs do not have direct claims against Rothstein Kass; and that the Receiver accepted the benefits of the *Jinsun* Plaintiffs' prosecution of Rothstein Kass and should be estopped as a result.

1

The court notes at the outset that the *Jinsun* Plaintiffs make no effort to demonstrate that estoppel concepts apply in any respect when determining whether to approve a settlement of ancillary litigation in an equity receivership. The controlling standard is whether the settlement is fair, just, and equitable and in the best interests of the receivership estate, a standard that the court applies in its wide discretion. So to the extent the arguments that the *Jinsun* Plaintiffs raise are at all pertinent, their relevance is to the question whether one or more of the estoppel grounds establish that the proposed settlement fails to satisfy the standard that the settlement be fair, just, and equitable and in the best interests of the receivership estate rather than to the question whether the Receiver or Rothstein Kass is in some respect "estopped."

2

The *Jinsun* Plaintiffs' first estoppel-based contention is that, if the Receiver had brought and settled the *Jinsun* Plaintiffs' claims, they would be entitled to their *pro rata* portion of the settlement, but that the Receiver has admitted in his own public filings that the *Jinsun* Plaintiffs are not beneficiaries of any proposed settlement and will receive nothing. The *Jinsun* Plaintiffs posit that "[t]he fact that [the *Jinsun*] Plaintiffs are entitled to no *pro rata* distribution of any settlement funds is irreconcilable with the argument that Receiver brought, settled, and, therefore, has the right to release [the *Jinsun*] Plaintiffs' direct claims." *Jinsun* Ps. 5-19-21 Consol. Objs. & Resp. (ECF No. 605) at 25. This argument is misplaced because the *Jinsun* Plaintiffs' ineligibility to receive a *pro rata* distribution from the

Rothstein Kass settlement is due to their failure to participate in the court-ordered claim process.

To the extent the *Jinsun* Plaintiffs suggest they were unaware of the procedures for filing a claim in the receivership or did not receive proper notice, *see id.* ("Receiver suggests that [the *Jinsun*] Plaintiffs could have made a claim by filling out a 'form' on a website somewhere[.]"), the Receiver has amply refuted this premise in his response to the *Jinsun* Plaintiffs' objections. As the Receiver points out, the *Jinsun* Plaintiffs received notice in several ways, including through the court's CM/ECF electronic notice system; they received ECF notice of, and submitted, multiple filings in this case, of which the Receiver has provided several examples in his brief; the court approved additional procedures through which the Receiver could provide sufficient notice of the proposed Plan of Distribution ("Plan") to potential claimants so that they could oppose the Plan; the Plan was published in the legal sections of *The Dallas Morning News* and the *Wall Street Journal*, and on the receivership website; the Plan was opposed by approximately 10 objectors and litigated before the court, and all of these objections and the Receiver's response were electronically filed in the case docket and noticed to all counsel of record (including counsel for the *Jinsun* Plaintiffs) by CM/ECF email notice; after a May 6, 2020 hearing on the matter was canceled due to the COVID-19 global pandemic, the court allowed additional submissions, responses, and replies, all of which were electronically filed in the case docket and noticed to all counsel of record (including counsel for the *Jinsun* Plaintiffs); and the court entered its order approving the Plan and implementing the Plan in April and May 2020, respectively,

the order approving the Plan explicitly included shareholder investors with a "net out-of-pocket loss" in the Plan, and the order implementing the Plan provided instructions to such potential shareholder investors for how to properly submit a claim to the Receivership, and a claim bar date, and counsel for the *Jinsun* Plaintiffs received CM/ECF email notice of each of these orders.

The court therefore agrees with the Receiver that the *Jinsun* Plaintiffs' assertion that the court-approved Plan and claims confirmation process "ha[d] never been mentioned to them" is belied by the numerous CM/ECF email notices generated in the case and received by their counsel.  Rec'r 6-2-21 Resp. to *Jinsun* Ps. Objs. (ECF No. 616) at 14.  The court finds instead that, in the Receiver's words, the *Jinsun* Plaintiffs "had ample notice of the Plan and the opportunity to object to or otherwise participate in the Plan and claims process, but apparently chose not to participate or to file any claims with the Receiver."  *Id.*  The court therefore concludes that the *Jinsun* Plaintiffs' "decision not to participate in the Receiver's claims and distribution process cannot serve as the basis to derail this settlement."  *Id.*  Stated in terms of the controlling standard, the *Jinsun* Plaintiffs have failed to show on the basis of their first estoppel ground that the proposed settlement is not fair, just, and equitable and in the best interests of the receivership estate.

3

The *Jinsun* Plaintiffs argue, second, that Rothstein Kass is estopped from claiming that the *Jinsun* Plaintiffs do not have direct claims against it given its reliance on this court's *Reneker* decision when moving for summary judgment in the Receiver's suit.  The *Jinsun*

Plaintiffs maintain that Rothstein Kass correctly stated in its motion that the Receiver could not bring claims on behalf of investors who lost money in the receivership entities; that in this case the *Jinsun* Plaintiffs are not even investors suing for losses in a receivership entity because Bering is not a receivership entity[24]; and that Rothstein Kass is estopped from now taking the very opposite position, which is to assert that the *Jinsun* Plaintiffs' direct claims are allegedly owned by the Receiver.  The court rejects the *Jinsun* Plaintiffs' reliance on this estoppel argument.

First, although Rothstein Kass has joined the Receiver's motion to enter the final bar order, the *Jinsun* Plaintiffs are effectively relying on the asserted position of a third party to defeat *the Receiver's* motion—a motion that the Receiver maintains must be granted in order to achieve a settlement that benefits the receivership estate and claimants.  The *Jinsun* Plaintiffs' contention is essentially this: because Rothstein Kass took a particular position in the Receiver's lawsuit against it, Rothstein Kass is precluded from taking a different position now, and because *Rothstein Kass* cannot now take a different position, the *Receiver's* motion to enter a final bar order must be denied.  If the court accepts the *Jinsun* Plaintiffs' argument and implements it as intended, it will deprive the victims in this case who are entitled to recover under the Plan of their *pro rata* distribution of the Rothstein Kass settlement proceeds.  And it will do so based on a position that was taken in another lawsuit—not by the Receiver—but by Rothstein Kass.

_____

[24]Insofar as the *Jinsun* Plaintiffs continue to maintain that Bering is not a receivership entity, the court rejects this argument for the reasons explained above.  *See supra* note 18.

Second, as the court has already explained, the holding from *Reneker* that the *Jinsun* Plaintiffs cite can be harmonized with the decision to impose the bar order as a condition of the Receiver's settlement with Rothstein Kass. *Reneker* holds, in pertinent part, that a receiver cannot pursue damages incurred solely by investors in a receivership entity as opposed to damages to the receivership entity itself. *See Reneker*, 2009 WL 804134, at *5. Reneker does not address whether shareholders in a particular receivership entity have independent and non-derivative claims against a particular third party. That is a decision that the court must make based on the circumstances presented. And in the present case, as explained in § III(A), the *Jinsun* Plaintiffs' claims are derivative and not independent.

Third, regardless of the first two deficiencies that the court has already identified, the *Jinsun* Plaintiffs have failed to show more generally on the basis of their second estoppel ground that the proposed settlement is not fair, just, and equitable and in the best interests of the receivership estate.

4

Finally, the *Jinsun* Plaintiffs maintain that the Receiver should be estopped because he accepted the benefits of the *Jinsun* Plaintiffs' prosecution of Rothstein Kass. The *Jinsun* Plaintiffs argue that, "[b]ecause Receiver benefi[t]ed from [their] prosecution of Rothstein Kass, and because [the *Jinsun*] Plaintiffs shall receive nothing, Receiver is estopped from using [the *Jinsun*] Plaintiffs' claims, which he does not own, as a negotiating tool to artificially inflate the true value of Receiver's claims." *Jinsun* Ps. 5-19-21 Consol. Objs. & Resp. (ECF No. 605) at 30. The court disagrees.

As the court has already explained, if the *Jinsun* Plaintiffs receive nothing under the settlement, it is because they did not file any claims with the Receiver or otherwise participate in the Plan and claims process, despite ample notice. So the premise of their argument that the Receiver benefits while they receive nothing is flawed from the outset. And even if the Receiver did benefit to some extent from the litigation efforts of the *Jinsun* Plaintiffs, this conservation of resources benefited the receivership estate by making more funds available for distribution to claimants who are entitled to recover under the Plan.

The *Jinsun* Plaintiffs have therefore failed to show on the basis of their third estoppel ground that the proposed settlement is not fair, just, and equitable and in the best interests of the receivership estate.

### D

The *Jinsun* Plaintiffs oppose the proposed settlement and bar order on the ground that Rothstein Kass has insurance, cash, and indemnity reserves that substantially exceed the $7 million proposed settlement with the Receiver and the *Jinsun* Plaintiffs' settlement demand of $11,150,000, which could be used to settle the Receiver's claims and compensate the *Jinsun* Plaintiffs without posing a threat to receivership assets. The question reduces to whether the proposed settlement is fair, just, and equitable and in the best interests of the receivership estate if it results in a $7 million payment from Rothstein Kass's insurer but simultaneously bars the *Jinsun* Plaintiffs from pursuing their lawsuit against Rothstein

Kass.[25]

The decision to settle takes into account far more than considering whether a defendant can pay more. While it is not uncommon for lawsuits to settle for policy limits, it is an oversimplification to say that a suit has settled for too meager a sum merely because the defendant has available insurance coverage, cash, and indemnity reserves that would enable it to pay more. That conclusion ignores such basic considerations as whether liability is in doubt or the amount of recoverable damages is genuinely disputed.

In this case, the court is preliminarily persuaded that the proposed settlement is fair, just, and equitable and in the best interests of the receivership estate. The Receiver's motion goes into great detail in explaining why the proposed settlement should be approved. *See* Rec'r 4-21-21 Mot. to Approve Prop. Settlement (ECF No. 591) at 13-20. "In the absence of any evidence that a proposed settlement is of insufficient value, a district court may conclude that a proposed settlement amount is sufficient." *SEC v. Kaleta*, 2012 WL 401069, at *4 (S.D. Tex. Feb. 7, 2012) (citing *Gordon*, 336 Fed Appx. at 548), *aff'd*, 530 Fed. Appx. 360 (5th Cir. 2013). Were the proposed settlement amount itself challenged, the court would

---

[25]The court rejects the assertions of the Receiver and Rothstein Kass that the question whether Rothstein Kass has available insurance coverage or assets to fund the settlement and settle with the *Jinsun* Plaintiffs is "irrelevant." Rothstein Kass's ability to pay more may not (indeed, it does not) persuade the court in its wide discretion to reject the proposed settlement. But whether Rothstein Kass can pay more is relevant when deciding whether the proposed settlement is fair, just, and equitable and in the best interests of the receivership estate. Moreover, the record contains assertions by the Receiver and Rothstein Kass that particular conduct places at risk receivership assets and insurance proceeds. *See Jinsun* Ps. 6-7-21 Consol. Reply (ECF No. 617) at 11-12 (citing submissions of the Receiver and Rothstein Kass).

go into greater detail in explaining why preliminary approval is warranted.  But as the court has noted several times, the *Jinsun* Plaintiffs do not challenge the approval of the $7 million settlement.  Their objection is to the bar order.

But the bar order is a *sine qua non* of the settlement, because "without a Bar Order, there will be no settlement between the Receiver and Rothstein Kass."  Rothstein Kass 6-2-21 Resp. to *Jinsun* Ps. Objs. (ECF No. 614) at 14.  This is not unusual.  As the Fifth Circuit explained in *Zacarias*, "[the brokers] negotiated for the bar orders as preconditions of their respective settlements.  The brokers' incentives to settle are reduced—likely eliminated— if each . . . investor retains an option to pursue full recovery in individual satellite litigation. Such resolution is no resolution."  *Zacarias*, 945 F.3d at 900.

The court thus declines to withhold its preliminary approval of the proposed settlement based on the assertion that Rothstein Kass still has available insurance, cash, and indemnity reserves to settle with the Receiver and also pay the *Jinsun* Plaintiffs' settlement demand.

E

The *Jinsun* Plaintiffs object to a bar order on the ground that Rothstein Kass has valued their claims at zero.  They maintain that there is no reason to bar their claims if the settling parties believe the claims are worthless.

The court finds this argument to be flawed at several levels, but at least for the following reasons: without a bar order, there will be no settlement; and even if one side places no value on a claim, that does not prevent the other side (who thinks the claim has

considerable value) from pursuing litigation that can produce significant defense costs.

F

Finally, in response to the assertion that the bar order is needed because the Receiver's lawsuit against Rothstein Kass will not settle without that restriction, the *Jinsun* Plaintiffs maintain that Rothstein Kass is implying that the bar order should be entered "for the sake of the greater good." *Jinsun* Ps. 6-7-21 Consol. Reply (ECF No. 617) at 10. The *Jinsun* Plaintiffs cite the Fifth Circuit's recent decision in *Lloyds* for the proposition that reliance on the sake of the greater good cannot overcome a district court's or receiver's lack of authority to dispossess claimants of their legal rights to share in receivership assets. *See Lloyds*, 927 F.3d at 846.

The court doubts that Rothstein Kass is actually attempting to imply that the proposed settlement should be approved despite an absence of authority. The extensive briefing reflects Rothstein Kass's consistent position that the claims of the *Jinsun* Plaintiffs are derivative and not independent; Rothstein Kass does not maintain that, although the claims are non-derivative and independent, the court can extinguish them anyway for the sake of the greater good. And even if Rothstein Kass were seeking to take this position, the court is not adopting it. *See supra* § III(A) (holding that the *Jinsun* Plaintiffs' claims are derivative and not independent and therefore can be barred). Instead, the court is fully adhering to the requirements that "an equity receiver may sue *only to redress injuries to the entity in receivership*," *Lloyds*, 927 F.3d at 841 (citing *Scholes*, 56 F.3d at 753), and that "the court may not exercise unbridled authority over assets belonging to third parties to which the

- 38 -

receivership estate has no claim." *Id.*

## V

Accordingly, the court preliminarily finds that the final bar order is fair, just, and equitable, and in the best interests of the receivership estate. The court grants the Receiver's motion (joined by Rothstein Kass) to enter proposed bar order to the extent of preliminarily approving the proposed final bar order.

## VI

The court now considers whether the proposed settlement as a whole should be preliminarily approved.

It is apparent from the *Jinsun* Plaintiffs' briefing—and their counsel confirmed at oral argument—that their sole substantive objection to the proposed settlement is to the inclusion of the final bar order. *See, e.g., Jinsun* Ps. 5-19-21 Consol. Objs. & Resp. (ECF No. 605) at 6 (the *Jinsun* Plaintiffs "have no objection to Receiver and Rothstein Kass settling their dispute for $7,000,000; however, [the *Jinsun*] Plaintiffs forcefully object to a condition of the settlement, which would bar [the *Jinsun*] Plaintiffs' claims."); *id.* at 8 ("For these reasons, [the *Jinsun*] Plaintiffs have no objection to Receiver and Rothstein Kass' $7,000,000 settlement; however, it should *strike* the Bar Order language contained in that proposed settlement, it should deny Receiver's Motion for a Bar Order, and it should grant [the *Jinsun*] Plaintiffs' Third Motion to Lift the Stay so that [the *Jinsun*] Plaintiffs can have their day in court too."). Indeed, their counsel confirmed at oral argument that the *Jinsun* Plaintiffs would not object to the proposed settlement, *even if it included a bar order that applied to*

- 39 -

*everyone else*, provided the bar order did not apply to them.  Because the court has already determined that the final bar order is fair, just, and equitable and in the best interests of the receivership estate, and no challenge (apart from to the bar order) has been made to approving the proposed settlement, the court, in turn, finds that the proposed settlement as a whole is fair, just, and equitable and in the best interests of the receivership estate.  *See Kaleta*, 2012 WL 401069, at *4 ("In the absence of any evidence that a proposed settlement is of insufficient value, a district court may conclude that a proposed settlement amount is sufficient.").

The court therefore grants the Receiver's motion to approve the proposed settlement to the extent of preliminarily approving the proposed settlement, and it grants the Receiver's request for entry of a scheduling order.

## VII

In view of the court's preliminary approval of the final bar order, the court denies the *Jinsun* Plaintiffs' third motion to lift stay.  The court concludes that the stay should remain in place while the court considers whether to give final approval to the proposed settlement.

## VIII

Within 14 days of the date this memorandum opinion and order is filed, the Receiver must submit for court approval proposed (and, if necessary, revised[26]) versions of (1) the

---

[26]The original proposed order and notices were submitted on the assumption that they would be entered shortly after filing.  Because the court has followed an alternate procedure, the Receiver may deem it necessary or advisable to propose revised versions of the order and notices.

scheduling order, (2) the Receiver's notice of settlement, scheduling order, and bar order, and (3) the publication notice.[27]  The court will direct the Receiver to submit a proposed final bar order if it later gives final approval to such an order.

                              *    *    *

        Accordingly, the court the grants the Receiver's motion to approve the proposed settlement to the extent of preliminarily approving the proposed settlement; grants the Receiver's request for entry of a scheduling order; grants the Receiver's motion (joined by Rothstein Kass) to enter a proposed bar order to the extent of preliminarily approving the proposed final bar order; and denies the *Jinsun* Plaintiffs' third motion to lift stay.  The court will enter a scheduling order and, if any timely, written objections are filed, will decide whether to hold a final fairness hearing on the proposed settlement and final bar order.

        **SO ORDERED**.

        September 2, 2021.


                                        _____
                                        SIDNEY A. FITZWATER
                                        SENIOR JUDGE

---

[27]The submitted documents should be in modifiable Word or WordPerfect format.

- 41 -