IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | § § § § | |
| Plaintiff, | § § | |
| vs. | § § | Civil Action No. 3:16-CV-1735-D |
| CHRISTOPHER A. FAULKNER, et al., | § § § | |
| Defendants. | § | |

## MOTION FOR LEAVE TO DISALLOW CLAIMS
## OF CERTAIN CLAIMANTS THAT CANNOT BE LOCATED

Thomas L. Taylor III (the "Receiver"), Court-appointed temporary receiver in the above-styled enforcement action[1], respectfully moves the Court for authorization to disallow the claims of certain Potential Claimants[2] which the Receiver has been unable to locate (the "Unreachable Claimants," as further defined at **Exhibit A** attached hereto). Disallowing the claims of the Unreachable Claimants would serve to increase the *pro rata* share of net losses claimed against the Receivership Estate by the remaining, identified claimants through the Court-approved Plan of Distribution. *See* Memorandum Opinion and Order, ECF No. 541 ("Order Approving Plan"), at 3 ("Plan").[3] In this regard, most Potential Claimants would receive several thousand dollars more in total distributions.

---

[1] *See, e.g.*, Third Amended Order Appointing Receiver, ECF No. 496 ("Order Appointing Receiver"), at ¶2.

[2] Order Implementing Plan of Distribution, ECF No. 542 ("Order Implementing Plan"), at 2 (defined as "(1) all parties that the Receiver identifies from Receivership-related records as potentially having a claim; (2) all parties who identified themselves to the Receiver in writing as potentially having a claim prior to entry of this Order; and (3) all parties who identify themselves to the Receiver as potentially having a claim on or before [the Claim Bar Date].") (footnotes omitted).

[3] All capitalized terms not defined herein have the meaning given to them in the Order Approving Plan.

**MOTION FOR LEAVE TO DISALLOW CLAIMS**
**OF CERTAIN CLAIMANTS THAT CANNOT BE LOCATED**

I. **SUMMARY**

This Court previously approved the Receiver's "Claims Confirmation Process" through which the Receiver would calculate a notional claim amount -- and ultimately determine a "Final Claim Amount" -- for each Potential Claimant participating in the Plan.[4] Order Approving Plan, at 6. The Potential Claimants for whom the Receiver calculated notional claim amounts fell into two primary categories: (1) Potential Claimants who identified themselves to the Receiver prior to the Claim Bar Date[5] pursuant to the Order Implementing Plan, and (2) Potential Claimants who were identified solely from Receivership-related records by the Receiver's staff and accounting professionals at Pannell Kerr Forster of Texas P.C. ("PKF Texas"). *See*, *e.g.*, Certificate of Service of Notice of Plan, ECF No. 440 ("Certificate of Service"), at ¶3.

The Receiver attempted in several ways to locate and contact in writing those Potential Claimants who did not identify themselves to the Receiver (in addition to publishing notice of the Receiver's proposed Plan in The Dallas Morning News and the national edition of the Wall Street Journal). *First*, the Receiver served his Notice of Plan [ECF No. 406-1] by U.S. First Class Mail to these Potential Claimants' last known addresses pursuant to FED. R. CIV. P. 5(b)(2)(C). ECF No. 440 at ¶4. *Second*, to the extent that previous mailings were not returned by the U.S. Postal Service ("USPS") without a forwarding address, the Receiver mailed notices of notional claims to Potential Claimants' last known addresses. *Third*, to the extent that the previous mailings were not returned by the USPS without a forwarding address, the Receiver mailed interim distribution checks to Potential Claimants' last known addresses. When these mailings were returned to the Receiver

---

[4] In approving the Plan, the Court found that all Potential Claimants -- including the Unreachable Claimants -- had received notice of the Receiver's Motion to Approve Proposed Plan of Distribution and to Establish Procedures to Determine and Disallow Final Claims, ECF Nos. 406, 407 ("Motion to Approve Plan"), whether by publication or pursuant to FED. R. CIV. P. 5(b)(2)(C), and had an opportunity to be heard with respect to the Plan. Order Approving Plan, at 4 – 5.

[5] The Claim Bar Date was Friday, October 30, 2020. Order Implementing Plan, at 2.

without a forwarding address[6], the Receiver's staff searched their previous correspondence and Receivership-related records, and in some cases conducted internet searches, in efforts to locate accurate contact information for the claimants. The Receiver also engaged Easy-Serve, LLC ("Easy-Serve") to conduct "skip traces" to identify contact information related to certain Potential Claimants with claims exceeding $100,000 and for whom the Receiver had record of a previous address.

Notwithstanding these efforts, the Receiver was unable to locate approximately 159 Potential Claimants due to missing or bad addresses, whose claims total approximately $9,000,000. Additionally, the Receiver mailed interim distribution checks totaling approximately $1,550,000 to approximately 125 Potential Claimants (representing claims of approximately $18,500,000) which checks have neither been returned by the USPS nor negotiated by the recipient as of the filing of this Motion.[7] The Receiver's staff undertook similar efforts to identify claimants who failed to negotiate their interim distributions checks as with those whose mail was returned without a forwarding address.

Because these Unreachable Claimants have received notice of the Receivership, the Receiver's Plan, the Claims Confirmation Process and the Claim Bar Date and have not identified themselves to the Receiver -- and the Receiver's efforts to locate them have been unsuccessful -- the Receiver now moves for leave to disallow these claims.

---

[6] If mail returned by the USPS contained a forwarding address, the item was mailed again to that address.

[7] Of these Potential Claimants, approximately 25 checks totaling approximately $215,000 have been reissued to forwarding addresses and are outstanding. To the extent these recipients negotiate their reissued interim distribution checks in a reasonable time period following the submission of this Motion, the Receiver would not disallow those claims.

## II.  ARGUMENT AND AUTHORITY

In approving and implementing the Receiver's Plan and Claims Confirmation Process, the Court held that "the estates of the Receivership Entities shall be forever discharged from any indebtedness or liability to any and all parties that are not Potential Claimants," including any party that did not contact the Receiver in writing and identify itself to the Receiver before the Claim Bar Date of October 30, 2020. Order Implementing Plan, at 2. The Receiver requests that the Court now, upon the same authority, authorize the Receiver -- in his sole discretion[8] -- to disallow the claims of the Potential Claimants who are Unreachable Claimants.

In this regard, with respect to its approval of the Plan and the Claims Confirmation Process, the Court "employ[ed] summary rather than plenary proceedings to adjudicate the rights to property allegedly within the receivership estate. Such summary proceedings related to [the] receivership[ did] not offend the parties' due process rights '[because] there [was] adequate notice and opportunity to be heard.'"[9] The Court's use of such summary proceedings "promote[d] judicial efficiency and reduce[d] litigation costs to the receivership, thereby preserving receivership assets

---

[8] The Receiver requests the Court grant him discretion to allow or disallow the claims of the Unreachable Claimants because it remains possible that an Unreachable Claimant could identify itself to the Receiver in a time frame in which including them in the Plan would not disrupt the implementation of the final distribution of Receivership Assets at the close of the Receivership.

[9] *SEC v. Amerifirst Funding, Inc.*, No. 3:07-cv-1188-D, 2008 WL 282275, at *15 (N.D. Tex. Feb. 1, 2008), *aff'd in part, vacated in part, on other grounds, remanded sub nom. Whitcraft v. Brown*, 570 F.3d 268 (5th Cir. 2009) (quoting *SEC v. Am. Capital Investments, Inc.*, 98 F.3d 1133, 1146 (9th Cir. 1996), *abrogated by Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 118 S. Ct. 1003, 140 L. Ed. 2d 210 (1998)) (citing *SEC v. Wencke*, 783 F.2d 829, 838 (9th Cir. 1986); *SEC v. Universal Fin.*, 760 F.2d 1034, 1037 (9th Cir. 1985)) (footnote omitted).

*See also SEC v. Elliott*, 953 F.2d 1560, 1567 (11th Cir. 1992) ("[A] district court does not generally abuse its discretion if its summary procedures permit parties to present evidence when the facts are in dispute and to make arguments regarding those facts."); *McFarland v. Winnebago South, Inc.*, 863 F. Supp. 1025, 1034 (W.D. Mo. 1994) ("[T]he receivership court has the power to use summary procedures in allowing, disallowing, and subordinating claims of creditors, so long as creditors have fair notice and a reasonable opportunity to respond."); *FDIC v. Bernstein*, 786 F. Supp. 170, 177 (E.D.N.Y. Jan. 10, 1992) ("A district court has extremely broad discretion in supervising an equity receivership and in determining the appropriate procedures to be used in its administration."); 13 Moore's Federal Practice (3d ed.) § 66.06[4][b] ("The powers of the courts include the allowance, disallowance, and subordination of the claims of creditors.").

for the benefit of [claimants]." *Bernstein*, 786 F. Supp. at 177 (internal citations omitted). In employing summary procedures, "the rights of creditors of [the] receivership [were] balanced against the need for expeditious administration of the receivership." *SEC v. Hardy*, 803 F.2d 1034, 1039 (9th Cir. 1986).

All Unreachable Claimants were given notice of the Motion to Approve Plan and the Claims Confirmation Process, and had the opportunity to (i) object to that relief or (ii) identify themselves to the Receiver and provide him with accurate, current contact information in order to participate in the Claims Confirmation Process. Order Implementing Plan, at 1 (holding that "sufficient notice of the Plan … [was] given by the Receiver" to all potentially affected parties) (citing Order Approving Plan). In this regard, the Receiver served the Motion to Approve Plan "on all counsel of record and *pro se* parties in the Enforcement Action," Motion to Approve Plan, at 28, and:

> compiled a list of 1,369 entities and individuals potentially affected by the Plan. Of this number, the Receiver was able to obtain addresses for 1,150, and the Notice of Plan [ECF No. 406-1] was served on those individuals and entities. As prescribed by the court, notices were also published in *The Dallas Morning News* and the national edition of *The Wall Street Journal*. The Receiver filed his Proof of Service on June 5, 2019, and objections were due by June 26, 2019.

Order Approving Plan, at 4 – 5 (footnote omitted); *see also* Certificate of Service, at ¶¶4, 6, 7.[10] Because the Unreachable Claimants were given notice and an opportunity to participate in the Plan, granting the Receiver leave to disallow their claims now would not violate their due process rights under the U.S. Constitution.

---

[10] Further, the Order Approving Plan and the Order Implementing Plan were posted on the Receivership website shortly after they were entered. Declaration of Andrew M. Goforth, **Exhibit B** attached hereto (hereinafter the "Goforth Decl."), at ¶4.

In addition to the notice and opportunity given to the Unreachable Claimants through the Plan approval process, all Potential Claimants with active addresses on file were given "notice in writing of a notional claim amount as calculated by the Receiver," Order Implementing Plan, at 2, consistent with the notice procedures approved by the Court with respect to the Motion to Approve Plan. Goforth Decl., at ¶5. Furthermore -- and with the goal of reaching as many Potential Claimants as possible -- the Receiver and his staff went beyond these minimum notice-related actions and sought to identify Potential Claimants whose mail had been returned by the USPS, and thereafter with respect to Potential Claimants who were mailed interim distribution checks but who had not negotiated those checks with their depository institution by the expiration date of the check.[11] In this regard, the Receiver's staff and engaged professionals undertook the following procedures:

    i. engaged Easy-Serve to conduct "skip traces" to identify contact information related to Potential Claimants with claims exceeding $100,000 and for whom the Receiver had record of a previous address;

    ii. searched electronic mail and other records for any prior correspondence with the Potential Claimant;

    iii. referenced all other investor lists in separate offerings for possible contact information;

    iv. reviewed investor spreadsheet created by the SEC for possible contact information;

    v. searched Receivership records for subscription agreements for possible contact information; and

    vi. for claimants that are entities, searched Texas Secretary of State and internet search engines for contact information.

---

[11] If the Receiver had received returned mail without a forwarding address prior to issuing the interim distribution checks, he did not issue an interim distribution check to that Potential Claimant.

Goforth Decl., at ¶6 – 8. Although these efforts were not entirely futile, they yielded only limited positive results.

Notwithstanding the above-described efforts, there remain approximately 280 Unreachable Claimants. Goforth Decl., ¶ 9; Exhibit A. The effects of disallowing these claims would be material to the Potential Claimants that the Receiver has been able to locate. In this regard, a generic claimant with a $100,000 claim held a *pro rata* share of all investor loses of 0.084% and received an interim distribution in the amount of $8,400.[12] If all Unreachable Claimant claims are disallowed, that same claimant would hold a *pro rata* share of approximately 0.1097%, which would have increased their interim distribution amount by approximately $2,570 to approximately $10,970.[13] The Receiver requests leave to disallow the claims of the Unreachable Claimants, in his sole discretion.

### III.  REQUESTED RELIEF

The Receiver requests that the Court authorize him, in his sole discretion, to disallow the claims of the Unreachable Claimants. The Receiver further asks the Court to order that the estates of the Receivership Entities be forever discharged from any indebtedness or liability to any and all Unreachable Claimants whose claims are disallowed by the Receiver.

---

[12] Approximately 50% of all Final Claim Amounts (459) fall between $35,000 and $135,000. The median Final Claim Amount is approximately $71,000.

[13] The increase attributed here to the interim distribution will be applied to the final distribution for all known Potential Claimants.

Dated: January 20, 2023

Respectfully submitted,

THE TAYLOR LAW OFFICES, PC

Thomas L. Taylor III, Receiver
Texas Bar: 19733700
*taylor@tltaylorlaw.com*

245 West 18th Street
Houston, Texas 77008
Tel: 713.626.5300
Fax: 713.402.6154


GOFORTH LAW, PLLC

By:   /s/ Andrew M. Goforth

Andrew M. Goforth
Texas State Bar: 24076405
*andrew@goforth.law*

11152 Westheimer Rd. # 1121
Houston, Texas 77042
Tel:      (713) 464-2263
Fax:     (713) 583-1762

COUNSEL FOR RECEIVER


## CERTIFICATE OF CONFERENCE

I certify that I have conferred with counsel for Plaintiff Securities and Exchange Commission, which is not opposed to the relief requested herein.

  /s/ Andrew M. Goforth
Andrew M. Goforth

## CERTIFICATE OF SERVICE

I certify that on January 20, 2023 I served the foregoing document pursuant to FED. R. CIV. P. 5(b)(2)(E) by filing it through the Court's CM/ECF filing system.

  /s/ Andrew M. Goforth
Andrew M. Goforth